# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE OF OKLAHOMA, ex rel. W.A. DREW EDMONDSON, in his capacity as ATTORNEY GENERAL OF THE STATE OF OKLAHOMA and OKLAHOMA SECRETARY OF THE ENVIRONMENT C. MILES TROBERT, in his capacity as the TRUSTEE FOR NATURAL RESOURCES FOR THE STATE OF OKLAHOMA, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 05-CV-329-TCK-SAJ |
| Plaintiff(s), | )<br>) | |
| vs. | )<br>) | |
| TYSON FOODS, INC., INC., TYSON POULTRY, INC., TYSON CHICKEN, INC., COBB-VANTRESS, INC., AVIAGEN, INC., CAL-MAINE FOODS, INC., CAL-MAINE FARMS, INC., CARGILL, INC., CARGILL TURKEY PRODUCTION, LLC, GEORGE'S, INC., GEORGE'S FARMS, INC., PETERSON FARMS, INC., SIMMONS FOODS, INC., and WILLOW BROOK FOODS, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant(s). | )<br>) | |

## OPINION AND ORDER

The Court heard pending discovery motions on December 15, 2006.  The Court ruled on some motions at the hearing and took some under advisement.

**Deposition of Randy Allen**

Plaintiffs subpoenaed Randy Allen, a non-party, for deposition.  Randy Allen moved to quash the supboena [docket no. 934], and Plaintiffs moved to compel the deposition and document production.  [Docket No. 963].  Peterson Farms joined in the motion.  [Docket No. 936].

Randy Allen contends that the information sought is not likely to lead to admissible evidence, and that the requests are facially overbroad and unduly burdensome. Plaintiffs note that Mr. Allen has previously held himself out as having knowledge relative to the claims in this lawsuit.

The Court has reviewed the briefs filed by the parties and considered the arguments of counsel and the case law. The Court denies the motion to quash the subpoena [docket no. 934], and grants the motion to compel the deposition. [Docket No. 963]. Mr. Allen has indicated that he observed and knows about the poultry industry and the disposal process. In print advertisements he has stated he knows the "truth" about what "the Attorney General is claiming" in the lawsuit.

**Deposition of Bev Saunders**

Plaintiffs served Bev Saunders with a subpoena for a deposition and document production. Bev Saunders has moved for a protective order. [Docket No. 957]. Ms. Saunders' primary objection is that Plaintiffs plan to videotape the deposition but Plaintiff will not stipulate that use of the videotape of the deposition is limited to this lawsuit.

Fed. R. Civ. Proc. 26(c) the Court may enter an order "to protect any party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. Proc. 26(c). Plaintiffs do not specify any particular purpose or use for the videotaped deposition outside the confines of this lawsuit. Plaintiffs claim that no current alternative use for the deposition is planned. Ms. Saunders is concerned that due to the nature of this litigation Plaintiffs might attempt to use her videotaped deposition in advertising or in a manner that would subject her to embarrassment. Plaintiffs refer the Court to *Fanelli v. Centenary College*, 211 F.R.D. 268 (D.N.J. 2002).

-- 2 --

In *Fanelli*, the primary emphasis of the Court's opinion was that videotaping of depositions should be encouraged, that video can assist in assessing credibility concerns, and that protective orders should not interfere with Court proceedings. *Fanelli*, at 270. The *Fanelli* Court did observe that good cause for the granting of a protective order must be established, and did conclude that the party opposing the videotape had not met the burden to support the quashing of a videotaped deposition. *Fanelli* is distinguished from this action because Ms. Saunders is not requesting that the Court quash the deposition or the videotape of the deposition. Ms. Saunders requests only that the use of the videotape be limited to this action. Another distinction between *Fanelli* and the present action is that Ms. Saunders is not a party, whereas in *Fanelli*, the deponent who requested that the videotape of the deposition be quashed was a party.

The Court has reviewed the briefs of the parties and considered the case law and the arguments of the parties. The motion for a protective order is granted. [Docket No. 957]. Plaintiffs may videotape the deposition of Ms. Saunders. Plaintiffs may not use the deposition for any purpose outside of this litigation without prior approval of the Court. If Plaintiffs want to pursue a use outside of this litigation for the deposition, Plaintiffs should file a motion with the Court requesting prior approval for such a use. At that time the Court will evaluate whether the requested use should be permitted using the good cause standard, with the burden remaining on the deponent.

