IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA,                    )
                                      )
                     Plaintiff,       )
                                      )
v.                                    )          Case No.  05-cv-329-GKF(SAJ)
                                      )
TYSON FOODS, INC., et al.,            )
                                      )
                     Defendants.      )


STATE OF OKLAHOMA'S RESPONSE TO "THE CARGILL DEFENDANTS
MOTION TO COMPEL AND BRIEF IN SUPPORT"
FILED FEBRUARY 14, 2007 (DKT. NO. 1054)

## TABLE OF CONTENT

**TABLE OF CONTENT** ................................................................................................i

**TABLE OF AUTHORITIES** ....................................................................................... ii

**I. The State's Rule 34 document production properly produced responsive documents as they are kept in the usual course of the State's business.** ...........................................1

  **A. The State's document production was not disordered or haphazard, but was comprised of responsive documents produced as kept in the usual course of business.** ......1

  **B. The comprehensive agency document productions afforded a reasonable time, place and manner of inspection.** ......................................................................................3

  **C. The State properly produced documents as they are kept in the usual course of the State's business.** ................................................................................................3

**II. Cargill inaccurately claims the State did not provide answers to certain interrogatories.** ..................................................................................................................6

**III. The State responded to interrogatories in adequate detail.** .............................14

**IV. The State's responses and objections to contention interrogatories are proper.** ...........20

**V. The State agreed to revise its privilege logs before the Cargill Defendants moved to compel.** ............................................................................................................22

**VI. The Cargill Defendants offer no basis to compel the State to withdraw privilege claims to documents requested.** ..................................................................................23

**VII. The Cargill Defendants do not establish any waiver of work product and trial preparation protection.** .........................................................................................24

**VIII. The boilerplate assault on "General Objections" is unnecessary and unfounded.** .....24

**IX.   Conclusion** ................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) ............................................................................................................................4

*Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998) .............................14, 22

*In re G-I Holdings, Inc.*, 218 F.R.D. 428, 439 (D.N.J. 2003) ...........................................................4

*Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989).................................................................20

*Steil v. Humana Kansas City, Inc* 179 F.R.D. 445, 447 (D. Kan. 2000) ........................................18

**Statutes**

Fed. R. Civ. P. 26(b)(2) ...................................................................................................................17

Fed. R. Civ. P. 34(b)...........................................................................................................................3

Fed.R.Civ.P. 34...................................................................................................................................1

**Other Authorities**

Restatement 2d of Torts § 427B ..............................................................................................10, 21

COMES NOW Plaintiff, the State of Oklahoma, ex rel. W.A. Drew Edmondson, in his capacity as Attorney General of the State of Oklahoma, and Oklahoma Secretary of the Environment, C. Miles Tolbert, in his capacity as the Trustee for Natural Resources for the State of Oklahoma under CERCLA (the "State"), and responds to "The Cargill Defendants' Motion to Compel and Brief in Support" filed February 14, 2007 (Dkt. No. 1054) as follows:

In their Motion to Compel the Cargill Defendants complain that:

1. The State's written responses to their Requests for Production of Documents do not categorize documents possessed by each state agency or by request for production;
2. The State's interrogatory responses do not specify documents which are responsive under Rule 33(d), lack sufficient detail, and object to contention interrogatories;
3. The privilege logs prepared for each agency document production are insufficient; and
4. The State's general objections prevent them from determining the sufficiency and completeness of responses.

As the State demonstrates herein, these complaints are unfounded and the Motion to Compel should be denied in its entirety.

## I. The State's Rule 34 document production properly produced responsive documents as they are kept in the usual course of the State's business.

The State properly produced documents in accordance with Fed.R.Civ.P. 34. The State's document production was not disorderly, was produced in a reasonable time and manner, and the documents were produced as kept in the usual course of business.

### A. The State's document production was not disordered or haphazard, but was comprised of responsive documents produced as kept in the usual course of business.

Without actually claiming the State has produced documents in a disordered fashion, the Cargill Defendants insinuate as much by citing cases condemning document productions in which large numbers of documents were produced "in no particular order" or in which

1

documents were haphazardly produced. Brief at 4-5. Nothing could be farther from the truth. These cases have no application to the present case, because the State's documents were produced as they are kept in the usual course of business. The affidavits of the records custodians from those agencies establish that documents were produced as kept in the usual course of business. See Exhibit 1, (affidavit of Rhonda Craig from the ODEQ), Exhibit 2 (affidavit of Ben Pollard from the OCC), Exhibit 3 (affidavit of Dean Couch from the OWRB), and Exhibit 4 (Affidavit of Ed Fite from the OSRC).

The State also provided Defendants with indices of the documents produced which tied the documents to particular requests. When the Court reviews these indices it will see quite plainly that the State produced documents from specific locations or divisions within its agencies as they are kept in the usual course of business and did not, as Cargill insinuates, mix up the documents to confound Defendants. For example, the Cargill Defendants' Exhibit 6 is the index of the document production from the Oklahoma Department of Environmental Quality (DEQ). That index shows boxes of documents were produced from the Legal Division, the Land Protection Division, ECLS (Environmental Complaints and Legal Services) Division, WQD (Water Quality Division, with subparts such as Public Water Supply, Municipal, Industrial, and Sludge). As Exhibit 1 demonstrates, these documents were the original records of the State of Oklahoma which were determined responsive and moved from the files of the pertinent divisions, put in boxes, and, upon their return from copying by a contractor for Defendants, returned to their original locations. The State did not mix up its own documents to confound Defendants, and the State rejects Cargill Defendants' insinuation that this occurred. Not only would doing so be improper, but also it would only confound the State itself when it had to return its own documents to service.

**B.  The comprehensive agency document productions afforded a reasonable time, place and manner of inspection.**

The State provided a reasonable time, place and manner of inspection for the document production.  In fact defendants agreed to this process before the document inspections began.  See Exhibit 5 (Letter to T. Noble Hill and Reply E-Mail) and Exhibit 6 (McDaniel letter to Riggs dated October 9, 2006).

The State proposed to make available for inspection documents responsive to all Defendant's discovery requests (Peterson, Tyson, Cargill and Simmons) in conjunction with the Defendant Peterson Farms document custodian depositions already scheduled.  The State has and will be making other agencies available for inspections.  The State selected this method as the "reasonable time, place, and manner of making the inspection and performing the related acts" and the Defendants agreed to this process. Fed. R. Civ. P. 34(b).

Further, it has been more efficient to produce documents in this matter, rather than making multiple copies of the 400 boxes of responsive information and sending a separate copy to each Defendant.  If the State had chosen this method then it is quite possible that the document productions would have been substantially delayed.  Under the State's approach, however, Defendants have already had the opportunity to inspect and copy documents at five State agencies.  Simply put, the State's production was reasonable in terms of time, place and manner.

