**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

STATE OF OKLAHOMA,         )
                                       )

                  Plaintiff,   )
                                       )

v.                                   )     Case No.  05-cv-329-GKF(SAJ)
                                       )

TYSON FOODS, INC., et al.,   )
                                       )

              Defendants.  )

**STATE OF OKLAHOMA'S RESPONSE TO "MOTION OF TYSON FOODS,
INC., TYSON POULTRY, INC., TYSON CHICKEN, INC., COBB-VANTRESS,
INC., SIMMONS FOODS, INC., WILLOW BROOK FOODS, INC., CAL-MAINE
FOODS, INC., CAL-MAINE FARMS, INC., GEORGE'S, INC., GEORGE'S
FARMS, INC., PETERSON FARMS, INC., CARGILL TURKEY PRODUCTION,
LLC, AND CARGILL, INC. FOR PARTIAL JUDGMENT AS A MATTER OF
LAW BASED ON PLAINTIFFS' LACK OF STANDING"**

# TABLE OF CONTENTS

I.      Background ........................................................................................................2

II.     Legal Standard ................................................................................................6

III.    Argument ..........................................................................................................7

        A.      The State has legally protected interests in the natural resources
                located in Oklahoma ..........................................................................7

                1.      The State has legally protected quasi-sovereign interest in <u>all</u> natural
                        resources located in Oklahoma ..................................................7

                2.      For purposes of CERCLA, the State has a legally protected interest in
                        <u>all</u> natural resources located in Oklahoma ....................................9

                3.      The State has legally protected property interests in certain natural
                        resources located in Oklahoma ..................................................9

                4.      The State has a legally protected interest in natural resources contained
                        within federal properties located within Oklahoma....................................12

        B.      The State's legally protected interests in natural resources located in the
                Oklahoma portion of the Illinois River Watershed give it standing to maintain
                its CERCLE natural resource damages claim, its state law nuisance claim,
                its trespass claim, and its unjust enrichment / restitution / disgorgement claim....13

                1.      The State's legally protected interests in natural resources located in
                        the Oklahoma portion of the Illinois River Watershed give the State
                        standing to maintain its CERCLA natural resource damages claim..........13

                2.      The State's legally protected interests in the natural resources located
                        in the Oklahoma portion of the Illinois River Watershed give the
                        State standing to maintain its state law nuisance claim .....................15

                3.      The State's legally protected property interest in the natural resources
                        located in the Oklahoma portion of the Illinois River Watershed gives
                        the State standing to maintain its trespass claim.............................17

                4.      The State's legally protected interests in natural resources located
                        in the Oklahoma portion of the Illinois River Watershed gives the
                        State standing to maintain its unjust enrichment / restitution /
                        disgorgement claim.........................................................................19

      C.     Defendants misunderstand the role of the term "facility" in the context of the State's CERCLA natural resource damages claim ...……………………………….20

V.     Conclusion ........................................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982)......................8

*Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357 (10th Cir. 1989)..............6

*City of Tulsa v. Commissioners of Land Office*, 101 P.2d 246 (Okla. 1940).........................11

*City of Stillwater v. Oklahoma Water Resources Board*, 524 P.2d 938 (Okla.
    App. 1974)..........................................................................................10, 17, 18

*Coeur D'Alene Tribe v. Asarco, Inc.*, 280 F.Supp.2d 1094 (D. Idaho 2003).........................12

*Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center*,
    356 F.Supp. 500 (E.D. Pa. 1973)....................................................................8

*Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728 (Tex. Ct. App. -- Texarkana 2003)..............19

*Depuy v. Oklahoma Water Resources Board*, 611 P.2d 228 (Okla. 1980)...........................10

*Fairlawn Cemetery Association v. First Presbyterian Church*, 496 P.2d 1185 (Okla. 1972)......18

*Hawaii v. Standard Oil Co. of California*, 405 U.S. 251 (1972)....................................7, 8

*Hughes v. Oklahoma*, 441 U.S. 322 (1979).............................................................8

*Illinois v. City of Milwaukee*, 406 U.S. 91 (1972).....................................................6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................7

*Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522 (10th Cir. 1992)........................................6

*New Mexico v. General Electric, Inc.*, 335 F.Supp.2d 1185 (D.N.M. 2004),
    *aff'd* 467 F.3d 1223 (10th Cir. 2006).............................................................18

*Ohio v. Wyandotte Chemicals Corp.*, 401 U.S. 493 (1971)...........................................6

*Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy
    District*, 464 P.2d 748 (Okla. 1969) ...............................................................10

*Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066 (9th Cir. 2006)............................20

*People v. Shirokow*, 605 P.2d 859 (Cal. 1980).......................................................10

*Ronzio v. Denver R.G.W.R.*, 116 F.2d 604 (10th Cir. 1940)...........................................10

*Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464 (10th Cir. 1993)........................7, 8

*Scharmer v. Carrollton Manufacturing Co.*, 525 F.2d 95 (6th Cir. 1975)...........................19

*Society of Separationists v. Pleasant Grove City*, 416 F.3d 1239 (10th Cir. 2005)..................6

*Spiva v. State*, 584 P.2d 1355 (Okla. Crim. App. 1978)..............................................8

*State v. Nolegs*, 139 P. 943 (Okla. 1914)...........................................................11

*State ex rel. Pollution Control Coordinating Board v. Kerr-McGee Corp.*, 619
    P.2d 858 (Okla. 1980).........................................................................8

*State of Georgia v. Tennessee Copper Company*, 206 U.S. 230 (1907).............3, 6, 7, 12, 15, 16

*State of Maine v. M/V Tamano*, 357 F.Supp. 1097 (D. Me. 1973).....................................9

*Texas v. Pankey*, 441 F.2d 236 (10th Cir. 1971).....................................................6

*United States  v. Asarco, Inc.*, 2005 WL 5124913 (D. Idaho, Aug. 9, 2005).........................12

*United States v. Township of Brighton*, 153 F.3d 307 (6th Cir. 1998)...............................20

*Van Deelen v. City of Eudora*, 53 F. Supp. 2d 1223 (D. Kan. 1999)..................................6

*Woodring v. Swieter*, 637 S.E.2d 269 (N.C. Ct. App. 2006) ........................................19

*Young v. Masci*, 289 U.S. 253 (1933)................................................................6

### Constitutional Provisions, Statutes & Rules

Okla. Const., Art. 26, § 2 ......................................................................11, 15

2 Okla. Stat. § 2-18.1(A)............................................................................16

27A Okla. Stat. § 1-2-101(A)(4)......................................................................9

27A Okla. Stat. § 2-6-105(A)........................................................................16

60 Okla. Stat. § 60(A)...............................................................10, 11, 15, 17, 18

64 Okla. Stat. § 290.............................................................................11, 15

74 Okla. Stat. § 2212............................................................................11, 15

82 Okla. Stat. § 1461(I)(10)...............................................................................11, 15

42 U.S.C. § 9601(9)....................................................................................20

42 U.S.C. § 9601(16)................................................................................3, 9

42 U.S.C. § 9607(f)(1)........................................................................9, 12, 14, 15

40 C.F.R. 300.605........................................................................................9

Fed. R. Civ. P. 12(b)(6)................................................................................6

Fed. R. Civ. P. 12(c) ..................................................................................2, 6

