**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STATE OF OKLAHOMA, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:05-cv-00329-GKF-SAJ |
| | ) |
| TYSON FOODS, INC., et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY ON THEIR MOTION FOR JUDGMENT AS A MATTER
OF LAW IN LIGHT OF PLAINTIFFS' CONSTITUTIONAL VIOLATIONS**

The contingency fee contract ("Contract") violates the U.S. and Oklahoma constitutions by tainting the exercise of the state's power with considerations of private gain and by expending the state's money without legislative authorization. Moreover, under the Tenth Circuit's decision in *New Mexico v. General Electric*, 467 F.3d 1223 (10th Cir. 2006), the Contract is preempted by the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601-75 ("CERCLA").

Plaintiffs respond to these points by arguing that (1) Defendants have waived their arguments; (2) *New Mexico* does not moot the Contract's constitutional violations because the Attorney General might find some other way to give the State's money to private counsel; (3) the appropriations process is not offended because any damages that the State might recover do not become the property of the State until after the private attorneys have taken their cut; (4) the Legislature has specifically authorized the Attorney General to expend state funds in this manner; and (5) the due process duty of impartiality does not extend to the State's lawyers. Each of these arguments is incorrect.

**I.     Defendants Have Not Waived Their Challenge to the Contract**

As an initial matter, Oklahoma is wrong to contend that Defendants have waived the right to challenge the Contract. *See* Resp. at 23-25. Litigants are not required to file every conceivable motion at the first moment the potential for such a motion arises. Rather, courts encourage litigants to avoid motions practice unless necessary. *See*, *e.g.*, *Nanetti v. Univ. of Illinois*, 867 F.2d 990, 995 (7th Cir. 1989). In this case, Defendants did not challenge the involvement of private counsel until it became apparent that the private attorneys are extensively involved in all aspects of the State's case and are spending money (which the Contract requires the State to reimburse out of any litigation proceeds) at a tremendous rate. *See*, *e.g.*, Transcript of Hearing on Dec. 15, 2006, at 121,

1

lines 11-13 (stating that private counsel David Page personally selected the locations and times of the State's sampling efforts), *id.* at 61, lines 1-8 (stating that Mr. Page personally selected and retained testing laboratories on behalf of the State), *id.* at 125, lines 2-5 (stating that the State's private attorneys have already spent more than $4 million on sampling and experts). At the point the record demonstrated that the private lawyers are involved in all aspects of this case and are incurring significant costs (which they will inevitably seek to recover under the Contract by raising the State's damage demands), Defendants appropriately filed this motion.

The Attorney General does not assert that Rule 12(c) is an inappropriate vehicle for raising these arguments. Defendants' motion is timely under Rule 12(c), which states that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." No trial date was scheduled when Defendants filed this motion. Since this motion was filed, the Court has scheduled the trial to begin 22 months from now. *See* Dkt. No. 1075. The State cannot credibly claim that this motion will "delay the trial," especially since the State's response claims that General Edmondson and his in-house staff are personally handling this case. Resp. at 4, 14-15.[1]

---

[1] The Attorney General incorrectly labels this motion a motion to disqualify. Resp at 23-25. It is not. Defendants have no objection to private counsel continuing in this case if they are hired and compensated consistent with the relevant statutory and constitutional requirements. However, like Rule 12(c), the timeliness of a motion to disqualify is determined by evaluating whether the motion will delay trial. *See*, *e.g.*, *Healy v. Axelrod Constr. Co.*, 155 F.R.D. 615, 622 (N.D. Ill. 1994). Elapsed time alone cannot justify denying such a motion. *See Emle Indus., Inc. v. Patentax, Inc.*, 478 F.2d 562, 574 (2d Cir. 1973); *Schwed v. General Elec. Co.*, 990 F. Supp. 113, 117 (N.D.N.Y. 1998). The State must also show that the delay was particularly "extreme," or that it in some way "has caused [it] prejudice." *Emle Indus.*, 478 F.2d at 574. With the trial date in this case nearly two years away, the Attorney General and his staff have ample time to prepare for trial, even if the private attorneys are disqualified. *See Colorpix Systems of America v. Broan Mfg. Co., Inc.*, 131 F.Supp.2d 331, 340 (D. Conn. 2001) (motion to disqualify

