# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| State of Oklahoma, ex rel. W.A. Drew Edmondson, in his capacity as Attorney General of the State of Oklahoma and Oklahoma Secretary of the Environment C. Miles Tolbert, in his capacity as the Trustee for Natural Resources for the State of Oklahoma, | ) ) ) ) ) ) ) ) | |
| | ) | 05-CV-0329 GKF-SAJ |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Tyson Foods, Inc., Tyson Poultry, Inc., Tyson Chicken, Inc., Cobb-Vantress, Inc., Cal-Maine Foods, Inc., Cal-Maine Farms, Inc., Cargill, Inc., Cargill Turkey Production, LLC, George's, Inc., George's Farms, Inc., Peterson Farms, Inc., Simmons Foods, Inc., and Willow Brook Foods, Inc., | ) ) ) ) ) ) ) ) ) | **THE CARGILL DEFENDANTS' MOTION TO COMPEL PRODUCTION OF RESPONSIVE ESI** |
| Defendants. | ) ) | |

Respectfully submitted,

**Attorneys For Cargill, Inc. and Cargill Turkey Production LLC**

John H. Tucker, OBA #9110
Theresa Noble Hill, OBA #19119
Rhodes, Hieronymus, Jones,
   Tucker & Gable, PLLC
100 W. Fifth Street, Suite 400 (74103-4287)
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone:   918/582-1173
Facsimile:   918/592-3390

Delmar R. Ehrich
Bruce Jones
Dara D. Mann
Krisann C. Kleibacker Lee
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone:   612/766-7000
Facsimile:   612/766-1600

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................2

II.   FACTUAL BACKGROUND .....................................................2

III.  ARGUMENT.....................................................................10

    A.   The Option to Produce ESI in Native Format Does Not Eliminate a
        Responding Party's Duty to Identify Responsive
        Information....................................................................10

        1.   Parties cannot produce non-responsive
           and unusable information under the guise
           of a native format production.....................................10

        2.   Parties have a duty to identify responsive
           information.............................................................14

        3.   Responding parties must identify responsive
           information with ESI productions (whether native
           format or otherwise) just as they would with hardcopy
           productions............................................................16

    B.   Plaintiffs Must Identify Responsive ESI in the OWRB and OCC
        Databases....................................................................17

        1.   Plaintiffs Have not Produced ESI in a "Reasonably Usable"
           Form....................................................................18

        2.   Plaintiffs' Production of Mere Access to OWRB and OCC
           Databases Places an Undue Burden on the Cargill
           Defendants............................................................19

         3.   Plaintiffs' Production of Access to OWRB and OCC Databases
           Puts Defendants' Work Product in
           Jeopardy...............................................................20

    C.   Plaintiffs Should Produce All ESI Responsive to the
        Cargill Defendants' Discovery Requests by
        October 15, 2007...........................................................22

IV.   CONCLUSION..................................................................24

## TABLE OF AUTHORITIES

### CASE LAW

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 199 F.R.D. 677,
    684 (N.D. Okla. 2001) ...................................................................20

*Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 540 (D. Kan. 2006)...............11

*O'Bar v. Lowe's Home Ctrs., Inc.*, 2007 WL 1299180 (W.D.N.C. May 2, 2007)............ 11

*Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329, 334 (N.D. Okla. 2002).................. 20

*Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (D. Kan. 1991).......................20

*Stout v. Wolff Shoe Co.*, 2007 WL 1034998, (D.S.C. Mar. 31, 2007).......................... 14, 18, 19, 21

*Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.RD. 649, 657 (D. Kan. 2004)............. 21

*United States v. Nobles*, 422 U.S. 225, 238 (1975)............................................... 20

*Williams v. Taser Int'l*, 2006 WL 1835437 (N.D. Ga. June 30, 2006)...........................11

*Wyeth v. Impax Labs., Inc.*, 2006 WL 3091331 (D. Del. Oct. 26, 2006)....................... .11

### RULES

Fed. R. Civ. P. 26(b)(3)......................................................................... .19, 20

Fed. R. Civ. P. 34................................................................................2, 10, 18

Fed. R. Civ. P. 34(a)(1)(A)...................................................................... .11

Fed. R. Civ. P. 34(b)............................................................................. 16

Fed. R. Civ. P. 34(b)(ii)......................................................................... 10

Fed. R. Civ. P. 37(a).............................................................................1

### OTHER

Fed. R. Civ. P. 34 Note of Advisory Committee on 1980 Amendments.......................11

Advisory Committee Notes for the 2006 Amendment to Rule 34............................. .10

Fed. R. Civ. P. 34(b) Note of Advisory Committee on 2006 Amendments................... 16

Note of Advisory Committee on 2006 Amendments............................................ 11

N.D. Ohio Local Rules: Default Standard for Discovery of Electronically Stored
Information ("E-Discovery") at:
http://www.ohnd.uscourts.gov/Clerk_s_Office/Local_Rules/AppendixK.pdf............... ..11

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| State of Oklahoma, ex rel. W.A. Drew Edmondson, in his capacity as Attorney General of the State of Oklahoma and Oklahoma Secretary of the Environment C. Miles Tolbert, in his capacity as the Trustee for Natural Resources for the State of Oklahoma, | ) ) ) ) ) ) ) ) | |
| | ) | 05-CV-0329 GKF-SAJ |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Tyson Foods, Inc., Tyson Poultry, Inc., Tyson Chicken, Inc., Cobb-Vantress, Inc., Cal-Maine Foods, Inc., Cal-Maine Farms, Inc., Cargill, Inc., Cargill Turkey Production, LLC, George's, Inc., George's Farms, Inc., Peterson Farms, Inc., Simmons Foods, Inc., and Willow Brook Foods, Inc., | ) ) ) ) ) ) ) ) ) | **THE CARGILL DEFENDANTS' MOTION TO COMPEL PRODUCTION OF RESPONSIVE ESI** |
| Defendants. | ) ) | |

Pursuant to Federal Rule of Civil Procedure 37(a), Defendants Cargill, Inc. ("Cargill") and Cargill Turkey Production, LLC ("CTP") (together, the "Cargill Defendants") respectfully move this Court to compel Plaintiffs to produce their ESI responsive to the Cargill Defendants' document requests in a reasonably useable form. To the extent that Plaintiffs have already produced ESI in native format indiscriminately to all Defendants, the Court should compel Plaintiffs to identify that portion of their production alleged to be specifically responsive to the requests of the Cargill Defendants. To the extent that Plaintiffs offer to produce "for inspection" databases with responsive information, the Court should compel Plaintiffs to produce in a reasonably useable form the subset of information from the databases that is specifically responsive to the requests of the Cargill Defendants. Finally, this Court should set a date certain

for the completion of Plaintiffs' production of all ESI responsive to the Cargill Defendants' discovery requests (served on August 22, 2006) by October 15, 2007.

