IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-cv-329-GKF(SAJ) |
| ) | |
| TYSON FOODS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**STATE OF OKLAHOMA'S RESPONSE IN OPPOSITION TO "THE CARGILL DEFENDANTS' MOTION TO COMPEL PRODUCTION OF RESPONSIVE ESI"**

Plaintiff, the State of Oklahoma, ex rel. W.A. Drew Edmondson, in his capacity as Attorney General of the State of Oklahoma and Oklahoma Secretary of the Environment C. Miles Tolbert, in his capacity as the Trustee for Natural Resources for the State of Oklahoma ("the State"), respectfully requests that the Court deny the "Cargill Defendants' Motion to Compel Production of Responsive ESI" ("Cargill's Motion") [DKT #1261] for the reasons that follow.

**I.    Introduction**

The complaints raised in Cargill's Motion fall into two categories: (1) complaints that the Cargill Defendants had not raised until the filing of the Motion, and (2) complaints that the Cargill Defendants did raise, and the State has already satisfactorily addressed. Therefore, Cargill's Motion is entirely unnecessary and a waste of judicial resources.

**II.    Background**

In the Motion, the Cargill Defendants set out a lengthy timeline regarding discovery of electronically stored information ("ESI"). The State disputes many of the characterizations and editorial comments associated with the Cargill Defendants' timeline. For example, it was the

State who initiated the discussions regarding the production of ESI approximately one year ago. In September 2006, the State requested a meet and confer with all Defendants to discuss the production of ESI. The State called this conference together in anticipation of the December 1, 2006, amendments to Federal Rules of Civil Procedure 26 and 34. At this conference, the State tried to begin discussions with Defendants on how and when ESI would be produced. Most importantly, the State indicated its preference for producing and receiving ESI in native file format. These discussions were unfruitful and the parties were unable to come to any agreement as to how ESI would be produced. In fact, some Defendants were not willing to discuss ESI until after the amendments to the Rules were formally adopted.

During this time frame, discovery requests were served by Defendant Peterson Farms, Inc. ("Defendant Peterson") and the Cargill Defendants. Defendant Peterson noticed the depositions of records custodians of and propounded requests for production to the Oklahoma Department of Environmental Quality, Oklahoma Water Resources Board, Oklahoma Conservation Commission, and the Oklahoma Scenic Rivers Commission. The Cargill Defendants served 61 different requests for production on the State. The State proposed producing documents to all Defendants during the Defendant Peterson document productions and depositions, and the Defendants agreed to this proposal. A key part of this agreement, which the Cargill Defendants fail to mention, was that production of ESI would be deferred. *See* Exhibit 1 (Oct. 9, 2006 letter from counsel for Defendant Peterson on behalf of all Defendants).

The Cargill Defendants also significantly downplay the fact that they <u>agreed</u> to accept the State's ESI production in native format, and only make a brief reference to this fact in a footnote in the Motion. The State's ESI was produced in native format pursuant to this agreement among the parties.

### III.   Argument

#### A.   The State's production of ESI in native format is proper

The State produced responsive ESI in its native format. The State elected to produce its ESI in native file format for three reasons: (1) the production of ESI in native format is in accordance with the Federal Rules; (2) native format would provide the most usable and searchable form for the Defendants; and (3) native format was an efficient and cost effective method to produce the ESI. As the Cargill Defendants acknowledge, they agreed to accept the State's ESI production in native format. *See* Cargill's Motion, p. 10 fn. 1. The Cargill Defendants now, however, claim that the State's production of ESI in native format has rendered it "unusable." Their unwarranted complaint is broad and generalized, and the Cargill Defendants fail to explain specific problems they are having using the State's ESI production. The Cargill Defendants also argue that this format is not compliant with the Rules governing ESI discovery, but they offer no basis for the objection other than providing limited examples of instances where courts have made TIFF or PDF format a default standard for the production of ESI.

