**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| State of Oklahoma, et al., | ) | 05-CV-0329 GKF-SAJ |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **DEFENDANTS' MOTION TO** |
| | ) | **COMPEL PLAINTIFFS' COMPLIANCE** |
| Tyson Foods, Inc., et al., | ) | **WITH THE COURT'S ORDER ON** |
| | ) | **DATA PRODUCTION** |
| Defendants. | ) | |
| | ) | |

Defendants jointly submit this Motion to Compel Plaintiffs' Compliance with the Court's

Order on Data Production and integrated brief in support.

Over the course of the last year, Defendants have doggedly attempted to make Plaintiffs

comply fully with Magistrate Judge Joyner's January 5, 2007 Order mandating production of

various scientific data gathered by Plaintiffs and their experts. (Dkt. No. 1016.) In light of new

evidence that Plaintiffs have actively sought means to avoid compliance with that Order,

Defendants are now compelled to ask the Court to visit the issue once again. Specifically,

Defendants request that the Court issue an Order requiring Plaintiffs to disclose all data as

required by the Order of January 5, 2007 within ten days or, going forward, within ten days of

the generation of any new data. Further, the Court should direct that any data that Plaintiffs do

not timely produce under this schedule will be inadmissible at trial either as direct evidence or as

expert reliance material.

**A.     The Court has Ordered Plaintiffs to Produce Data, Testing, Sampling, and Results.**

In May 2006, Defendant Cobb-Vantress moved to compel the production of Plaintiffs'

monitoring, sampling, and testing data (Dkt. No. 743), data that Plaintiffs had withheld based on

claims of attorney-client privilege and work product. In July 2006, Defendant Simmons likewise

moved to compel Plaintiffs to produce all studies, datasets, and documents supporting Plaintiffs'

claims of phosphate and nitrogen loading to Lake Tenkiller (Dkt. No. 844), which Plaintiffs also

withheld based on claims of attorney-client privilege and work product.  In response to the

motions, Plaintiffs suggested to the Court that "the sampling data is peripheral to the case," a

conclusion the Court flatly rejected.  (Order of Jan. 5, 2007: Dkt. No. 1016 at 7.)  In its Order,

the Court noted that although Plaintiffs attempted to downplay the importance of the data sought,

Plaintiffs had in fact "relied upon the information in the First Amended Complaint" and had in

"numerous instances … referenced or relied upon the information in motions to compel and

during oral argument in this Court." (Id., docket citations omitted.)  Accordingly, the Court was

"persuaded that Plaintiffs have relied upon the information that Plaintiffs now seek to protect and

shield from discovery." (Id.)  Based in part on Plaintiffs' prior assertions to the Court that such

"samples were unique," the Court additionally found that Defendants sought "sampling data and

results that cannot be recreated and can be obtained from no source other than Plaintiffs." (Id. at

7-8.)  Thus, "denial of the information to Defendants would deny vital information necessary to

Defendants' defense." (Id. at 8.)  Plaintiffs' current motion for preliminary injunction has

proven the Court correct; Plaintiffs' case rests almost entirely on expert opinions based on the

data that the Court ordered produced more than a year ago.

In its January 5, 2007 Order, the Court unambiguously ordered Plaintiffs to produce "the

requested data, testing, sampling, and results." (Id.)  The Order also required Plaintiffs to

produce all documents included in their offer of voluntary production made at the December 15,

2006 hearing, which included the following categories of documents responsive to Defendant

Cobb-Vantress's Interrogatory No. 1 and Document Request Nos. 1-2:

> 1) For "each instance of sampling, monitoring or listing:"
>     a) "date and location of sampling,"

2

.

      b) "name, address, and telephone number of each person involved in sampling,"
      c) "media or material sampled," and
      d) "all tests or laboratory analysis performed."

2) Copies of "all sampling, monitoring or testing" documents, which includes
      "laboratory results, assay reports, QA/QC documents, sampling protocols (unless
      prepared by an attorney), photographs, and site sketches."

3) Copies of "all documents relating to the scientific investigation of groundwater
   contamination," which includes
      "laboratory results, assay reports, QA/QC documents, sampling protocols (unless
      developed by an attorney), photographs, and site sketches."