**Number of Requests for Admissions**

Defendant Tyson moved for leave to exceed the numerical limit on requests for admissions. Local rule 36.1 limits the number of requests for admissions to 25 per party. LcvR 36.1. The parties generally agree that the Tyson Defendants would be entitled to 100

-- 3 --

requests for admissions.  Tyson requests permission to serve 878 requests for admission. [Docket No. 949-2, Exhibit A].

The Court has reviewed the requests for admissions and concludes that the burden of responding to the requests substantially outweighs any probative value from the requests.  *See* Fed. R. Civ. Proc. 26(4)(c).  The Court is not convinced as to the relevancy of all of the requests for admissions, and believes that some requests are burdened by minutiae.  Defendant's motion for leave to exceed the numerical limit on requests for admissions is denied.  [Docket No. 949].

**Case Management**

The Court additionally listened to argument by the parties on Defendants' motion for entry of a case management order involving a *Lone Pine* order.  The Court takes this motion under advisement.  The parties will meet and discuss scheduling dates and submit joint dates or proposed dates by opposing parties to the Court within two weeks of the date of this Order.  After submission of the proposed dates, the Court will rule on the pending motion.

The Court previously heard argument on Defendants' Opposed Motion for Request for Establishment of Procedure for Entry of Case Management Order [docket no. 425], and the Joinder in that Motion by Defendant Cargill [docket no. 448].  The motions are granted in part in that the Court has had a hearing on the motion and the parties are directed to submit proposed agreed to or proposed dates to which the parties are unable to agree.

**Attorney Client Privilege and Work Product**

The parties have vigorously debated the application of the work product doctrine and attorney client privilege to various categories of documents which Plaintiffs maintain should not be produced in reliance upon the privileges. The Court previously heard oral argument on Defendant Cobb-Vantress, Inc.'s motion to compel discovery [Docket No. 743], and Defendant Simmons Foods, Inc. motion to compel discovery [Docket No. 844]. Following the hearing on the motions, Defendant Cobb-Vantress filed a Supplemental Brief in support of their motion to compel [Docket No. 947], which was responded to by Plaintiffs. In addition, Peterson Farms, Inc. filed a motion to strike a portion of Plaintiffs' Brief. [Docket No. 962]. The Court finds the motion by Peterson Farms moot based upon the Court's rulings on the underlying motions to compel. The Court also grants the motion for an *in camera* review of certain documents submitted by Plaintiffs, and has reviewed the documents *in camera*. [Docket No. 826].

The Court has considered the arguments of counsel at both the August and December 2006 hearings. The Court has reviewed the multiple briefs filed by the parties, the case law cited by the parties, and the documents submitted *in camera*. The Court finds that Plaintiffs have waived any applicable privileges by placing the documents "at issue." In reaching this decision, the Court rules solely on the waiver and at issue arguments as briefed by the parties. Because this decision resolves the question, the Court does not rule upon or address the multiple other arguments of the parties including the applicability of the attorney client and work product privileges, the degree to which the referenced documents involve solely factual materials, or the expert witness assertions. The Court's ruling is

limited to the at issue/waiver arguments of the parties.  The Court may address the additional privilege issues in the future, if necessary.

Defendants maintain that Plaintiffs have placed the documents which Defendants seek in discovery "at issue" by filing the action in reliance upon undisclosed tests and sampling results, and because Defendants have no other means of discovering the information.  Plaintiffs claim that no at issue waiver has occurred.

Three factors are consistently applied by the courts in evaluating whether or not a party has waived an otherwise applicable privilege through some affirmative act.

> 1.  Whether the assertion of the privilege is the result of some affirmative act, such as filing suit or asserting an affirmative defense, by the asserting party.
>
> 2.  Whether the asserting party, through the affirmative act, put the protected information at issue by making it relevant to the case.
>
> 3.  If the privilege was applied, would it deny the opposing party access to information that was vital to the opposing parties defense.

*Sinclair Oil Corp. v. Texaco,* Inc., 208 F.R.D. 329, 335 (N.D. Okla. 2002) *citing Hearn v. B.J. Rhay*, 68 F.R.D. 574, 580 (E.D. Wash. 1975);[1] *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 199 F.R.D. 677, 681 (N.D. Okla. 2001).