**C.  The State properly produced documents as they are kept in the usual course of the State's business.**

While recognizing that under Rule 34, the State may produce responsive documents in either of two ways, Brief at 4, the Cargill Defendants nevertheless want to prevent the State from proceeding pursuant to Rule 34(b)(i), and producing responsive documents "as they are kept in the usual course of business."  Instead, Cargill seeks to impose upon the State an obligation to

3

"organize and label them to correspond with the categories in the request."  The Cargill Defendants' position is inconsistent with Rule 34(b) and must be rejected by the Court.  The State has the option to produce records as kept in the usual course of business, and need not organize them by request:

> The plain phrasing of Rule 34(b) reveals that the producing party has the option of presenting information in one of two ways.  If the producing party produces documents in the order in which they were kept in the usual course of business, the Rule imposes no duty to organize and label the documents.  The duty to organize and label only attaches when the responding party cannot or does not produce the documents as they were kept in the usual course of business.

*In re G-I Holdings, Inc.*, 218 F.R.D. 428, 439 (D.N.J. 2003)  According to the plain language of Rule 34, a responding party has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business.  *Hagemeyer North America, Inc v Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) (documents from storage produced as kept in usual course of business in labeled boxes.)  To require the State to reach beyond the duties set forth in Rule 34(b) would be an unjustified and improper burden of time and expense for the State.

The Cargill Defendants have also argued that the State's written responses should identify both the agency and responsive documents that they would find at each agency.  Rule 34 imposes no such duty on the State.  The State's responses to the Cargill Defendants' Rule 34 requests stated that responsive documents located as of the date of the response, or the date of an on-site agency production, would be provided.  As the parties worked together to schedule custodian depositions and on-site productions, agency personnel and counsel for the State began to locate responsive documents an agency at a time, in advance of the depositions and on-site productions.

4

Before undertaking this search, the State could not know the nature and location of the responsive documents at each agency, and thus could not categorize the location of the documents responsive to particular requests. Instead, as a courtesy to Defendants, the State provided the indices of documents produced as kept in the usual course of business

Additionally, it is important to note that the Cargill Defendants have not fully informed the Court of all the facts regarding the State's production. There are particular omissions in the Cargill Defendants' Motion to Compel which are significant. The Cargill Defendants complain in their Motion that they "found thousands of pages of documents with no reference to byproducts of water treatment plant processes," the subject of one of their requests. Brief at 6. However, they say neither that those "thousands of pages" were not responsive to <u>some other</u> request, nor that they failed to receive documents referring to byproducts of water treatment plant processes. In fact, the State designated Legal Box 8 as responsive to Cargill Turkey Request for Production 6, 11-14, 25-28, 44, and 52. The box in question contains correspondence from the legal staff at ODEQ to various entities in the IRW. While not every document in box 8 is responsive to RFP 27, there were numerous other documents responsive to Cargill's other requests. The Cargill Defendants do not complain that the State has not produced responsive documents. Counsel for Cargill, who personally participated in the document productions, provided an affidavit to the brief of the Cargill Defendants, Ex. 5, which <u>did not</u> complain that she could not find responsive documents, or that the burden of finding documents designated under Rule 33(d) was greater for her clients than for the State. The absence of assertions that the State failed to produce responsive documents from one with personal knowledge of the document productions demonstrates that the complaints of the Cargill Defendants are form without substance.

The Cargill Defendants complain of the "overwhelming task" of correlating documents with discovery requests. Brief at 7. This task results from the breadth of their requests, and is no reason to impose on the State a burden not called for in Rule 34. For example, CTP Request for Production No. 44 asks for all documents relating to water quality in the IRW-this request could arguably encompasses nearly every single document dealing with the Illinois River Watershed at the State environmental agencies. While the State did not organize and label its official records to correspond to each separate Defendant's request, the State did identify the requests to which its documents responded on the indices provided to Defendants. In contrast, however, the Cargill Defendants have produced documents to the State without even designating the requests to which they respond. (Exhibit 8) Thus, the Cargill Defendants are seeking to impose a greater burden on the State than they appear willing to meet themselves. Requiring the State, contrary to the Rule, to categorize its official records that were produced as they are kept in the usual course of business according to the Defendants' requests is impractical and would do nothing to assure the Cargill Defendants that they have received all the responsive documents. These are complaints intended to make the State do unnecessary work, and are not supported by any requirements in the Rules.

**II. Cargill inaccurately claims the State did not provide answers to certain interrogatories.**

The following Table demonstrates that the State _did_ provide substantive answers and complemented those substantive answers with Rule 33(d) designations to majority of the Interrogatories challenged by the Cargill Defendants. The Cargill Defendants inaccurately claim that "[i]nstead of providing answers, the State has opted to produce business records purported to include [sic] information in response to" certain designated interrogatories. Brief at 8. The Court should not be mislead by Cargill's inaccurate portrayal of the State's responses. While the State

stood upon its right to object to three (CTP 1,2 and 7) of the interrogatories, it provided

substantive answers providing the "principal and material" facts to the balance.

**CTP Interrogatories**

| Number | Interrogatory Topic | State's Response |
|--------|---------------------|------------------|
| 1 | Identify each tract of real property in the IRW owned, managed controlled, or leased, including fee ownership, surface ownership, mineral ownership, lease or license. | Objected as overly broad, oppressive, unduly burdensome and expensive to answer. Referred to County Clerk land records. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 2 | For each specific tract identified in No. 1, identify the specific uses for and activities that have been conducted on each tract during the period the State owned, managed or controlled any interest. | Objected as overly broad, oppressive, unduly burdensome and expensive to answer. Stated as general matter properties used as typical for universities, offices, state parks, wildlife and public access areas. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 3 | State date the State first became aware poultry industry might be a potential source of listed constituents. | Objected as overly broad, burdensome, and expensive. Responded that the State is not able to state date it first became aware constituents came from poultry industry operations. Governor's Task Force on Animal Waste was formed in 1997, Registered Poultry Feeding Operations Act became effective in 1998, State began negotiating with industry in 2001. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 4 | State the date State became aware constituents in complaint caused environmental harm in the IRW and discuss with particularity the facts, witnesses and documents leading to State's awareness. | Objected and referred to Response to No. 3. |
| 5 | Describe all steps taken to address or "deal with" other sources of pollutants as referred to in oral argument on March 23, 2006. | State has established comprehensive environmental regulatory system, carried it into effect through rulemaking, permitting, inspection and enforcement, and maintained common law remedies. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 6 | For each step identified in response to No. 5, state the reduction in each pollutant or | State has not undertaken to measure reduction of pollutants and contaminants from each of the measures it has taken. Referred to and attached |