Fed. R. Civ. P. 12(g).....................................................................................2

Fed. R. Civ. P. 56 ........................................................................................2

LCvR 56.1(a)...............................................................................................2

## Treatises and Other Materials

75 Am. Jur. 2d Trespass § 38..........................................................................18

27 Federal Procedure, Lawyers Edition, § 62:116 .....................................................1

12 Moore's Federal Practice, ¶ 350.02[3] at 3-20 (1993)...............................................8

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 1357 (2d ed. 1990)...............................................................................6

Dan Turlock, Law of Water Rights and Resources, § 5:49 ..........................................10

COMES NOW Plaintiff, the State of Oklahoma, ex rel. W.A. Drew Edmondson, in his capacity as Attorney General of the State of Oklahoma, and Oklahoma Secretary of the Environment, C. Miles Tolbert, in his capacity as the Trustee for Natural Resources for the State of Oklahoma under CERCLA (the "State"), and responds to "Motion of Tyson Foods, Inc., Tyson Poultry, Inc., Tyson Chicken, Inc., Cobb-Vantress, Inc., Simmons Foods, Inc., Willow Brook Foods, Inc., Cal-Maine Foods, Inc., Cal-Maine Farms, Inc., George's, Inc., George's Farms, Inc., Peterson Farms, Inc., Cargill Turkey Production, LLC, and Cargill, Inc. for Partial Judgment as a Matter of Law Based on Plaintiffs' [sic] Lack of Standing" [DKT #1076] ("Defendants' Motion")[1] as follows:

Defendants contend that the State lacks standing to pursue the following four causes of action asserted by the State in its First Amended Complaint ("FAC"): (1) its Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") natural resource damages claim, FAC, Count 2; (2) its state law nuisance claim, FAC, Count 4; (3) its state law trespass claim, FAC, Count 6; and (4) its claim for unjust enrichment / restitution / disgorgement, FAC, Count 10.  Defendants' Motion must fail for the following reasons:

     1.    Defendants' Motion is premised on an erroneous understanding of what natural resources the State has a legally protected interest in.  In addition to natural resources in which the State has a property interest, the State has "an interest independent of and behind the titles of its citizens, in all the earth and air within its domain."  Both of these legally protected interests give the State standing.

---

[1]    While Defendants' Motion purports to be on behalf of all of these parties, only counsel for Tyson Foods, Inc., Tyson Poultry, Inc., Tyson Chicken, Inc., and Cobb-Vantress, Inc. appear on the signature page, and there is nothing on the signature page to indicate these counsel have authority to submit this motion on behalf of the other Defendants. *See, e.g.,* 27 Federal Procedure, Lawyers Edition, § 62:116 ("A pleading which purports to be filed on behalf of more than one party to a matter must be signed by each party or, if the party is represented, by the party's attorney").

2.     Defendants' Motion is premised on an erroneous understanding of what
natural resources the State is seeking relief as to. As is clear in the FAC, the State is
seeking relief to address the injured natural resources located within the <u>Oklahoma
portion</u> of the Illinois River Watershed. The State is <u>not</u> seeking relief to address injured
natural resources located within the Arkansas portion of the Illinois River Watershed.

Once these two points are correctly understood, it becomes clear that the State indeed has

standing to assert the causes of action it has asserted and to seek the relief -- both monetary and

injunctive / equitable -- it has requested. Accordingly, Defendants' Motion should be denied in

its entirety.[2]

## I.     Background

Poultry waste has been deposited, stored, disposed of or placed, or otherwise come to be

located, throughout the lands, waters and sediments of the Illinois River Watershed due to

poultry growing operations, poultry waste handling operations, and poultry waste disposal

activities (including, but not limited to, the spreading of poultry waste on the land) occurring

within the Illinois River Watershed, and due to run-off, discharge and leaching of poultry waste

from these operations and activities. This poultry waste is causing harm to natural resources

located in the Oklahoma portion of the Illinois River Watershed. Defendants are legally

responsible for this harm to natural resources located in the Oklahoma portion of the Illinois

River Watershed, and the State has brought suit against Defendants to redress this harm.

From the very first sentence in the Introduction of Defendants' Motion, however,

Defendants have severely mischaracterized the claims the State is asserting in the FAC.

Contrary to Defendants' suggestion, the State is not asserting claims for environmental injuries

---

[2]     This is Defendants' third Fed. R. Civ. P. 12(c) motion (thus far). Defendants
should not be permitted to file any further Rule 12(c) motions. Just as a movant is entitled to
only one Rule 12(b)(6) motion to dismiss, *see* Fed. R. Civ. P. 12(g), and only one Rule 56
motion for summary judgment, *see* LCvR 56.1(a), so too should Defendants be limited to
one (and certainly no more than three) Rule 12(c) motion. Such a rule makes sense as a matter
of judicial economy and to avoid delay.

"to all the property and natural resources located in the one-million-plus acre Illinois River

Watershed" caused by Defendants' misconduct. *See* Defendants' Motion, p. 1 (emphasis added).

Nor is the State "claim[ing] it is entitled to damages for alleged injury to property wholly within

the State of Arkansas." *See* Defendants' Motion, p. 5. The fact of the matter is that the State is

only seeking relief to address the injury and damages to injured natural resources[3] located within

the Oklahoma portion of the Illinois River Watershed. This fact is clearly reflected in the FAC.

For example, paragraph 5 of the FAC plainly spells out the natural resources in which the

State has a legally protected interest: "The State of Oklahoma, without limitation, has an interest

in the beds of navigable rivers to their high water mark, as well as all waters running in definite

streams. Additionally, the State of Oklahoma holds all natural resources, including the biota,

land, air and waters located within the political boundaries of Oklahoma in trust on behalf of and

for the benefit of the public." *See also* FAC, ¶ 79 (State's interest in natural resources in Illinois

River Watershed for purposes of CERCLA is in those "in, belonging to, managed by, held in

trust by, appertaining to or otherwise controlled by the State of Oklahoma" and that State's power

to assess damages to natural resources for purposes of CERCLA through its CERCLA trustee,

the Oklahoma Secretary of the Environment, is as to "those natural resources") (emphasis

---

[3]        The term "natural resources" is a very broad term meaning land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources in, belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the State. *See, e.g., State of Georgia v. Tennessee Copper Company*, 206 U.S. 230, 237 (1907) & 42 U.S.C. § 9601(16).    Defendants' Motion, however, uses the phrase "property and natural resources." Defendants do not define this phrase, and it is unclear what, if any, distinction Defendants are trying to make through their use of this phrase. For example, land is a natural resource; land is also property. The fact of the matter, as explained below, is that the State has a quasi-sovereign and / or trust interest in all the natural resources of the State and, additionally, has a property interest in a number of these same natural resources as well. Accordingly, in this brief the State will simply use the term "natural resources" and, where appropriate, identify where the term is being used to refer to solely natural resources in which the State holds a property interest.

3

added).  Nowhere in the FAC does the State assert a legally protected interest in natural resources located within the Arkansas portion of the Illinois River Watershed.