## II. The Court Must Seek to Avoid These Constitutional Issues By First Applying *New Mexico v. General Electric*

Under CERCLA's natural resource damages ("NRD") scheme, all damages recovered, if any, "shall be available for use only to restore, replace, or acquire the equivalent of such natural resources by the State," 42 U.S.C. § 9607(f)(1). The Tenth Circuit explicitly cited attorneys' fees as an example of an illegal use of NRDs. *New Mexico*, 467 F.3d at 1248. The State seeks recovery of NRDs in this case. *See* First Amended Complaint ("FAC") at ¶¶ 78-89 (Count 2). Accordingly, resolving the pending Motion for Judgment on the Pleadings in Light of *New Mexico v. General Electric* (Dkt. No. 1004) in Defendants' favor—as *New Mexico* requires—may moot the constitutional concerns associated with the Contract. Oklahoma raises three arguments to the contrary.

First, Oklahoma protests that the Tenth Circuit did not mean what it said in holding that CERCLA § 107(f) preempts state-law causes of action seeking unrestricted monetary damages for injured natural resources. *See* Resp. at 8. In the *New Mexico* briefing, Defendants explained that the Tenth Circuit's holding precludes the Attorney General from paying private attorney contingency fees. *See* Dkt. No. 1004; Defendants' *New Mexico* Reply (Dkt. No. 1037-1); *see also New Mexico*, 467 F.3d at 1243-48.

Second, Oklahoma asserts that *New Mexico* does not apply in this case because Defendants do not concede liability under the State's CERCLA claim. *See* Resp. at 8-9. However, the fact that the Defendants contest the validity of the State's CERCLA claim in no way distinguishes this case from *New Mexico*. *See New Mexico*, 467 F.3d at 1243-

---

timely where (1) plaintiff provided no evidence 18-month delay was "extreme" or prejudicial and (2) defendant filed six months before trial date). *Compare Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 731 (11th Cir. 1988) (motion to disqualify waived when it was filed just 32 days before trial); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87-88 (9th Cir. 1983) (motion to disqualify waived when it was filed just 33 days before trial). Defendants' motion is therefore timely.

3

52. As the Tenth Circuit has made clear, CERCLA provides the exclusive remedy for claims of injuries to natural resources. In this case, Oklahoma either has a CERCLA remedy or it has nothing. *See New Mexico*, 467 F.3d at 1247 (citing *Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652 (1st Cir. 1980), in explaining that, even before CERCLA, NRDs could only be used for the restoration or replacement of natural resources); Dkt. No. 1037-1 at 5. The merits of the State's CERCLA claim have not yet been tested.

Third, Oklahoma errantly asserts that it retains "'residual' claims for natural resource damages" not barred by *New Mexico*. Resp. at 9. The "residual claims" referred to in *New Mexico* related to the New Mexico Attorney General's efforts to escape the bar in CERCLA § 113(h) against challenges to EPA cleanup remedies. *See New Mexico*, 467 F.3d at 1250 (holding that under 42 U.S.C. § 9613(h) a "residual injury" can only be determined when EPA's remediation is complete). Such claims for residual injuries are irrelevant here, where EPA has found no reason to remediate the IRW despite the State's claims of contamination. To the extent that *New Mexico* did not "completely preempt[ ]" state public-nuisance and negligence actions, Resp. at 9 (citing 467 F.3d at 1247), it preserves only requests for injunctive relief, such as abatement. *See B.H. v. Gold Fields Mining Corp.*, 2007 WL 439025 (N.D. Okla. Feb. 1, 2007) (holding that *New Mexico* does not require preemption of state tort law claims for nuisance abatement). *New Mexico* makes clear that no state-law damages can be obtained for NRDs, even if state-law claims may support an injunction. *See* 467 F.3d at 1243-50.

Accordingly, the Attorney General is incorrect in asserting that *New Mexico* cannot moot these constitutional issues because he can pay the private lawyers under a non-CERCLA claim. Under the doctrine of constitutional avoidance, this Court should

4

first apply CERCLA's NRD provisions in order to avoid having to resolve the constitutional questions raised here. *See Lyng v. Northwest Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988); *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 749 (1961); *United States v. Hardman*, 297 F.3d 1116, 1136-37 (10th Cir. 2002).