## I.    INTRODUCTION

For months, the Cargill Defendants have awaited completion of Plaintiffs' production of ESI responsive to their discovery requests served over one year ago. Despite the Cargill Defendants' and this Court's prodding, Plaintiffs have yet to produce all responsive ESI in a "reasonably useable form" as is expressly required by Rule 34 of the Federal Rules of Civil Procedure. Instead, Plaintiffs have engaged in a pattern of misinterpreting the explicit terms of this Court's Order and ignoring agreements reached with Defendants in various meet-and-confer conferences. The Plaintiffs' tactics have resulted in overly-long response periods and virtually unusable native-format productions. Plaintiffs excuse their actions by suggesting that so long as they *eventually* produce ESI as it is "ordinarily maintained" in the course of business they have fully complied with their discovery obligations. However, Plaintiffs' ESI production is inconsistent with Rule 34, case law, and this Court's prior orders. Having dragged out their ESI production for months, the time has now come for Plaintiffs to fulfill their duties under the Federal Rules and for this Court to set a date certain for Plaintiffs to fully and completely produce all responsive ESI in a reasonably usable format.

## II.    FACTUAL BACKGROUND

For the convenience of the Court, the Cargill Defendants provide the following timeline of events related to the instant Motion.

**08/22/06**    The Cargill Defendants serve their First Amended Interrogatories and Requests for Production of Documents, which included requests for ESI.

**10/31/06**    Plaintiffs serve their Objections and Responses to the Cargill Defendants' First Amended Requests for Production of Documents directing the Defendants to

2

documents at Oklahoma Department of Environmental Quality ("ODEQ"); Oklahoma Water Resources Board ("OWRB"); Oklahoma Corporation Commission ("OCC"); Oklahoma Scenic Rivers Commission ("OSRC"); Oklahoma Secretary of Environment ("OSE"); Oklahoma Department of Agriculture Food and Forestry ("ODAFF"); Oklahoma Department of Tourism and Recreation ("ODTR"); and Oklahoma Department of Wildlife Conservation ("ODWC"). (Docket No. 1054 Exs. 1-2.) Plaintiffs did not actually produce any documents, either ESI or hard copy, at this time.

**12/05/06**    The Court enters its Order Implementing Rules for Discovery of Electronically Stored Information ("First ESI Order") (Docket No. 996.) Section I(B) of that Order mandated that on or before January 15, 2007, Plaintiffs and Defendants should meet and confer to discuss a variety of subjects concerning ESI, including but not limited to identification of accessible ESI and the method and costs of retrieving ESI.

**1/08/07**    All Defendants attempt to meet with Plaintiffs to discuss common ESI issues. Plaintiffs do not have all the personnel they deem necessary for the discussion present and ask to reschedule the meeting. Plaintiffs further indicate that, in the meantime, they will provide Defendants with "handouts" explaining their ESI. (Ex. 1: T. Hill E-mail of January 5, 2007, confirming telephonic conference.)

**1/23/07**    Plaintiffs provide Defendants with "ESI Questionnaires" for the OWRB, ODAFF, ODTR, OSRC, OCC, ODEQ, and ODWC. The Questionnaires purport to respond to the items of discussion required by Section I(B) of the Court's First ESI Order. (Ex. 2: R. Garren Letter of January 23, 2007.)

**2/09/07**    Telephonic conference in which Plaintiffs provide supplemental information regarding ESI available at ODEQ, OWRB and ODAFF. Defendants ask Plaintiffs about potentially responsive information available at other agencies and whether Plaintiffs would also identify potentially responsive ESI not just at "agencies" but also at "offices" of Plaintiffs, including the offices of the Attorney General, Governor, and legislature. In response, Plaintiffs merely state that they will get back to Defendants on how broadly they define "State" for the purposes of this litigation. (Ex. 3: S. Arens E-mail of February 6, 2007, confirming telephonic conference.)

**2/20/07**    The parties agree to a Stipulated Order Implementing Parties Agreement Concerning Discovery of Electronically Stored Information. (Docket No. 1056.) The parties agree:

> (a) that supplemental initial disclosures regarding ESI would be produced on April 1, 2007;
> (b) that the disclosures required by paragraph I(B) of the Court's First ESI Order would be completed by March 15, 2007; and

          (c) to "continue discussion regarding the format in which ESI will be produced only as necessary to determine an appropriate and reasonably [*sic*] method to produce requested ESI."

**3/13/07**        Having received no further information concerning production of ESI from Plaintiffs since the February 9, 2007 teleconference, Ms. Dara Mann, counsel for the Cargill Defendants, sends a detailed letter to Plaintiffs outlining the deficiencies and unaddressed issues in the questionnaires provided by Plaintiffs. (Ex. 4: D. Mann Letter of March 13, 2007.)

**3/28/07**        Mr. Hammons sends a brief e-mail to Ms. Mann asking her to explain two sentences of Ms. Mann's nine-page deficiency letter of March 13, 2007. He apologizes for the delay and indicates that the Plaintiffs are preparing a formal response. (Ex. 5: T. Hammons E-mail of March 28, 2007.)

**4/4/07**        Ms. Mann replies to Mr. Hammons' March 28 e-mail, providing, as requested, more information regarding why the information conveyed by the Plaintiffs during the February 9 meet and confer was incomplete. (Ex. 6: D. Mann E-mail of April 4, 2007.)

**4/6/07**        The Court enters its Second ESI Order. The Order encapsulates the parties' agreements as reflected in the parties' February 20, 2007 stipulation, except that the deadline for disclosure is reset to April 15, 2007. (Docket No. 1125.)

**4/11/07**        Ms. Theresa Hill, counsel for the Cargill Defendants, requests via e-mail a meet and confer with Plaintiffs regarding completing their ESI disclosures as to all agencies and offices with potentially responsive information. (Ex. 7: T. Hill E-mail of April 11, 2007.)

**4/12/07**        Mr. Hammons replies to Ms. Hill's e-mail, proposing a meet and confer on April 16th. He indicates for the first time Plaintiffs' position that the Court's First ESI Order required **only** disclosure of ESI upon which Plaintiffs based their claims or defenses in accordance with FRCP 26(a)(1). Accordingly, explained Mr. Hammons, Plaintiffs would not be providing any information possessed by other agencies or offices but would supplement its Rule 26 Initial Disclosures. (Ex. 7: T. Hammons E-mail of April 12, 2007.)

**4/13/07**        Defendants file a Status Report requesting that the Court clarify its First ESI Order at the April 27, 2007 hearing. (Docket No. 1134.)

**4/16/07**        Plaintiffs and Defendants meet and confer again regarding ESI issues. Ms. Mann attempts to discuss the various ESI disclosure deficiencies raised in her March 13th letter. However, Plaintiffs assure Defendants that the concerns raised in that letter will be addressed in their supplemental Rule 26 Initial Disclosures which would be provided later that day.

        Defendants receive Plaintiffs' supplemental Rule 26 Disclosures.

4/26/07      After receiving Plaintiffs' Supplemental Initial Disclosures, Ms. Mann sends a second ESI deficiency letter that, once again, explains in great detail the Cargill Defendants' concerns about the inadequacy of the information provided by Plaintiffs regarding their discoverable ESI. (Ex. 8: D. Mann Letter of April 26, 2007.)