The Federal Rules plainly permit the production of ESI in native file format. Rule 34 (b)(ii) states, "(ii) if a request does not specify the form or forms for producing electronically stored information, a responding party must produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably useable." (Emphasis added.) Rule 34 (b)(i) states, "a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." (Emphasis added.) "While the party producing 'cannot attempt to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents,' the plain language of Rule 34 makes clear that 'a responding party

3

has no duty to organize and label the documents if it has produced them as they are kept in the usual course of business.'" *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.,* 222 F.R.D. 594, 598 (E.D. Wis. 2004); *see also Rowlin v. Alabama Department of Public Safety,* 200 F.R.D. 459, 462 (M.D. Ala. 2001) ("[U]nder Rule 34, it is up to the producing party to decide how it will produce its records, provided that the records have not been maintained in bad faith"); *Williams v. Taser International,* 2006 WL 1835437, *7 (N.D. Ga. June 30, 2006).

As they acknowledge, the Cargill Defendants agreed to production of the State's ESI in native format. Thus, the State, pursuant to Rule 34, produced ESI in the form in which it is maintained in the ordinary course of business, which is native file format. The State reviewed its ESI productions and removed clearly non-responsive documents and privileged documents. The State had numerous lawyers working for weeks at a time reviewing ESI for responsiveness and privilege. Other than removing non-responsive and privileged documents, the State produced its ESI as it is kept in the usual course of business. Under the Rules, the State is not required to index and label its production if it is produced as it is kept in the usual course of business. To require the State to do so would defeat the purposes of producing ESI in its native file format, namely the ability to search, review, and manipulate the data. If the State imaged and converted its ESI production to a TIFF or PDF image, then the State would be taking it out of the form in which it is kept in the usual course of business, and then would be required to index its production. It should be noted that the State has indexed its production for those databases which are responsive to interrogatory requests.

Additionally, the State's ESI production specifically identified databases which contain relevant and responsive information. These databases are statewide databases that include information from outside the IRW. This is the manner in which these databases are ordinarily

4

maintained in the usual course of business. These databases are easily searchable and usable in this format, and the Cargill Defendants have the ability to search and manipulate these databases because they have been produced in their native format. Apparently, the Cargill Defendants have now decided, contrary to their pre-existing agreement to accept native format ESI, that they would prefer to have the State print out, and then convert to a TIFF or PDF image, the portions of the database that are responsive to their requests. If the State were to do this it would no longer be producing a database; it would be producing the scanned pages of data in a significantly <u>less</u> usable format.

A database, by its very nature, contains data which can be searched, viewed and manipulated electronically. The Advisory Committee Notes to the 2006 Amendment to Rule 34(a) explain that:

> If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

As explained in *The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production* (2d ed.), the most effective and efficient way to produce databases is in native format:

> Certain types of electronic information, such as databases, simply cannot be converted from their native, dynamic, three dimensional form without significant loss of information and functionality.
>
> . . .
>
> [T]here are potentially significant costs inherent in the process [of image format productions] and it does not work well for certain types of electronically stored information such as spreadsheets and dynamic databases.

Sedona Principle 12, Comment 12.b.

5

By asking that only portions of the databases be printed out and imaged, the Cargill Defendants are asking the State to significantly degrade the purpose and usefulness of the databases. Furthermore, proceeding in this manner would be unduly burdensome and expensive for the State, and will serve no purpose other than to further delay the prosecution of this litigation.[1]

The Cargill Defendants also complain about the BACTI database produced through the Oklahoma Department of Environmental Quality ("ODEQ"). The BACTI database, as was explained at numerous meet and confer discussions with Defendants, is an Access database. It contains information regarding every bacteria sample performed by the ODEQ lab since it began archiving this data. The BACTI database contains information from outside the Illinois River Watershed because it is a statewide database and that is how it is ordinarily maintained in the usual course of business. The database is very usable and the Cargill Defendants can easily perform searches by geographical areas. The Cargill Defendants know what counties are within the Illinois River Watershed and can easily search the database for responsive information from those counties.