(Id. at 9; see also discovery requests at Dkt. Nos. 743 Ex. 1 at 3-4.) Additionally, the Court

ordered Plaintiffs to produce documents submitted for *in camera* inspection as included in the

offer of voluntary production (Dkt. No. 1016 at 10), and to supplement their privilege log in

keeping with the Order, noting that "Defendants may reurge their motion to compel further

production if they think it necessary and appropriate" after reviewing "the production ordered

herein and the revised privilege log." (id. at 11).   Plaintiffs were to produce all of this

information to Defendants by no later than February 1, 2007.  (Id. at 11.)[1]

## B.   Defendants Have Struggled to Make Plaintiffs Follow the January 5 Data Order.

     Plaintiffs came nowhere near completing their production of sampling data and related

information by February 1, 2007.  Instead, Plaintiffs instituted their own rolling production

schedule, producing partially responsive information in an unorganized and sometimes

unreadable format on at least February 1, February 8, March 8, May 1, May 21, July 2, August 7,

September 17, September 18, September 19, September 25, November 5, November 19, 2007

and January 4, January 22, and January 31, 2008.   These piecemeal productions often responded

to Defendants' complaints about Plaintiffs' failure to fully comply with the January 5, 2007

---

[1]   The deadline for production of Plaintiffs' field notebooks only was extended a single week by
unopposed motion.  (Dkt. Nos. 1040, 1042.)

Order.  To avoid burdening the Court with every detail of the parties' almost continuous fight over data production since February 1, 2007, Defendants highlight here only a few of the many examples of Plaintiffs' failures.[2]

Probably the most glaring example discovered thus far of Plaintiffs' concealment of data—and the duplicity underlying that concealment—involves Plaintiffs' DNA data, one of the central issues in the pending motion for preliminary injunction.  Plaintiffs produced field notebooks in February 2007 that revealed that they were collecting and analyzing samples as part of an unknown DNA investigation.  Plaintiffs later stated that this investigation would allow them to "track" or "fingerprint" substances in water to poultry-litter application sites.  (See e.g., Ex. 1:  May 1, 2007 Ltr. from L. Bullock to R. George.)  Information from this investigation is clearly responsive to (at least) Cobb-Vantress's Interrogatory No. 1 and Document Requests Nos. 1 and 2, which are subject to the January 5 Order.  (See Dkt. No. 1016 at 9; Dkt. Nos. 743 Ex. 1 at 3-4.)

Despite the Court's Order, however, Plaintiffs initially refused to produce any sampling protocols, data, or other information related to the DNA investigation, instead raising the same attorney-work-product objection the Court had already overruled.  In March 2007, Defendants threatened to seek Court intervention if Plaintiffs refused to produce the DNA investigation information.  (See Ex. 2: Mar. 5, 2007 Ltr. from R. George to L. Bullock.)  Meet-and-confer sessions resulted in Plaintiffs' promise to produce the DNA information after the work was complete and the test results had undergone QA/QC analysis (although nothing in the January 5,

---

[2]  Other examples of late disclosed or undisclosed information subject to the January 5, 2007 Order include, but are not limited to: 1) a key to correlate different sample identifiers used by Plaintiffs for the same samples, 2) readable biological data, 3) agricultural census data, 4) GIS information regarding sample locations, 5) data validation information, and 6) quality assurance

2007 Order permitted Plaintiffs to withhold data on the ground that it had not yet been QA/QC'd). On May 1, 2007, Plaintiffs stated that they needed an additional month or two to complete their testing methodology for the DNA investigation. (See Ex. 1.) To avoid the need for yet another motion to compel, Defendants acquiesced and waited.

On July 3, 2007, Defendants again demanded specific information related to Plaintiffs' DNA investigation. (See Ex. 3: July 3, 2007 Email from R. George to L. Bullock.) After another month's delay, Plaintiffs indicated on August 2, 2007 that they would not produce the standard operating procedure or supporting data for the DNA investigation until sometime in September, "once we have determined the extent to which it is possible to track poultry waste using DNA." (Ex. 4: Aug. 2, 2007 Email from R. Garren to R. George and M. Bond.) At that point, Plaintiffs sought to impose another condition for the already-ordered disclosure: Plaintiffs would produce the data if and only if, prior to the production, the parties agree upon a "suitable protective order" because the "method developed for using DNA to track poultry waste through the environment is proprietary and warrants particular protection." (Id.)[3] These delays and demands all violated the Court's Order of January 5, 2007.