Defendants seek the monitoring, sampling and testing data performed by Plaintiffs and related documents.  Plaintiffs, by the affirmative act of filing the lawsuit have met the first factor.

---

[1] In *Frontier Ref., Inc. v. Gorman Rupp Co.*, 136 F.3d 685, 699 (10th Cir. 1998), the Tenth Circuit Court of Appeals favorably discussed *Hearn* in attempting to construe applicable Wyoming privilege laws.

The second element is met when the protected information is put at issue by the party making it relevant to the case. Plaintiffs suggest this element is not met because the reference by Plaintiffs to the sampling data is peripheral to the case. The Court cannot conclude that the information sought by Defendants is peripheral. In the First Amended Complaint, Plaintiffs contend that the IRW has been polluted and that use of the waters is impaired. [Docket No. 18, ¶ 30]. Plaintiffs assert that the lands and waters of the IRW contain elevated levels of phosphorus, nitrogen, arsenic, zinc, copper, hormones, and microbial pathogens which are harmful to the environment and human health. [Docket No. 18, ¶¶ 58, 59]. Plaintiffs have, through an affirmative act, put the information at issue and have relied upon the information in the First Amended Complaint. Additionally, Defendants note numerous instances in which Plaintiffs have referenced or relied upon the information in motions to compel and during oral argument in this Court. *See, e.g.*, [Docket Nos. 743, at 7-8, 824, at 9]. The Court is persuaded that Plaintiffs have relied upon the information that Plaintiffs now seek to protect and shield from discovery.

The third element is whether application of the privilege by the Court would deny the opposing party access to information that is vital to the opposing party's defense. The Court concludes that this element is met. Defendants seek sampling data and results that cannot be recreated and can be obtained from no source other than Plaintiffs. The first Order granting discovery in this case was based, in part, on Plaintiffs' representations that due to changes in poultry feed and resulting poultry waste, samples were unique and

immediately necessary.[2/]   The parties have persuaded the Court as to the uniqueness of individual sampling and the inability to recreate samples or testing after the passage of time.   Therefore, application of the privilege and denial of the information to Defendants would deny vital information necessary to Defendants' defense.

Plaintiffs reference the Tenth Circuit Court of Appeals decision in *Frontier Refining*, as providing an "at issue" waiver only when the information was not available from another source.   Plaintiffs note that if the information is available from fact and expert witnesses, the information is not "vital" to the defense.   This situation does not exist in the present case.   As noted, the Court has considered and accepted the representation of the uniqueness of individual sampling data and the impracticability and impossibility of recreating a given sample after the passage of time.   In oral argument, Plaintiffs previously stated that individual samples not made available to expert witnesses would not be voluntarily provided to Defendants.   Plaintiff's position on this issue has changed as detailed below.   Regardless, the Court is persuaded that sampling data is unique.

The Court finds that the three elements of the "at issue" waiver are met in this case. Plaintiffs have made an affirmative assertion, relied upon the information, and the information is vital to Defendants' defense.   The Court therefore finds that Plaintiffs have waived applicable privileges, and that the requested data, testing, sampling, and results shall be produced to Defendants.

---

[2/]   Oral argument on Plaintiffs' motions for discovery prior to a Fed. R. Civ. Proc. 26(f) conference occurred on March 23, 2006.   The Court's order was entered March 24, 2006.   [Docket No. 238].   The Order granted the motion for discovery, in part, based on Plaintiffs' representations that due to the changes in poultry feed, which can change the resulting poultry waste, "Plaintiff must test or the possibility exists that currently available evidence will change and be unavailable for testing."   [Docket No. 238, at 4].

During oral argument, Plaintiffs articulated specific categories of documents which Plaintiffs agree to produce to Defendants.  With regard to the first interrogatory and document request from Defendant Cobb-Vantress, Plaintiffs have agreed to answer or produce documents responsive to most of the requests.  Interrogatory number one asks that for each instance of sampling, monitoring or listing information be provided including (a) the date and location of sampling, (b) the name, address, and telephone number of each person involved in sampling, (c) the media or material sampled, and (d) all tests or laboratory analysis performed.  Plaintiffs have agreed to answer this interrogatory or alternatively provide the documents responsive to this interrogatory.