| | | |
|---|---|---|
| | contaminant that resulted. | 2005 Coordinated Watershed Restoration and Protection Strategy for Oklahoma's Impaired Scenic Rivers (SB 972 report) which summarized some reductions. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 7 | Describe the trophic state of each lake or reservoir within the IRW for each season of the year since 1952, state all evidence and identify all documents that relate to such trophic state and the causes for any observed eutrophication. | Objected as overly broad, oppressive, unduly burdensome and expensive to answer. Offered documents pursuant to Rule 33(d) if found in agency on site productions. Responsive documents include Beneficial Use Monitoring Program (BUMP) reports, clean lake studies, and other reports. |
| 8 | Identify all "federal approved water quality standards" the three scenic rivers in the IRW failed to meet, as referred to oral argument on March 23, 2006. | According to Oklahoma's 2004 303(d) list, approved by the EPA in October, 2006, the Baron Fork violates standards by failing to meet its Public and Private Water Supply, Primary Body Contact Recreation, and Aesthetic beneficial uses, and is impaired due to violations of the Enterococcus, E. Coli and total fecal coliform criteria. The Upper Illinois River violates standards by failing to meet its Public and Private Water Supply, Primary Body Contact Recreation, Aesthetic and Cool Water Aquatic Community beneficial uses, and is impaired by violation of the Enterococcus, E. coli, total fecal coliform, turbidity, and total phosphorus criteria. Flint Creek is impaired due to violating the Enterococcus, E. coli, total fecal coliform, and total phosphorus criteria in one segment and the Enterococcus and nitrate criteria in another segment. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 9 | State completely and in detail facts supporting allegation that phosphorus and other hazardous substances, pollutants and contaminants have built up in the soil to the extent that without any additional land application, excess residual phosphorous, etc., will continue to run-off into the waters of the IRW in the future. | Quoted SB 972 report that ODAFF inspector reports from 2002 showed 73% of sites had soil test phosphorous level exceeding 120. University of Arkansas and OSU experts agree STP level over 65-100 is of no value to crops. Confined poultry operations have tons of enriched feed brought into IRW. Much phosphorous passes through animals and is left on soil. For land with high STP levels, appreciable amounts of phosphorous exist in runoff water and can significantly impact water quality. High STP levels can require many years of continuous crop harvesting to remove phosphorous, even with no additional phosphorous being added, citing |

| | | references. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
|---|---|---|
| 13 | State with particularity factual and legal basis for allegation that Cargill entities have avoided the cost of properly managing and disposing of waste to their enormous economic benefit and at great cost to the lands and waters of the IRW and identify witnesses relied upon to establish facts. | Poultry Integrator Defendants have, at a minimum, avoided cost of transporting excess litter to locations where (1)it can be safely applied and (2) will not contribute to the discharge or runoff of pollutants into the Oklahoma portion of the waters of the IRW. Defendants have also avoided the cost of properly handling and storage of waste within the IRW. Incorporate by reference responses to Cargill Interrogatories 1-3. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 15 | State completely and in detail facts supporting allegation that Cargill entities have long known that application of poultry waste to lands within the IRW, in amounts and frequency applied, far exceeds the capacity of soils and vegetation to absorb those nutrients present in waste. | Quoted portions of *City of Tulsa v. Tyson* opinion that defendants there, including Cargill, admit they were award in the 1990s that phosphorous presented potential problems to the watershed and court's finding that defendants had reason to recognize that in the usual course of [the growers] doing work in usual manner, trespass or nuisance is likely to result. *City of* Tulsa defendants admitted they were aware of environmental impact of phosphorus in poultry waste in approximately the min-1990s. There is no material difference between watershed at issue in *City of Tulsa* and the IRW. It has long been understood that land application of wastes can lead to environmental harms which are the subject of this suit. Cited reference that annual loading from non-point sources represent 79% of total phosphorus load to Lake Tenkiller. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 16 | State completely and in detail basis for allegation that Cargill entities arranged for growers to take possession of poultry waste from birds with full knowledge that growers were annually placing hundreds of thousands of tons of waste directly on the ground and that these actions would lead to the run off and release of phosphorus, pollutants and contaminants to the lands and waters of the IRW. | Poultry integrator defendants, including Cargill entities, have for years raised millions of birds, owned by them, in the IRW and have made little or no provision for removal of the waste generated by birds. Waste necessarily follows from the growing of poultry. Disposal of waste has been arranged for by leaving waste with growers who land apply it. Representatives of Poultry Integrator Defendants are routinely in and around land application sites and are informed that land application is taking place. Offered documents pursuant to Rule 33(d) if found in |

| | | agency on site productions. |
|---|---|---|

**Cargill Interrogatories**

| Number | Interrogatory Topic | State's Response |
|---|---|---|
| 2 | State with particularity the factual and legal basis for allegation that Cargill entities are responsible for the poultry waste created by poultry growing operations, its handling and storage, and disposal on lands within the IRW and the resulting injury. | Referenced Response to No. 1 dealing with control of growers (response not objected to as inadequate). Waste necessarily follows from growing of poultry, Cargill entities are responsible for nuisance and trespass created by waste generated by their birds. Restatement 2d of Torts § 427B. Cargill entities are responsible for nuisance and trespass created by land application of wastes which allows large quantities of phosphorus, bacterial and other pollutants to be released from application sites to travel to waters of the IRW. Litter is commonly piled in the open air without proper cover and Defendants, including Cargill have sufficient ongoing presence in the IRW to observe it. Excessive application of waste allows phosphorus to build up in the soil and will run off in the future. Phosphorus transported to waters causes excessive algal growth, hypolimnetic anoxia and other harm resulting in eutrophication. Bacteria from waste causes a risk to human health. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 3 | State with particularity the factual and legal basis for allegation that Cargill entities are responsible for pollution, degradation, and impairment of the IRW by virtue of improper poultry waste disposal practices. | Referenced Responses to Nos. 1 & 2 dealing with control of growers and responsibility for waste. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 4 | State with particularity the factual and legal basis for allegations that Cargill entities knew, or had reason to know, that in the ordinary course growers raising birds in the usual and prescribed manner will handle and dispose of waste in a manner to cause injury | Quoted portions of *City of Tulsa v. Tyson* opinion that defendants there, including Cargill, admit they were award in the 1990s that phosphorous presented potential problems to the watershed and court's finding that defendants had reason to recognize that in the usual course of [the growers] doing work in usual manner, trespass or nuisance is likely to |