The FAC then proceeds to make clear that the State is seeking relief within the context of these legally protected interests.  For example, with respect to the State's CERCLA natural resource damages count (FAC, Count 2), the FAC plainly states that the State is seeking relief only as to natural resources located in the Oklahoma portion of the Illinois River Watershed. *See, e.g.,* FAC, ¶ 85 ("As a result of the release of hazardous substances by the Poultry Integrator Defendants into the Illinois River Watershed, including the lands, waters and sediments therein, there has been injury to, destruction of, and loss of natural resources in the Illinois River Watershed . . . for which the Oklahoma Secretary of the Environment is trustee on behalf of the State of Oklahoma") (emphasis added); FAC, ¶ 88 (Defendants' liability to State for damages under its CERCLA natural resource damages count is limited to "these natural resources in the Illinois River Watershed") (emphasis added).

Likewise, with respect to the State's state law nuisance claim (FAC, Count 4), it is clear that the State is seeking relief within the context of the legally protected interests outlined in paragraph 5 of the FAC.  *See, e.g.,* FAC, ¶ 99 ("As a result of their poultry waste disposal practices, the Poultry Integrator Defendants have intentionally caused an unreasonable invasion of, interference with and impairment of the State of Oklahoma's and the public's beneficial use and enjoyment of the Illinois River Watershed, including the biota, lands, waters and sediments therein . . .") (emphasis added).

And with respect to the State's trespass claim (FAC, Count 6), it is similarly clear that the State is seeking relief within the context of the applicable legally protected interests outlined in paragraph 5 of the FAC.  *See, e.g.,* FAC, ¶ 120 ("The Poultry Integrator Defendants' poultry

waste disposal practices have resulted in an actual and physical invasion of and interference with the State of Oklahoma's property interests in the Illinois River Watershed, including the biota, lands, waters and sediments therein. . .) (emphasis added); *see also* FAC, ¶¶ 121 ("the State of Oklahoma's property interests in the Illinois River Watershed") & 122 ("the State of Oklahoma's property interests in the Illinois River Watershed").

Defendants implicitly concede that the State has standing to sue for injury to a natural resource to the extent it has a legally protected interest in the natural resource. *See, e.g.,* Defendants' Motion, p. 6 ("Without an ownership or trusteeship interest over each property and natural resource, Oklahoma could not have suffered an injury from the alleged contamination of the Illinois River Watershed and, therefore, lacks standing for many of its claims and much of the relief it seeks"), p. 9 ("Oklahoma cannot, as a matter of law, maintain any claim for alleged harm to the land, water, and other resources within the Illinois River Watershed which it does not own or hold in trust"), p. 18 ("To the extent that Oklahoma is neither an owner nor a trustee, it has suffered no injury and therefore, lacks standing"). As demonstrated below, the State does have a legally protected interest in all the natural resources located in Oklahoma. Also as demonstrated below, the State has property interests (including ownership interests) in certain natural resources located in Oklahoma. The State has brought suit for injury to these legally protected interests in the Illinois River Watershed, seeking damages, injunctive and equitable relief, and declaratory relief.[4] Thus, the State has standing.

---

[4]    Defendants' Motion appears to focus on the State's claims for damages relief, although the State is also seeking injunctive / equitable relief for a number of its claims. As is clear in the FAC, the State is seeking injunctive / equitable relief to address injuries to natural resources located within the Oklahoma portion of the Illinois River Watershed. It is well established that the State has standing to request -- and the State intends to request -- that the Court enter an order enjoining and / or abating tortious conduct occuring in Arkansas that is causing injuries to natural resources located within the Oklahoma portion of the Illinois River

## II.    Legal Standard

Defendants have brought this motion pursuant to Fed. R. Civ. P. 12(c).  Defendants'

Motion, p. 1.  Motions brought pursuant to Fed. R. Civ. P. 12(c) seeking the dismissal of claims

are viewed with disfavor.  "Dismissal is a harsh remedy to be used cautiously so as to promote

the liberal rules of pleading while protecting the interests of justice."  *Van Deelen v. City of*

*Eudora*, 53 F. Supp. 2d 1223, 1227 (D. Kan. 1999) (citing *Cayman Exploration Corp. v. United*

*Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989)).  Motions for judgment on the pleadings

are treated as motions to dismiss under Fed. R. Civ. P. 12(b)(6), *Mock v. T.G. & Y. Stores Co.*,

971 F.2d 522, 528 (10th Cir. 1992), which are viewed with disfavor and are therefore rarely

granted.  5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d

ed. 1990).  The standard by which the Tenth Circuit will uphold a grant of judgment on the

pleadings is a strict one.  Specifically, the Tenth Circuit will uphold such a grant "only when it

appears that the plaintiff can prove no set of facts in support of the claims that would entitle the

plaintiff to relief."  *Society of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th

Cir. 2005) (internal quotation marks omitted) (reversing district court's grant of judgment on the

pleadings based on undeveloped record).

The concept of standing contains three elements:

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal
> connection between the injury and the conduct complained of -- the injury has to

---

Watershed.  *See, e.g., Young v. Masci*, 289 U.S. 253, 258-59 (1933) ("The cases are many in
which a person acting outside the state may be held responsible according to the law of the state
for injurious consequences within it").  Indeed, there is nothing particularly novel about the
State's attempt to address pollution arising in one state and causing harm in another.  *See, e.g.,*
*Illinois v. City of Milwaukee*, 406 U.S. 91, 107-08 (1972); *Ohio v. Wyandotte Chemicals Corp.*,
401 U.S. 493, 496 (1971); *State of Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237-38;
*Texas v. Pankey*, 441 F.2d 236, 240 (10th Cir. 1971).

be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (citations omitted). Defendants have focused their arguments on the first element -- namely, whether the State has a legally protected interest.[5] In their motion, Defendants do not challenge the existence of the "traceability" or "redressability" elements of standing.

## III.    Argument

### A.    The State has legally protected interests in the natural resources located in Oklahoma

#### 1.    The State has a legally protected quasi-sovereign interest in <u>all</u> natural resources located in Oklahoma

The State has legally protected interests in <u>all</u> the biota, land and waters located in Oklahoma. These legally protected interests are not dependent on ownership or title (although the State does, indeed, have property interests in many of these resources). As explained by the United States Supreme Court:

> This is a suit by a state for an injury to it in its capacity of quasi-sovereign. In that capacity <u>the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain</u>. It has the last word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air.

*State of Georgia v. Tennessee Copper Company*, 206 U.S. 230, 237 (1907) (emphasis added).

"The Supreme Court has recognized the 'right of a State to sue as *parens patriae* to prevent or

---

[5]    Contrary to Defendants' suggestion, as demonstrated below, ownership and trusteeship are not the only legally protected interests that give rise to standing. For example, injury to quasi-sovereign interests are legally protected interests that give rise to standing. *See Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1469 (10th Cir. 1993) (quoting *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 258 (1972)). Similarly, injury to the State's property interests (including ownership interests) in its natural resources are legally protected interests that give rise to standing.

repair harm to its 'quasi-sovereign' interests.'" *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1469 (10th Cir. 1993) (quoting *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 258 (1972)). "Although the Supreme Court has not expressly defined what is a 'quasi-sovereign' interest, it is clear that a state may sue to protect its citizens against 'the pollution of the air over its territory; or of interstate waters in which the state has rights.'" *Satsky*, 7 F.3d at 1469 (quoting 12 Moore's Federal Practice, ¶ 350.02[3] at 3-20 (1993)); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) (a state "has a quasi-sovereign interest in the health and well-being -- both physical and economic -- of its residents in general"); *Spiva v. State*, 584 P.2d 1355, 1359 (Okla. Crim. App. 1978) ("That the State has a valid interest in matters which affect the public health, safety and general welfare is undisputed . . . "); *State ex rel. Pollution Control Coordinating Board v. Kerr-McGee Corp.*, 619 P.2d 858, 861 (Okla. 1980) ("the state's common-law right to sue for wrongful destruction of wildlife is not dependent on ownership but rather on the sovereign power to regulate, preserve and protect wild animals and fish for the common enjoyment of its citizenry"); *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979) ("We consider the State's interests in conservation and protection of wild animals as legitimate local purposes similar to the States' interests in protecting the health and safety of their citizens").