### III.   Monies Recovered By the State Are State Revenues That Must Be Deposited In The State Treasury

The Attorney General argues that the Legislature expressly granted him authority to circumvent its appropriations process and effectively increase his budget by entering into contingency fee contracts with private counsel. *See* Resp. at 12, 20-23. The statutes of Oklahoma do not support this claim of extraordinary power.

The first statute the Attorney General cites for this proposition, 5 Okla. Stat. § 7, simply provides that contingency fee contracts between lawyers and clients generally are not unlawful. This standard rule of legal ethics provides no basis for the Attorney General to enter into contracts purporting to spend state funds outside the normal appropriations process.

The Attorney General next asserts that the Legislature has authorized him to spend any funds he may recover on contingency fees. *See* Resp. at 22-23. The Attorney General also claims that judgments do not become the property of the State until he pays any contingency fees and remits the remainder (if any) to the State. *See id*. at 20-22. Contrary to these claims, the Oklahoma Legislature has carefully mandated how funds from state litigation must be deposited and utilized. The Legislature created for "each state officer, department, board, commission, institution or agency of the state," an agency clearing account in the state treasury's official depository. 62 Okla. Stat. § 7.1.A (noting that an agency special account created under § 7.2 may serve the same purpose).

5

Each state agency, officer or employee must "deposit in the agency clearing account . . . all monies of every kind, including, but not limited to: . . . 3. Income from . . . judgments . . . ." *Id.* at § 7.1.B. And, at least monthly, then, each state agency "shall transfer monies deposited in agency clearing accounts to the various funds or accounts, subdivisions of the state, or functions as may be provided by statute . . ." *Id.* at § 7.1.E. Indeed, the Legislature has clarified in another statute that it is the Attorney General's duty "[t]o pay into the State Treasury, immediately upon its receipt, all monies received by the Attorney General belonging to the state." 74 Okla. Stat. § 18b(11). By contracting to pay the private attorneys a large percentage of any judgment the State may receive in this case, the Attorney General has violated these statutory provisions.

Accordingly, the State's reliance on both *City of Barnsdall v. Curnutt*, 174 P.2d 596 (Okla. 1945), and *Town of Mannford v. Watson*, 394 P.2d 506 (Okla. 1964), is misplaced. In both cases the Oklahoma Supreme Court found that contingency fee contracts with local municipalities were valid, but neither case involved a state agency such as the Attorney General's office, which is subject to these statutory controls on the collection of state funds.

Oklahoma's reliance on *Philip Morris, Inc. v. Glendening*, 709 A.2d 1230 (Md. 1998), is also misplaced. There, the Maryland Supreme Court relied on Maryland's unique statute, which provides that "collections, fees, incomes, [or] other revenues" the state government must pay monthly into the state treasury do not include gross settlements or judgments. *Id.* at 1240 (quoting Md. Code § 6-213(a)). Funds from recoveries are not "collected" under this statute until outside counsel deducts expenses and contingency fees. *Id.* at 1241. The *Glendening* Court then drew a comparison

6

between Md. Code § 6-213 and the statute at issue in *Meredith v. Ieyoub*, 700 So.2d 478 (La. 1997). Specifically, it noted that in *Meredith*, the Louisiana Supreme Court invalidated the contingency fee contract between the Louisiana Attorney General and private counsel because the Louisiana statute was "clear and unambiguous" in providing that "[a]ll sums recovered through judgment, settlements, assessment of civil or criminal penalties [and] funds recovered by suit or settlement … shall be paid into the state treasury." 709 A.2d 1241 (quoting 700 So.2d at 482).

In this case, unlike the Maryland statute at issue in *Glendening* (which expressly exempted judgments from payment into the treasury), Oklahoma law mirrors the statute at issue in *Meredith* in requiring money judgments be placed directly in the state treasury. *See* 62 Okla. Stat. § 7.1.B; 74 Okla. Stat. § 18b(11). Accordingly, the Contract is contrary to state law and invalid. Any monies the Attorney General might recover belong to the State, must be deposited into the treasury, and are not subject to the Attorney General's unchecked, unilateral expenditure.