4/27/07      The parties appear before the Court for a hearing on the Cargill Defendants' Motions to Compel (Docket No. 1054) and to Address Electronic Discovery Issues (Docket No. 1135.)  At the hearing, the parties communicate to the Court their prior agreement that ESI production would be completed on or before July 2, 2007.  The Court also clarifies that the disclosure requirements in its First ESI Order applied not just to ESI upon which a party might rely to support its claims or defenses under Rule 26(a)(1) but also to any ESI potentially responsive to outstanding discovery requests.  This clarification is contained in the Court's Order dated May 17, 2007. (Docket No. 1150 at 9-10.)

5/4/07      E-mail from Ms. Hill to Mr. Hammons and Mr. Richard Garren requesting a response from Plaintiffs regarding the concerns raised by the Cargill Defendants about Plaintiffs' ESI disclosure via the Cargill Defendants' April 26th deficiency letter and the Court's ruling at the April 27th hearing. (Ex.9: T. Hill E-mail of May 4, 2007.)  During this time, the Cargill Defendants also placed phone calls inquiring as to the same.

5/17/07      Another e-mail from Ms. Mann to Mr. Hammons and Mr. Garren indicating that the Cargill Defendants had inquired on a number of occasions as to when they could expect a response from Plaintiffs regarding the concerns raised by the Cargill Defendants in Ms. Mann's April 26th deficiency letter and the Court's ruling at the April 27th hearing, and requesting a response. (Ex.10: D. Mann E-mail of May 17, 2007.)  During this time, the Cargill Defendants also placed phone calls inquiring as to the same.

     Mr. Hammons responds to the Cargill Defendants' inquiries, not with a substantive answer to the questions raised in their April 26th letter, but with a proposal to hold another meet and confer with all Defendants regarding Plaintiffs' ESI. (Ex.11: T. Hammons E-mail of May 17, 2007.)

     The Court enters an Order memorializing the parties agreement that "ESI production regarding **currently outstanding discovery requests** will be completed on or before July 2, 2007." (Docket No. 1150) (emphasis added).

6/6/07      Plaintiffs and Defendants meet and confer.  Plaintiffs again refuse to respond substantively to the concerns raised in the Cargill Defendants' April 26th ESI letter.  Rather, Plaintiffs take the position that they are interested in moving towards production of ESI rather than continuing the disclosure process mandated by the Court.  Plaintiffs propose that, for each State agency or office with

responsive ESI, Defendants hold separate ESI meet and confers at which the parties discuss the mechanics of the ESI production to be made by Plaintiffs. In advance of each meeting, Plaintiffs propose to provide to Defendants lists of the responsive ESI possessed by each agency.

6/8/07      After considering the proposal made by the Plaintiffs at the June 6 meet and confer, Defendants jointly reject this approach. (*See* Ex. 12: T. Hill Letter of June 8, 2007.) Not only did the proposed approach unnecessarily elongate the process for production of Plaintiffs' responsive ESI, but it also appeared to unreasonably shift the burden of identifying and producing ESI located at various agencies from Plaintiffs to Defendants. Accordingly, Defendants respond to Plaintiffs that their collective preference is for Plaintiffs to produce their ESI responsive to each Defendant's requests in TIFF format. However, in an effort to dispense with unnecessary caviling over the minutia of the ESI production to be made at each and every agency, Defendants agree to accept Plaintiffs' ESI in the format of Plaintiffs' choosing **so long as** that format was both "(a) reasonably usable and accessible and (b) produced in such a manner as to allow each Defendant the ability to understand the information that is provided that is responsive to its specific requests."

6/21/07     Plaintiffs respond to Defendants with a letter indicating that they will produce their responsive ESI in native format. (Ex. 13: T. Hammons Letter of June 21, 2007.) Plaintiffs further indicate that, despite agreeing to the July 2 ESI production date, they interpret the Court's Order requiring production of all ESI on July 2, 2007 to pertain **only** to those "outstanding" agencies at which hard copy productions had been completed (OSRC, ODEQ, OWRB, OSE and OCC). Plaintiffs further request a meet and confer on June 22, 2007 to discuss their proposal.

6/22/07     Plaintiffs and Defendants meet and confer. Defendants collectively note their disagreement with Plaintiffs' construction of the Court's ESI Order as requiring production by July 2nd only as to "outstanding" agencies. Rather, as clearly set forth in the terms of the Court's Order and in the hearing transcript, Defendants reiterate their understanding that **all** ESI responsive to outstanding discovery requests is to be produced by July 2nd. With regard to Plaintiffs' decision to produce its responsive information in native format, rather than the TIFF images requested by Defendants, Defendants agree to accept Plaintiffs' production **as long as** Plaintiffs provide Defendants with the specific queries, information, and technical support that would allow them to ascertain the ESI provided in response to their specific requests. During this call, Plaintiffs assure Defendants that they did not intend to simply "dump" lots of data on Defendants and that Plaintiffs will provide the queries Defendants need to identify the ESI responsive to each of their requests.

6/26/07     Letter from Ms. Mann to Mr. Hammons summarizing the Cargill Defendants' understanding of the agreements reached in the June 22, 2007 teleconference with

Plaintiffs. (Ex. 14: D. Mann Letter of June 26, 2007.) To facilitate Plaintiffs' ESI production, the Cargill Defendants provide (at Plaintiffs' request during the June 22nd teleconference) two hard drives upon which Plaintiffs could upload separately the portion of ESI responsive to the Cargill Defendants' discovery requests. (Ex.15, T. Hill Letter of June 27, 2007.) Each hard drive contained 500 gigabytes of space. Thus, each could have easily accommodated Plaintiffs' ESI production (which as of August 9, 2007 amounted to less than 73 gigabytes of data).

6/27/07   Despite the agreements the Cargill Defendants believed the parties had reached on June 22, 2007, Plaintiffs file a Motion for Expedited Hearing on ESI Production. The motion fails to specify the nature of Plaintiffs' concerns or the relief they seek from the Court. Plaintiffs do not attempt to substantively meet and confer with Defendants in advance of the filing their motion, but instead give Defendants only two hours to indicate whether they would "agree to the motion."

6/28/07   The Court holds a hearing regarding pending motions, including Plaintiffs' Motion for Expedited Hearing on ESI Production. The Cargill Defendants learn, for the first time, of Plaintiffs' apparent plan to completely disregard the agreement they reached with Defendants regarding providing queries and information sufficient to allow each Defendant to identify the ESI being produced responsive to its specific requests. Plaintiffs assert that they did not intend to differentiate their production to Defendants in any regard and would, in fact, dump all information they located upon all Defendants without regard to whether particular Defendants had in fact requested the produced information. (Ex.16: June 28, 2007 Hrg. Tr. at 166:3-8; 170:2-9; 171:8-172:3.)

Plaintiffs suggest that they will produce all their ESI on July 2, with the exception of a single area of incomplete production. (*Id*. at 163:9-17.) They explain that they are still searching their e-mail but will proceed with production promptly. (*Id*.) Plaintiffs indicate to the Court that issues with these remaining e-mails could be resolved within 30 days. (*Id*. at 175:10-15; 175:25-176:4.) In light of the Plaintiffs' statements, the Cargill Defendants understand that Plaintiffs intend to produce on July 2 all ESI responsive to discovery requests outstanding as of the April 28 hearing, with the exception of e-mails.

7/1/07    The Cargill Defendants produce all their ESI outstanding as of the April 27 hearing as agreed and as ordered by this Court. (Ex. 17: D.Mann Letter of June 29, 2007.)