The State has given the Cargill Defendants specific, responsive databases, and has offered technological assistance to Defendants if they encounter any problems using these

---

[1]  It is unduly burdensome and expensive to require the State to alter its ESI to another format. The State would have to convert hundreds of thousands of electronic documents into a TIFF or PDF format. Many of the State agencies producing these documents do not have the resources required to convert ESI from its native file format to a TIFF or PDF image and, therefore, would have to outsource conversion of these documents. This would be an unnecessary and burdensome expense for the State to bear. The production of native file format ESI has already been a significant ordeal for these agencies that have searched, reviewed and downloaded this information. The Cargill Defendants argue that they do not want all the ESI, they only want what is responsive to their requests. The State has <u>only</u> produced responsive ESI. The Cargill Defendants have asked extremely broad questions and the State has responded to those requests. *See, e.g.,* Cargill Turkey Request for Production No. 44, asking the State to produce "All documents related to water quality in the Illinois River Watershed."

databases. This assistance would include allowing Defendants to come to ODEQ to look at the database on-site with the technical people who work with that database. This is the first time that the State has heard from any Defendants that they have a problem using any of the databases. This topic could have and should have been the subject of a meet and confer which would have eliminated the need for the Cargill Motion. Nevertheless, the State continues to stand ready to work with the Cargill Defendants if they are encountering difficulties using the databases, and will work to ensure that the Cargill Defendants can effectively use these databases. This does not mean that the State believes that it has any obligation to pull apart these databases and produce only what is responsive to the Cargill Defendants' discovery requests in a <u>less</u> usable and <u>less</u> searchable format.

      The Cargill Defendants also allege that the State is trying to confuse, hinder and otherwise confound Defendants in their search for responsive information. The Cargill Defendants cite cases commenting upon the deliberate mixing up of documents and hiding responsive documents among voluminous unresponsive documents. But the Cargill Defendants fail to cite a single instance where the State has hidden critical documents in mounds of unresponsive documents, or any instance where the State has intentionally mixed up documents to confuse Defendants. These are serious allegations against the integrity of the State and its counsel. If the Cargill Defendants have evidence of intentional wrong doing, then they should bring that evidence in the proper motion, rather than making baseless, vague claims in a motion to compel. The State did not elect to produce its ESI in native file format in order to hide responsive documents from the Cargill Defendants. Rather, the State elected to do so pursuant to the parties' agreement regarding the State's ESI production, and because the Rules require that ESI be produced as it is kept in the ordinary course of business <u>or</u> in a reasonably searchable

7

format. The State has clearly met its burden under the Rules, yet the Cargill Defendants still take issue with the production.

>    B.   **The State offered to produce databases at OCC and OWRB in an effort to address Defendants' concerns**

The State offered to produce databases on location at the OWRB and OCC as a means to facilitate Defendants' use of these databases. The OWRB and OCC databases are ORACLE databases. Defendants indicated that they could not access these systems on their own without great expense. The State did not elect to produce these databases on site because of "technical difficulties" as Cargill Defendants inaccurately assert; rather the State made this offer in an effort to accommodate Defendants and address their concerns regarding these databases.

The State did have some technical difficulties with the OCC ESI production (excluding databases). These technical difficulties revolved around the method by which OCC retrieved their responsive ESI. The State worked for weeks to try and produce the OCC ESI in a useable form, but was unable to do so. The State also worked with OCC technical personnel to try and resolve the issue, but was again unable to do so. The State elected to produce the entire OCC ESI production on site with the exception of emails. The State also offered to have technical personnel available to help Defendants search and retrieve the documents they wanted. The State is absolutely not attempting to hide responsive information from the Cargill Defendants by making them cull through the State's computer systems. The State has already identified responsive ESI and removed non-responsive information from the OCC ESI production and it has been segregated from the main server.