By the end of August 2007, Plaintiffs still had not produced the sampling protocol or any data associated with their DNA investigation. On August 29, Defendants again pushed the issue, advising Plaintiffs of serious concerns with the manner in which Plaintiffs had conducted their court-ordered scientific production. (See Ltr. at Dkt. No. 1393-5.) With respect to Plaintiffs' DNA investigation in particular, Defendants stressed the need for immediate production. (Id.)

---

and quality control ("QA/QC") information. (See, e.g., Dkt. No. 1393-6: Nov. 30, 2007 Letter from R. George to L. Bullock.)

[3] Plaintiffs ultimately decided to drop their request to enter into an agreement for a protective order. (See Ex. 5 at 1-2, Sept. 19, 2007 Ltr. from L. Bullock to R. George.)

On September 19, Plaintiffs finally disclosed a sampling protocol for the DNA investigation, SOP 5-3, a document that demonstrates on its face that it was prepared in April 2006. (See Ex. 5 at 2.) In other words, Plaintiffs delayed a year and a half after creating the document and nine months after the Court's Order to produce this information to Defendants, and finally produced it only upon Defendants' specific insistence.

On September 27, Plaintiffs finally produced a summary of some of the data collected in their DNA investigation. (See Ex. 6: Northwind PCR Analytical Summary (or "Summary Report").)  The Summary Report confirms that Plaintiffs began collecting samples as part of the DNA investigation as early as February 2006, and shows that the sampling protocol Plaintiffs produced in early September did not actually fit the information summarized in the Report.  The sampling protocol (SOP 5-3) indicated that 52 fecal samples from non-poultry sources (beef cattle, dairy cattle, swine, geese, ducks, humans) were to be collected from the IRW and subjected to fragmented "PCR" DNA analysis.  "PCR" refers to "Polymerase Chain Reaction," the science underlying Plaintiffs' claimed poultry "biomarker."  The Summary Report supposedly based on application of that SOP, however, provided results of Plaintiffs' testing of 31 water, soil, and poultry litter samples that reportedly had undergone quantitative PCR analysis. (See Ex. 7 at 2: Oct. 7, 2007 Ltr. from R. George to L. Bullock.)  A comparison of the documents showed that Plaintiffs had failed to produce: 1) any data related to the SOP 5-3 sampling protocol; 2) a sampling protocol associated with the Summary Report; or 3) underlying test results (as opposed to summary information) associated with the Summary Report.

On November 5, Plaintiffs supplemented their production by producing a report concerning what Plaintiffs assert is the development of a biomarker related to their DNA investigation. (See Ex. 8: Nov. 5, 2007 Email from L. Bullock to R. George.)  Again, this report

contained only summary information and provides none of the underlying data on which the report was based.

The issue came to another head after Plaintiffs filed their preliminary injunction motion in November 2007. The motion's expert affidavits and expert reliance materials rely on and reference information governed by the January 5, 2007 Order that should have been produced long ago. On November 30, Defendants demanded again that Plaintiffs produce a complete set of all the data analyzed to date related to their DNA investigation, in keeping with the Court's January 5, 2007 Order. On December 19, Plaintiffs sent a letter omitting any mention of their existing obligation under the January 5 Order to produce the DNA-related data and instead offering to produce the data 21 days before Dr. Harwood's deposition in preparation for the preliminary injunction hearing. (See Ex. 9 at 2: Dec. 19, 2007 Ltr. from L. Bullock to R. George.) On December 20, Plaintiffs filed a supplemental affidavit of Dr. Valerie J. Harwood claiming extensive DNA sampling and investigative testing in the IRW and based on the then undisclosed data collected and analyzed as part of Plaintiffs' DNA investigation. (See Dkt. No. 1416-2.) As revealed by Dr. Harwood's recently produced reliance materials, this information was in Plaintiffs' control since at least 2006 and was concealed in total disregard of the January 5, 2007 Order. (See Ex. 10: sample lab progress report.)