The first document production request by Defendant Cobb-Vantress asks for copies of all sampling, monitoring or testing.  Plaintiffs have agreed to provide laboratory results, assay reports, QA/AC documents, sampling protocols (unless prepared by an attorney), photographs, and site sketches.  Plaintiffs will not produce sampling plans which were prepared by attorneys.

The second request for production by Defendant Cobb-Vantress requests copies of all documents relating to the scientific investigation of groundwater contamination.  Plaintiffs have agreed to provide laboratory results, assay reports, QA/AC documents, sampling protocols (unless developed by an attorney), photographs, and site sketches.  Plaintiffs will not provide sampling plans which were developed by attorneys.

The third request for production by Defendant Cobb-Vantress requests copies of all documents relating to Plaintiffs' investigation of the Poultry Integrator Defendants' waste disposal practices.  Plaintiffs object to providing these documents, asserting that the documents are work product.

-- 9 --

Simmons submitted separate interrogatory and document requests to Plaintiffs. Interrogatory number one requests for calendar year 1985 through 2005 the total P loading to Lake Tenkiller from land application of poultry litter.  Interrogatory number two is similar, but requests the N loading for the Illinois River Watershed.  Interrogatory number three requests the total amounts which were attributed to poultry growers under contract with Simmons.   Interrogatory number four requests support for the answers to prior interrogatories.  Interrogatory number five requests the contact information for all persons who have suffered adverse health effects.  Plaintiffs, in part, object to the interrogatory as unclear due to the reference of "any adverse health effect."  The Court briefly, but not specifically, discussed the Simmons' discovery requests at the hearing.  Plaintiffs shall respond to the interrogatories or produce documents responsive to the degree possible considering Plaintiffs' decision to produce documents and given this Court's order regarding waiver issues.  *See* Fed. R. Civ. Proc. 33(d).  If Plaintiffs are unable to respond to the interrogatories, Plaintiffs should so state.  The Court notes that part of Plaintiffs' prior response to Interrogatory number three is that the claimed injuries are indivisible.

Plaintiffs are, by agreement, producing much of the information sought by Defendants.  The Court has additionally reviewed the *in camera* submission of Plaintiffs. In comparing the *in camera* documents, the document requests, and the documents which Plaintiffs have agreed to produce, the Court concludes that Plaintiffs shall produce and are hereby ordered to produce those documents described above as being included within Plaintiffs' most recent offer of voluntary production. Generally, these documents are testing results for which any privilege has been waived as described in the "at issue" waiver described above.  To compel production or responses beyond the voluntary production

-- 10 --

described above, *i.e.* attorney directed sampling plans and Plaintiffs' investigation of Defedants' waste disposal practices, will require the resolution of the attorney client and work product privileges and expert witness assertions which the Court is reserving for future decision, if necessary.  After the defendants have reviewed the production ordered herein and the revised privilege log described below, the Defendants may reurge their motion to compel further production if they think it necessary and appropriate.

Plaintiffs shall produce all documents identified by Plaintiffs and the Court by February 1, 2007.  Within one week of producing all of the documents identified by Plaintiffs and the Court, Plaintiffs shall prepare a supplemental privilege log which identifies all documents which Plaintiffs continue to claim as privileged which Plaintiffs have not produced.

**Conclusion**

The motion to quash the subpoena of Randy Allen is denied.  [Docket No. 934].  Plaintiffs' motion to compel is granted.  [Docket No. 963].  The motion by Bev Saunders for a protective order is granted to the extent detailed in this order.  [Docket No. 957].  The motion to exceed numerical limit on request for admissions is denied.  [Docket No. 949].  The motions for case management are granted to the extent detailed in this order.  [Docket Nos. 425, 448].

The motions to compel discovery are granted.  [Docket Nos. 743, 826].  The Court finds the motion by Peterson Farms moot based upon the Court's rulings on the underlying motions to compel.   [Docket No. 962].  The Court grants the motion for an *in camera* review of certain documents submitted by Plaintiffs. [Docket No. 826].

The Court will rule on the motion for case management order [docket no. 936] after the parties have submitted proposed scheduling dates.  Proposed scheduling dates should be submitted within two weeks of the date of this Order.

Dated this 5th day of January 2007.

Sam A. Joyner
United States Magistrate Judge