| | | |
|---|---|---|
| | to the IRW. | result. *City of* Tulsa defendants admitted they were aware of environmental impact of phosphorus in poultry waste in approximately the min-1990s. There is no material difference between watershed at issue in *City of Tulsa* and the IRW. It has long been understood that land application of wastes can lead to environmental harms which are the subject of this suit. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 5 | State completely and in detail the facts supporting allegation that Cargill entities have long known that it has been and continues to be the practice to routinely and repeatedly improperly store poultry waste generated in the course of growing operations in the IRW. | Referenced responses to No. 1 (control of growers), No. 2 (responsibility for waste, handling and storage), No. 3 (responsibility for degradation and impairment of the IRW) and No. 4 (knowledge that waste handling and disposal in usual and prescribed manner causes injury). Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 6 | State completely and in detail facts supporting allegation that Cargill entities have long known that application of poultry waste to lands within the IRW in amounts that it is applied exceed any agronomic need and is not consistent with good agricultural practices and constitutes waste disposal rather than normal application of fertilizers. | Quoted SB 972 report that ODAFF inspector reports from 2002 showed 73% of sites had soil test phosphorous level exceeding 120. University of Arkansas and OSU experts agree STP level over 65-100 is of no value to crops. Phosphorus applied in excess of agronomic needs does not cause growth of more or better plants and is no longer "fertilizer" in any sense, but is waste disposal. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 7 | State completely and in detail the facts supporting allegation that Cargill entities have long known that poultry waste disposal practices lead to run-off and release of large quantities of phosphorus, and other pollutants in the waste from fields into the waters of the IRW. | Referenced Response to No. 4 (dealing with knowledge that growers acting in usual and prescribed manner will handle and dispose of waste in manner causing harm). Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 8 | State completely and in detail the facts supporting allegation that Cargill entities have long known that poultry waste contains a number of constituents that can and do cause harm to the environment and pose human | Referenced Response to No. 4 (dealing with knowledge that growers acting in usual and prescribed manner will handle and dispose of waste in manner causing harm) and No. 15 (dealing with unreasonable and substantial danger to public's health and safety). Offered documents pursuant to Rule 33(d) if found in |

| | health hazards. | agency on site productions. |
|---|---|---|
| 10 | State with particularity the factual and legal basis for allegations of CERCLA violations. | Referenced responses to No. 1 (control of growers), No. 2 (responsibility for waste, handling and storage), No. 3 (responsibility for degradation and impairment of the IRW) and Counts 1 and 2 of the Amended Complaint. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 11 | State with particularity the factual and legal basis for allegations of Count 3 of violation of Solid Waste Disposal Act, and identify witnesses. | Referenced responses to No. 1 (control of growers), No. 2 (responsibility for waste, handling and storage), No. 3 (responsibility for degradation and impairment of the IRW) and Count 3 of the Amended Complaint. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 12 | State facts supporting allegation of ¶ 95 of Amended complaint of imminent and substantial endangerment to health or the environment as result of Cargill entity's contribution to handling and disposal of poultry waste. | Referred to response to No. 15, which also deals with same topic. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 14 | State completely and in detail the facts supporting allegation in Count 5 that the conduct of any Cargill entity constitutes a nuisance under federal law and identify all witnesses. | As a general matter, birds owned by Defendants create large amounts of waste annually which Defendants do not properly store or dispose of, but instead leave in circumstances in which it is inevitable that the waste, and its constituents, will migrate to the lands, soil, water and sediments of the Oklahoma portion of the IRW. At a minimum, waste disposal practices of Defendants create a situation in which a nuisance necessarily follows from the work of contract growers, and Defendants have reason to recognize that, in the ordinary course of doing the work of growing their poultry in the usual or prescribed manner, a nuisance is likely to result. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
| 15 | State factual and legal basis for claim that Cargill entities have caused unreasonable and substantial danger to the public's health and safety and identify witnesses upon whom State will rely to establish each fact. | As a general matter Defendants' improper waste disposal practices allow large amounts of bacteria from poultry waste to enter waters of the State. Phosphorus transported from the land application sites causes algae to grow in the waters of the IRW. It has long been understood that poultry waste contains bacteria and that nutrients in water increases levels of algae |

| | | which cause the formation of disinfection byproducts in drinking water. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |
|---|---|---|
| 16 | State factual and legal basis for allegation in Count 6 that Cargill entities have committed trespass under applicable state law and identify witnesses upon whom State relies to establish each fact. | As a general matter, the birds owned by the Defendants create large amounts of waste annually, which is not properly stored or disposed of, but left in circumstances in which it is inevitable that waste, and its constituents will migrate to the lands, soil, water and sediments of the Oklahoma portion of the IRW and cause an unauthorized, actual and physical invasion of, and interference with the land soil, water and sediments of the Oklahoma portion of the IRW to which the holds and interest in, or over which it acts as trustee. At a minimum, disposal practices create a situation in which a trespass necessarily follows, and Defendants have reason to know a trespass is likely to result. Offered documents pursuant to Rule 33(d) if found in agency on site productions. |

The Cargill Defendants on the one hand inaccurately claim the State has not answered the interrogatories set forth above, and then pray that the "Court compel the State to supplement its responses with specific document indications or otherwise fully and completely answer" the interrogatories. The summary charts above, and the full text of the State's answers, demonstrate the inaccuracy of Cargill's charges that the State has not answered these interrogatories. The Court should not tolerate such misleading allegations and gamesmanship on the part of the Cargill Defendants.

Moreover, the Cargill Defendants fail to specify any document reference under Rule 33(d) for which they have been unable to locate the responsive document. The handling of Rule 33(d) designations is a matter dealt with by the Court's order of February 26, 2006 (Dkt #1063) and the State's Motion for Reconsideration thereof (Dkt. #1074). While the present resolution of that request for reconsideration based on the State's inability to provide Bates number documents

is unknown, the State will comply with the order ultimately resolving it, and may withdraw some of its Rule 33(d) designations which it determines are unnecessary in light of its narrative or supplemental answers to interrogatories. It is important to note that the State is in the process of supplementing, pursuant to the State's recent production of sampling data, its responses to all Defendants discovery requests. Further, discovery is ongoing and Defendants have not yet been to all State agencies that may possess responsive information.

### III. The State responded to interrogatories in adequate detail.

The Cargill Defendants complain that the State has not answered its interrogatories in adequate detail because they are entitled to know the factual basis for the State's allegations. Brief at 10. The Cargill Defendants are seeking minutia, which is improper. Interrogatories should not require the answering party to provide a narrative account of its case, and courts will generally find them overly broad and unduly burdensome on their face to the extent they ask for "every fact" which supports identified allegations or defenses. *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998). Interrogatories may, however, properly ask for the "principal or material" facts which support an allegation or defense. *Id.* The State's responses did give the Cargill Defendants the "principal or material" facts.

The Cargill Defendants' allegation that they asked "the names of any witnesses with responsive information," Brief at 10, starkly misrepresents the actual text of their interrogatories because these Defendants did not phrase their interrogatories as broadly as they claim in their brief. In all but two of the indicated interrogatories, the Cargill Defendants joined a request that the State "identify every witness upon whom You will rely to establish" the facts requested in the interrogatory, plainly asking the State to forecast the witnesses it "will rely" upon to establish the facts. Because this is a highly expert-driven case, and the State has not yet determined which

14

experts it will use to establish the opinions to support its case, the State honestly answered that it "has not yet determined which witnesses it will use to support its claims" referenced in each interrogatory. This is an honest answer, which is obviously subject to supplementation when the State decides which witnesses upon which it "will rely."