When suing in its quasi-sovereign or *parens patriae* capacity, the State may seek not only injunctive / equitable relief, *see, e.g., Alfred L. Snapp & Son*, 458 U.S. at 602-606 (discussing cases where states have sued to enjoin public nuisances), but also monetary damages. *See, e.g., Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center*, 356 F.Supp. 500, 505 (E.D. Pa. 1973) ("A state may now sue as *parens patriae* and recover damages for injuries to its 'quasi-sovereign' interests, including harm to the health and welfare of its

inhabitants"); *State of Maine v. M/V Tamano*, 357 F.Supp. 1097, 1102 (D. Me. 1973) ("If Maine

can establish damage to her quasi-sovereign interests in her coastal waters and marine life,

independent of whatever individual damages may have been sustained by her citizens, there is no

apparent reason why the present action to recover such damage cannot be maintained").

> **2.    For purposes of CERCLA, the State has a legally protected interest in <u>all</u> natural resources located in Oklahoma**

Similarly, for purposes of CERCLA, the State has a legally protected interest in <u>all</u>

natural resources[6] located in Oklahoma.  CERCLA specifically provides:

> In the case of an injury to, destruction of, or loss of natural resources . . . liability shall be to the United States Government <u>and to any State for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State</u> . . . .

42 U.S.C. § 9607(f)(1) (emphasis added).[7]  Claims for injury and damage to a state's natural

resources may be brought by "the authorized representative of any State."  42 U.S.C. §

9607(f)(1).  The Oklahoma Secretary of the Environment is the authorized representative of

Oklahoma for purposes of CERCLA.  *See* 27A Okla. Stat. § 1-2-101(A)(4).

> **3.    The State has legally protected property interests in certain natural resources located in Oklahoma**

In addition to its quasi-sovereign interest -- its "interest independent of and behind the

titles of its citizens, in all the earth and air within its domain" -- the State holds property interests

---

[6]    "Natural resources" are defined under CERCLA as "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States . . . any State or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe."  42 U.S.C. § 9601(16).

[7]    *See also* 40 C.F.R. 300.605 ("State trustees shall act on behalf of the public as trustees <u>for natural resources, including their supporting ecosystems, within the boundary of a state or belonging to, managed by, controlled by, or appertaining to such state</u>") (emphasis added).

(including ownership interests) in many of the natural resources located in Oklahoma. For instance, "water running in a definite stream, formed by nature over or under the surface" is "public water and is subject to appropriation for the benefit and welfare of the people of the state." *See* 60 Okla. Stat. § 60(A). The term "water running in a definite stream" includes lakes. *See Depuy v. Oklahoma Water Resources Board*, 611 P.2d 228, 231-32 (Okla. 1980). "Public water" is the State's water unless and until it is actually appropriated and used by another. *See, e.g., City of Stillwater v. Oklahoma Water Resources Board*, 524 P.2d 938, 944 (Okla. App. 1974) ("Nor do we find anything amiss in characterizing the lake contents as 'public' water, hence state owned"); *id.* (". . . the state as original owner still owns the water and will continue to do so until it transfers it to some other person or entity"); *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District,* 464 P.2d 748, 753 (Okla. 1969) ("Definite nonnavigable streams are public waters. The State may either reserve to itself or grant to others its right to utilize these streams for beneficial purposes"). Public water "is subject to appropriation for the benefit and welfare of the people of the state, as provided by law." 60 Okla. Stat. § 60(A). Notably, however, "[b]oth riparian and appropriative rights are usufructuary only and confer no right of private ownership in the watercourse." *People v. Shirokow*, 605 P.2d 859, 864 (Cal. 1980). As explained by the Tenth Circuit, "[a] water right is a usufruct in a stream, consisting in the right to have the water flow so that some portion of it . . . may be reduced to possession and be made the private property of an individual." *Ronzio v. Denver R.G.W.R.*, 116 F.2d 604, 606 (10th Cir. 1940). In fact, significantly, "[a]n appropriation is not complete until the water is put to beneficial use." Dan Turlock, Law of Water Rights and Resources, § 5:49.

The State also owns the beds of navigable streams in Oklahoma, the ownership extending up to the high-water mark of such streams. *City of Tulsa v. Commissioners of Land Office*, 101 P.2d 246, 248 (Okla. 1940); *State v. Nolegs*, 139 P. 943 (Okla. 1914); 64 Okla. Stat. § 290 (all lands between high water mark of streams of two chains or over are declared the property of the State of Oklahoma).

The State also owns the groundwater where it owns the land above it. *See* 60 Okla. Stat. § 60(A) ("The owner of the land owns water standing thereon, or flowing over or under its surface but not forming a definite stream").

And, of course, the State owns specific parcels of land. *See, e.g.,* Okla. Const., Art. 26, § 2 ("The [Wildlife] Commission may acquire by purchase, gift, grants-in-aid from the Federal Government, or otherwise, all property necessary, useful or convenient for its use in carrying out the objects and purposes of this Article"); 82 Okla. Stat. § 1461(I)(10) ("Each Scenic Rivers Commission, in addition, shall have the following powers and responsibilities: . . . Own and control public access points to the scenic river area, issue use permits, and purchase easements and fee title to land within the Commission's operating area. Legal title to property shall be held in the name of the individual Scenic Rivers Commission as an agency of the State of Oklahoma"); 74 Okla. Stat. § 2212 ("The [Oklahoma Tourism and Recreation] Commission shall have the authority to exercise the following powers, rights and privileges related to state parks: (1) Have the exclusive possession and control of, and to operate and maintain for the benefit of the people of the State of Oklahoma all state parks and all lands and other properties now or hereafter owned or leased by the state or Commission for park or recreational purposes"). It therefore cannot be disputed that the State has a legally protected interest in natural resources owned by the State.