The Oklahoma Legislature has made one exception to this requirement that all funds from state litigation must be deposited into the state treasury for use according to the Legislature's appropriations, but this limitation proves that the Attorney General's claim of unilateral authority over judgments is mistaken. Under 74 Okla. Stat. § 19.A.1, the Oklahoma Attorney General is required to take 25% of the monies obtained in state litigation and deposit "three-fourths (3/4) [of that 25%] in a special agency account fund in the State Treasury, designated the Attorney General's Evidence Fund …."[2] 74 Okla.

---

[2] The remaining one-fourth of that 25% he must deposit in the Attorney General's Revolving Fund, 74 Okla. Stat. § 19.A.1, from which expenditures "shall be made upon warrants issued by the State Treasurer against claims filed as prescribed by law with the

Stat. § 19.A.1. The Legislature has specifically stated that this fund "shall be used by the Attorney General for necessary expenses relative to any pending case or other matter within the official responsibility of the Attorney General." 74 Okla. Stat. § 19.A.2. Mindful of the potential for large judgments and competing demands on the treasury, the Legislature has capped the balance in the Attorney General's Evidence Fund at $1.85 million. 74 Okla. Stat. § 19.A.3. The Legislature has provided no authorization for the Attorney General to spend a portion of judgments in excess of this amount, and the Legislature's express authorization for the Attorney General to spend a limited portion of judgments precludes an inference that the Attorney General is statutorily authorized to spend more. *See Youren v. Tintic School Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003).

These are not the only limitations on the Attorney General's authority to enter into contingency fee contracts. Indeed, none of the statutes cited in the Response says anything about hiring contingency fee counsel to represent the State. To the contrary, the statute allowing the State to retain outside counsel in certain limited circumstances requires that the amount of professional fees at issue in the case be capable of reasonable estimation in advance of hiring outside counsel and subject to tracking during the course of the representation. *See* 74 Okla. Stat.§ 20i(A). These statutory requirements are consistent with traditional hourly and fixed-fee arrangements, but antithetical to contingency fees, which inherently obligate the State to pay a fee that cannot be known until the litigation has concluded, is potentially unlimited, and therefore could reach into the tens of millions of dollars in some cases. This interpretation of section 20i is amply proved by the fact that, contrary to the Contract's provisions, Oklahoma's constitution

---

Director of State Finance for approval and payment," 74 Okla. Stat. § 20(C).

requires that the funds an agency expends to hire counsel under section 20(i) must be paid from the annual appropriated budget of the agency that retained the private lawyers.[3] Neither the Attorney General nor any other state agency is authorized to unilaterally increase their budgets or stretch the State's fiscal obligations over multiple years by entering into contingency fee contracts with outside lawyers.[4]

In the absence of an express statutory authorization to spend his client's judgments, the Attorney General's argument that he can deduct whatever fees and expenses he deems reasonable contravenes the most basic principles of attorney ethics. *See* Resp. at 21-23. From the moment a judgment becomes final those funds belong to the client and not the lawyer. *See*, *e.g.*, *C.I.R. v. Banks*, 543 U.S. 426, 436 (2005); *Baylin v. United States*, 43 F.3d 1451, 1454-55 (Fed. Cir. 1995). Attorneys cannot take a portion of the client's judgment for their own use without express client authorization.

Finally, the Oklahoma Constitution makes clear that no official can agree to pay any debt or obligation for the State outside the normal legislative appropriations process, regardless of the source of the money. *See* Okla. Const. art. 10, § 23.

---

[3] *See*, *e.g.*, Okla. Const. art. 10, § 23; Oklahoma Atty. Gen. Op. Nos. 04-018 (2004); 84-043 (1985); 80-114 (1980); 79-276 (1979); 79-138 (1979); 79-99 (1979); 79-085 (1979); 78-256 (1978); 76-365 (1976) (each opining and setting forth authority for the constitutional rule that no state agency or officer may: (1) enter into contracts which bind the state to expend funds in future fiscal years, regardless of the source of the funds; or (2) enter into contracts when the amount of the State's liability may not be reasonably estimated to be within the current year's appropriation).