7/2/07    Plaintiffs produce:
          (a) roughly 70 gigabytes of data representing databases for only six agencies;
          (b) a list of publicly available information on State websites and the ESI contained therein; and

(c) the names of two other databases, one for the OWRB, an ORACLE database, and one for the OCC, a SQL 7 database. (Ex. 18: R. Garren letter of July 2, 2007.)

Instead of producing relevant information from the OWRB and OCC databases, Plaintiffs simply offer make them "available for inspection at the respective agencies at a mutually agreeable time." (*Id.*)  Plaintiffs' purported reason for making the databases "available," rather than meeting their discovery obligations, is that they have "concerns regarding the accessibility of the databases." (*Id.*)

Plaintiffs production is not made to Defendants or their counsel on the multiple hard drives the Defendants had provided.   Instead, without any advance discussion with Defendants, Plaintiffs deliver **all** of the ESI they actually produce on a **single** hard drive to RLS, a third-party vendor unilaterally selected by Plaintiffs. (Ex. 18: R. Garren Letter of July 2, 2007.)   Contrary to the prior agreement, Plaintiffs' data on the single hard drive is not differentiated by Defendant. (*Id.*)   Despite the fact that the 500-gigabyte hard drives provided by the Cargill Defendants had more than adequate space to accommodate the 73-gigabyte production by Plaintiffs, Plaintiffs state that some of the hard drives are too small to accommodate their production. (*Id.*)   Further, Plaintiffs indicate that their ESI production is not yet complete. (*Id.*)

| | |
|---|---|
| **7/6/07** | The Court issues an Order memorializing the parties' statements at the June 28 hearing regarding ESI production.  The Order requires Plaintiffs to produce all remaining e-mails on or before August 1, 2007. (Docket No. 1207.) |
| **7/12/07** | The Cargill Defendants, on behalf of all Defense ESI Liaisons, request a prompt meet and confer to discuss Plaintiffs' inadequate production of ESI, including: |

(a) Plaintiffs' failure to provide Defendants with precise information, queries, and technical support necessary to identify native format ESI specifically responsive to each  individual Defendant's discovery requests; and

(b) Plaintiffs' offer to make the OWRB and OCC databases "available for inspection" at the respective agencies instead of producing relevant information because of "technical difficulties." (Ex. 19: T. Hill Letter of July 12, 2007.)

At the meet and confer, Plaintiffs contend that they are not required to take any further action with regard to either of these inadequacies because they are producing information as it was kept in the "ordinary course of business." Plaintiffs also state that "technical difficulties" prevent them from providing the responsive information in the OWRB and OCC databases to Defendants in native format, although Defendants did not request a native format production.  Plaintiffs flatly refuse to discuss the nature of these "technical difficulties" with Defendants.

**8/1/07**      Plaintiffs produce six discs of ESI totaling less than 3 gigabytes of data that purportedly represent e-mails from OWRB, ODEQ, OSE, OSRC, OCC (partial), and ODWC, as well as databases from ODAFF and some miscellaneous material from ODWC. (Ex.20: R. Garren Letter of Aug. 1, 2007.)

Plaintiffs also file a "Partially Unopposed Motion for Extension of Time" indicating that they "committed to the Court to produce [] electronically stored information on August 1, 2007," but request an extension until August 8 to produce ESI. (Docket No. 1226.)

**8/3/07**      The Court grants Plaintiffs' August 1 motion for extension and orders Plaintiffs to produce all remaining e-mail by August 8, 2007. (Docket No. 1228.)

**8/6/07**      Plaintiffs file a Motion for Clarification requesting that this Court interpret its August 3, 2007 Order as requiring that **only** e-mails from the OCC and ODEQ be provided on August 8, 2007. (Docket No. 1229.) Plaintiffs attempt to explain their ongoing cycle of delay by stating that, as of August 8, they had produced 177 gigabytes of data in native format. (*Id.*) However, even including Plaintiffs' August 8 production, the total amount of ESI produced by Plaintiffs as of August 9 amounted to less than 73 gigabytes of data.

**8/20/07**     The Court grants Plaintiffs' Motion for Clarification. (Docket No. 1246.)

**9/4/07**      Plaintiffs produce "relevancy logs" purporting to broadly identify which of the produced databases correspond to the Cargill Defendants' interrogatories. The relevancy logs are not complete as to all ESI produced by Plaintiffs to date. Moreover, the relevancy logs fail to provide information regarding how the Cargill Defendants can identify or segregate the purportedly responsive information contained within the "relevant" database from that which is non-responsive. (Ex. 21: T. Hammons Letter of Sept. 4, 2007.)

**9/6/07**      Plaintiffs' ESI production remains unusable and incomplete. Plaintiffs continue to deny any obligation to identify the information responsive to the Cargill Defendants' requests within their blanket native format production to all defendants.    Plaintiffs refuse to produce responsive information from the ORACLE and SQL databases at ODWB and OCC, unless Defendants agree to inspect the information on the State's premises.    Plaintiffs further refuse to provide a deadline as to when the Cargill Defendants can expect their ESI production to be complete.

As this factual background suggests, relying upon the excuse of an "ordinarily maintained" (a.k.a. native format) method of ESI production, Plaintiffs have failed to produce any ESI in a reasonably useable form as required by the Federal Rules of Civil Procedure and

surrounding case law. Moreover, Plaintiffs have unnecessarily prolonged their ESI production to such an extent that the Cargill Defendants now ask this Court to set a date certain by which all ESI responsive to their discovery requests must be produced. The Court may have thought it had already set such a date; the Cargill Defendants certainly thought so. The expected production, however, has not occurred, and the Court should step in once again to see that it does.

## III.   ARGUMENT

### A.   The Option to Produce ESI in Native Format Does Not Eliminate a Responding Party's Duty to Identify Responsive Information.

1.   Parties cannot produce non-responsive and unusable information under the guise of a native format production.

The fundamental misunderstanding that has given rise to this motion is Plaintiffs' misplaced belief that Rule 34 requires production of ESI **only** in the form in which it is "ordinarily maintained" by the entity, without more.[1]  However, Rule 34 is not so limited. Rather, it provides that if a requesting party does not specify the form for ESI production, "a responding party must produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably useable." Fed. R. Civ. P. 34(b)(ii). The Advisory Committee Notes for the 2006 Amendment to Rule 34 clearly establish that the

---

[1] The Cargill Defendants have never specified that Plaintiffs' responsive ESI should be produced as it is "ordinarily maintained" (i.e. native format). Rather, as noted in the timeline provided, the Cargill Defendants expressed a preference for production of the State's responsive ESI in **TIFF image** format. However, to avoid perpetual discussions regarding the individual details of ESI productions from the many agencies and offices of the State of Oklahoma with responsive information, the Cargill Defendants (and all other Defendants) took the more flexible approach of agreeing to accept Plaintiffs' responsive information in either native or TIFF format, as long as the ultimate form of production chosen by the State was both (1) reasonably useable and (2) specifically responsive to the Cargill Defendants' discovery requests.  Though the Cargill Defendants understood Plaintiffs to have agreed to the flexible approach proposed by the Cargill Defendants, when the deadline for ESI production arrived, Plaintiffs opted to produce the portion of their ESI that was ready to all Defendants in native format without regard to whether that ESI was reasonably useable by Defendants in native format not actually responsive to a particular Defendant's requests.