The Cargill Defendants complain that visiting the State agencies where the responsive databases are maintained, and having information technology personnel at those agencies assist them with obtaining the information they seek, will somehow put its attorney work product in

8

jeopardy. The Cargill Defendants' concerns about potentially jeopardizing work product, in addition to being contradictory to the other arguments set forth in their motion to compel, are at odds with the realities of managing ESI productions. Due to the nature of electronically stored information, some level of communication between the parties about what information will be gathered and how it will be gathered is unavoidable. As the Advisory Committee Notes to the 2006 Amendment to Fed. R. Civ. P. 34(a) explain, "[u]nder some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information." The Cargill Defendants are attempting to use work product privilege arguments as an excuse to avoid even the most basic level of cooperation with the State, which is trying to make a complete, thorough production of responsive data available in its native and most usable format. It is difficult to imagine how the basic level of discussion required for the Cargill Defendants to communicate with technical assistants at the agencies could rise to the level of jeopardizing work product.

The Cargill Defendants' arguments about work product privilege are illogical and unreasonable. The basis for the Cargill Defendants' motion is that the State should review the Cargill Defendants' discovery requests and be able to perform searches to provide responsive information. However, the Cargill Defendants then argue in their motion to compel that if they were to visit the agencies and obtain this information themselves, rather than have the State perform searches for it, that the resulting attorney work product would be in jeopardy. In other words, the Cargill Defendants' circular argument is: the State should know what the Cargill Defendants want from these databases, but the Cargill Defendants cannot visit the agencies and directly obtain the information because the State would then know what data the Cargill

9

Defendants seek, and that would violate a work product privilege. If the State should be able to perform the searches <u>for</u> the Cargill Defendants, which is what they seek to have the State do, then there should be no privilege in jeopardy if they run them themselves.

### C. The State is producing ESI as quickly and efficiently as possible

The Cargill Defendants assert that the State has refused to produce ESI from all agencies. This allegation is not accurate. The Court's first order regarding the production of ESI pertained to those agencies from which the State previously produced documents. The State would have never agreed to produce ESI by July 2, 2007, if that agreement was to include agencies from which the State had not yet produced any documents. The State has, nevertheless, searched these additional agencies for responsive ESI and will be producing ESI from these agencies as quickly as possible. The State has informed Defendants of this process and the State submits that it cannot be completely done with its ESI production by October 15, 2007. (It should be noted that the Cargill Defendants have not yet completed their ESI production. *See* State of Oklahoma's Omnibus Motion Regarding Deficiencies Respective to Defendants' ESI Responses [DKT # 1271]). The State is in the process of reviewing ODAFF's ESI and will produce responsive, non-privileged ESI as soon as possible.

### III. CONCLUSION

The State has produced its ESI as it is kept in the usual course of business, which also happens to be the most usable format available, and it is not required to pull apart sets of ESI and degrade the usability and search capabilities of that ESI. The State is not required to index its production in response to requests for production, and the State has indicated which specific responsive databases are responsive to interrogatories. The State has offered to produce responsive databases and ESI at State agencies, with technical assistance, in an effort to assist the

Cargill Defendants with any problems they may be encountering in using the information. This method of production is completely reasonable and clearly within the parameters of the Rules governing discovery.

For the reasons stated herein, the Cargill Motion [DKT #1261] should be denied in its entirety.