## C.    The 2006 Olsen—Harwood Email Chain Reveals Plaintiffs' True Intent.

In addition, Plaintiffs' experts have revealed communications demonstrating that Plaintiffs did not withhold this data inadvertently or due to any legitimate disagreement about the scope of the discovery sought. Instead, Plaintiffs withheld it simply because they did not want Defendants to see it. On December 7, 2006 – the week before the hearing on the motions to

compel data that resulted in the January 5 Order – Dr. Roger Olsen sent an email entitled

"results" to Dr. Harwood and two others.  (Dkt. No. 1565-15.)   The email states in its entirety:

> **We are proposing to release "all analytical data" to the defendants.  However, we don't want to release any of the PCR/molecular tracking results** at this time. Would the following statement perclude the PCR results?
>
> o We will deliver to Defendants' copies of *all* chemical and bacteriological analytical results produced by standard analytical procedures and received from commercial labs (excluding any expert directed assessment, manipulation, evaluation, &/or interpretation, and opinions of the analytical results) from all media (litter, soil, gw, surface water (lakes, rivers, streams) springs, & sediments).
>
> If not, any suggestion of additional or different words?

(Id. at 2, sic, italics in original, bolding added.)   Over the next few days before the hearing on the

motions to compel Plaintiffs' data, Dr. Harwood and the other recipients each in turn agreed that

the above proposed language would, as a matter of semantics, effectively exclude the PCR and

molecular tracking / biomarker results that Plaintiffs wished to keep concealed.  (Id. at 1.)  The

four concluded that, as worded, the above offer to produce "all" analytical data would actually

allow Plaintiffs to withhold the PCR and molecular tracking / biomarker results because such

data is not created through "standard" procedures and because the North Wind lab "is not a

commercial lab."  (Id.)

This semantic game prevailed, and Plaintiffs did in fact withhold Dr. Harwood's PCR

work despite the January 5, 2007 Order's mandate that Plaintiffs produce "for each instance of

sampling [or] monitoring … all tests or laboratory analysis performed," "copies of all sampling,

monitoring or testing" including "laboratory results," and copies of all documents relating to the

scientific investigation of groundwater contamination" including "laboratory results."  (Dkt. No.

1016 at 9.)

Plaintiffs now insist[4] that this "email related to Dr. Harwood's effort to see if a bio-marker for poultry waste could be isolated through Polymerase Chain Reaction ('PCR') analysis," merely "relates to the ongoing process of developing a biomarker by the State's experts, which is protected by Rule 26 rather than the underlying analytical data which the Court had ordered produced ..." (Dkt. No. 1570 at 1-2.)  Again, the email itself undercuts this attempted excuse.  Entitled "results," the email begins:

> We are proposing to release "all analytical data" to the defendants.  However, we don't want to release any of the PCR/molecular tracking results at this time.

(Dkt. No. 1565-15 at 2.)  Plaintiffs' attempt to construe this email about "analytical data" and "PCR/molecular tracking results" as somehow not relating to the PCR analytical data that the Court ordered produced is simply untenable.  Plaintiffs willfully withheld data that this Court has called "vital information necessary to Defendants' defense."  (See Dkt. No. 1016 at 8.)

The April 1, 2008 deadline for Plaintiffs' expert disclosures on non-damages issues is fast approaching, and Defendants have only a four-month window in which to prepare and disclose their responsive experts.  If additional undisclosed data exists, Defendants need access to it as soon as possible.  Defendants do not know, and have no way of knowing, how much more discoverable data Plaintiffs have withheld through strained and disingenuous parsing of Defendants' discovery requests and the Court's Orders.  Therefore, based on Plaintiffs' prior conduct, Defendants urge the Court to compel Plaintiffs to disclose any additional withheld data and to make clear to Plaintiffs that any failure to comply will have real consequences at trial.