Two of the referenced interrogatories, CTP Nos. 3 and 4, broke with the pattern requiring a forecast of future witnesses by asking the State to "discuss with particularity" the witnesses "leading to Your awareness" of the date or year the State first became aware the poultry industry might be a potential source of certain constituents in the IRW (CTP No. 3) and the date or year the State became aware that elevated levels of pollutants may be the cause of environmental harm in the IRW (CTP No. 4), but did <u>not</u> ask for "the names of any witnesses with responsive information." The Court should not be taken in by the Cargill Defendants' misrepresentation of their own questions and the State's response thereto.

This pattern of misrepresentation continues with the claim that CTP Interrogatories Nos. 3 and 4 seek information about the "core allegation" that the Defendants are a source of seven constituents. Brief at 10. A plain reading of these interrogatories shows they seek historical information about the date or year when the State first became aware the poultry industry "might be a potential source" of the constituents or that the constituents caused environmental harm. The Cargill Defendants inaccurately claim the State refused to provide a "particular answer" to CTP No. 3 and then referred back to No. 3 for the answer to No. 4. The State answered No. 3, but the Cargill Defendants simply do not like the answer. In No. 3 the State responded that it is not able to state the exact date or year it became aware the constituents came from poultry industry operations, but pointed out the Governor's Task Force on Animal Waste was formed in 1997, the Registered Poultry Feeding Operations Act became effective in 1998 and that it had

been negotiating with the industry since 2001. The State responded that it has not determined which witnesses it would use to support the subject claims.

The State also objected to the Cargill definition of the term "You" to include every municipality, employee, attorney, agent or other representative of the State and that these interrogatories are oppressive, overly broad, unduly burdensome and expensive to answer, especially to the extent they ask the date or year a legal entity with more than a hundred component agencies and thousands of employees first became "aware" of the requested facts.[1] The State's further objection that the interrogatories are irrelevant and not likely to lead to admissible evidence is based upon the principal of law that, for the State's common law and state law equitable theories, neither any statute of limitations nor any defense of estoppel applies to the State.[2] Thus, the date the State first became "aware" of the presence of constituents or the fact they caused environmental harm is of no consequence because the State can recover for injuries as remote in time as its evidence supports. Given its well supported objections, the State's responses to CTP Nos. 3 and 4 adequately provides the "principal or material" facts in response thereto.

---

[1] The Cargill Defendants claim that the State's objection that CTP Interrogatories Nos. 3 and 4 are overly burdensome should be overruled. Brief at 18. The burden of researching the historical facts at multiple agencies for multiple constituents clearly outweighs the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b) (2).

[2] Statute of limitations under Oklahoma law does not run against the State when it is acting, as is the case here, in its sovereign capacity to enforce a public right. See *State v. Tidmore*, 674 P.2d 14, 15 (Okla. 1983) ("We have long recognized the general rule that statutes of limitations do not operate against the state when it is acting in its sovereign capacity to enforce a public right") (citations omitted); *Oklahoma City Municipal Improvement Authority v. HTB, Inc.*, 769 P.2d 131, 134 (Okla. 1988) ("From these cases we distill the general rule that statutes of limitation shall not bar suit by any government entity acting in its sovereign capacity to vindicate public rights, and that public policy requires that every reasonable presumption favor government immunity from such limitation"). Additionally, laches and estoppel do not apply against the state acting in its sovereign capacity because of mistakes or errors of its employees. *State v. Tidmore*, 674 P.2d 14, 16 (Okla. 1983).

CTP Interrogatory No. 7 sought a description of "the trophic state of each lake or reservoir within the Illinois River Watershed for each season of the year since 1952" and all evidence and documents that relate to such trophic state and the causes for any observed eutrophication. Determining the tropic state of each lake or reservoir for four seasons for 54 years and all of the evidence and documents related thereto is a massive amount of information, and the State properly objected to the requirement of providing "all" evidence and "all" documents because it may be impossible to locate "all" the responsive information, and further objected that it was overly broad, oppressive, unduly burdensome and expensive to answer. Subject to those objections, the State offered pursuant to Rule 33(d) to produce documents, including Beneficial Use Monitoring Reports, Clean Lake Studies, and other scientific reports pertinent to trophic states of such lakes and reservoirs. The State will provide these documents in a manner consistent with the Court's ultimate resolution on the way in which Rule 33(d) documents must be produced. This is a reasonable response to an unreasonably broad interrogatory, balancing the burden and expense of production against the importance of the discovery in resolving the issues of the case. Fed. R. Civ. P. 26(b)(2). Cargill's complaint, Brief at 11, is unfounded.

Cargill next complains that the State's objections and response to Cargill Interrogatory No. 9 referred back to the Amended Complaint. Brief at 11. Interrogatory No. 9 sought the basis for the State's contention in ¶ 56 of the Complaint that the poultry industry's waste disposal practices were not "taken in conformity with federal and state laws and regulations." This two line paragraph summarized the allegations of the entire Amended Complaint that the practices sued over are illegal. The State objected to this interrogatory because responding to it is unduly burdensome and it is a contention interrogatory asking the State to essentially "state the

17

factual and legal basis for its entire lawsuit." The State pointed out that ¶ 56 merely referred to other paragraphs of the Amended Complaint which allege violations of state and federal laws and regulations. The State recognizes that, as a general matter, reference to the complaint is not a proper means to answer an interrogatory. However, in the present instance the reference to the Amended Complaint does not detract from the objection that the interrogatory calls for the factual and legal basis for the entire lawsuit. It is well established that interrogatories should not require the answering party to provide a narrative account of its case. *Hiskett*, 180 F.R.D. at 403, 404. Courts will generally find interrogatories overly broad and unduly burdensome on their face to the extent they ask for "every fact" which supports identified allegations. *Id.* A contention interrogatory requiring a narrative or explanation of the entire case is improper, and the Court should sustain the State's objection to this interrogatory. *Steil v. Humana Kansas City, Inc.* 179 F.R.D. 445, 447 (D. Kan. 2000) ("to require specifically 'each and every' fact and application of law to fact ... would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details.").

The Cargill Defendants authored repetitive and overlapping interrogatories, and now object to incorporation by reference of answers to similar interrogatories about health and environmental hazards. Brief at 11. These complaints are unfounded. Cargill Interrogatory No. 8 asked about allegations that Cargill had long known that poultry waste contains a number of constituents that can and do cause harm to the environment and pose human health hazards. In response, the State referred to its responses to Cargill Nos. 4 and 15. Cargill Interrogatory No. 12 asked about support for allegations of an imminent and substantial endangerment to health or the environment as a proximate result of the contribution of any Cargill entity. The State referred to its response to Cargill No. 15. In all of these responses, the State explained it is

investigating the relationship between the Cargill entities, and understands that Cargill created Cargill Turkey in 2004 and transferred some or all of its poultry operations to it thereafter. In its response to No. 4, incorporated in its response to No. 8, the State responded that, based on portions of *City of Tulsa v. Tyson* opinion that defendants there, including Cargill, admit they were aware in the 1990s that phosphorous presented potential problems to the watershed and the Court's finding that defendants had reason to recognize that in the usual course of [the growers] doing work in the usual manner, trespass or nuisance is likely to result, making defendants responsible. The State further noted that the *City of Tulsa* defendants admitted they were aware of environmental impact of phosphorus in poultry waste in approximately the mid-1990s and observed that there is no material difference between watershed at issue in *City of Tulsa* and the IRW. The State further noted it has long been understood that land application of wastes can lead to environmental harms which are the subject of this suit. All of this is pertinent to No. 8's questions about Cargill's knowledge that poultry waste contains constituents causing environmental problems.