### 4. The State has a legally protected interest in natural resources contained within federal properties located within Oklahoma

Contrary to Defendants' suggestion, Defendants' Motion pp. 10-11, the State does have a quasi-sovereign interest in all natural resources on federal properties located within Oklahoma. *See Tennessee Copper*, 206 U.S. at 237 ("the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain").  Further, as noted above, for purposes of CERCLA the State likewise has a legally protected interest in all natural resources located in Oklahoma. *See* 42 U.S.C. § 9607(f)(1).[8]  Significantly, the fact that the federal government might also have a legally protected interest in certain of the same natural resources does not affect the ability of a state to assert its claim for CERCLA natural resource damages.  In fact, CERCLA contemplates the existence of multiple trustees as to a given resource.  As explained in *Coeur D'Alene Tribe v. Asarco, Inc.*, 280 F.Supp.2d 1094, 1115 (D. Idaho 2003), "trusteeship [under CERCLA] is not an all or nothing concept.  In fact, in many instances, co-trustees are the norm and not the exception."  The *Coeur D'Alene* court went on to explain in a subsequent opinion that: "[A] co-trustee acting individually or collectively with other co-trustees may go after the responsible party or parties for the full amount of the [natural resource] damage, less any amount that has already been paid as a result of a settlement to another trustee by a responsible party." *United States v. Asarco, Inc.*, 2005 WL 5124913, *5 (D. Idaho, Aug. 9, 2005) (emphasis added).  Similar reasoning would apply to state law claims.  Simply put, the

---

[8]         Strangely, in support of their argument that the State does not have a legally protected interest in natural resources on federal properties Defendants point to the Wedington Division of the Ozark National Forest.  Defendants' Motion, pp. 10-11.  The Wedington Division of the Ozark National Forest is located wholly in Arkansas.  As noted above, the State is only seeking relief to address the injury and damages to the natural resources located within the Oklahoma portion of the Illinois River Watershed.

State has standing to seek relief with respect to <u>all</u> natural resources in Oklahoma, including those natural resources on federal properties located in Oklahoma.

> **B.    The State's legally protected interests in natural resources located in the Oklahoma portion of the Illinois River Watershed give it standing to maintain its CERCLA natural resource damages claim, its state law nuisance claim, its trespass claim, and its unjust enrichment / restitution / disgorgement claim**
>
> > **1.    The State's legally protected interests in natural resources located in the Oklahoma portion of the Illinois River Watershed give the State standing to maintain its CERCLA natural resource damages claim**

Defendants have moved to dismiss the State's CERCLA natural resource damages claim, FAC, Count 2, solely on the basis that "Oklahoma is not the trustee over lands and natural resources that belong to the State of Arkansas." Defendants' Motion, p. 12. Defendants' motion is based on a wholly erroneous premise, since nowhere in the State's CERCLA natural resource damages claim (or anywhere else in the FAC, for that matter) does the State assert that it is the trustee over lands and natural resources that belong to the State of Arkansas. Further, nowhere in the State's CERCLA natural resource damages claim (or anywhere else in the FAC, for that matter) does the State assert a claim for injuries and damages that Defendants have caused to natural resources located within the State of Arkansas. The State's CERCLA natural resource damages count is premised entirely on injuries and damages that Defendants have caused to natural resources located within the Oklahoma portion of the Illinois River Watershed.

An examination of the allegations in Count 2 of the FAC confirms that Defendants have misstated the scope of the State's CERCLA natural resource damages count. For example, paragraph 79 of the FAC clearly states that the scope of the State's interest in natural resources for purposes of CERCLA is limited to those natural resources "in, belonging to, managed by, held in trust by, appertaining to or otherwise controlled <u>by the State of Oklahoma</u>" and that the

13

State's power to assess damages to natural resources for purposes of CERCLA through its CERCLA trustee, the Oklahoma Secretary of the Environment, is limited to "those natural resources."

Paragraph 85 of the FAC, when read in conjunction with paragraph 79, underscores the fact that the State is complaining only of injury to those natural resources located within Oklahoma: "As a result of the release of hazardous substances by the Poultry Integrator Defendants into the Illinois River Watershed, including the lands, waters and sediments therein, there has been injury to, destruction of, and loss of natural resources in the Illinois River Watershed, including the land, fish, wildlife, biota, air, water, ground water, drinking water supplies and all other such resources therein, for which the Oklahoma Secretary of the Environment is trustee on behalf of the State of Oklahoma."[9] *See also* FAC, ¶¶ 86 & 87.

Finally, paragraph 88 of the FAC makes clear that Defendants' liability to the State for damages under its CERCLA natural resource damages count is limited to "these natural resources in the Illinois River Watershed" -- *i.e.,* the natural resources within the Oklahoma portion of the Illinois River Watershed.

Simply put, in Count 2 of the FAC the State has alleged -- and as a matter of law the State has -- legally protected interests in the natural resources in, belonging to, managed by, held in trust by, appertaining to or otherwise controlled by Oklahoma in the Illinois River Watershed.

---

[9]     For purposes of CERCLA, it bears repeating that the State has a legally protected interest in all natural resources located in Oklahoma.  CERCLA specifically provides:

> In the case of an injury to, destruction of, or loss of natural resources . . . liability shall be to the United States Government and to any State for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State . . . .

42 U.S.C. § 9607(f)(1) (emphasis added).  As noted above, the State also has an ownership interest in many of these natural resources within Oklahoma.

14

Nowhere in Count 2 of the FAC, however, does the State assert a claim for natural resource damages for natural resources in the Arkansas portion of the Illinois River Watershed. Accordingly, Defendants' Motion must be denied as to the State's CERCLA natural resource damages claim (Count 2).[10]

### 2. The State's legally protected interests in the natural resources located in the Oklahoma portion of the Illinois River Watershed give the State standing to maintain its state law nuisance claim

The State has alleged that Defendants have created a nuisance under state common law and Oklahoma statutory law. *See* FAC, Count 4.[11] As the ground for their argument that the State lacks standing to bring its state law nuisance claim, Defendants assert that the State "does not have a legally cognizable interest as either an owner or trustee of most of the land and natural resources within the Illinois River Watershed." Defendants' Motion, p. 17. Defendants' assertion is wrong for the following reasons.

First, as explained above, the State is not (and never was) asserting a natural resource damages claim as to natural resources located within the Arkansas portion of the Illinois River Watershed.

---

[10]    Although they have not explicitly so argued, to the extent that Defendants contend that their CERCLA argument is broader than merely whether the State is asserting a natural resource damages claim as to natural resources located in Arkansas (which the State is not), it is clear, as demonstrated above, that the State has a legally protected interest in all natural resources located in Oklahoma for purposes of CERCLA. *See* 42 U.S.C. § 9607(f)(1). These interests for purposes of CERCLA are not at all inconsistent with Oklahoma common law and statutory law which provide that the State not only has a quasi-sovereign interest in all natural resources located in Oklahoma, *see Tennessee Copper*, 206 U.S. at 237, but also a property issue in many of these resources. *See, e.g.*, 60 Okla. Stat. § 60(A); 64 Okla. Stat. § 290; Okla. Const., Art. 26, § 2; 82 Okla. Stat. § 1461(I)(10); 74 Okla. Stat. § 2212.

[11]    Defendants' Motion ignores the State's common law nuisance claim and mentions only the Oklahoma statutory nuisance claims. *See* Defendants' Motion, p. 17. It is therefore unclear if Defendants are arguing that the State lacks standing as to <u>only</u> this part of its state law nuisance claim. The State should not be forced to guess as to the reach of Defendants' (meritless) argument.

Second, as explained above, the State "has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain." *Tennessee Copper*, 206 U.S. at 237. Put another way, the State has a legally protected interest in all of the natural resources located in the Oklahoma portion of the Illinois River Watershed. In fact, contrary to Defendants' suggestion, the Oklahoma statutory law provisions cited in Defendants' Motion, p. 17, are entirely consistent with and underscore the principle that the State has a legally protected interest in all its natural resources independent of ownership. 27A Okla. Stat. § 2-6-105(A) provides: "It shall be unlawful for any person to cause pollution in any waters of the state or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land or waters of the state." (Emphasis added.) Similarly, 2 Okla. Stat. § 2-18.1(A) provides: "It shall be unlawful and a violation of the Oklahoma Agricultural Code for any person to cause pollution of any air, land or waters of the state . . . ." (Emphasis added.) Implicit in these statutes is a recognition of the State's quasi-sovereign interests in these natural resources.