[4] The Attorney General incorrectly argues that his common-law powers allow him to retain the private attorneys on a contingent-fee basis. Resp. at 10. This assertion contradicts Oklahoma's constitution, which reserves the power to pay such attorneys exclusively to the Legislature. *See* Okla. Const. art. IV, § 1; art. V, §§ 55-56; art. 10, § 23. Moreover, if the Attorney General ever had common-law power to spend the State's money, that power has been displaced by the Legislature's clear statutory directives governing income belonging to the State. *See* 62 Okla. Stat. § 7.1.B; 74 Okla. Stat. § 19.A; *Abrego v. Abrego*, 812 P.2d 806, 812 (Okla. 1991).

9

## IV. The Contract Violates Due Process

The cases cited by the State do not contradict Defendants' assertion that the lawyers representing the State have a due process obligation of impartiality. First, *Erikson v. Pawnee County Board of County Commissioners*, 263 F.3d 1151, 1154 (10th Cir. 2001) has no bearing on this case. Unlike here, outside counsel in *Erikson* were not bound by a contingency fee contract encouraging them to maximize their personal stake in the litigation. Moreover, unlike here, outside counsel in *Erikson* only provided the State research assistants and investigators, not substantive legal representation. 263 F.3d at 1154. Second, the actual contingency-fee cases Oklahoma cites are also easily distinguishable. *Glendening* and *City and County of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130 (N.D. Cal. 1997), were fraud actions in which plaintiffs' role was that of a tort victim, not a sovereign seeking to vindicate its residents' rights or to exercise government powers. *Id.* at 1135. Accordingly, because those were purely financial recovery cases, the attorneys in those matters had no duty to balance competing public interests and could seek solely to maximize their monetary recovery. *Compare People ex rel. Clancy v. Superior Court*, 705 P.2d 347, 352 (Cal. 1985). Finally, in *Davis v. Southern Bell Telephone & Telegraph Co.*, 149 F.R.D. 666 (S.D. Fla. 1993), the attorney fees in a class-action suit were subject to mandatory court review and approval. *Id.* at 681. Similarly, the contract in *New Mexico* required that any fee award be approved by the court under the lodestar method (and any expenses be paid only according to legislative appropriation). *See* Exhibit 1 §IV. Those safeguards are not present here.

## V. Conclusion

For the foregoing reasons, the Court should dismiss the FAC in its entirety or bar the Attorney General from using any recovery in this case to compensate private lawyers.

10

Dated: April 2, 2007               Respectfully submitted,

BY:   /s/ Jay T. Jorgensen
THOMAS C. GREEN, ESQ.
MARK D. HOPSON, ESQ.
JAY T. JORGENSEN, ESQ.
TIMOTHY K. WEBSTER, ESQ.
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005-1401
Telephone:    (202) 736-8000
Facsimile:    (202) 736-8711 (fax)

-AND-

ROBERT W. GEORGE, OBA #18562
MICHAEL R. BOND
KUTAK ROCK LLP
The Three Sisters Building
214 West Dickson Street
Fayetteville, AR 72701-5221
Telephone:    (479) 973-4200
Facsimile:    (479) 973-0007

-AND-

STEPHEN L. JANTZEN, OBA # 16247
PATRICK M. RYAN, OBA # 7864
PAULA M. BUCHWALD, OBA # 20464
RYAN, WHALEY & COLDIRON, P.C.
119 N. Robinson
900 Robinson Renaissance
OKLAHOMA CITY, OK  73102
Telephone:    (405) 239-6040
Facsimile:    (405) 239-6766
E-Mail:       sjantzen@ryanwhaley.com


**ATTORNEYS FOR TYSON FOODS, INC.; TYSON POULTRY, INC.; TYSON CHICKEN, INC; AND COBB-VANTRESS, INC.**


BY:     /s/ A. Scott McDaniel
(SIGNED BY FILING ATTORNEY WITH PERMISSION)
A. SCOTT MCDANIEL, OBA #16460

11

NICOLE M. LONGWELL, OBA #18771
PHILIP D. HIXON, OBA #19121
McDANIEL LAW FIRM
320 South Boston Avenue, Suite 700
Tulsa, OK 74103

-AND-

SHERRY P. BARTLEY, AR BAR #79009
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, PLLC
425 W. Capitol Avenue, Suite 1800
Little Rock, AR 72201
**ATTORNEYS FOR PETERSON FARMS, INC.**