10

purpose of this section is not to mandate native format productions in all circumstances, but instead to focus on the reasonableness and utility of the intended production format: "The rule does **not** require a party to produce electronically stored information in the form in which it is ordinarily maintained, as long as it is produced in a reasonably useable form." (emphasis added). In fact, a number of Federal District Courts have set TIFF or PDF production as the **default** standard for production. See, e.g., *O'Bar v. Lowe's Home Ctrs., Inc.*, 2007 WL 1299180, at \*4 (W.D.N.C. May 2, 2007) (relying upon guidelines from the District of Maryland); *Wyeth v. Impax Labs., Inc.*, 2006 WL 3091331, at \*2 (D. Del. Oct. 26, 2006) (using guidelines from the District of Delaware); *see* also N.D. Ohio Local Rules: Default Standard for Discovery of Electronically Stored Information ("E-Discovery") at the following internet site:

http://www.ohnd.uscourts.gov/Clerk_s_Office/Local_Rules/AppendixK.pdf.

Even if a party does choose to produce ESI as maintained in the ordinary course of business, it must still produce the information in a "reasonably usable" form. Fed. R. Civ. P. 34(a)(1)(A); Note of Advisory Committee on 2006 Amendments; *Williams v. Taser Int'l*, 2006 WL 1835437, at \* 7 (N.D. Ga. June 30, 2006). The requesting party must be able to "obtain, with reasonable effort, the documents responsive to their requests." *Williams*, 2006 WL 1835437, at \* 7. As the Northern District of Georgia explained, and this Court has recognized, Rule 34 does not allow parties to "hide a needle in a haystack by mingling responsive documents with large numbers of non responsive documents." *Id.*; *see also* Docket No. 1150 at 5. Instead, the Rule attempts to "facilitate the discovery of relevant information, and to prevent parties from deliberately mixing critical documents with others in the hope of obscuring significance." *Williams*, 2006 WL 1835437, at \* 7 (citation omitted); *see also* Fed. R. Civ. P. 34 Note of Advisory Committee on 1980 Amendments; *see also Johnson v. Kraft Foods N. Am., Inc.*, 236

11

F.R.D. 535, 540 (D. Kan. 2006) (noting that Rule 34(b) was amended in 1980 to prevent discovery abuse, specifically, to prevent "parties from deliberately mixing critical documents with others in the hope of obscuring significance.") In sum, the Federal Rules and interpreting case law are clear that the **option** to produce ESI in native format should not turn the discovery process into a hunt for hidden treasure without a map, compass, or guide.

Yet in electing to produce their ESI as it is "ordinarily maintained," without anything more, Plaintiffs have done just that. The productions of ESI from the State contain volumes of data differentiated only by the agency from which they were produced. In many instances it is impossible to associate the provided data with the electronic systems that were described in Plaintiffs' ESI Supplemental Disclosures and during the parties' meet and confers. In the few instances where it is possible to associate the data produced with a described system, it is virtually impossible to discern what is relevant, much less responsive.

For example, Plaintiffs produced a 1.4 gigabyte "Bacti" database from ODEQ. The database is comprised of three tables entitled "Project," "Samp" and "Result." (Ex. 22: Exemplar of ESI in Bacti database.) Through the process of deduction, the Cargill Defendants assume that the referenced tables represent projects, samples, and results from bacterial water testing conducted in the State of Oklahoma. However, Plaintiffs have provided no information regarding the nature of the "projects" or the protocol used to conduct the "sampling." Thus, the Cargill Defendants lack any meaningful method for interpreting the "results" provided. Together, these three tables contain in excess of 1.3 million records. The largest table contains over 700,000 records, which, when printed at even 50 records to a page, would consist of approximately 14,000 pages. Although the Cargill Defendants have ascertained that these tables

are – in some way – interrelated, the Cargill Defendants are left with nothing but their own guesswork as to the relevance and meaning of the data provided.

The problems with Plaintiffs' "native format" production are two-fold. First, even with the Cargill Defendants' limited understanding of these databases (gleaned mostly through surmise), it is clear that the databases as produced by Plaintiffs contain significant amounts of information irrelevant to the Cargill Defendants' discovery requests. As the Court can see from the representative Bacti database report provided with this memorandum as Exhibit 22, the tables provide county "codes" (which are not defined) and reference a number of locations indisputably outside the Illinois River Watershed, including such locations as Tonkawa, Altus, Shidler, Guthrie, Waurika and Ft. Sill. Second, Plaintiffs have not provided the Cargill Defendants with the necessary tools to cull out the portion of produced data that is responsive to their requests and/or relevant to the IRW. Plaintiffs did not produce a description of the database fields for each table provided so that the Cargill Defendants could understand the database's structure. Nor did Plaintiffs provide any queries, electronic forms or other instructions that could assist the Cargill Defendants in using the database. Significantly, Plaintiffs even failed to provide the information needed to translate the codes used within the database that would allow the Cargill Defendants to even read the tables. Although the Cargill Defendants focus on the Bacti database by way of example, these problems exist with regard to the entire set of ESI produced by Plaintiffs to date.

Simply put, in choosing to produce their ESI as it is ordinarily maintained without also providing the Cargill Defendants the necessary queries, information, and support to make that data reasonably useful, Plaintiffs have buried their responsive ESI in a sea of non-responsive data that the Cargill Defendants cannot meaningfully navigate.

2. Parties have a duty to identify responsive information.

Parties have a "necessary and foreseeable" duty to retrieve relevant information from their own record-keeping system through the course of discovery. *See Stout v. Wolff Shoe Co.*, 2007 WL 1034998, at *2 (D.S.C. Mar. 31, 2007). Plaintiffs attempt to get around this duty by suggesting that because their ESI is searchable as it is "ordinarily maintained," all that is required of them is to produce the data in its native format. Plaintiffs apparently assume that the Cargill Defendants could figure out their own searches to see what responsive information might be contained in the data and then somehow interpret the responsive data.

However, Plaintiffs' view of acceptable ESI production turns the process on its head. First, in this case, the Cargill Defendants have not expressed any desire to inspect or to search the various databases and forms of ESI maintained at the many different agencies and offices of the State of Oklahoma. All that the Cargill Defendants request is production in a reasonably usable format of the ESI maintained by these agencies and offices *responsive to their requests*. Further, many of those requests ask Plaintiffs to produce the documents that *Plaintiffs* contend support their various claims or propositions. (*See, e.g.*, Ex. 23: Cargill Inc.'s Amended First Interrogatories and Requests for Production of Documents to Plaintiffs, Interrogatory Nos. 1-7, Request for Production Nos. 1-3; and Cargill Turkey Production LLC's Amended First Interrogatories and Requests for Production of Documents to Plaintiffs, Interrogatory Nos. 11-16, Request for Production Nos. 1-2, 56, 58.) No amount of searching or forensic examination of Plaintiffs' databases can identify such documents; only Plaintiffs themselves can do so.