Respectfully Submitted,

W.A. Drew Edmondson OBA # 2628
Attorney General
Kelly H. Burch OBA #17067
J. Trevor Hammons OBA #20234
Tina Lynn Izadi OBA #17978
Assistant Attorneys General
State of Oklahoma
313 N.E. 21st St.
Oklahoma City, OK 73105
(405) 521-3921

/s/ M. David Riggs
M. David Riggs OBA #7583
Joseph P. Lennart OBA #5371
Richard T. Garren OBA #3253
Douglas A. Wilson OBA #13128
Sharon K. Weaver OBA #19010
Robert A. Nance OBA #6581
D. Sharon Gentry OBA #15641
Riggs, Abney, Neal, Turpen,
  Orbison & Lewis
502 West Sixth Street
Tulsa, OK 74119
(918) 587-3161

James Randall Miller, OBA #6214
222 S. Kenosha
Tulsa, OK 74120-2421
(918) 743-4460

Louis Werner Bullock, OBA #1305
Miller Keffer Bullock Pedigo LLC
110 West 7th Street, Suite 707
Tulsa, OK 74119-1031
(918) 584-1031

11

David P. Page, OBA #6852
Bell Legal Group
P. O. Box 1769
Tulsa, OK 74101
(918) 398-6800

Frederick C. Baker
(admitted *pro hac vice*)
Lee M. Heath
(admitted *pro hac vice)*
Elizabeth C. Ward
(admitted *pro hac vice*)
Elizabeth Claire Xidis
(admitted *pro hac vice*)
Motley Rice, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
(843) 216-9280

William H. Narwold
(admitted *pro hac vice*)
Ingrid L. Moll
(admitted *pro hac vice)*
Motley Rice, LLC
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1676

Jonathan D. Orent
(admitted *pro hac vice)*
Michael G. Rousseau
(admitted *pro hac vice)*
Fidelma L. Fitzpatrick
Motley Rice, LLC
321 South Main Street
Providence, RI 02940
(401) 457-7700

Attorneys for the State of Oklahoma

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September, 2007, I electronically transmitted the above and foregoing pleading to the Clerk of the Court using the ECF System for filing and a

transmittal of a Notice of Electronic Filing to the following ECF registrants:

Frederick C Baker     fbaker@motleyrice.com, mcarr@motleyrice.com; fhmorgan@motleyrice.com

Michael R. Bond     michael.bond@kutakrock.com, amy.smith@kutakrock.com

Vicki Bronson     vbronson@cwlaw.com, lphillips@cwlaw.com

Paula M Buchwald     pbuchwald@ryanwhaley.com

Louis Werner Bullock     LBULLOCK@MKBLAW.NET, NHODGE@MKBLAW.NET; BDEJONG@MKBLAW.NET

Gary S Chilton     gchilton@hcdattorneys.com

Robin S Conrad     rconrad@uschamber.com

W A Drew Edmondson     fc_docket@oag.state.ok.us, drew_edmondson@oag.state.ok.us; suzy_thrash@oag.state.ok.us.

Delmar R Ehrich     dehrich@faegre.com, etriplett@faegre.com; ; qsperrazza@faegre.com

John R Elrod     jelrod@cwlaw.com, vmorgan@cwlaw.com

Fidelma L. Fitzpatrick ffitzpatrick@motleyrice.com

Bruce Wayne Freeman     bfreeman@cwlaw.com, lclark@cwlaw.com

D. Richard Funk  rfunk@cwlaw.com

Richard T Garren     rgarren@riggsabney.com, dellis@riggsabney.com

Dorothy Sharon Gentry     sgentry@riggsabney.com, jzielinski@riggsabney.com

Robert W George     robert.george@kutakrock.com, sue.arens@kutakrock.com; amy.smith@kutakrock.com

James Martin Graves     jgraves@bassettlawfirm.com

Tgrever@lathropgage.com

Jennifer Stockton Griffin     jgriffin@lathropgage.com

John Trevor Hammons     thammons@oag.state.ok.us, Trevor_Hammons@oag.state.ok.us; Jean!_Burnett@oag.state.ok.us

Lee M Heath !   lheath@motleyrice.com

Theresa Noble Hill     thillcourts@rhodesokla.com, mnave@rhodesokla.com

Philip D Hixon     phixon@mcdaniel-lawfirm.com

Mark D Hopson     mhopson@sidley.com, joraker@sidley.com

Kelly S Hunter Burch     fc.docket@oag.state.ok.us, kelly_burch@oag.state.ok.us; jean_burnett@oag.state.ok.us