---

[4]  Defendants attached the Olsen-Harwood "results" email chain as Exhibit 6 to their Response to Plaintiffs' Motion for Leave of Court to Supplement Expert Data, arguing that the email is evidence that Plaintiffs' experts Drs. Olsen and Harwood conspired to conceal their data from discovery by Defendants.  (Dkt. No. 1565 at 6.)  The passages quoted in the text are from Plaintiffs' Reply to that evidence.

The Court's existing January 5, 2007 Order should have been enough to compel Plaintiffs to disclose all the data they have gathered concerning the subject matter of this case. Unfortunately, it was not.  Defendants therefore respectfully request that the Court compel Plaintiffs to disclose all data as ordered by the Court on January 5, 2007 within 10 days of the date of the Order on Defendants' instant motion or, in the future, within ten days of the date any new data is generated.  Defendants also ask the Court for an Order barring Plaintiffs from any direct or indirect use at trial of any data that Plaintiffs do not disclose in compliance with the Court's Order.

## CONCLUSION

For all the above reasons, the Court should compel Plaintiffs to disclose all data as required by the Order of January 5, 2007 within ten days of the date of this Court's Order on this motion or within ten days of the generation of data, whichever is earlier.  The Court should also order that all future untimely disclosed data shall be inadmissible by Plaintiffs at trial both as evidence and as expert reliance material.

Respectfully submitted,

RHODES, HIERONYMUS, JONES, TUCKER & GABLE,
PLLC

BY: /s/ John H. Tucker, OBA #9110
JOHN H. TUCKER, OBA #9110
COLIN H. TUCKER, OBA #16325
THERESA NOBLE HILL, OBA #19119
100 W. Fifth Street, Suite 400 (74103-4287)
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone: 918/582-1173
Facsimile:  918/592-3390

And

DELMAR R. EHRICH
BRUCE JONES
KRISANN C. KLEIBACKER LEE
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: 612/766-7000
Facsimile: 612/766-1600
ATTORNEYS FOR CARGILL, INC. AND CARGILL
TURKEY PRODUCTION, LLC

BY: /s/Robert W George
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
ROBERT W. GEORGE, OBA #18562
ERIN WALKER THOMPSON, Arkansas Bar No.
     2005250
KUTAK ROCK LLP
The Three Sisters Building
214 West Dickson Street
Fayetteville, AR 72701-5221
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
-AND-
STEPHEN L. JANTZEN, OBA # 16247
PATRICK M. RYAN, OBA #7864
PAULA M. BUCHWALD, OBA #20464
RYAN, WIALEY & COLDIRON, P.C.
119 N. Robinson
900 Robinson Renaissance
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
E-Mail: sjantzen@ryanwhaley.com
-AND
THOMAS C. GREEN, ESQ.
MARK D. HOPSON, ESQ.
TIMOTHY K. WEBSTER, ESQ.
JAY T. JORGENSEN, ESQ.
SIBLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005-1401
Telephone: (202) 736-8000

Facsimile: (202)736-8711
**ATTORNEYS FOR TYSON FOODS, INC.;TYSON
POULTRY, INC.; TYSON CHICKEN, INC; AND
COBB-VANTRESS, INC.**

BY: /s/ A. Scott McDaniel
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
A. SCOTT MCDANIEL, OBA#16460
CHRIS A. PAUL, OBA #14416
NICOLE LONGWELL, OBA #18771
PHILIP D. HIXON, OBA #19121
McDaniel, Hixon, Longwell & Acord, PLLC
320 S. Boston Avenue
Suite 700
Tulsa, OK 74103
-AND-
SHERRY P. BARTLEY, AR BAR #79009
MITCHELL WILLIAMS, SELIG,
GATES & WOODYARD, PLLC
425 W. Capitol Avenue, Suite 1800
Little Rock, AR 72201
**ATTORNEYS FOR PETERSON FARMS, INC.**

BY: /s/ R. Thomas Lay
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
R. THOMAS LAY, OBA #5297
KERR, IRVINE, RHODES & ABLES
201 Robert S. Kerr Ave., Suite 600
Oklahoma City, OK 73102
-AND-
JENNIFER S. GRIFFIN
LATHROP & GAGE, L.C.
314 East High Street
Jefferson City, MO 65101
**ATTORNEYS FOR WILLOW BROOK FOODS,
   INC.**

BY: /s/ Randall E. Rose
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
RANDALL E. ROSE, OBA #7753
GEORGE W. OWENS, ESQ.