In its response to No. 15, incorporated in both Nos. 8 and 12, the State responded that, as a general matter Defendants' improper waste disposal practices allow large amounts of bacteria from poultry waste to enter waters of the State. Additionally, phosphorus transported from the land application sites causes algae to grow in the waters of the IRW and it has long been understood that poultry waste contains bacteria and that nutrients in water increases levels of algae which cause the formation of disinfection byproducts in drinking water. This response is pertinent to both Nos. 8 and 12. The claims of the Cargill Defendants that the responses "contain no specific information" is simply false.

## IV. The State's responses and objections to contention interrogatories are proper.

The Cargill Defendants claim that the State objected to answering contentions interrogatories, without specifying a single such interrogatory whose response is inadequate, and without disclosing to the Court that the State did respond to each of the contention interrogatories complained about in their Brief at page 12, except Cargill No. 9, and CTP 1 and 10 to which the State objected.  The State objected to supplying more than the principal and material facts supporting its allegations, but did provide the principal and material facts, in light of the fact that discovery is ongoing and the State had, at the time it responded, only recently received the first batch of documents from the Cargill Defendants.  The State further relied upon Rule 33(c) which permits the Court to order "that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time."

While contention interrogatories are proper, within the limits of Rule 33, Courts are loathe to require a party to "write basically a portrait of their trial." *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989).  Interrogatories should not require the answering party to provide a narrative account of its case, and courts will generally find them overly broad and unduly burdensome on their face to the extent they ask for "every fact" which supports identified allegations or defenses. *Hiskett*, 180 F.R.D. at 404-05.  Interrogatories may, however, properly ask for the "principal or material" facts which support an allegation or defense. *Id.*  The State did respond with the "principal or material" facts supporting its contentions, and the Cargill Defendants do not bother to assert otherwise about any specific interrogatory.

However, the Cargill Defendants do suggest that the State's objections that certain contention interrogatories (Cargill Nos. 9, 10, and 12) are overly burdensome should be

overruled. Brief at 18. The State has already explained on pages 17-18 above why Cargill Interrogatory No. 9 (provide factual and legal basis to support allegation "poultry waste disposal practices are not, and have not been, undertaken in conformity with federal and state laws and regulations") is a burdensome and improper contention interrogatory.

In Cargill Interrogatory No. 10 the State was asked to state the factual and legal basis for allegations of CERCLA violations in Counts 1 and 2 of the Amended Complaint. This is clearly an overly burdensome contention interrogatory, and the State's objection is well founded that it should not be required to provide a narrative of two entire counts of its Amended Complaint. The State did, by way of response, refer Cargill to the answers to its Interrogatories Nos. 1-3. The response to Cargill Interrogatory No. 12, which asked for the factual and legal basis for the allegation of Count 3 of the Amended Complaint regarding violation of the Solid Waste Disposal Act, also incorporated the responses to Interrogatories Nos. 1-3.

The responses incorporated in the State's response to Cargill Nos. 10 and 12 discussed the reasons the Poultry Integrator Defendants are legally responsible for the waste of their birds kept by contract growers. Additionally, they point out that waste necessarily follows from growing of poultry, and that Cargill entities are responsible for nuisance and trespass created by waste generated by their birds. Restatement 2d of Torts § 427B. Cargill entities are responsible for nuisance and trespass created by land application of wastes which allows large quantities of phosphorus, bacterial and other pollutants to be released from application sites to travel to waters of the IRW. Litter is commonly piled in the open air without proper cover and Defendants, including Cargill have sufficient ongoing presence in the IRW to observe it. Excessive application of waste allows phosphorus to build up in the soil and it will run off in the future. Phosphorus transported to waters causes excessive algal growth, hypolimnetic anoxia and other

harm resulting in eutrophication. Bacteria from waste causes a risk to human health. Thus, the State provided the "principal or material" facts supporting its contentions. Providing more information than this would indeed be overly burdensome upon the State. *See Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998).

## V. The State agreed to revise its privilege logs before the Cargill Defendants moved to compel.

The Cargill Defendants complain about certain specific entries on the agency privilege logs prepared by the State. Brief at 14-15. The State conferred with the Cargill Defendants about their concerns over the agency privilege logs, and agreed to address those concerns, Brief at 15, before the motion to compel was filed. The State has not had the opportunity to revise its agency privilege logs but will do so, and will adequately support entries on the privilege logs from the on-site agency productions for those items set forth by the Cargill Defendants.

Two of the criticisms of the State's privilege logs by the Cargill Defendants are more "make work" projects which add nothing of substance to their understanding of the facts. First, they want a log of redactions made by the State. This is pointless and unnecessary, because Defendants saw the actual documents with tape over the social security number, personnel information or bank account numbers of citizens. This information is not relevant to the discovery requests. Additionally, pursuant to ODEQ rule, OAC 252:4-11-2(b), the identities of certain citizens making confidential complaints were also taped over. Counsel for the State advised Defendants of what type and category of information was being redacted as the productions progressed and received no objection. Nothing is gained by making a log of such redactions when examining counsel have had their hands on the actual documents themselves, and could identify the subject matter of the redaction from the context of the document.

Second, the Cargill Defendants want the privilege logs to specifically note that Dean Couch is an attorney in instances in which that information was inadvertently omitted. As Defendants well know, Dean Couch is the General Counsel of the OWRB and correcting the inadvertent omission of an attorney designation of documents he authored adds no information to what the Defendants already know. Regardless, the State will add this information to its privilege log.

## VI. The Cargill Defendants offer no basis to compel the State to withdraw privilege claims to documents requested.

In a related complaint, the Cargill Defendants assert that the State should be compelled to indicate specific bases for privilege claims in its written response to requests for production or be compelled to withdraw them. Brief at 15-16. This is an unfounded request and the Cargill Defendants know it, because Defendants agreed to accept privilege logs at the time of each agency document production.

At the time the State served its formal responses to discovery, it knew that its agencies had in their files privileged documents, but could not know exactly what those documents were until counsel conducted a privilege review before each on-site agency production. Defendants agreed to accept privilege logs "as the documents are reviewed and produced." Exhibit 6, McDaniel letter of October 9, 2006 at page 2. The "specific bases" for privilege claims are in the privilege logs, not in the State's responses themselves.