Third, as explained above, not only does it have its quasi-sovereign interest, but also the State has property interests in many of the natural resources within the Oklahoma portion of the Illinois River Watershed. These property interests include, without limitation,[12] ownership of all water flowing in definite streams (*e.g.*, the waters of the Oklahoma portion of the Illinois River and Lake Tenkiller).

In sum, the State has alleged -- and as a matter of law it has -- a legally protected interest in all the natural resources located in the Oklahoma portion of the Illinois River Watershed. Accordingly, based upon its quasi-sovereign interests, the State has standing to assert its

---

[12]    Other types of natural resources in which the State has property interests are discussed in Section III.A.3., *supra.*

16

nuisance claim against Defendants for injuries to <u>all</u> natural resources located in the Oklahoma portion of the Illinois River Watershed that have been caused by Defendants' unlawful conduct. Additionally and concurrently, the State also has standing to assert its nuisance claim against Defendants for injuries to those natural resources located in the Oklahoma portion of the Illinois River Watershed in which it has property interests. Defendants' Motion as to Count 4 therefore must be denied.

### 3. The State's legally protected property interest in the natural resources located in the Oklahoma portion of the Illinois River Watershed gives the State standing to maintain its trespass claim

Contrary to Defendants' suggestion, the State is not seeking relief under its trespass claims as to (1) natural resources located in the Arkansas portion of the Illinois River Watershed, or (2) natural resources located in the Oklahoma portion of the Illinois River Watershed in which the State does not have a property interest. That is to say, the State is not seeking to press its trespass claim in its *parens patriae* capacity. The State, however, clearly has standing to assert its trespass claims with respect to natural resources that it does have a property interest in and therefore has a possessory interest in. These property interests have been described above in section III.A. By way of example, and without limitation,[13] one of the natural resources in which the State has a property interest is water in definite streams. *See* 60 Okla. Stat. § 60(A) ("water running in a definite stream, formed by nature over or under the surface" is "public water and is subject to appropriation for the benefit and welfare of the people of the state"). The waters of that portion of the Illinois River located in Oklahoma and Lake Tenkiller, for example, are definite streams and are, therefore, "public water." As explained in *City of Stillwater*, 524 P.2d

---

[13] As noted in footnote 12, other types of natural resources in which the State has property interests are discussed in Section III.A.3., *supra.*

at 944, "public water" is "state owned." The State owns public water "until it transfers it to some other person or entity." *Id.*; *see also* discussion in III.A.3, *supra*. Therefore, this property interest is, as a matter of Oklahoma law, possessory.

Such a property interest and possessory interest are plainly sufficient to support the State's trespass claim. "[T]respass involves an actual physical invasion of the property of another." *Fairlawn Cemetery Association v. First Presbyterian Church*, 496 P.2d 1185, 1187 (Okla. 1972). "Actual possession may be shown by acts of ownership or dominion, and need not necessarily be exclusive." 75 Am. Jur. 2d Trespass § 38. The State has alleged such an actual and physical invasion of and interference with its property interests in, *inter alia*, the waters flowing in definite streams in the Illinois River Watershed. *See* FAC, ¶ 120. Unless and until such public water is actually appropriated, it is the property of and possessed by the State. Therefore, the State has standing.

Defendants' attempted reliance on *New Mexico v. General Electric, Inc.*, 335 F.Supp.2d 1185, 1205 (D.N.M. 2004), *aff'd* 467 F.3d 1223 (10th Cir. 2006), to defeat the State's trespass claim is unavailing for a number of reasons. First, *New Mexico* was decided as a matter of New Mexico law, not Oklahoma law. Oklahoma law provides that "public water" is "state owned," and that the State owns public water "until it transfers it to some other person or entity." *See City of Stillwater*, 524 P.2d at 944. Second, *New Mexico* was a groundwater case. Under Oklahoma law water under the land but not forming a definite stream is not public water but rather is owned by the owner of the land. 60 Okla. Stat. § 60(A). For purposes of its trespass claim, the State is not claiming an interest in groundwater not flowing in a definite stream which it does not own. And third, unlike here, in *New Mexico*, New Mexico's trespass claim to groundwater was being asserted, in part, in that state's *parens patriae* capacity. *New Mexico*, 335 F.Supp.2d at 1232.

In sum, a party with a property interest that has been invaded can sue to enjoin a trespass and recover damages. The State has alleged -- and as a matter of law it has -- legally protected property interests (including ownership interests) in certain natural resources located in the Oklahoma portion of the Illinois River Watershed. *See* Section III.A.3., *supra*. Accordingly, the State has standing to assert its trespass claim against Defendants. Defendants' Motion as to Count 6 must therefore be denied.

### 4. The State's legally protected interests in natural resources located in the Oklahoma portion of the Illinois River Watershed gives the State standing to maintain its unjust enrichment / restitution / disgorgement claim

Defendants' argument that the State does not have standing to assert its unjust enrichment / restitution / disgorgement claim suffers from the same flaw that its other arguments suffer from -- namely, the failure to understand that the State has a quasi-sovereign interest in all the natural resources of Oklahoma, as well as property interests in many of the natural resources of Oklahoma, and that these interests give it standing to assert claims for injuries to these natural resources.

The caselaw relied upon by Defendants -- *Woodring*, *Denman* and *Scharmer* -- are all easily distinguishable on the ground that none of these actions was brought by a state in its quasi-sovereign, *parens patriae* capacity. Rather, these cases all involve individuals bringing claims based upon their purported individual interests. A state's legally protected interests and an individual's legally protected interests obviously differ.

Simply put, because the State has alleged -- and as a matter of law has -- a legally protected interest in all the natural resources located in the Oklahoma portion of the Illinois River Watershed, the State has standing to assert its unjust enrichment / restitution / disgorgement claim against Defendants as to any and all natural resources located in the

Oklahoma portion of the Illinois River Watershed. Defendants' Motion must be therefore denied as to Count 10.

### C.    Defendants misunderstand the role of the term "facility" in the context of the State's CERCLA natural resource damages claim

Contrary to Defendants' suggestion, Defendants' Motion, p. 19, the State has not maintained that its claims "encompass alleged injuries to all property and every natural resource within the entire 1,000,000-plus acres of the Illinois River Watershed . . . ." (Emphasis added.) In support of this (erroneous) suggestion, Defendants cite to portions of the oral argument concerning their (overruled) motion for more definite statement as to the State's allegations of "facility." Plainly, Defendants have misunderstood the role of the term "facility" in the context of CERCLA litigation.[14]

The term "facility" under CERCLA is simply not a standing concept. Rather, the term "facility" in CERCLA litigation is used to define not only the bounds of contamination, *see, e.g., United States v. Township of Brighton*, 153 F.3d 307, 313 (6th Cir. 1998), but also "all suitable areas in proximity to the contamination necessary for implementation of a response action." *See, e.g., Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1069 fn. 3 (9th Cir. 2006). Consistent with this term and the caselaw interpreting it, the State has therefore maintained that the Illinois River Watershed constitutes a "facility" for purposes of CERCLA, *see* FAC, ¶¶ 72 & 81.[15] This is because poultry waste has been deposited, stored, disposed of or placed, or

---

[14]    42 U.S.C. § 9601(9) defines "facility" as: "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel."