**BY**:____/s/ Jennifer S. Griffin_____
(SIGNED BY FILING ATTORNEY WITH PERMISSION)
JENNIFER S. GRIFFIN
LATHROP & GAGE, L.C.
314 East High Street
Jefferson City, MO 65101
**ATTORNEYS FOR WILLOW BROOK FOODS, INC.**


BY:____/s/ James M. Graves_____
(SIGNED BY FILING ATTORNEY WITH PERMISSION)
JAMES MARTIN GRAVES, ESQ.
GARY V. WEEKS, ESQ.
BASSETT LAW FIRM
POB 3618
Fayetteville, AR 72702-3618
**ATTORNEYS FOR GEORGE'S, INC. AND GEORGE'S FARMS, INC.**


**BY**:__/s/ John R. Elrod_____
(SIGNED BY FILING ATTORNEY WITH PERMISSION)
JOHN R. ELROD

VICKI BRONSON, OBA #20574
CONNER & WINTERS, L.L.P.
211 E. Dickson St.
Fayetteville, AR 72701

BRUCE WAYNE FREEMAN
CONNER & WINTERS, L.L.P.
4000 One Williams Center
Tulsa, Oklahoma 74172
Telephone:    (918) 586-5711.
**ATTORNEYS FOR SIMMONS FOODS, INC.**


BY:  /s/ Robert P. Redemann_____

(SIGNED BY FILING ATTORNEY WITH PERMISSION)

ROBERT P. REDEMANN, OBA #7454
LAWRENCE W. ZERINGUE, ESQ., OBA # 9996
PERRINE, MCGIVERN, REDEMANN, REID,
BERRY & TAYLOR, P.L.L.C.
Post Office Box 1710
Tulsa, OK 74101-1710

-AND-

ROBERT E. SANDERS
STEPHEN WILLIAMS
YOUNGWILLIAMS P.A.
Post Office Box 23059
Jackson, MS 39225-3059
**ATTORNEYS FOR CAL-MAINE FARMS, INC. AND CAL-MAINE FOODS, INC.**

BY:  /s/ John H. Tucker_____

(SIGNED BY FILING ATTORNEY WITH PERMISSION)

JOHN H. TUCKER, OBA #9110
COLIN H. TUCKER, OBA #16325
THERESA NOBLE HILL, OBA #19119
100 W. Fifth Street, Suite 400 (74103-4287)
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone:    918/582-1173
Facsimile:    918/592-3390

-AND-

DELMAR R. EHRICH
BRUCE JONES
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone:	612/766-7000
Facsimile:	612/766-1600
**ATTORNEYS FOR CARGILL, INC. AND CARGILL TURKEY PRODUCTION LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of April, 2007, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants.

| | | |
|---|---|---|
| Jo Nan Allen | Frederick C. Baker | Tim K. Baker |
| Douglas L. Boyd | Vicki Bronson | Paula M. Buchwald |
| Louis W. Bullock | Lloyd E. Cole, Jr. | Angela D. Cotner |
| John Breian DesBarres | W. A. Drew Edmondson | Delmare R. Ehrich |
| John Elrod | William B. Federman | Bruce W. Freeman |
| Ronnie Jack Freeman | Richard T. Garren | D. Sharon Gentry |
| Tony M. Graham | James M. Graves | Michael D. Graves |
| Thomas J. Grever | Jennifer S. Griffin | Carrie Griffith |
| John T. Hammons | Jean Burnett | Michael T. Hembree |
| Theresa Noble Hill | Philip D. Hixon | Mark D. Hopson |
| Kelly S. Hunter Burch | Stephen L. Jantzen | Mackenzie Hamilton Jessie |
| Bruce Jones | Jay T. Jorgensen | Krisann C. Kleibacker Lee |
| Raymond T. Lay | Nicole M. Longwell | Dara D. Mann |
| Linda C. Martin | A. Scott McDaniel | Robert Park Medearis, Jr. |
| James Randall Miller | Robert A. Nance | John Stephen Neas |
| George W. Owens | David Phillip Page | K. Clark Phipps |
| Marcus N. Ratcliff | Robert P. Redemann | M. David Riggs |
| Randall E. Rose | Patrick Michael Ryan | Robert E. Sanders |
| David Charles Senger | William F. Smith | Jennifer F. Sherrill |
| Colin H. Tucker | John H. Tucker | R. Pope Van Cleef, Jr. |
| Kenneth E. Wagner | David A. Walls | Elizabeth C. Ward |
| Sharon K. Weaver | Timothy K. Webster | Gary V. Weeks |
| Adam Scott Weintraub | Terry W. West | Dale Kenyon Williams, Jr. |
| E. Stephen Williams | Douglas Allen Wilson | J. Ron Wright |
| Lawrence W. Zeringue | Bobby Jay Coffman | Laura Samuelson |
| Reuben Davis | | |