14

Second, Plaintiffs have never denied that they have the ability to provide to or identify for the Cargill Defendants only that portion of produced ESI that responds to their requests. Because employees of the State of Oklahoma making use of the pertinent electronic systems presumably generate search queries and reports for the information they use on a day-to-day basis, Plaintiffs could easily rely upon personnel already skilled in the use of these systems to generate the queries and reports responsive to the Cargill Defendants' requests.  Once this responsive information is obtained from the systems, Plaintiffs could produce this subset of responsive information either in TIFF image format (as requested) or in native format.

Alternatively, if Plaintiffs choose to replicate the entire electronic system (as they have done in their production to the third-party vendor), they could provide to the Cargill Defendants the list of search queries that would generate the information and reports responsive to the Cargill Defendants' requests and, if needed, additional technical support.  Plaintiffs must have such queries, or they could not have determined that the databases produced were responsive.

Through either of these methods, Plaintiffs could effectively and efficiently provide to the Cargill Defendants the ESI responsive to their requests in a reasonably usable format.  With fourteen defendants and numerous discovery requests at play, it is impossible for the Cargill Defendants to obtain, with any amount of effort, the subset of ESI purportedly responsive to their requests if it is buried among information that is responsive and relevant only to the requests of other Defendants.  The amount of data and the number of Defendants in the instant case multiply considerably the amount of time and effort it would require a typical defendant to sift through a plaintiff's ESI to find information responsive to its requests for production.  Without responsive ESI in TIFF format or the specific queries and technical support needed to search native format databases, the Cargill Defendants are hard-pressed to separate relevant from irrelevant ESI in

general, and totally unable to discern what ESI is purportedly responsive to the Cargill
Defendants' specific requests.

3.      Responding parties must identify responsive information with ESI productions
        (whether native format or otherwise) just as they would with hardcopy
        productions.

Similar to hardcopy productions, "the production of electronically stored information
should be subject to comparable requirements to protect against deliberate or inadvertent
production in ways that raise unnecessary obstacles for the requesting party." Fed. R. Civ. P.
34(b) Note of Advisory Committee on 2006 Amendments (also noting that "discovery of
electronically stored information stands on equal footing with discovery of paper documents.")

With regard to hardcopy productions, this Court has made clear in its instructions that
non-responsive documents should not be overwhelmingly intermingled with responsive
documents. In its Order of May 17, the Court addressed the Cargill Defendants' complaints that
Plaintiffs had produced numerous nonresponsive documents in their hardcopy productions in the
name of production in the usual course of business pursuant to Federal Rule of Civil Procedure
34(b). The Court found "that removal to cardboard boxes does not destroy the 'ordinary
business' distinction but it does add the precaution that only responsive documents be placed in
the boxes." (Docket No. 1150 at 7.) The Court correctly concluded that the "[i]nclusion of
nonresponsive documents clearly violates the letter and spirit of the rule [34(b)]." (*Id.*)

Just as the Court found it impermissible for Plaintiffs to point the Cargill Defendants to a
room full of cardboard boxes and direct it to locate with insufficient indices the information
purportedly responsive to their requests (as opposed to the requests of other Defendants), this
Court should likewise find impermissible Plaintiffs' attempt to replicate databases and other

forms of ESI without any effort to explain or identify the information within the databases responsive to the Cargill Defendants' requests. As Plaintiffs cannot claim that the manner in which hardcopy documents are kept "in the ordinary course of business" relieves it of the duty to identify and produce responsive documents, Plaintiffs similarly cannot reasonably contend that the manner in which their ESI is "ordinarily maintained" excuses their duty to identify and produce the pertinent responsive ESI.

**B.     Plaintiffs Must Identify Responsive ESI in the OWRB and OCC Databases.**

Plaintiffs have informed the Cargill Defendants that two databases, an ORACLE database at the OWRB and a SQL database at OCC, contain responsive ESI, but because of "technical difficulties" they are unable to provide these databases on hard drives as they did with other databases. During a meet and confer on this topic, Plaintiffs' counsel refused to discuss or to provide any details regarding the nature of the "technical difficulties" that precludes production on hard drives. Plaintiffs' counsel could not address how these "technical difficulties" could be resolved by an on-site inspection or how any retrieved data from an on-site review could be translated into a *reasonably usable* form.

Nevertheless, due to these undisclosed "technical difficulties," Plaintiffs have taken the position that simply making the OWRB and OCC databases available for on-site inspection suffices as adequate production because the ESI would be produced as it is "ordinarily maintained" by those agencies. Plaintiffs' interpretation of their obligations is overly simplistic. Making the OWRB and OCC databases available for "inspection," even with assistance and limited training from Plaintiffs' technical staff, is not adequate production because it improperly shifts the burden and expense of identifying responsive information to the Cargill Defendants. In addition, the "inspection" may result in significant information being unknowingly withheld from the Cargill Defendants and important work product inadvertently revealed to Plaintiffs.

1.    Plaintiffs Have Not Produced ESI in a "Reasonably Usable" Form.

A responding party cannot meet its discovery obligations by simply providing the requesting party access to an electronic warehouse and allowing that party's technicians to search it for responsive documents. *See Stout*, 2007 WL 1034998, at *2-3 (a "party cannot, instead of searching its warehouse of manually-maintained documents, allow access to the warehouse by providing the requesting party with a key to the warehouse door.")   Yet in requiring the Cargill Defendants to search the OWRB and OCC databases on site, Plaintiffs have again attempted to do exactly what is prohibited.   They have neither produced their ESI in a reasonably usable form nor appropriately "translated" it. *See* Fed. R. Civ. P. 34.   The Cargill Defendants are not familiar with either the content or structures of these databases.   Nor do they have any idea how to search the databases or access this information.   Plaintiffs, on the other hand, are presumably extensively familiar with the information that these databases contain, where the relevant data within them is located, and the best way to search the databases to obtain the relevant data.

While Plaintiffs have offered to make technical support available to assist the Cargill Defendants with their searches of the OWRB and OCC databases, this does not make the information "reasonably usable" to the Cargill Defendants.   In the absence of specific search terms and queries, and a comprehensive tutorial on the contents and organization of the databases, the Cargill Defendants will still be at a severe disadvantage with regard to the collection of information from these databases.   Plaintiffs would obviously be more successful in culling relevant, responsive information from these databases than would the Cargill Defendants.

18

2.    Plaintiffs' Production of Mere Access to OWRB and OCC Databases
      Places an Undue Burden on the Cargill Defendants.

Plaintiffs' proposal to make the OWRB and OCC databases on-site inspection, without more, tries to absolve Plaintiffs of their own discovery duties while placing an undue burden on the Cargill Defendants. Parties have a "necessary and foreseeable" duty to retrieve relevant information from their own record-keeping system through the course of discovery. *See Stout*, 2007 WL 1034998, at *2 (noting that the responding party is typically responsible for "any difficulties in retrieving relevant information because it chose its own computerized record-keeping system" and that "translating information obtained from a computer database into a reasonably understandable form is a necessary and foreseeable burden on the responding party.") By merely providing the requesting party access to its files, a party improperly shifts their duty to locate and translate relevant information, and the burden and expense of discovery, to the requesting party. *Id.*

Here, Plaintiffs suggest that instead of Plaintiffs taking the time to review their own databases, **each Defendant** (not just the Cargill Defendants) must travel to Plaintiffs' places of business and spend countless hours undergoing training and reviewing unfamiliar information. A large amount of this time will inevitably be spent learning the structure, content, and organization of the databases, not to mention learning the specific methods of searching and reviewing the databases to obtain relevant data. Nothing in the Federal Rules permits Plaintiffs to impose such a burden on Defendants, particularly where Plaintiffs' own employees already have and could easily employ this expertise. Again, Plaintiffs' employees must already have employed this expertise, or Plaintiffs could not know that the databases contain responsive information.