Tina Lynn Izadi; tina_izadi@oag.state.ok.us

Stephen L Jantzen    sjantzen@ryanwhaley.com, mantene@ryanwhaley.com; loelke@ryanwhaley.com

Bruce Jones    bjones@faegre.com, dybarra@faegre.com; jintermill@faegre.com; cdolan@faegre.com

Jay Thomas Jorgensen    jjorgensen@sidley.com

Raymond Thomas Lay    rtl@kiralaw.com, dianna@kiralaw.com

Krisann C. Kleibacker Lee; kklee@faegre.com

Nicole Marie Longwell    Nlongwell@@mcdaniel-lawfirm.com

Archer Scott McDaniel    smcdaniel@mcdaniel-lawfirm.com

Thomas James McGeady    tjmcgeady@loganlowry.com

James Randall Miller    rmiller@mkblaw.net, smilata@mkblaw.net; clagrone@mkblaw.net

Charles Livingston Moulton    Charles.Moulton@arkansasag.gov, Kendra.Jones@arkansasag.gov

Indrid Moll; imoll@motleyrice.com

Robert Allen Nance    rnance@riggsabney.com, jzielinski@riggsabney.com

William H Narwold    bnarwold@motleyrice.com

Jonathan Orent ; jorent@motleyrice.com

George W Owens    gwo@owenslawfirmpc.com, ka@owenslawfirmpc.com

David Phillip Page    dpage@edbelllaw.com, smilata@edbelllaw.com

Robert Paul Redemann    rredemann@pmrlaw.net, scouch@pmrlaw.net

Melvin David Riggs    driggs@riggsabney.com, pmurta@riggsabney.com

Randall Eugene Rose    ! rer@owenslawfirmpc.com, ka@owenslawfirmpc.com

Michael Rousseau ; mrousseau@motleyrice.com

Robert E Sanders    rsanders@youngwilliams.com,

David Charles Senger    dsenger@pmrlaw.net, scouch@pmrlaw.net; ntorres@pmrlaw.net

Paul E Thompson , Jr    pthompson@bassettlawfirm.com

Colin Hampton Tucker    chtucker@rhodesokla.com, scottom@rhodesokla.com

John H Tucker    jtuckercourts@rhodesokla.com, lwhite@rhodesokla.com

Elizabeth C Ward    lward@motleyrice.com

Sharon K Weaver    sweaver@riggsabney.com, lpearson@riggsabney.com

Timothy K Webster     twebster@sidley.com, jwedeking@sidley.com

Gary V Weeks !

Terry Wayen West     terry@thewestlawfirm.com,

Edwin Stephen Williams     steve.williams@youngwilliams.com

Douglas Allen Wilson     Doug_Wilson@riggsabney.com, pmurta@riggsabney.com

P Joshua Wisley ; jwisley@cwlaw.com, jknight@cwlaw.com

Elizabeth Claire Xidis     cxidis@motleyrice.com

Lawrence W Zeringue     lzeringue@pmrlaw.net, scouch@pmrlaw.net

Also on this 21st day of September, 2007 I mailed a copy of the above and foregoing pleading to:

**David Gregory Brown**
Lathrop & Gage, LC
314 E. High St.
Jefferson City, MO  65101

**Thomas C Green**
Sidley Austin Brown & Wood LLP
1501 K ST NW
WASHINGTON, DC 20005

**Cary Silverman**
**Victor E Schwartz**
Shook Hardy & Bacon LLP (Washington DC)
600 14TH ST NW STE 800
WASHINGTON, DC 20005-2004

**C Miles Tolbert**
Secretary of the Environment
State of Oklahoma
3800 NORTH CLASSEN
OKLAHOMA CITY, OK 73118

/s/ M. David Riggs
M. David Riggs