OWENS LAW F P.C.
234W. 13 Street
Tulsa, OK 74119
-AND-
JAMES MARTIN GRAVES, ESQ.
GARY V. WEEKS, ESQ.
BASSETT LAW FIRM
POB 3618
Fayetteville, AR 72702-3618
**ATTORNEYS FOR GEORGE'S, INC. AND
GEORGE'S FARMS, INC.**


BY: /s/John R. Elrod _____
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
JOHN R. ELROD
VICKI BRONSON, OBA #20574
BRUCE WAYNE FREEMAN
CONNER & WINTERS, L.L.P.
100 W. Central Street, Suite 200
Fayetteville, AR 72701
**ATTORNEYS FOR SIMMONS FOODS, INC.**


BY: /s/ Robert P. Redemann _____
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
ROBERT P. REDEMANN, OBA #7454
LAWRENCE W. ZERINGUE, ESQ.
DAVID C. SENGER, OBA #18830
PERR1NE, MCGIVERN, REDEMANN, REID,
    BARRY &
TAYLOR, P.L.L.C.
Post Office Box 1710
Tulsa, OK 74101-1710
-AND-
ROBERT E. SANDERS
STEPHEN WILLIAMS
YOUNG, WILLIAMS, HENDERSON & FUSILIER
Post Office Box 23059
Jackson, MS 39225-3059
**ATTORNEYS FOR CAL-MAINE FARMS, INC.
    AND CAL-MAINE FOODS, INC.**

13

.

## CERTIFICATE OF SERVICE

I certify that on the 29th day of February, 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

W. A. Drew Edmondson, Attorney General     drew_edmondson@oag.state.ok.us
Kelly Hunter Burch, Assistant Attorney General     kelly_burch@oag.state.ok.us
J. Trevor Hammons, Assistant Attorney General     trevor_hammons@oag.state.ok.us
Robert D. Singletary     Robert_singletary@oag.state.ok.us
Daniel Lennington, Assistant Attorney General     Daniel.lennington@oag.ok.gov

Douglas Allen Wilson     doug_wilson@riggsabney.com
Melvin David Riggs     driggs@riggsabney.com
Richard T. Garren     rgarren@riggsabney.com
Sharon K. Weaver     sweaver@riggsabney.com
David P. Page     dpage@riggsabney.com
Riggs Abney Neal Turpen Orbison & Lewis

Robert Allen Nance     rnance@riggsabney.com
Dorothy Sharon Gentry     sgentry@riggsabney.com
Riggs Abney

J. Randall Miller     rmiller@mkblaw.net
Louis W. Bullock     lbullock@mkblaw.net
Robert M. Blakemore
Miller Keffer & Bullock

William H. Narwold     bnarwold@motleyrice.com
Elizabeth C. Ward     lward@motleyrice.com
Frederick C. Baker     fbaker@motleyrice.com
Lee M. Heath     lheath@motleyrice.com
Elizabeth Claire Xidis     cxidis@motleyrice.com
Motley Rice
**COUNSEL FOR PLAINTIFFS**

Stephen L. Jantzen     sjantzen@ryanwhaley.com
Paula M. Buchwald     pbuchwald@ryanwhaley.com
Ryan, Whaley & Coldiron, P.C.