The Cargill Defendants have raised questions about specific entries on those logs. As indicated above, the State will revise those logs to properly support privilege claims questioned by the Cargill Defendants. However, because the privilege logs contain the State's "specific" assertions of privilege, there is no basis to compel the State to assert those specific bases in a different manner, or withdraw "generic" claims of privilege.

23

**VII.   The Cargill Defendants do not establish any waiver of work product and trial preparation protection.**

The Cargill Defendants suggest that the Court's order of January 5, 2007 (Docket No. 1016) somehow waived all of the State's claims of work product or trial preparation protection, and so all such claims made in response to their interrogatories have been, or should be swept away.  Brief at 16.  That Order was carefully tailored to what the Court found was an "at issue" waiver and ordered production of certain sampling data already offered for production by the State, which production was made and is continuing on a rolling basis.  .  The Cargill Defendants do not even argue or establish any basis for any other, or wider, waiver of protection by the State, and none is justified by the Court's order of January 5, 2007.  The State's remaining claims of protection are justified by Rule 26(b) (3) and (4), and Cargill attempts no showing of undue hardship or of exceptional circumstances to justify sweeping that protection aside.

**VIII.  The boilerplate assault on "General Objections" is unnecessary and unfounded.**

The Tyson Defendants conclude their brief with a scattershot criticism of the State's "general" objections.  Brief at 17.  In its various discovery responses, the State has listed general objections, a practice also engaged in by the Cargill Defendants **(Exhibit** 7) However, the State also includes specific objections as appropriate to individual discovery responses.

The complaints of the Cargill Defendants are easily resolved in three instances because, as the State has often assured them, the State has not withheld production of any information or documents based upon the general or specific objection that (1) the Cargill Defendants already have the documents, (2) the documents are available from third party sources (except referring them to County land records regarding the State's ownership of real property), or (3) a party is not required to answer contention interrogatories.  The State has responded to the balance of the

complaints found in Section D of the brief dealing with objections to overbreadth, burdensomeness and expense elsewhere in this brief.

## IX.    Conclusion

WHEREFORE, premises considered, Cargill Defendants' Motion to Compel [DKT # 1054] should be denied.

Respectfully Submitted,

W.A. Drew Edmondson OBA # 2628
Attorney General
Kelly H. Burch OBA #17067
J. Trevor Hammons OBA #20234
Assistant Attorneys General
State of Oklahoma
313 N.E. 21st St.
Oklahoma City, OK 73105
(405) 521-3921


/s/M. David Riggs
M. David Riggs OBA #7583
Joseph P. Lennart OBA #5371
Richard T. Garren OBA #3253
Douglas A. Wilson OBA #13128
Sharon K. Weaver OBA #19010
Robert A. Nance OBA #6581
D. Sharon Gentry OBA #15641
Riggs, Abney, Neal, Turpen,
  Orbison & Lewis
502 West Sixth Street
Tulsa, OK 74119
(918) 587-3161

James Randall Miller, OBA #6214
Louis Werner Bullock, OBA #1305
Miller Keffer & Bullock
222 S. Kenosha
Tulsa, Ok 74120-2421
(918) 743-4460

David P. Page, OBA #6852
Bell Legal Group
222 S. Kenosha
Tulsa, OK 74120
(918) 398-6800

Frederick C. Baker
(admitted *pro hac vice*)
Elizabeth C. Ward
(admitted *pro hac vice*)
Elizabeth Claire Xidis
(admitted *pro hac vice)*
Lee M. Heath
(admitted *pro hac vice)*
Motley Rice, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC  29465
(843) 216-9280

William H. Narwold
(admitted *pro hac vice*)
Motley Rice, LLC
20 Church Street, 17th Floor
Hartford, CT  06103
(860) 882-1676

Attorneys for the State of Oklahoma

## CERTIFICATE OF SERVICE

I hereby certify that on this  19th  day of March , 2007, the foregoing document was electronically transmitted to the following:

**Jo Nan Allen -** jonanallen@yahoo.com bacaviola@yahoo.com
**Frederick C Baker-** fbaker@motleyrice.com; mcarr@motleyrice.com; fhmorgan@motleyrice.com
**Tim Keith Baker -** tbakerlaw@sbcglobal.net
**Sherry P Bartley -** sbartley@mwsgw.com jdavis@mwsgw.com
**Michael R. Bond -** michael.bond@kutakrock.com amy.smith@kutakrock.com
**Douglas L Boyd -** dboyd31244@aol.com
**Vicki Bronson -** vbronson@cwlaw.com lphillips@cwlaw.com
**Paula M Buchwald -** pbuchwald@ryanwhaley.com
**Louis Werner Bullock -** lbullock@mkblaw.net, nhodge@mkblaw.net, bdejong@mkblaw.net
**A Michelle Campney -** campneym@wwhwlaw.com steelmana@wwhwlaw.com
**Michael Lee Carr -** hm@holdenoklahoma.com MikeCarr@HoldenOklahoma.com
**Bobby Jay Coffman -** bcoffman@loganlowry.com
**Lloyd E Cole, Jr -** colelaw@alltel.net; gloriaeubanks@alltel.net; amy_colelaw@alltel.net
**Angela Diane Cotner -** AngelaCotnerEsq@yahoo.com
**Reuben Davis -** rdavis@boonesmith.com
**John Brian DesBarres -** mrjbdb@msn.com JohnD@wcalaw.com
**W A Drew Edmondson -** fc_docket@oag.state.ok.us; drew_edmondson@oag.state.ok.us; suzy_thrash@oag.state.ok.us.
**Delmar R Ehrich -** dehrich@faegre.com; etriplett@faegre.com; qsperrazza@faegre.com