[15]    Also, again consistent with the definition of "facility" found in 42 U.S.C. §

otherwise come to be located, throughout the lands, waters and sediments of the Illinois River

Watershed due to poultry growing operations, poultry waste handling operations, and poultry

waste disposal activities (including, but not limited to, the land application of poultry waste)

occurring within the Illinois River Watershed, and due to run-off, discharge and leaching of

poultry waste from these operations and activities. This poultry waste is causing harm to natural

resources located in the Oklahoma portion of the Illinois River Watershed and causing the State

to incur response costs. *See* FAC, Counts 1 & 2. Accordingly, the State is entitled to seek

natural resource damages under its CERCLA natural resource damages claim to remedy the

harm to those Oklahoma natural resources that has been caused by hazardous substances released

from the "facility," as well as to seek all response costs caused by releases or threatened releases

of hazardous substances from the "facility."[16]

The fact of the matter is that the State has indeed differentiated its legally protected

interests in the Illinois River Watershed. These legally protected interests include, as a matter of

law, all natural resources located in the Oklahoma portion of the Illinois River Watershed. These

legally protected interests also include, as a matter of law, those natural resources located in the

Oklahoma portion of the Illinois River Watershed in which the State has property interest. The

State's legally protected interests do not include -- and the State has never claimed that they

include -- natural resources located in the Arkansas portion of the Illinois River Watershed.

Simply put, then, the State does indeed have standing to assert claims for injury to all of the

natural resources located in the Oklahoma portion of the Illinois River Watershed. Defendants'

---

9601(9) and the relevant caselaw, the State has alleged that "the grower buildings, structures, installations and equipment, as well as the land to which the poultry waste has been applied" within the Illinois River Watershed constitute "facilities." *See* FAC, ¶¶ 72 & 81.

[16]    It is important to note that the "facility" concept is an element of the State's CERCLA claims, but is not an element of the State's other claims.

Motion, premised on a misapprehension of natural resource law and a misreading of the FAC, is wholly without merit and must be denied.

## IV.    Conclusion

Wherefore, in light of the foregoing, it is clear that the State has legally protected interests in the natural resources located in the Oklahoma portion of the Illinois River Watershed. Therefore, the "Motion of Tyson Foods, Inc., Tyson Poultry, Inc., Tyson Chicken, Inc., Cobb-Vantress, Inc., Simmons Foods, Inc., Willow Brook Foods, Inc., Cal-Maine Foods, Inc., Cal-Maine Farms, Inc., George's, Inc., George's Farms, Inc., Peterson Farms, Inc., Cargill Turkey Production, LLC, and Cargill, Inc. for Partial Judgment as a Matter of Law Based on Plaintiffs' [sic] Lack of Standing" [DKT #1076] should be denied in its entirety.

Respectfully Submitted,

W.A. Drew Edmondson OBA # 2628
Attorney General
Kelly H. Burch OBA #17067
J. Trevor Hammons OBA #20234
Assistant Attorneys General
State of Oklahoma
313 N.E. 21st St.
Oklahoma City, OK 73105
(405) 521-3921

/s/ M. David Riggs
M. David Riggs OBA #7583
Joseph P. Lennart OBA #5371
Richard T. Garren OBA #3253
Douglas A. Wilson OBA #13128
Sharon K. Weaver OBA #19010
Robert A. Nance OBA #6581
D. Sharon Gentry OBA #15641
Riggs, Abney, Neal, Turpen,
Orbison & Lewis
502 West Sixth Street
Tulsa, OK 74119
(918) 587-3161

22

James Randall Miller, OBA #6214
Louis Werner Bullock, OBA #1305
Miller Keffer & Bullock
222 S. Kenosha
Tulsa, Ok 74120-2421
(918) 743-4460

David P. Page, OBA #6852
Bell Legal Group
222 S. Kenosha
Tulsa, OK 74120
(918) 398-6800

Frederick C. Baker
(admitted *pro hac vice*)
Elizabeth C. Ward
(admitted *pro hac vice*)
Elizabeth Claire Xidis
(admitted *pro hac vice)*
Lee M. Heath
(admitted *pro hac vice*)
Motley Rice, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
(843) 216-9280

William H. Narwold
(admitted *pro hac vice*)
Motley Rice, LLC
20 Church Street, 17 Floor th
Hartford, CT 06103
(860) 882-1676

Attorneys for the State of Oklahoma

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2007, the foregoing document was electronically transmitted to the following:

**Jo Nan Allen** - jonanallen@yahoo.com bacaviola@yahoo.com
**Frederick C Baker**- fbaker@motleyrice.com; mcarr@motleyrice.com; fhmorgan@motleyrice.com
**Tim Keith Baker** - tbakerlaw@sbcglobal.net
**Sherry P Bartley** - sbartley@mwsgw.com jdavis@mwsgw.com
**Michael R. Bond** - michael.bond@kutakrock.com amy.smith@kutakrock.com

23

**Douglas L Boyd** - dboyd31244@aol.com
**Vicki Bronson** - vbronson@cwlaw.com lphillips@cwlaw.com
**Paula M Buchwald** - pbuchwald@ryanwhaley.com
**Louis Werner Bullock** - lbullock@mkblaw.net, nhodge@mkblaw.net, bdejong@mkblaw.net
**A Michelle Campney** - campneym@wwhwlaw.com steelmana@wwhwlaw.com
**Michael Lee Carr** - hm@holdenoklahoma.com MikeCarr@HoldenOklahoma.com
**Bobby Jay Coffman** - bcoffman@loganlowry.com
**Lloyd E Cole, Jr** - colelaw@alltel.net; gloriaeubanks@alltel.net; amy_colelaw@alltel.net
**Angela Diane Cotner** - AngelaCotnerEsq@yahoo.com
**Reuben Davis** - rdavis@boonesmith.com
**John Brian DesBarres** - mrjbdb@msn.com JohnD@wcalaw.com
**W A Drew Edmondson** - fc_docket@oag.state.ok.us; drew_edmondson@oag.state.ok.us; suzy_thrash@oag.state.ok.us.
**Delmar R Ehrich** - dehrich@faegre.com; etriplett@faegre.com; qsperrazza@faegre.com
**John R Elrod** - jelrod@cwlaw.com vmorgan@cwlaw.com
**William Bernard Federman** - wfederman@aol.com; aw@federmanlaw.com; ngb@federmanlaw.com
**Bruce Wayne Freeman** - bfreeman@cwlaw.com lclark@cwlaw.com
**Ronnie Jack Freeman** - jfreeman@grahamfreeman.com
**Richard T Garren** - rgarren@riggsabney.com dellis@riggsabney.com
**Dorothy Sharon Gentry** - sgentry@riggsabney.com jzielinski@riggsabney.com
**Robert W George** - robert.george@kutakrock.com; sue.arens@kutakrock.com; amy.smith@kutakrock.com
**Tony Michael Graham** - tgraham@grahamfreeman.com
**James Martin Graves** - jgraves@bassettlawfirm.com
**Michael D Graves** - mgraves@hallestill.com; jspring@hallestill.com; smurphy@hallestill.com
**Jennifer Stockton Griffin** - jgriffin@lathropgage.com
**Carrie Griffith** - griffithlawoffice@yahoo.com
**John Trevor Hammons** thammons@oag.state.ok.us; Trevor_Hammons@oag.state.ok.us; Jean_Burnett@oag.state.ok.us
**Lee M Heath** - lheath@motleyrice.com
**Michael Todd Hembree** - hembreelaw1@aol.com traesmom_mdl@yahoo.com
**Theresa Noble Hill** - thillcourts@rhodesokla.com mnave@rhodesokla.com
**Philip D Hixon** - phixon@mcdaniel-lawfirm.com
**Mark D Hopson** - mhopson@sidley.com joraker@sidley.com
**Kelly S Hunter Burch** - fc.docket@oag.state.ok.us; kelly_burch@oag.state.ok.us; jean_burnett@oag.state.ok.us
**Thomas Janer** - SCMJ@sbcglobal.net; tjaner@cableone.net; lanaphillips@sbcglobal.net
**Stephen L Jantzen** - sjantzen@ryanwhaley.com; mantene@ryanwhaley.com; loelke@ryanwhaley.com
**Mackenzie Lea Hamilton Jessie** - maci.tbakerlaw@sbcglobal.net; tbakerlaw@sbcglobal.net; macijessie@yahoo.com
**Bruce Jones** - bjones@faegre.com; dybarra@faegre.com; jintermill@faegre.com; cdolan@faegre.com
**Jay Thomas Jorgensen** - jjorgensen@sidley.com
**Krisann C. Kleibacker Lee** - kklee@faegre.com mlokken@faegre.com