and I further certify that a true and correct copy of the above and foregoing will be mailed via first class U.S. Mail, postage properly paid, on the following who are not registered participants of the ECF System:

| | |
|---|---|
| C. Miles Tolbert<br>Secretary of the Environment<br>State of Oklahoma<br>3800 N. Classen<br>Oklahoma City, OK  73118<br>**PLAINTIFF** | William H. Narwold<br>MOTLEY RICE LLC<br>20 Church Street 17th Floor<br>Hartford, CT  06103<br>**ATTORNEYS FOR PLAINTIFF** |
| Monte W. Strout<br>209 W. Keetoowah<br>Tahlequah, OK  74464<br>**ATTORNEY FOR CLAIRE WELLS, LOUISE SQUYRES, THIRD-PARTY DEFENDANTS** | Robin Wofford<br>Rt. 2, Box 370<br>Watts, OK  74964<br>**PRO SE, THIRD PARTY DEFENDANT** |
| James R. Lamb<br>D. Jean Lamb<br>STRAYHORN LANDING<br>Rt. 1, Box 253<br>Gore, OK  74435<br>**PRO SE, THIRD PARTY DEFENDANTS** | Gordon and Susann Clinton<br>23605 S. Goodnight Lane<br>Welling, OK  74471<br>**THIRD PARTY DEFENDANT** |
| Kenneth and Jane Spencer<br>James C. Geiger<br>Individually and dba Spencer Ridge Resort<br>Route 1, Box 222<br>Kansas, OK  74347<br>**PRO SE, THIRD PARTY DEFENDANTS** | Ancil Maggard<br>c/o Leila Kelly<br>2615 Stagecoach Dr.<br>Fayetteville, AR  72703<br>**THIRD PARTY DEFENDANT** |
| C. Craig Heffington<br>20144 W. Sixshooter Rd.<br>Cookson, OK  74427<br>**PRO SE, SIX SHOOTER RESORT AND MARINA, INC., THIRD-PARTY DEFENDANT** | Richard E. Parker<br>Donna S. Parker<br>BURNT CABIN MARINA & RESORT, LLC<br>34996 S. 502 Road<br>Park Hill, OK  74451<br>**PRO SE, THIRD PARTY DEFENDANT** |
| James D. Morrison<br>Rural Route #1, Box 278<br>Colcord, OK  74338<br>**PRO SE, THIRD PARTY DEFENDANT** | Jim R. Bagby<br>Route 2, Box 1711<br>Westville, OK  74965<br>**PRO SE, THIRD PARTY DEFENDANT** |

| | |
|---|---|
| Marjorie A. Garman<br>5116 Hwy. 10<br>Tahlequah, OK  74464<br>**THIRD PARTY DEFENDANT** | Doris Mares<br>Dba Cookson Country Store and Cabins<br>P.O. Box 46<br>Cookson, OK  74424<br>**PRO SE, THIRD PARTY DEFENDANT** |
| Eugene Dill<br>P.O. Box 46<br>Cookson, OK  74424<br>**PRO SE, THIRD PARTY DEFENDANT** | Linda C. Martin<br>N. Lance Bryan<br>Doerner, Saunders<br>320 S. Boston Ave., Ste. 500<br>Tulsa, OK  74103<br>**THIRD PARTY DEFENDANT** |
| John and Virginia Adair<br>Adair Family Trust<br>Route 2, Box 1160<br>Stilwell, OK  74960<br>**THIRD PARTY DEFENDANT** | Charles L. Moulton<br>Arkansas Natural Resources Commission<br>323 Center St., Ste. 200<br>Little Rock, AR  72206 |

     /s/ Jay T. Jorgensen  
     JAY T. JORGENSEN

DC1 929849v.1