19

3.      Plaintiffs' Production of Access to OWRB and OCC Databases Puts
        Defendants' Work Product in Jeopardy.

Finally, Plaintiffs' proposal to make the OWRB and OCC databases "available" to the
Cargill Defendants threatens to reveal Defendants' work-product.   Federal Rule of Civil
Procedure 26(b)(3) defines work product as (1) documents or tangible things (2) prepared in
anticipation of litigation or for trial (3) by or for another party or by or for that other party's
representative.  A court may order work product to be disclosed "**only** upon a showing that the
party seeking discovery has a substantial need of the materials in the preparation of the party's
case and that the party is unable without undue hardship to obtain the substantial equivalent of
the materials by other means."  Fed. R. Civ. P. 26(b)(3) (emphasis added).   "Opinion work
product"– which includes mental impressions, conclusions, opinions, and legal theories of an
attorney regarding the litigation – "enjoys a nearly absolute immunity and can be discovered
only in very rare and extraordinary circumstances." *Snowden v. Connaught Lab., Inc.*, 137
F.R.D. 325, 332 (D. Kan. 1991) (quotation omitted); *see also Sinclair Oil Corp. v. Texaco, Inc.*,
208 F.R.D. 329, 334 (N.D. Okla. 2002) ("Opinion work product is, basically, the mental
impressions of the attorney."); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 199
F.R.D. 677, 684 (N.D. Okla. 2001) (noting that "opinion work product . . . is afforded greater
protection than fact work product); *United States v. Nobles,* 422 U.S. 225, 238 (1975) ("At its
core, the work product doctrine shelters the mental processes of the attorney, providing a
privileged area within which he can analyze and prepare his client's case.")

According to Plaintiffs, the only way for Defendants to access the information on the
OWRB and OCC databases is to search them on Plaintiffs' computers and systems.   If
Defendants do as Plaintiffs suggest, their search terms and queries will be memorialized on
Plaintiffs' systems.  The search terms and queries that Defendants use to search Plaintiffs'

databases constitute the mental impressions, conclusions, opinions, and legal theories of Defendants' attorneys regarding what facts and issues are critical to their case. These terms and queries are clearly "opinion work product" and protected from discovery, unless Plaintiffs can show extraordinary need.

Although Plaintiffs have told the Cargill Defendants that they are not interested in the search terms and queries that Defendants may use, this is no consolation, given that this information will be permanently available at any time to Plaintiffs, as well as any of their agents or employees (many of whom may be non-lawyers and unfamiliar with the concept of work-product privilege).

In sum, whether because of their unexplained insistence on producing all of their ESI in native format (without regard to the preferences of the Cargill Defendants) or for other reasons equally unknown, Plaintiffs seek to force the Cargill Defendants to engage in a burdensome and costly inspection process at OWRB and OCC that is not certain to identify all potentially responsive information and that might leave their work product subject to inadvertent disclosure. This attempt to shift Plaintiffs' duties under the rules is plainly impermissible. *See Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.RD. 649, 657 (D. Kan. 2004) (noting that allowing a party to satisfy its electronic discovery obligations by "simply turning over its two computers . . . for inspection would unfairly shift the burden and expense of discovery . . . and could potentially result in relevant and otherwise discoverable information being shielded" from the opposing party); *Stout*, 2007 WL 1034998 at *3 (stating that "the responding party cannot passively allow access to its computers for discovery because it impermissibly shifts the burden and expense of discovery to the requesting party.")

21

Accordingly, as with the other ESI Plaintiffs have produced, this Court should order Plaintiffs to conduct their own search of these electronic systems for information responsive to the Cargill Defendants' requests and to produce that responsive information to the Cargill Defendants in a reasonably usable format. If it is impossible to produce only responsive information in native format or to replicate the entire database and provide the Cargill Defendants with appropriate queries to identify the responsive information in native format, then Plaintiffs should produce the information in another reasonably usable format, such as TIFF images.

## C.    Plaintiffs Should Produce All ESI Responsive to the Cargill Defendants' Discovery Requests by October 15, 2007.

As early as April 2007, Plaintiffs agreed that all ESI would be produced by July 2, 2007. This Court's May 17 and July 6 Orders required that the parties produce "all" ESI on or before by July 2, with the later exception of a number of e-mails, which Plaintiffs were to produce by August 1. The Cargill Defendants always understood that "all," in the context of the parties' agreement and the Court's May 17 and July 6 Orders, meant "all" as that term is normally understood.

However, Plaintiffs have continually attempted to reinterpret and narrow the scope of their obligation to produce "all" ESI. Plaintiffs have never provided a clear explanation of which State agencies, offices and divisions are included in their definition of "all." (Docket No. 1150 at 11; Ex.24: T. Hammons Letter of May 29, 2007; Ex. 25: E-mails between Mr. Robert George, T. Hammons, and Mr. David Page; Ex. 26: T. Hammons Letter of June 11, 1007). For instance, Plaintiffs provided ESI disclosures for the Oklahoma Department of Health, but have produced no hard documents or ESI from the Oklahoma Department of Health ("ODH"). The only ESI Plaintiffs have "produced" from the ODH is a list of web links that can be accessed through the

22

internet. They have produced no ODH email and no other ESI that may be maintained by the ODH. Further, even as to the agencies that are clearly included in Plaintiffs' definition of "all," Plaintiffs have failed to make complete productions of ESI. For example, noticeably missing from Plaintiffs' productions to date is a significant portion of ODAFF e-mail.

As a result of Plaintiffs' delay and incomplete productions, the Cargill Defendants still do not have all the ESI Plaintiffs agreed to provide at the April 28 hearing, nor do they know when and how much more ESI will be forthcoming. The Cargill Defendants are still receiving documents responsive to discovery first served in August 2006, a full year ago. Given that Plaintiffs' expert reports are presently due on December 3, 2007 (a mere three months from now) and Defendants' expert reports on February 1, 2008, Plaintiffs' failure to proceed expeditiously with their discovery obligations seriously impairs the Cargill Defendants' ability to comply with this deadline and places this Court's Scheduling Order in jeopardy.

Plaintiffs have attempted to explain their repeated delay by misstating the amount of electronic data that has been produced in this case. Plaintiffs' August 6 Motion for Clarification represented that they had produced approximately 177 gigabytes of data in native format, while none of the Defendants had produced more than two gigabytes of electronic data. (Docket No. 1229 at 2.)  However, the data that had actually been produced by Plaintiffs at that time amounted to less than 73 gigabytes. Presumably, Plaintiffs included with their "production" total ESI available in the two databases that Plaintiffs offered to Defendants for "inspection," but for which they refused to produce responsive information contained in these databases because of "technical difficulties" that they have refused to discuss with Defendants.