Mark D. Hopson     mhopson@sidley.com
Jay Thomas Jorgensen     jjorgensen@sidley.com
Timothy K. Webster     twebster@sidley.com
Sidley Austin LLP

Robert W. George     robert.george@kutakrock.com
Michael R. Bond     michael.bond@kutakrock.com
Erin W. Thompson     erin.thompson@kutakrock.com
KutackRock LLP

14

**COUNSEL FOR TYSON FOODS, INC., TYSON POULTRY, INC., TYSON CHICKEN, INC.; AND COBB-VANTRESS, INC.**

R. Thomas Lay                                    rtl@kiralaw.com
Kerr, Irvine, Rhodes & Ables

Jennifer S. Griffin                              jgriffin@lathropgage.com
Lathrop & Gage, L.C.
**COUNSEL FOR WILLOW BROOK FOODS, INC.**

Robert P. Redemann                               rredemann@pmrlaw.net
Lawrence W. Zeringue                             lzeringue@pmrlaw.net
David C .Senger                                  dsenger@pmrlaw.net
Perrine, McGivern, Redemann, Reid, Berry & Taylor, PLLC

Robert E. Sanders                                rsanders@youngwilliams.com
E. Stephen Williams                              steve.williams@youngwilliams.com
Young Williams P.A.
**COUNSEL FOR CAL-MAINE FOODS, INC. AND CAL-MAINE FARMS, INC.**

George W. Owens                                  gwo@owenslawfirmpc.com
Randall E. Rose                                  rer@owenslawfirmpc.com
The Owens Law Firm, P.C.

James M. Graves                                  jgraves@bassettlawfirm.com
Gary V. Weeks
Paul E. Thompson, Jr.
Woody Bassett
Bassett Law Firm
**COUNSEL FOR GEORGE'S INC. AND GEORGE'S FARMS, INC.**

John R. Elrod                                    jelrod@cwlaw.com
Vicki Bronson                                    vbronson@cwlaw.com
Bruce W. Freeman                                 bfreeman@cwlaw.com
Conner & Winters, LLLP
**COUNSEL FOR SIMMONS FOODS, INC.**

A. Scott McDaniel                                smcdaniel@mhla-law.com
Nicole M. Longwell                               nlongwell@mhla-law.com
Philip D. Hixon                                  phixon@mhla-law.com
Craig Mirkes                                     cmirkes@mhla-law.com
McDaniel, Hixon, Longwell & Acord, PLLC
Sherry P. Bartley                                sbartley@mwsgw.com
Mitchell Williams Selig Gates & Woodyard
**COUNSEL FOR PETERSON FARMS, INC.**

Michael D. Graves                                mgraves@hallestill.com
Dale Kenyon Williams, Jr.                        kwilliams@hallestill.com
**COUNSEL FOR CERTAIN POULTRY GROWERS**

Mia Vahlberg                                     mvahlberg@gablelaw.com

**COUNSEL FOR NATIONAL CHICKEN COUNCIL,**
**U.S. POULTRY & EGG ASSOCIATION AND NATIONAL**
**TURKEY FEDERATION**

Adam J. Siegel                                           ajsiegel@hhlaw.com
James T. Banks                                          jtbanks@hhlaw.com

John D. Russell                                         jrussell@fellerssnider.com
**ATTORNEYS FOR ARKANSAS FARM BUREAU FEDERATION**

Barry G. Reynolds                                       Reynolds@titushillis.com
**ATTORNEYS FOR AMERICAN FARM BUREAU FEDERATION**
**AND NATIONAL CATTLEMEN'S BEEF ASSOCIATION**

Jessica E. Rainey                                       jrainey@titushillis.com
**ATTORNEYS FOR AMERICAN FARM BUREAU FEDERATION**
**AND NATIONAL CATTLEMEN'S BEEF ASSOCIATION**

M. Richard Mullins                                      Richard.mullins@mcafeetaft.com
**ATTORNEYS FOR TEXAS FARM BUREAU,**
**TEXAS CATTLE FEEDERS ASSOCIATION,**
**TEXAS PORK PRODUCERS ASSOCIATION, AND**
**TEXAS ASSOCIATION OF DAIRYMEN**

William A. Waddell, Jr.                                 waddell@fec.net

I also hereby certify that I served the attached documents by United States Postal Service, proper postage paid, on the following who are not registered participants of the ECF System:

C. Miles Tolbert                          Charles L. Moulton
Secretary of the Environment              Arkansas Natural Resources Commission
State of Oklahoma                         323 Center Street
3800 North Classen                        Suite 200
Oklahoma City, OK 73118                   Little Rock, AR 72206
**COUNSEL FOR PLAINTIFFS**

                                                    s/ John H. Tucker