**John R Elrod** - jelrod@cwlaw.com vmorgan@cwlaw.com
**William Bernard Federman** - wfederman@aol.com; aw@federmanlaw.com;
ngb@federmanlaw.com
**Bruce Wayne Freeman** - bfreeman@cwlaw.com lclark@cwlaw.com
**Ronnie Jack Freeman** - jfreeman@grahamfreeman.com
**Richard T Garren** - rgarren@riggsabney.com dellis@riggsabney.com
**Dorothy Sharon Gentry** - sgentry@riggsabney.com jzielinski@riggsabney.com
**Robert W George** - robert.george@kutakrock.com; sue.arens@kutakrock.com;
amy.smith@kutakrock.com
**Tony Michael Graham** - tgraham@grahamfreeman.com
**James Martin Graves** - jgraves@bassettlawfirm.com
**Michael D Graves** - mgraves@hallestill.com; jspring@hallestill.com; smurphy@hallestill.com
**Jennifer Stockton Griffin** - jgriffin@lathropgage.com
**Carrie Griffith** - griffithlawoffice@yahoo.com
**John Trevor Hammons** thammons@oag.state.ok.us;  Trevor_Hammons@oag.state.ok.us;
Jean_Burnett@oag.state.ok.us
**Lee M Heath** - lheath@motleyrice.com
**Michael Todd Hembree** - hembreelaw1@aol.com traesmom_mdl@yahoo.com
**Theresa Noble Hill** - thillcourts@rhodesokla.com mnave@rhodesokla.com
**Philip D Hixon** - phixon@mcdaniel-lawfirm.com
**Mark D Hopson** - mhopson@sidley.com joraker@sidley.com
**Kelly S Hunter Burch** - fc.docket@oag.state.ok.us; kelly_burch@oag.state.ok.us;
jean_burnett@oag.state.ok.us
**Thomas Janer** - SCMJ@sbcglobal.net; tjaner@cableone.net; lanaphillips@sbcglobal.net
**Stephen L Jantzen** - sjantzen@ryanwhaley.com; mantene@ryanwhaley.com;
loelke@ryanwhaley.com
**Mackenzie Lea Hamilton Jessie** - maci.tbakerlaw@sbcglobal.net; tbakerlaw@sbcglobal.net;
macijessie@yahoo.com
**Bruce Jones** - bjones@faegre.com; dybarra@faegre.com; jintermill@faegre.com;
cdolan@faegre.com
**Jay Thomas Jorgensen** - jjorgensen@sidley.com
**Krisann C. Kleibacker Lee** - kklee@faegre.com mlokken@faegre.com
**Derek Stewart Allan Lawrence** - hm@holdenoklahoma.com;
DerekLawrence@HoldenOklahoma.com
**Raymond Thomas Lay** - rtl@kiralaw.com dianna@kiralaw.com
**Nicole Marie Longwell** - nlongwell@mcdaniel-lawfirm.com lvictor@mcdaniel-lawfirm.com
**Dara D Mann** - dmann@faegre.com kolmscheid@faegre.com
**Linda C Martin** - lmartin@dsda.com mschooling@dsda.com
**Archer Scott McDaniel** - smcdaniel@mcdaniel-lawfirm.com jwaller@mcdaniel-lawfirm.com
**Robert Park Medearis, Jr** - medearislawfirm@sbcglobal.net
**James Randall Miller** - rmiller@mkblaw.net; smilata@mkblaw.net; clagrone@mkblaw.net
**Charles Livingston Moulton** - Charles.Moulton@arkansasag.gov;
Kendra.Jones@arkansasag.gov
**Robert Allen Nance** rnance@riggsabney.com jzielinski@riggsabney.com
**William H Narwold** - bnarwold@motleyrice.com
**John Stephen Neas** - steve_neas@yahoo.com

**George W Owens** - gwo@owenslawfirmpc.com ka@owenslawfirmpc.com
**David Phillip Page -** dpage@edbelllaw.com smilata@edbelllaw.com
**Michael Andrew Pollard -** mpollard@boonesmith.com kmiller@boonesmith.com
**Marcus N Ratcliff -** mratcliff@lswsl.com sshanks@lswsl.com
**Robert Paul Redemann -** rredemann@pmrlaw.net scouch@pmrlaw.net
**Melvin David Riggs -** driggs@riggsabney.com jsummerlin@riggsabney.com
**Randall Eugene Rose -** rer@owenslawfirmpc.com ka@owenslawfirmpc.com
**Patrick Michael Ryan -** pryan@ryanwhaley.com; jmickle@ryanwhaley.com; amcpherson@ryanwhaley.com
**Laura E Samuelson -** lsamuelson@lswsl.com lsamuelson@gmail.com
**Robert E Sanders -** rsanders@youngwilliams.com
**David Charles Senger -** dsenger@pmrlaw.net; scouch@pmrlaw.net; ntorres@pmrlaw.net
**Jennifer Faith Sherrill -** jfs@federmanlaw.com; law@federmanlaw.com; ngb@federmanlaw.com
**Robert David Singletary -** fc_docket@oag.state.ok.us; robert_singletary@oag.state.ok.us; jean_burnett@oag.state.ok.us
**Michelle B Skeens -** hm@holdenokla.com mskeens@holdenokla.com
**William Francis Smith -** bsmith@grahamfreeman.com
**Monte W Strout -** strout@xtremeinet.net
**Erin Walker Thompson -** Erin.Thompson@kutakrock.com
**Colin Hampton Tucker -** chtucker@rhodesokla.com scottom@rhodesokla.com
**John H Tucker -** jtuckercourts@rhodesokla.com mbryce@rhodesokla.com
**Kenneth Edward Wagner -** kwagner@lswsl.com sshanks@lswsl.com
**Elizabeth C Ward -** lward@motleyrice.com
**Sharon K Weaver -** sweaver@riggsabney.com lpearson@riggsabney.com
**Timothy K Webster -** twebster@sidley.com jwedeking@sidley.com
**Terry Wayen West -** terry@thewestlawfirm.com
**Dale Kenyon Williams, Jr -** kwilliams@hallestill.com; jspring@hallestill.com; smurphy@hallestill.com
**Edwin Stephen Williams -** steve.williams@youngwilliams.com
**Douglas Allen Wilson -** Doug_Wilson@riggsabney.com; jsummerlin@riggsabney.com
**J Ron Wright -** ron@wsfw-ok.com susan@wsfw-ok.com
**Elizabeth Claire Xidis -** cxidis@motleyrice.com
**Lawrence W Zeringue -** lzeringue@pmrlaw.net scouch@pmrlaw.net

I hereby certify that on this  19th  day of  March , 2007, I served the foregoing document by U.S. Postal Service on the following:

**Jim Bagby**
RR 2, Box 1711
Westville, OK  74965

**Gordon W. Clinton**
**Susann Clinton**
23605 S Goodnight Ln
Welling, OK 74471

**Eugene Dill**
P O Box 46
Cookson, OK  74424

**Marjorie Garman**
5116 Highway 10
Tahlequah, OK  74464

**James C Geiger**
Address Unknown

**Thomas C Green**
Sidley Austin Brown & Wood LLP
1501 K St NW
Washington, DC  20005

**G Craig Heffington**
20144 W Sixshooter Rd
Cookson, OK  74427

**Cherrie House**
**William House**
P O Box 1097
Stilwell, OK  74960

**John E. & Virginia W. Adair Family Trust**
Rt 2 Box 1160
Stilwell, OK 74960

**Dorothy Gene Lamb**
**James Lamb**
Route 1, Box 253
Gore, OK  74435

**Jerry M Maddux**
Selby Connor Maddux Janer
P O Box Z
Bartlesville, OK  74005-5025

**Doris Mares**
P O Box 46
Cookson, Ok 74424

**Donna S Parker**
**Richard E. Parker**
34996 S 502 Rd
Park Hill, OK 74451

**C Miles Tolbert**
Secretary Of The Environment
State Of Oklahoma
3800 North Classen
Oklahoma City, OK 73118

**Robin L. Wofford**
Rt 2, Box 370
Watts, OK 74964


/s/M. David Riggs
M. David Riggs