24

**Derek Stewart Allan Lawrence** - hm@holdenoklahoma.com;
DerekLawrence@HoldenOklahoma.com
**Raymond Thomas Lay** - rtl@kiralaw.com dianna@kiralaw.com
**Nicole Marie Longwell** - nlongwell@mcdaniel-lawfirm.com lvictor@mcdaniel-lawfirm.com
**Dara D Mann** - dmann@faegre.com kolmscheid@faegre.com
**Linda C Martin** - lmartin@dsda.com mschooling@dsda.com
**Archer Scott McDaniel** - smcdaniel@mcdaniel-lawfirm.com jwaller@mcdaniel-lawfirm.com
**Robert Park Medearis, Jr** - medearislawfirm@sbcglobal.net
**James Randall Miller** - rmiller@mkblaw.net; smilata@mkblaw.net; clagrone@mkblaw.net
**Charles Livingston Moulton** - Charles.Moulton@arkansasag.gov;
Kendra.Jones@arkansasag.gov
**Robert Allen Nance** - rnance@riggsabney.com jzielinski@riggsabney.com
**William H Narwold** - bnarwold@motleyrice.com
**John Stephen Neas** - steve_neas@yahoo.com
**George W Owens** - gwo@owenslawfirmpc.com ka@owenslawfirmpc.com
**David Phillip Page** - dpage@edbelllaw.com smilata@edbelllaw.com
**Michael Andrew Pollard** - mpollard@boonesmith.com kmiller@boonesmith.com
**Marcus N Ratcliff** - mratcliff@lswsl.com sshanks@lswsl.com
**Robert Paul Redemann** - rredemann@pmrlaw.net scouch@pmrlaw.net
**Melvin David Riggs** - driggs@riggsabney.com jsummerlin@riggsabney.com
**Randall Eugene Rose** - rer@owenslawfirmpc.com ka@owenslawfirmpc.com
**Patrick Michael Ryan** - pryan@ryanwhaley.com; jmickle@ryanwhaley.com;
amcpherson@ryanwhaley.com
**Laura E Samuelson** - lsamuelson@lswsl.com lsamuelson@gmail.com
**Robert E Sanders** - rsanders@youngwilliams.com
**David Charles Senger** - dsenger@pmrlaw.net; scouch@pmrlaw.net; ntorres@pmrlaw.net
**Jennifer Faith Sherrill** - jfs@federmanlaw.com; law@federmanlaw.com;
ngb@federmanlaw.com
**Michelle B Skeens** - hm@holdenokla.com mskeens@holdenokla.com
**William Francis Smith** - bsmith@grahamfreeman.com
**Monte W Strout** - strout@xtremeinet.net
**Erin Walker Thompson** - Erin.Thompson@kutakrock.com
**Colin Hampton Tucker** - chtucker@rhodesokla.com scottom@rhodesokla.com
**John H Tucker** - jtuckercourts@rhodesokla.com mbryce@rhodesokla.com
**Kenneth Edward Wagner** - kwagner@lswsl.com sshanks@lswsl.com
**Elizabeth C Ward** - lward@motleyrice.com
**Sharon K Weaver** - sweaver@riggsabney.com lpearson@riggsabney.com
**Timothy K Webster** - twebster@sidley.com jwedeking@sidley.com
**Terry Wayen West** - terry@thewestlawfirm.com
**Dale Kenyon Williams, Jr** - kwilliams@hallestill.com; jspring@hallestill.com;
smurphy@hallestill.com
**Edwin Stephen Williams** - steve.williams@youngwilliams.com
**Douglas Allen Wilson** - Doug_Wilson@riggsabney.com; jsummerlin@riggsabney.com
**J Ron Wright** - ron@wsfw-ok.com susan@wsfw-ok.com
**Elizabeth Claire Xidis** - cxidis@motleyrice.com
**Lawrence W Zeringue** - lzeringue@pmrlaw.net **scouch@pmrlaw.net**

I further hereby certify that on this 30th day of March, 2007, I served the forgoing document by U.S. Postal Service on the following:

**Justin Allen**
**Jim DePriest**
**Dustin McDaniel**
Office of the Attorney General (Little Rock)
323 Center Street, Suite 200
Little Rock, AR 72201-2610

**Jim Bagby**
RR 2, Box 1711
Westville, OK 74965

**Gordon and Susann Clinton**
23605 S. Goodnight Lane
Welling, OK 74471

**Eugene Dill**
P.O. Box 46
Cookson, OK 74424

**Marjorie Garman**
5116 Highway 10
Tahlequah, OK 74464

**Thomas Green**
Sidley, Austin, Brown & Wood
1501 K Street NW
Washington, DC 20005

**G Craig Heffington**
20144 W. Sixshooter Road
Cookson, OK 74427

**William and Cherrie House**
P.O. Box 1097

Stilwell, OK 74960

**John E. and Virginia W. Adair Family Trust**
Rt 2, Box 1160
Stilwell, OK 74960

**James and Dorothy Lamb**
Route 1, Box 253
Gore, OK 74435

**Jerry M. Maddux**
Selby, Connor, Maddux, Janer
P.O. Box Z
Bartlesville, OK 74005-5025

**Doris Mares**
P.O. Box 46
Cookson, OK 74424

**Richard and Donna Parker**
34996 S 502 Road
Park Hill, OK 74451

**C. Miles Tolbert**
Secretary of Environment
State of Oklahoma
3800 North Classen
Oklahoma City, OK 73118

**Robin L. Wofford**
Rt. 2, Box 370
Watts, OK 74964

/s/ M. David Riggs
M. David Riggs