Having prolonged the discovery process for months, the time has now come for Plaintiffs to comply fully and completely with the parties' agreements and this Court's Orders and to

produce **all** of their ESI, including e-mails, without equivocation on a date certain. This Court should order Plaintiffs to produce in a reasonably usable format all ESI, without exception, responsive to the Cargill Defendants' discovery requests served on August 22, 2006 on or before October 15, 2007.

## IV.    CONCLUSION

In light of the foregoing, the Cargill Defendants request that this Court grant their motion to compel and enter an Order requiring that:

(1)    In all circumstances where Plaintiffs have produced ESI "collectively" to all Defendants in native format, Plaintiffs must provide the specific search queries, information, and technical support that would allow the Cargill Defendants to ascertain the ESI provided in response to their specific requests;

(2)    Plaintiffs produce by October 15, 2007 the responsive ESI in the ORACLE and SQL databases at OWRB and OCC in a reasonably usable format which, in the case of a native format production, shall include providing the specific search queries, information, and technical support that would allow the Cargill Defendants to ascertain the ESI provided in response to their specific requests; and

(3)    Plaintiffs produce all ESI, without exception, responsive to the Cargill Defendants' discovery requests served on August 22, 2006 on or before October 15, 2007.

24

Respectfully submitted,

Rhodes, Hieronymus, Jones,
    Tucker & Gable, PLLC

BY:      /s/ Theresa Noble Hill
      John H. Tucker, OBA #9110
      Theresa Noble Hill, OBA #19119
      100 W. Fifth Street, Suite 400 (74103-4287)
      P.O. Box 21100
      Tulsa, Oklahoma 74121-1100
      Telephone:    918/582-1173
      Facsimile:    918/592-3390
       And
      Delmar R. Ehrich
      Bruce Jones
      Dara D. Mann
      Krisann C. Kleibacker Lee
      FAEGRE & BENSON LLP
      2200 Wells Fargo Center
      90 South Seventh Street
      Minneapolis, Minnesota 55402
      Telephone:    612/766-7000
      Facsimile:    612/766-1600
      **Attorneys For Cargill, Inc. and Cargill Turkey Production LLC**

## CERTIFICATE OF SERVICE

I certify that on the 7th day of September, 2007, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

W. A. Drew Edmondson, Attorney General drew_edmondson@oag.state.ok.us
Kelly Hunter Burch, Assistant Attorney General kelly_burch@oag.state.ok.us
J. Trevor Hammons, Assistant Attorney General trevor_hammons@oag.state.ok.us
Robert D. Singletary Robert_singletary@oag.state.ok.us
Daniel Lennington, Assistant Attorney General Daniel.lennington@oag.ok.gov

Douglas Allen Wilson doug_wilson@riggsabney.com
Melvin David Riggs driggs@riggsabney.com
Richard T. Garren rgarren@riggsabney.com
Sharon K. Weaver sweaver@riggsabney.com
Riggs Abney Neal Turpen Orbison & Lewis

Robert Allen Nance rnance@riggsabney.com
Dorothy Sharon Gentry sgentry@riggsabney.com
Riggs Abney

J. Randall Miller rmiller@mkblaw.net
David P. Page dpage@mkblaw.net
Louis W. Bullock lbullock@mkblaw.net
Miller Keffer & Bullock

William H. Narwold bnarwold@motleyrice.com
Elizabeth C. Ward lward@motleyrice.com
Frederick C. Baker fbaker@motleyrice.com
Lee M. Heath lheath@motleyrice.com
Motley Rice
**COUNSEL FOR PLAINTIFFS**

Stephen L. Jantzen sjantzen@ryanwhaley.com
Patrick M. Ryan pryan@ryanwhaley.com
Paula M. Buchwald pbuchwald@ryanwhaley.com
Ryan, Whaley & Coldiron, P.C.

Mark D. Hopson mhopson@sidley.com
Jay Thomas Jorgensen jjorgensen@sidley.com
Timothy K. Webster twebster@sidley.com
Sidley Austin LLP

Robert W. George robert.george@kutakrock.com
Michael R. Bond michael.bond@kutakrock.com
Kutack Rock LLP
**COUNSEL FOR TYSON FOODS, INC., TYSON POULTRY, INC., TYSON CHICKEN, INC.; AND COBB-VANTRESS, INC.**

26

R. Thomas Lay                                    rtl@kiralaw.com
Kerr, Irvine, Rhodes & Ables

Jennifer S. Griffin                              jgriffin@lathropgage.com
Lathrop & Gage, L.C.
**COUNSEL FOR WILLOW BROOK FOODS, INC.**

Robert P. Redemann                               rredemann@pmrlaw.net
Lawrence W. Zeringue                             lzeringue@pmrlaw.net
David C .Senger                                  dsenger@pmrlaw.net
Perrine, McGivern, Redemann, Reid, Berry & Taylor, PLLC

Robert E. Sanders                                rsanders@youngwilliams.com
E. Stephen Williams                              steve.williams@youngwilliams.com
Young Williams P.A.
**COUNSEL FOR CAL-MAINE FOODS, INC. AND CAL-MAINE FARMS, INC.**

George W. Owens                                  gwo@owenslawfirmpc.com
Randall E. Rose                                  rer@owenslawfirmpc.com
The Owens Law Firm, P.C.

James M. Graves                                  jgraves@bassettlawfirm.com
Gary V. Weeks
Bassett Law Firm
**COUNSEL FOR GEORGE'S INC. AND GEORGE'S FARMS, INC.**

John R. Elrod                                    jelrod@cwlaw.com
Vicki Bronson                                    vbronson@cwlaw.com
Bruce W. Freeman                                 bfreeman@cwlaw.com
Conner & Winters, LLLP
**COUNSEL FOR SIMMONS FOODS, INC.**

A. Scott McDaniel                                smcdaniel@jpm-law.com
Chris A. Paul                                    cpaul@jpm-law.com
Nicole M. Longwell                               nlongwell@jpm-law.com
Philip D. Hixon                                  phixon@jpm-law.com
Joyce, Paul & McDaniel, PC
Sherry P. Bartley                                sbartley@mwsgw.com
Mitchell Williams Selig Gates & Woodyard
**COUNSEL FOR PETERSON FARMS, INC.**

Michael D. Graves                                mgraves@hallestill.com
Dale Kenyon Williams, Jr.                        kwilliams@hallestill.com
**COUNSEL FOR CERTAIN POULTRY GROWERS**

I also hereby certify that I served the attached documents by United States Postal Service, proper postage paid, on the following who are not registered participants of the ECF System:

C. Miles Tolbert
Secretary of the Environment
State of Oklahoma
3800 North Classen
Oklahoma City, OK 73118
**COUNSEL FOR PLAINTIFFS**

Thomas C. Green
Sidley Austin Brown & Wood LLP
1501 K Street NW
Washington, DC 20005
**COUNSEL FOR TYSON FOODS, INC., TYSON POULTRY, INC., TYSON CHICKEN, INC.; AND COBB-VANTRESS, INC.**

_s/ Theresa Noble Hill (OBA #19119)_

fb.us.2225872.10

28