## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| State of Oklahoma, et al., | ) | 05-CV-0329 GKF-SAJ |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Tyson Foods, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' JOINT MOTION TO ENFORCE SCHEDULING ORDERS

## IN LIGHT OF PLAINTIFFS' EXPERT DISCLOSURE ABUSES

## EXPEDITED CONSIDERATION REQUESTED

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................. 1

    A.    Plaintiffs Have Repeatedly Changed Their Expert Reports After the Expert Disclosure

    Deadline ................................................................................................................ 3

        1.    Dr. Bernard Engel's New Report ................................................................. 4

        2.    Dr. Scott A. Wells Errata ......................................................................... 5

        3.    Dr. Robert Jan Stevenson's Errata ............................................................ 7

        4.    Dr. Roger Olsen's Errata ......................................................................... 8

        5.    Dr. Gordon Johnson's Email Supplementation .......................................... 8

        6.    Dr. J. Berton Fisher's Errata .................................................................... 9

        7.    Drs. G. Dennis Cooke & Eugene B. Welch's Three Separate Errata ............ 9

    B.    Plaintiffs Are Withholding Key Expert Information ..................................... 10

    C.    Plaintiffs' Experts Continue Performing Analyses and Considering New Materials to

    Bolster and Expand their Opinions ........................................................................ 12

    D.    Defendants' Meet-and-Confer Attempts Have Met Only Resistance ........................... 13

ARGUMENT ................................................................................................................. 14

    A.    Plaintiffs' Late Disclosures Violate the Court's Scheduling Order ............................. 14

    B.    Plaintiffs Must Make Expert Disclosures for All Substantive Report Authors ........... 17

    C.    Plaintiffs' Behavior Is Unjustified and Prejudicial ................................................. 19

    D.    The Court Has Broad Authority to Remedy the Prejudice Caused by Plaintiffs' Late

    Expert Disclosures and Changed Reports ............................................................... 23

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

103 Investors I, L.P. v. Square D Co.,
  372 F.3d 1213 (10th Cir. 2004)................................................................................23

Akeva v. Mizuno,
  212 F.R.D. 306 (M.D.N.C. 2002) ......................................................................16, 17

Beller v. United States,
  221 F.R.D. 689 (D.N.M. 2003)................................................................................15

Cohlmia v. Ardent Health Servs., LLC,
  2008 U.S. Dist. LEXIS 65292 (N.D. Okla. Aug. 22, 2008) ........................15, 17, 24

Dixie Steel Erectors, Inc. v. Grove U.S. LLC,
  2005 U.S. Dist. LEXIS 38346 (W.D. Okla. Dec. 29, 2005) ....................................15

Dura Auto. Sys. v. CTS Corp.,
  285 F.3d 609 (7th Cir. 2002)......................................................................17, 18, 25

Estate of Harvey v. United States,
  2006 U.S. Dist. LEXIS 61062 (D. Colo. Aug. 28, 2006) ........................................23

Kern River Gas Transmission Co. v. 6.17 Acres of Land,
  156 Fed. Appx. 96 (10th Cir. 2005) ........................................................................15

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
  525 F. Supp. 2d 576 (S.D.N.Y. 2007) .....................................................................18

Means v. Letcher,
  51 Fed. Appx. 281 (10th Cir. 2002) ........................................................................23

Miller v. GlaxoSmith-Kline,
  2007 U.S. Dist. LEXIS 41050 (N.D. Okla. June 5, 2007).......................................22

Miller v. Pfizer, Inc.,
  356 F.3d 1326 (10th Cir. 2004)....................................................................15, 16, 22

Nguyen v. IBP, Inc.,
  162 F.R.D. 675 (D. Kan. 1995)................................................................................20

Quarles v. United States,
  2006 U.S. Dist. LEXIS 96392 (N.D. Okla. Dec. 5, 2006)............................... passim

Rambus, Inc. v. Infineon Techs. AG,
   145 F. Supp. 2d 721 (E.D. Va. 2001) ...............................................................................23, 25

Reed v. Binder,
   165 F.R.D. 424 (D.N.J. 1996) ...................................................................................................23

Simpson v. Saks Fifth Ave, Inc.,
   2008 U.S. Dist. LEXIS 60480 (N.D. Okla. Aug. 8, 2008) ......................................................24

Sims v. Great Am. Life Ins. Co.,
   469 F.3d 870 (10th Cir. 2006) .....................................................................................14, 23, 24

Stone v. Deagle,
   2006 U.S. Dist LEXIS 90430 (D. Colo. Dec. 14, 2006).................................................. passim

Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.,
   170 F.3d 985 (10th Cir. 1999) .....................................................................................20, 21, 23

## RULES

Fed. R. Civ. P. 16(f)...............................................................................................................19, 25

Fed. R. Civ. P. 26(a) ...................................................................................................14, 15, 20, 24

Fed. R. Civ. P. 26(c) .......................................................................................................... passim

Fed. R. Civ. P. 37............................................................................................15, 19, 20, 23, 24, 25

Federal Rule of Evidence 702................................................................................................... 18

Federal Rule of Evidence 703 ...............................................................................................17, 18

Defendants jointly move this Court to enforce the Scheduling Orders in the wake of Plaintiffs' repeated violations of those Orders. Despite the passage long ago of the Court's expert disclosure deadline, Plaintiffs continue to serve substantively amended and expanded expert "errata" and to disclose new considered materials. Plaintiffs also refuse to provide other expert disclosures critical to the reports that have been served.

This conduct has substantially prejudiced Defendants and their experts in lost time, wasted money, and delayed trial preparation. To ameliorate this prejudice, Defendants ask the Court to act pursuant to Rules 16 and 37 and to adopt one or more of the following measures:

- Strike Plaintiffs' late-disclosed substantive additions, deletions, and changes to reports;
- Prohibit Plaintiffs from making further substantive changes to their expert reports, including the bases for those experts' opinions, and require Plaintiffs to obtain leave of Court for any Rule 26(e) supplementations;
- Bar Plaintiffs from introducing at trial any opinions or reports authored by undisclosed or "shadow" experts, along with conclusions based on the same;
- Compel expert disclosures, depositions, and other discovery of undisclosed substantive authors of Plaintiffs' expert reports;
- Order Plaintiffs to immediately provide copies of all remaining undisclosed materials that any disclosed experts considered in preparing their original, timely served reports;
- Modify the discovery schedule and reopen depositions as necessary to provide Defendants a reasonable opportunity to analyze and rebut any late expert disclosures not stricken;
- Require Plaintiffs or Plaintiffs' attorneys to reimburse Defendants for the reasonable costs they and their experts have incurred in preparing to meet expert opinions that Plaintiffs have now abandoned; and
- Grant Defendants their reasonable attorney fees incurred in bringing this motion.

Because of the imminent October 15, 2008 deadline, Defendants respectfully request that the Court consider this motion on an expedited basis.

## BACKGROUND

The Court set deadlines in May and early June 2008 for Plaintiffs to produce (1) expert reports for all issues but damages and (2) the materials the experts considered in preparing those

reports.  (See Dkt. No. 1658: Mar. 27, 2008 Order; Dkt. No. 1706: May 15, 2008 Order.)  The Court's Schedule did not allow for any supplemental reports or Plaintiffs' rebuttal reports, and the Court has denied in whole or part three motions to extend Plaintiffs' expert deadlines further. (Dkt. Nos. 1322, 1618, 1702.)   Having failed in these efforts, Plaintiffs appear to have decided simply to ignore the Court's Scheduling Orders.

First, since the Court's expert disclosure deadline passed, Plaintiffs have repeatedly served Defendants with so-called "errata" to their experts' reports.  Rather than simply correcting minor errors, however, most of these errata substantially change the experts' opinions and conclusions and introduce substantial amounts of additional and altered information not included in the original reports.  Several of the "errata" completely replace entire sections of reports. Plaintiffs served most of these "errata" without any advance notice or warning to Defendants, including instances where Plaintiffs served the supplementation to the expert's report on the eve of or even during Defendants' deposition of that very expert.

Likewise, notwithstanding the expired deadline, Plaintiffs have over the last several months sporadically produced both additional materials considered by their experts and new sampling data collected by their experts for this litigation.  Finally, Plaintiffs' experts' reports, their considered materials, and their depositions reveal that some of Plaintiffs' experts did not in fact author major portions of the reports disclosed under their names.  Plaintiffs refuse to provide key information regarding the phantom authors of these substantive sections of expert reports.

All of these changes, additions, and omissions have severely prejudiced Defendants' efforts to rebut Plaintiffs' expert opinions and defend this case.  In the nearly four months since Plaintiffs served their expert disclosures, Defendants' attorneys and experts have expended an enormous amount of time digesting the productions, analyses, and opinions, preparing for the

2

experts' depositions and working to analyze the flaws and weaknesses in Plaintiffs' disclosures and to prepare rebuttal reports. Because of Plaintiffs' changes, omissions, and errors, much of that time has been wasted and much of that work rendered useless. Plaintiffs' conduct has severely prejudiced Defendants and has subverted their experts' efforts.

This case cannot follow this Court's schedule toward trial while Plaintiffs continue to develop and send Defendants new data and perform wholesale re-writes of their expert opinions. The Court's Scheduling Orders do not allow these belated disclosures, and Defendants urge the Court to take appropriate steps to enforce its schedule and remedy the prejudice Defendants have already suffered from Plaintiffs' conduct.

### A.    Plaintiffs Have Repeatedly Changed Their Expert Reports After the Expert Disclosure Deadline.

Despite having over three years to prepare their experts' opinions and three extensions of the deadline to serve their expert reports, Plaintiffs have repeatedly served post-deadline "errata" seeking to bolster, supplement, and even replace those expert opinions. Plaintiffs' experts have not simply revised their reports to correct typographical errors, transposed numbers, or mistaken computations. They have undertaken new work, adopted new methods of analysis, re-run computer models using different assumptions, and proffered entirely new and different substantive opinions. The full scope of these new changes is too broad to summarize in this motion, and indeed Defendants and their experts are not yet in a position to provide to the Court a comprehensive analysis of all the implications and consequences of Plaintiffs' multiple supplementations. Instead, Defendants will provide the Court with overviews of the formal and informal errata served by Plaintiffs so that the Court can appreciate the breadth and complexity of Plaintiffs' changes and the resulting serious prejudice to Defendants.

1.    **Dr. Bernard Engel's New Report**

| Expert report due & original served: | May 22, 2008 |
|---|---|
| Supplemental report served: | Sept. 4, 2008 |
| Expert's deposition: | Sept. 18-19, 2008 (postponed) |
| Late considered materials: | Sept. 4, 2008 (received) |
| Volume of new material: | 49 pages, plus as-yet undisclosed revised reports from other experts who depend on Engel's work |

Plaintiffs intend to offer the testimony of Dr. Bernard Engel concerning the computer modeling of water and its movement in the IRW. This modeling work is central to Plaintiffs' case, and several other experts rely on Dr. Engel's data in offering their own opinions, including Dr. Wells (water quality), Drs. Cooke and Welch (limnology), and Dr. Stevenson (ecology).

On September 4, 2008, Plaintiffs served a 49-page "errata" to Dr. Engel's report. (Ex. 1: Engel Errata.) According to the errata, because of time pressures, Dr. Engel relied on an obsolete, flawed computer model in preparing the report disclosed to Defendants. Dr. Engel's assistant Dr. Jeon discovered these errors, changed the data, and made a new computer run of the model. Although these changes were not communicated to Dr. Engel, Plaintiffs nevertheless produced Dr. Jeon's final run as the basis for Dr. Engel's report. (See id. at 1-2.)

Defendants' experts have spent the last several months trying to reconcile the numbers in Dr. Engel's report with the model run on which the report was supposedly based, an effort that Dr. Engel's errata now reveal was entirely futile from the outset. This errata in effect presents Defendants with an entirely new report based on data that Dr. Engel apparently should have used in the first place. Importantly, the errata changes his results for phosphorus loads during the 1997-2006 base period and for all of his scenarios, both historical and future, and changes virtually all the numbers in his original report. Defendants and their experts will have to essentially start over, trying to match the results revealed in the new report against the output of new model runs using the data on which the new report purportedly relies, and begin their

4

analysis from this new starting point. (Ex. 2: Bierman Decl. ¶¶ 4-7; Ex. 3: Sullivan Decl. ¶ 5.)

As detailed below, Dr. Engel's changes will also have a ripple effect, resulting in not-yet disclosed revisions in the reports of Plaintiffs' other experts who rely on him. Finally, it appears that even now Dr. Engel is not done—the introduction to his errata ends by noting that he will continue to refine his analysis using newly developed data and presumes to "reserve the right to update this report." (Ex. 1: Engel Errata at 3.)

### 2. Dr. Scott A. Wells Errata

| | |
|---|---|
| Expert report due & original served: | May 29, 2008 |
| Supplemental report served: | Aug. 26, 2008 |
| Expert's deposition: | Aug. 28 and 29, 2008 (postponed) |
| Late considered materials: | Aug. 26, 2008 (received) |
| Volume of new material: | 118-page "errata" report, plus at least seven modeling runs, with more promised |

On August 26, just two days before the scheduled deposition of Dr. Scott Wells, Plaintiffs served a 118-page "errata" for the combined expert report of Dr. Scott Wells, Dr. V.I. Wells and Dr. C.J Berger regarding modeling of Tenkiller Reservoir. (Dkt. No. 1758-2, 1758-3.) Given the short notice and the far-reaching nature of Plaintiffs' alterations and additions to their experts' report, Defendants were forced to postpone the deposition of Dr. Scott Wells. (See Ex. 4: Aug. 26, 2008 email from R. George to D. Page.) Dr. Scott Wells' errata changes virtually all the numbers in his original report and includes numerous changes to the input and output of his hydrodynamic and water quality model of Lake Tenkiller (e.g., modifications to boundary conditions, calibration values, error analyses, and results). It appears that the report contains 157 revised figures and 17 revised tables reflecting these changes. Underlying these changes are tens of thousands of data points that Defendants' experts will now need to review and reanalyze. (See Ex. 2: Bierman Decl. ¶ 8; Ex. 3 Sullivan Decl. ¶ 7.) In addition, on August 28, Defendants'

counsel received a disk of "new" considered materials from Dr. Wells that includes over 4 gigabytes of modeling files.

Based on Defendants' preliminary review, Dr. Wells' errata appears to substantially alter several of his conclusions regarding the water quality conditions predicted by his model under a variety of scenarios, conclusions that are central to Plaintiffs' claims regarding the impact of poultry litter on the IRW. Dr. Wells has abandoned the numerous modeling runs that formed the basis for his original report, and now relies on the results of at least seven runs of his hydrologic lake model that Plaintiffs failed to disclose until August 28, four months after his original expert report. Those new runs were performed with a different set of assumptions and apparently some new input data. This errata renders a substantial portion of the months of work by Defendants' counsel and experts all but useless. If Dr. Wells' errata report is allowed to stand, Defendants' experts will need significant time to scrutinize and evaluate these new data and conclusions and their impact on Plaintiffs' case. (See Ex. 2: Bierman Decl. ¶¶ 8-9; Ex. 3: Sullivan Decl. ¶ 7.)

Moreover, Plaintiffs have stated that they intend to offer even more changes to Dr. Wells' report. Dr. Wells used Dr. Engel's estimates of yearly phosphorus loads as the foundation for his own lake model analysis. As a result, Dr. Engel's erroneous information (described above) unavoidably impacts Dr. Wells' report as well. Based on this compounded error, Plaintiffs' attorneys state that Dr. Wells will re-run all seven of his computer modeling scenarios with Dr. Engel's new set of input data, and that Plaintiffs intend to submit yet another new report by Dr. Wells based on those new runs. Obviously, the delay, unnecessary expense, and prejudice caused by the August 26 errata will only be exacerbated if Dr. Wells is permitted to continue to revise his modeling with different data and submit additional expert reports based on the output of those modeling runs. (See Ex. 2: Bierman Decl. ¶¶ 10, 16; Ex. 3: Sullivan Decl. ¶ 9.)

### 3.    Dr. Robert Jan Stevenson's Errata

| | |
|---|---|
| <u>Original expert report due:</u> | May 22, 2008, but served May 29, 2008 |
| <u>Supplemental report served:</u> | Aug. 5, 2008 (errata) |
| <u>Expert's deposition:</u> | Sept. 30, 2008 (scheduled) |
| <u>Volume of new material:</u> | 50 pages |

On August 5, 2008 Plaintiffs served an extensively redrafted version of Dr. R. Jan Stevenson's report on nutrient pollution of IRW streams, affecting primarily Section 5 of his report. (Ex. 5: Stevenson Errata.) In his 50-page "errata," Dr. Stevenson does not claim to have made any errors in his original report, but has simply rewritten several paragraphs of that report. Most significantly, Dr. Stevenson changed his method of estimating future total phosphorus ("TP") concentrations. Dr. Stevenson's original report used a linear regression method for long-term averages of TP concentrations. His supplemental report, however, abandons that method and instead employs an approach using the long-term averages of TP concentrations generated by Dr. Engel's models. Dr. Stevenson now asserts that this new method is more accurate than his previous linear regression method, but offers no support for this assertion. (Ex. 2: Bierman Decl. ¶¶ )

Dr. Stevenson's new calculation method substantially changes his reported conclusions, resulting in supposedly increased TP concentrations in the "control" scenario, a five-fold TP concentration increase in the "continued growth" scenario, and a reversal of the relative TP concentrations in the "no litter" and "no litter and buffer" scenarios. Again, Defendants' counsel and experts expended considerable time and effort evaluating Dr. Stevenson's original analysis, which must now be re-done. (<u>Id.</u> ¶¶ 11-16.) And of course, because Dr. Stevenson has now elected to rely on Dr. Engel's "more accurate" outputs, Defendants have yet to see what additional changes the discovery of Dr. Engel's errors may prompt in Stevenson's report.

### 4.    Dr. Roger Olsen's Errata

| | |
|---|---|
| Original expert report due & served: | May 15, 2008 |
| Supplemental report served: | July 25, 2008 |
| Expert's deposition: | Sept. 10 and 11, 2008 |
| Volume of new material: | 11 pages |

Dr. Roger Olsen's report plays the central role of describing Plaintiffs' entire sampling

program.  On July 25, 2008, Plaintiffs served an 11-page "errata" containing Dr. Olsen's

insertion of substantive changes in his report on Plaintiffs' sampling program and PCA

fingerprint analysis, including whole new sections of text and the replacement of several tables

and charts.  (Ex. 6: Olsen Errata.)  These changes significantly alter several of Dr. Olsen's data

summaries.  Further, the errata appear to change the estimation of cattle's contribution to

phosphorus loading in the IRW, an important issue in this case.

### 5.    Dr. Gordon Johnson's Email Supplementation

| | |
|---|---|
| Original expert report due & served: | May 15, 2008 |
| Supplemental report served: | Aug. 18, 2008 |
| Expert's deposition: | Aug. 19, 2008 |
| Volume of new material: | New depletion model, with multiple spreadsheets & thousands of data points |

Plaintiffs have also belatedly replaced the timely served report of Dr. Gordon Johnson,

their expert on phosphorus depletion.  In this instance, Plaintiffs did not even call the

supplementation an "errata".  Instead, on August 18, the afternoon before his scheduled

deposition – Plaintiffs emailed a new phosphorus depletion model by Dr. Johnson that

purportedly relies on Arkansas soils data that is newer than the data that Plaintiffs initially

disclosed with Dr. Johnson's original report.  (Ex. 7: Aug. 18, 2008 email from B. Nance to S.

McDaniel.)  At his deposition, Dr. Johnson admitted (1) that he had the 2007 Arkansas soils data

underlying his new phosphorus depletion model before he issued his original expert report, and

(2) that he had completed the work on the new model more than a month before his deposition

but had provided it to Plaintiffs' counsel only one day before he was deposed. (Ex. 8: G. Johnson Dep. at 205-07.)

Dr. Johnson's newly offered spreadsheet includes numerous figures based on thousands of data points, changes that Defendants and their experts have thus far only been able to begin to analyze. The spreadsheet contains figures not included in the original report, fails to identify what data has been changed, and may alter Dr. Johnson's ultimate results regarding the timeframes necessary for soil test phosphorus ("STP") conditions to improve in the IRW. Plaintiffs' last-minute disclosures denied Defendants a full and fair opportunity to prepare for and examine Dr. Johnson, and that disclosure will now require further work by Defendants' experts and probably another deposition of Dr. Johnson.

### 6. Dr. J. Berton Fisher's Errata

| | |
|---|---|
| Original expert report due & served: | May 15, 2008 |
| Supplemental reports served: | Sept. 3, 2008 |
| Expert's deposition: | Sept. 3 and 4, 2008 |
| Volume of new material: | 3 pages |

Plaintiffs have identified Dr. Berton Fisher as a testifying expert on the issue of poultry waste disposal and the fate and transport of land-applied poultry waste. *During* the second day of Dr. Fisher's deposition, Plaintiffs produced an errata sheet for Dr. Fisher's expert report that completely rewrote his conclusion 18. (Ex. 9: Fisher errata.) These errata radically change the conclusion, altering the results by factors of up to 10,000, and Defendants had no opportunity to consult their own experts or otherwise prepare to examine Dr. Fisher on his new opinion.

### 7. Drs. G. Dennis Cooke & Eugene B. Welch's Three Separate Errata

| | |
|---|---|
| Original expert report due & served: | May 29, 2008 |
| Supplemental reports served: | July 25, Aug. 1, Aug. 13, 2008 |
| Experts' depositions: | Aug. 14 and 15, 2008 (Welch) |
| | Sept. 24 and 25, 2008 (Cooke) |
| Volume of new material: | 10 pages total (thus far) |

Plaintiffs timely served Drs. Dennis Cooke's and Eugene Welch's joint export report on

Eutrophication issues on May 29, 2008.  On July 25 and August 1 and 13, Plaintiffs served three

different errata making numerous changes to the original report, the last of which was served the

day before Dr. Welch's deposition.  (Ex. 10: Cooke Errata, Welch First & Second Errata.)

Among other things, the errata include new revised tables, increase the "period of record"

analyzed for trihalomethane (THM) and haloacetic acid (HAA5) violations at several utilities

and locations, and add trophic state data for 18 additional dates in the years 2001 through 2004.

Dr. Welch testified that at the time he issued his original report, he already had the data he later

used to revise the tables in his second errata.  (Ex. 11: Welch Dep. at 357-59.)

The errata changed several data summaries, and Defendants have not yet been able to

determine whether the Cooke and Welch alterations significantly affect the report's key

conclusions.  And again, because Drs. Cooke and Welch rely on Dr. Engel's now-discredited

report, Defendants have yet to see what additional changes the discovery of Dr. Engel's errors

may prompt from Drs. Cooke and Welch.

In sum, Plaintiffs' attempted and anticipated changes in the reports of Drs. Engel, Wells,

Stevenson, Olsen, Johnson, Cooke, and Welch contain far more than simple typographical

corrections or "errata."  Each tries to bolster the expert's opinions by asserting new and altered

information while trying to repair flawed or incomplete analyses in the initial disclosures.

### B.    Plaintiffs Are Withholding Key Expert Information.

In addition, Plaintiffs have withheld from Defendants vital information concerning

previously undisclosed additional experts on whose opinions Plaintiffs intend to rely.

Dr. Welch's report and deposition provide good examples of this practice.  Dr. Welch

testified that he was not the exclusive author of his expert report, and that Dr. Jack Jones at the

University of Missouri and various personnel at Plaintiffs' scientific consulting firm Camp Dresser & McKee, Inc. ("CDM") drafted and edited portions of the report disclosed under Dr. Welch's name. (E.g., id. at 115-18, 121-22, 169.) Further, CDM and others apparently performed many of the calculations in Dr. Welch's report (e.g., id. at 401, 427-29, 449, 494) and prepared many of his tables and graphs (e.g., id. at 159, 297, 426-27, 432, 493). Dr. Welch also testified that he relied on CDM's sampling results without reviewing the raw data or checking the math in CDM's calculations. (E.g., id. at 261, 447-48, 503-04.)

During his deposition, Dr. Welch provided Defendants with additional statistical analysis conducted, not by him, but by Dr. Jim Loftis[1] at Colorado State University and Todd King of CDM for fish catch data. (Id. at 451-53, 502.) (Defendants deposed Mr. King before Dr. Welch's disclosure, and may need to reopen Mr. King's deposition if the Welch additions are allowed.) This additional Loftis/King analysis had not even been performed at the time Plaintiffs disclosed Dr. Welch's expert report. (Id. at 505-09.) Dr. Welch testified that his "goal" with the additional late Loftis analysis, "was trying to improve on the analysis [in the report]." (Id. at 511.)

Other Plaintiffs' expert reports and depositions reveal other examples of Plaintiffs' use of "phantom" experts. For example, an entire independent section of the report disclosed under Dr. Engel's name was actually drafted by Dr. Tim Cox. (Ex. 12: Engel App. C-1.) Defendants also learned in Dr. Olsen's September 10-11 deposition that Dr. Olsen wrote only a fraction of his report. Parts of his report were drawn directly from Dr. Harwood, and Drs. Brown and Fisher wrote entire sections. Defendants have already deposed all three of these other experts without

---

[1] Although Dr. Loftis was originally disclosed as a testifying expert, Plaintiffs ultimately produced considered materials for Dr. Loftis but no expert report.

knowing of their authorship of these sections of Dr. Olsen's report.

Despite Plaintiffs' clear intention to rely on these "phantom" experts' opinions, Plaintiffs have not provided all (or in some cases any) of the required disclosures (litigation histories, considered materials, CVs) for these experts. Without this information, Defendants cannot fully verify and analyze the methodology and accuracy of the experts' underlying work. For example, Dr. Welch could not fully testify at his deposition about sections added to his report by others, including sections addressing such important subjects as compliance with water quality standards in rivers and tributaries. (See, e.g., Ex. 11 Welch Dep. at 425-29.)

When confronted with the omissions, Plaintiffs have offered only incomplete information. For example, Plaintiffs initially refused to provide any expert disclosures at all for Dr. Cox. Plaintiffs now represent that they will produce Dr. Cox's considered materials as well as certain expert disclosures. (Ex. 13: Aug. 14-27, 2008 emails between R. George & C. Xidis.) However, Plaintiffs refuse to admit that Rule 26 requires this production, and have declined to commit to a date to disclose all of Dr. Cox's information. Defendants may also need further discovery (including depositions) of these experts after analyzing their considered materials.

## C.  Plaintiffs' Experts Continue Performing Analyses and Considering New Materials to Bolster and Expand their Opinions.

Long after the expert disclosure deadlines, Plaintiffs have continued to produce materials considered by their experts, as well as results of environmental sampling efforts that could only be introduced through an expert. These productions include:

(1) Materials that Plaintiffs' experts considered before they issued their original reports.

> For example, during the deposition of Mr. King, Defendants learned that Plaintiffs had failed to produce all his considered materials. On Defendants' demand, Plaintiffs produced at least some of the missing considered materials for Mr. King on August 5, 2008. Plaintiffs also produced additional considered materials of Dr. Stevenson on August 12, 2008.

(2) Materials (including newly developed materials) that the experts considered <u>after</u>

preparing their original reports to bolster those earlier opinions.

> For example, Dr. Loftis and Mr. King reportedly continue to work on their
> analyses after the expert disclosure deadlines, and Dr. Welch now purports to rely
> on post-deadline analysis performed by Loftis and King. (Ex. 11: Welch Dep. at
> 353-54.) Dr. Welch also continues to work on his expert analyses. (<u>Id.</u> at 505-
> 11.) Dr. Wells also provided new supporting materials on August 28.

### D.    Defendants' Meet-and-Confer Attempts Have Met Only Resistance.

In response to Plaintiffs' repeated untimely expert supplementations, on August 15

Defendants asked Plaintiffs to seek leave of the Court before issuing any further supplements to

their expert reports, considered materials, or environmental sampling data collected or analyzed

by Plaintiffs' experts. (Ex. 14: Aug. 15-19, 2008 email chain of R. George, D. Page & C. Xidis.)

Plaintiffs rejected the proposal, insisting that they have both "a right to supplement expert

disclosures where additional data has become available which impacts expert witnesses'

opinions" and a duty to do so under Rule 26(e). (<u>Id.</u> at 2.)  As to the substance and impact of

these materials, Plaintiffs assert that the late disclosures qualify as mere Rule 26(e)

supplementations "address[ing] among, other things, calculation, typographical and citation

corrections or omissions," which "have not materially changed any expert's conclusion." (Dkt.

No. 1757 at 6, n.3: Pls' Obj. to Aug. 8, 2008 Order.)  Plaintiffs blame their new and changed

reports on this Court's Scheduling Orders. (Ex. 15: Sept. 4, 2008 Ltr. from D. Page: "the

mistakes that underlie the need for the Errata were due to the rush to meet the Expert Report

deadlines as set by the Court.")

When pressed as to whether (1) all changes and additions in the errata reports were the

product of newly discovered information not in existence or reasonably available to the experts

at the time they submitted their expert reports, and (2) whether Plaintiffs interpreted Rule 26(e)

as granting their experts license to continue until the pre-trial disclosure deadline to collect additional data, complete new analysis, and run additional modeling scenarios and modify their opinions based upon that work, Plaintiffs responded "no" to both questions, without additional explanation. (Ex. 14 at 1.) A telephonic meet-and-confer on August 28 was unsuccessful in resolving the parties' differences, and Plaintiffs' supplementation has since continued.

## ARGUMENT

Plaintiffs' expert reports on all issues but damages were due in May 2008 per the Court's Schedule. (Dkt. Nos. 1658, 1706.) Those Orders are dispositive of the expert disclosure deadlines. Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 894 (10th Cir. 2006). Plaintiffs' failure to abide by the Court's deadlines and Orders have materially prejudiced Defendants' ability to defend this case and their experts' ability to prepare timely rebuttal reports. Defendants urge the Court to grant Defendants appropriate remedies to cure that prejudice.

### A.     Plaintiffs' Late Disclosures Violate the Court's Scheduling Order.

Plaintiffs do not dispute that their expert reports and disclosures were due in May of 2008, or that that deadline has long past. Instead, Plaintiffs assert that Rule 26(a) excuses their belated alterations, substitution, and reinforcement of their experts' opinions. In fact, the Rule dictates just the opposite. Rule 26(a)(2) requires that expert reports contain a "complete statement of all opinions to be expressed and the basis and reasons therefore." This Court has instructed that "[t]he purpose of this procedure is to permit the opposing party sufficient time to prepare to depose the expert as well as to 'arrange for expert testimony from other witnesses.'" Quarles v. United States, 2006 U.S. Dist. LEXIS 96392, at *11 (N.D. Okla. Dec. 5, 2006) (quoting in part advisory committee note to 1993 amendment).

Consistent with the Rule, the Tenth Circuit Court of Appeals does not allow

"preliminary" expert reports. <u>Kern River Gas Transmission Co. v. 6.17 Acres of Land,</u> 156 Fed.

Appx. 96, 102 (10th Cir. 2005); <u>Stone v. Deagle,</u> 2006 U.S. Dist LEXIS 90430, at *13 (D. Colo.

Dec. 14, 2006). More pointedly, where a court's scheduling order does not provide for follow-

up reports, parties are barred from serving them. <u>Stone,</u> 2006 U.S. Dist LEXIS 90430, at *13

(<u>citing Beller v. United States,</u> 221 F.R.D. 689, 695 (D.N.M. 2003)). "To the contrary, an

opposing party is entitled to rely on a written report 'as a definitive statement of the expert's

direct testimony and of the basis for that testimony.'" <u>Id.</u> at *14 (quoting in part <u>Dixie Steel</u>

<u>Erectors, Inc. v. Grove U.S. LLC,</u> 2005 U.S. Dist. LEXIS 38346, at *6 (W.D. Okla. Dec. 29,

2005)). The Tenth Circuit recently emphasized that "[t]he orderly conduct of litigation demands

that expert opinions reach closure." <u>Miller v. Pfizer, Inc.,</u> 356 F.3d 1326, 1334 (10th Cir. 2004).

As this Court has put it:

> A supplemental expert report that states additional opinions or rationales or seeks to
> "strengthen" or "deepen" opinions expressed in the original expert report exceeds the
> bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1).
> To rule otherwise would create a system where preliminary [expert] reports could be
> followed by supplementary reports and there would be no finality to expert reports, as
> each side, in order to buttress its case or position, could "supplement" existing reports
> and modify opinions previously given. This result would be the antithesis of the full
> expert disclosure requirements stated in Rule 26(a).

<u>Cohlmia v. Ardent Health Servs., LLC,</u> 2008 U.S. Dist. LEXIS 65292, at *18-19 (N.D. Okla.

Aug. 22, 2008) (quotations omitted).

Instead, Rule 26(e) permits supplementation of expert reports <u>only</u> where a disclosing

party learns that its information is "incorrect or incomplete." <u>Quarles,</u> 2006 U.S. Dist. LEXIS

96392, at *13-18. In other words,

> Rule 26(e) envisions supplementation when a party's discovery disclosures
> happen to be **defective in some way so that the disclosure was incorrect or**
> **incomplete and, therefore, misleading**. Plaintiffs' interpretation would
> swallow the Rule whole. The **Rule does not permit supplementation to cure**
> **failures of omission because the expert did an inadequate or incomplete**

**preparation, nor does it permit an expert to issue a new or revised report simply because the necessary work was not completed by the expert deadline**. To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreck] [sic] havoc in docket control and amount to unlimited expert opinion preparation.

Id. at *16 (emphasis added, citing Akeva v. Mizuno, 212 F.R.D. 306, 308 (M.D.N.C. 2002) (striking additional testing by plaintiff's expert to bolster opinion after disclosure of report)).

Plaintiffs maintain that Rule 26(e) allows their late disclosures as "supplementations." (E.g., Dkt. No. 1757 at 6, n.3.) This Court recently considered and rejected a similar position in Quarles. There, plaintiffs tried to use Rule 26(e) supplementation to justify a late report and additional expert information for Dr. Berton Fisher (also a Plaintiffs' expert here). 2006 U.S. Dist. LEXIS 96392, at *13. In addressing the issue, the Court considered whether (1) the supplemental expert materials impermissibly sought to bolster the plaintiff's initial reports by providing data and documentation that should have been provided earlier, or (2) sought only to permissibly rectify "incorrect or incomplete" information. Id. at *14, 17-18.

The Quarles Court held that Dr. Fisher's late expert report was not truly "supplemental" under Rule 26(e), "but a clear attempt to bolster Fisher's opinions in the face of criticism expressed by Defendants' experts." Id. at *14, 16. Instead of conceding that the prior report was "incorrect," the Quarles plaintiffs asserted that Dr. Fisher's later report and data "simply validated his visual and historical findings through reliable and valid scientific tests." Id. at *14. The Court emphasized that counsel had represented that Dr. "Fisher's [new] testing data did not change his opinions and were consistent with the opinions and the bases he cited in the [timely first] report. Thus, the [first] Report does not appear to have been incomplete." Id. at *15. As a result, there was "no question" that the later report was "not supplemental as in Rule 26(e), but is an effort to bolster Fisher's opinions and protect them from [] attack." Id. at *26; see also Miller,

356 F.3d at 1334 (upholding decision to strike additional expert information on ground that plaintiffs were not entitled to an extra "opportunity to persuade the court … by offering new data, analyses, and theories that could have been included in prior submissions")

Likewise here, Plaintiffs cannot use Rule 26(e) "to bolster or submit additional expert opinions," or to "cover [their] failures of omission because the expert[s] did an inadequate or incomplete preparation." Quarles, 2006 U.S. Dist. LEXIS 96392, at *16 (citing Akeva, 212 F.R.D. at 308). As in Quarles, Plaintiffs do not concede that their experts' earlier reports were defective or misleading and therefore in need of Rule 26(e) supplementation. See id. On the contrary, Plaintiffs contend that the errata do not even alter the reports or the experts' opinions. (Dkt. No. 1757 at 6, n.3.) Dr. Welch even testified that his "goal" in continuing work after the deadline "was trying to improve on the analysis." (Ex. 11: Welch Dep. at 511.) Rule 26(e) does not save such post-deadline attempts to bolster and expand expert opinions. "The supplementation Plaintiffs suggest here is, in fact, a second bite at the apple – an opportunity to correct fatal defects in the reports they have submitted. That is not what Rule 26(e) envisions." Cohlmia, 2008 U.S. Dist. LEXIS 65292, at *19.

### B.      Plaintiffs Must Make Expert Disclosures for All Substantive Report Authors.

Plaintiffs have also violated the Court's Scheduling Order by refusing to produce disclosures from previously undisclosed experts who drafted sections of Plaintiffs' disclosed expert reports, and in the case of Dr. Cox, drafted a full stand-alone report.

As a threshold matter, one expert may not serve as a mere "mouthpiece" for another. Dura Auto. Sys. v. CTS Corp., 285 F.3d 609, 612-13 (7th Cir. 2002). Federal Rule of Evidence 703 permits experts to rely on opinions of other experts only to the extent that they are of the type that would be reasonably relied upon by other experts in the field. In doing so, however, the

expert witness must in the end give his or her own opinion. Id. "He cannot simply be a conduit

for the opinion of an unproduced expert." Louis Vuitton Malletier v. Dooney & Bourke, Inc.,

525 F. Supp. 2d 576, 664-666 (S.D.N.Y. 2007) (following Dura).

In Dura, Judge Posner addressed a situation similar to that created here by Plaintiffs'

refusal to provide full expert disclosures for Dr. Cox and the undisclosed additional authors of

Dr. Welch's report. In Dura, a hydrogeologist relied extensively on the opinions of expert

groundwater-flow modelers to draw a conclusion about the flow of pollutants into a water

supply, but the plaintiff did not produce disclosures for the modeling experts who had formulated

those opinions. 285 F.3d at 611-12. The Seventh Circuit found that without such disclosures,

the hydrogeologist's testimony was inadmissible under Daubert and Rule 702. The court noted

that where an expert's "assistants aren't merely gofers or data gatherers but exercise professional

judgment that is beyond the expert's ken," the court must carefully examine the situation. Id. at

613. If the validity of the underlying opinions of the undisclosed experts is in question or of the

type not normally relied on in the field, they must either be disclosed or the umbrella (disclosed)

opinion must fail. An expert cannot "testify for the purpose of vouching for the truth of what the

[other expert] had told him – of becoming in short the [other's] spokesman." Id. If the disclosed

expert cannot adequately explain the other experts' opinions espoused or included within the

disclosed report, the umbrella report is not – without more – admissible. Id.; Louis Vuitton, 525

F. Supp. 2d at 665-66 (rejecting expert's opinion relying on a regression analysis conducted by

an undisclosed expert on which the disclosed expert was unable to opine).

Similarly here, Dr. Welch was unable to testify about the substance of those sections of

his own report drafted by undisclosed experts, sections that contain analyses that Dr. Welch

admits he does not understand well enough to articulate. Dr. Engel likewise cannot vouch for or

attest to the independent and freestanding report of Dr. Cox. Only expert disclosures for the experts who authored and understand these analyses can give Defendants the information they need to analyze and rebut these expert opinions.[2]

Defendants do not seek disclosures from every lab assistant who had a small hand in Plaintiffs' expert reports or the analyses underlying them. What Defendants do seek, and what they have the right to obtain, is adequate disclosures – professional credentials, considered materials, and work product – of the experts who actually provided the substantive opinions contained in the reports of the "mouthpiece" experts.

## C.    Plaintiffs' Behavior Is Unjustified and Prejudicial.

Plaintiffs cannot justify their serial post-deadline production of new data, new methods, new opinions, and new considered materials, and those productions have seriously prejudiced Defendants. The Court may analyze Plaintiffs' failures to comply with the Scheduling Orders and Rule 26(a)'s expert disclosure standards under either Rule 16 or Rule 37. Under either standard, Defendants are entitled to relief.

Plaintiffs' failures to obey the Court's Scheduling Orders are governed by Rule 16(f), which allows for sanctions for such violations. Quarles, U.S. Dist. LEXIS 96392, at *11. Absent a showing by Plaintiffs of good cause for their failure to comply with the schedule, Rule 16 permits this Court to impose all the sanctions envisioned by Rule 37 and to award attorney's fees. Id. at *17; see also id. at *11 (noting defendants need not show prejudice to be entitled to relief). Defendants respectfully submit that Plaintiffs' repeated and substantial supplemental disclosures and productions and their comments in the meet-and-confer correspondence demonstrate that Plaintiffs cannot show good cause for their violations of the expert deadlines.

---

[2] Dr. Welch and Dr. Engel are the only experts that Defendants have thus far identified as having

Moreover, Plaintiffs' alterations and omissions have in fact severely prejudiced Defendants' and their experts' efforts to analyze and refute Plaintiffs' expert opinions. As discussed above, Defendants' experts must evaluate every change Plaintiffs make, and every substantive change works additional changes in subsequent calculations and analyses, resulting in exponentially more and complicated work for Defendants' experts. Indeed, in some instances, Plaintiffs' changes and substitutions have essentially required Defendants' experts to start over at square one. (See Ex. 2: Bierman Decl. ¶ 5, 7-9, 14-15; Ex. 3: Sullivan Decl. ¶ 5-9.) Simply put, the manner in which Plaintiffs have prepared and presented their expert case in violation of the Court's Schedule has wasted precious time and resources, and Defendants are entitled to relief.

Rule 37 also provides (1) that an incomplete disclosure should be treated as a failure to disclose, and (2) that where a party fails to make a required Rule 26(a) disclosure, the party may not use at trial any witness or information not so disclosed, unless the court determines that the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(a)(3) and 37(c)(1). As the non-moving parties, Plaintiffs carry the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1) or that the failures to disclose were harmless. Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995); Stone, 2006 U.S. Dist LEXIS 90430, at *15. Plaintiffs here cannot prove either.

The determination of whether a Rule 26(a) violation is substantially justified or harmless is left to the Court's broad discretion, guided by (1) the prejudice or surprise to Defendants, against whom the testimony is offered; (2) the ability of Defendants to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) Plaintiffs' bad faith or willfulness. Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 993

---

partially "ghostwritten" reports, but depositions of many of Plaintiffs' experts have yet to occur.

(10th Cir. 1999). "To satisfy the 'substantial justification' requirement, [Plaintiffs] must proffer a justification that would satisfy a reasonable person that parties could differ as to whether Plaintiffs were required to comply with their disclosure obligations." Stone, 2006 U.S. Dist LEXIS 90430, at *16 (citation omitted).

Plaintiffs can show no such justification here. As detailed above, Plaintiffs' only excuse for their late disclosures appears to be that they were unable to meet the Court's extended deadlines. (See Dkt. No. 1757 at 6, n.3; Ex. 15 at 1.) Plaintiffs have rebuffed Defendants' attempts to ameliorate the situation, and have instead continued to alter their expert opinions and considered materials at times of Plaintiffs' own choosing, frequently on the eve of or even during the expert's deposition. Compare Woodworker's, 170 F.3d at 993.

Nor can Plaintiffs establish that their violations have been "harmless." An untimely disclosure is "harmless" when there is no prejudice to the opposing party. "However, late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery." Stone, 2006 U.S. Dist LEXIS 90430, at *18-19 (quotations omitted). The very "purpose of this procedure is to permit the opposing party sufficient time to prepare to depose the expert as well as to 'arrange for expert testimony from other witnesses.'" Quarles, 2006 U.S. Dist. LEXIS 96392, at *11. Applying these principles, the Stone court rejected the argument that the plaintiffs' supplemental reports were harmless because ample opportunity remained to depose the plaintiffs' experts and for the defendants to submit their own supplemental rebuttal reports before the close of discovery. Stone, 2006 U.S. Dist LEXIS 90430, at *18-19.

The situation is the same here. Although substantial time remains before the trial in this action, Defendants face imminent deadlines for disclosing their own expert reports in response to Plaintiffs' incomplete and constantly changing expert opinions. The Court entered its Order on

August 8. 2008 (Dkt. No. 1756) setting the date for Defendants' rebuttal expert reports. The Court chose those dates based on its and Defendants' assumption that Plaintiffs' expert disclosures in May (1) provided full and complete statements of Plaintiffs' experts' opinions, (2) had been accompanied by all of the experts' considered materials, and (3) had fully disclosed all of the authoring experts. Unfortunately, none of those assumptions has proved to be true.

Plaintiffs' conduct has prejudiced Defendants' trial preparation, wasted Defendants' experts' and attorneys' time, cost Defendants a significant sum in expert fees for work that is now useless, and disrupted this Court's pretrial schedule. Plaintiffs cannot reasonably argue that their errata—making significant, substantive changes to their experts' theories and including additions, revisions, and replacements of key data and scientific information—have not resulted in real harm to Defendants' preparation of their rebuttal expert case.

Plaintiffs' continued disclosure of experts' considered materials and new testing and other scientific data likewise prejudices Defendants and likewise lacks any arguable justification. Magistrate Judge Joyner recently reiterated that an expert's testing and supplementation of data after disclosure of his report, like that in Quarles, does not constitute 26(e) supplementation. Miller v. GlaxoSmith-Kline, 2007 U.S. Dist. LEXIS 41050, at *8-9 (N.D. Okla. June 5, 2007). In Miller, the court addressed a supplemental report offering data that had been omitted from the expert's opening report. Importantly, the Court found that the plaintiffs' explanations that data was initially mistakenly omitted due to the volume of information and the plaintiffs' misunderstanding of the scope of the reports would not, standing alone, justify a supplemental report. Id. at *8. The Court permitted supplementation only because the defendants were actually aware of the omitted data. See id. at *8-9.

Such is not the case here. Here, Plaintiffs have continually sent Defendants previously

unknown data developed after the disclosure deadline without offering any connection between the new data and prior expert opinions. Indeed, in some instances, the new data and considered materials were not disclosed until the untimely "errata" were delivered.

In sum, because Plaintiffs' late disclosures are neither justified (by good cause or otherwise) nor harmless (as Defendants are prejudiced), the Court should grant relief.

## D.    The Court Has Broad Authority to Remedy the Prejudice Caused by Plaintiffs' Late Expert Disclosures and Changed Reports.

A trial court has broad discretion in selecting and imposing appropriate remedies for conduct of the type exhibited by Plaintiffs here, including (but not limited to) excluding the undisclosed information, excluding the expert witness, designating facts as established, refusing to allow the disobedient party to support or oppose designated claims or defenses, striking out pleadings, or dismissing the action altogether. E.g., Sims, 469 F.3d at 894-85; Woodworker's, 170 F.3d at 993l; 103 Investors I, L.P. v. Square D Co., 372 F.3d 1213, 1217 (10th Cir. 2004); Means v. Letcher, 51 Fed. Appx. 281, 282 (10th Cir. 2002); Fed. R. Civ. P. 37(c). Many courts have tailored remedies to lessen the harm caused by the errant party, including the payment of legal and expert costs incurred in responding to late disclosures and in amending expert rebuttal work. E.g., Estate of Harvey v. United States, 2006 U.S. Dist. LEXIS 61062, at *5-6 (D. Colo. Aug. 28, 2006) (expert depositions reopened and late-disclosing party must pay portion of that cost); Rambus, Inc. v. Infineon Techs. AG, 145 F. Supp. 2d 721, 735-36 (E.D. Va. 2001) (entering sanction of legal fees from adjusting response to expert opinion, and legal and expert costs incurred in responding to new matters in late report); Reed v. Binder, 165 F.R.D. 424, 431 (D.N.J. 1996) (late-disclosing party ordered to pay costs of expert depositions).

The breadth of the Court's discretion is borne out by case law. In the Stone case, discussed in the previous section, the court weighed the Woodworker's factors and entered

sanctions against the plaintiffs that included extended disclosure deadlines for the defendants, rebuttal reports for the defendants, and attorney's fees. Stone, 2006 U.S. Dist LEXIS 90430, at *24. In Sims, the Tenth Circuit upheld the exclusion of a supplemental report because it was served after the scheduling order deadline. 469 F.3d at 894-85.

This Court's own cases also reflect this diversity. Chief Judge Eagan recently denied leave for a plaintiff's expert to modify his report to add a new conclusion, noting that "[t]he Federal Rules of Civil Procedure require an expert witness to prepare a report 'containing a complete statement of all opinions to be expressed.'" Simpson v. Saks Fifth Ave, Inc., 2008 U.S. Dist. LEXIS 60480, at *25 (N.D. Okla. Aug. 8, 2008) (quoting Fed. R. Civ. P. 26(a)(2)(B)). In Quarles, Magistrate Judge Cleary struck Dr. Fisher's late expert report that had been dressed up as Rule 26(e) supplementations, and ordered that the expert's testimony at trial would be limited to the opinions and bases expressed in the earlier report. 2006 U.S. Dist. LEXIS 96392, at *18. In Cohlmia, Magistrate Judge Cleary refused to undermine the pretrial schedule by allowing late reports necessary to save deficient "preliminary" reports, and struck both the deficient timely reports and the attempted late reports. 2008 U.S. Dist. LEXIS 65292, at *19-24.

Defendants urge the Court to enter an order enforcing its Scheduling Orders and remedying the prejudice suffered by Defendants in a manner appropriate to the circumstances of this case. Specifically, Defendants ask that the Court:

- Strike Plaintiffs' expert "errata" detailed above, and direct that these experts' opinions and the data and materials underlying them are final in their original forms. See id.
- Order that Plaintiffs may not supplement, revise, or add to their expert disclosures, including the opinions and any data or materials underlying those opinions, absent express leave of Court. See Fed. R. Civ. P. 37(C)(1)(c).

24

- Limit the trial testimony of Plaintiffs' experts to their own firsthand opinions and the bases for those opinions found in their timely reports. Quarles, 2006 U.S. Dist. LEXIS 96392, at *18.

- Strike all portions of Plaintiffs' expert reports not authored by a fully disclosed expert, or, in the alternative, compel the immediate production of full expert disclosures and considered materials for all persons who authored portions of Plaintiffs' disclosed reports and permit depositions or redepositions of those persons. See Dura, 285 F.3d at 611-13.

- To the extent that the Court declines to strike Plaintiffs' experts' late disclosures, modify the pretrial schedule to account for the working time lost by Defendants' experts as a result of those late disclosures. See Stone, 2006 U.S. Dist LEXIS 90430, at *24; Fed. R. Civ. P. 37(c)(1)(C). Should the Court elect this remedy, Defendants respectfully request the opportunity to consult again with their experts and to make a supplemental submission proposing expert-specific extended deadlines.

- Order Plaintiffs to defray all or part of the expert costs and attorney's fees incurred by Defendants in addressing Plaintiffs' incomplete, erroneous, and altered expert reports. See Rambus, 145 F. Supp. 2d at 735-36. Should the Court grant this remedy, Defendants respectfully request leave to submit the specifics of the relevant expert costs incurred.

- Award Defendants their reasonable attorney fees incurred in bringing this motion. See Fed. R. Civ. P. 16(f), 37(c)(1)(A).

## CONCLUSION

In sum, the Court should enter appropriate sanctions against Plaintiffs for their willful and repeated violations of the expert disclosure deadlines, and ameliorate Defendants' prejudice.

Respectfully submitted,

RHODES, HIERONYMUS, JONES,
      TUCKER & GABLE, PLLC


BY:   s/ John H. Tucker, OBA #9110
      JOHN H. TUCKER, OBA #9110
      COLIN H. TUCKER, OBA #16325
      THERESA NOBLE HILL, OBA #19119
      LESLIE J. SOUTHERLAND, OBA #12491
      100 W. Fifth Street, Suite 400 (74103-4287)
      P.O. Box 21100
      Tulsa, Oklahoma 74121-1100
      Telephone:   918/582-1173
      Facsimile:   918/592-3390
            And
      DELMAR R. EHRICH
      BRUCE JONES
      FAEGRE & BENSON LLP
      2200 Wells Fargo Center
      90 South Seventh Street
      Minneapolis, Minnesota 55402
      Telephone:   612/766-7000
      Facsimile:   612/766-1600
      **ATTORNEYS FOR CARGILL, INC. AND CARGILL TURKEY PRODUCTION LLC**

BY: /s/Erin W. Thompson, ABA #2005250
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
ERIN WALKER THOMPSON, Arkansas Bar No.
2005250
KUTAK ROCK LLP
The Three Sisters Building
214 West Dickson Street
Fayetteville, AR 72701-5221
Telephone: (479) 973-4200
Facsimile: (479) 973-0007
-AND-
STEPHEN L. JANTZEN, OBA # 16247
PATRICK M. RYAN, OBA #7864
PAULA M. BUCHWALD, OBA #20464
RYAN, WIALEY & COLDIRON, P.C.
119 N. Robinson
900 Robinson Renaissance
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
E-Mail: sjantzen@ryanwhaley.com
-AND
THOMAS C. GREEN, ESQ.
MARK D. HOPSON, ESQ.
TIMOTHY K. WEBSTER, ESQ.
JAY T. JORGENSEN, ESQ.
GORDON D. TODD, ESQ.
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005-1401
Telephone: (202) 736-8000
Facsimile: (202)736-8711
**ATTORNEYS FOR TYSON FOODS, INC.;
TYSON POULTRY, INC.; TYSON CHICKEN,
INC; AND COBB-VANTRESS, INC.**

BY: /s/ A. Scott McDaniel
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
A. SCOTT MCDANIEL, OBA#16460
CHRIS A. PAUL, OBA #14416
NICOLE LONGWELL, OBA #18771
PHILIP D. HIXON, OBA #19121
McDaniel, Hixon, Longwell & Acord, PLLC
320 S. Boston Avenue
Suite 700
Tulsa, OK 74103
-AND-
SHERRY P. BARTLEY, AR BAR #79009
MITCHELL WILLIAMS, SELIG,
GATES & WOODYARD, PLLC
425 W. Capitol Avenue, Suite 1800
Little Rock, AR 72201
**ATTORNEYS FOR PETERSON FARMS, INC.**


BY: /s/ R. Thomas Lay
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
R. THOMAS LAY, OBA #5297
KERR, IRVINE, RHODES & ABLES
201 Robert S. Kerr Ave., Suite 600
Oklahoma City, OK 73102
-AND-
JENNIFER S. GRIFFIN
LATHROP & GAGE, L.C.
314 East High Street
Jefferson City, MO 65101
**ATTORNEYS FOR WILLOW BROOK
FOODS, INC.**

BY: /s/ Randall E. Rose
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
RANDALL E. ROSE, OBA #7753
GEORGE W. OWENS, ESQ.
OWENS LAW F P.C.
234W. 13 Street
Tulsa, OK 74119
-AND-
JAMES MARTIN GRAVES, ESQ.
GARY V. WEEKS, ESQ.
BASSETT LAW FIRM
POB 3618
Fayetteville, AR 72702-3618
**ATTORNEYS FOR GEORGE'S, INC. AND
GEORGE'S FARMS, INC.**

BY: /s/John R. Elrod
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
JOHN R. ELROD
VICKI BRONSON, OBA #20574
BRUCE WAYNE FREEMAN
CONNER & WINTERS, L.L.P.
100 W. Central Street, Suite 200
Fayetteville, AR 72701
**ATTORNEYS FOR SIMMONS FOODS, INC.**

BY: /s/ Robert P. Redemann
(SIGNED BY FILING ATTORNEY WITH
PERMISSION)
ROBERT P. REDEMANN, OBA #7454
LAWRENCE W. ZERINGUE, ESQ.
DAVID C. SENGER, OBA #18830
PERR1NE, MCGIVERN, REDEMANN, REID,
BARRY &
TAYLOR, P.L.L.C.
Post Office Box 1710
Tulsa, OK 74101-1710
-AND-

ROBERT E. SANDERS
STEPHEN WILLIAMS
YOUNG, WILLIAMS, HENDERSON &
FUSILIER
Post Office Box 23059
Jackson, MS 39225-3059
**ATTORNEYS FOR CAL-MAINE FARMS,
INC. AND CAL-MAINE FOODS, INC**

### CERTIFICATE OF SERVICE

I certify that on the 15th day of September, 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

W. A. Drew Edmondson, Attorney General
Kelly Hunter Burch, Assistant Attorney General
J. Trevor Hammons, Assistant Attorney General
Robert D. Singletary
Daniel Lennington, Assistant Attorney General

drew_edmondson@oag.state.ok.us
kelly_burch@oag.state.ok.us
trevor_hammons@oag.state.ok.us
Robert_singletary@oag.state.ok.us
Daniel.lennington@oag.ok.gov

Melvin David Riggs
Richard T. Garren
Sharon K. Weaver
Riggs Abney Neal Turpen Orbison & Lewis

driggs@riggsabney.com
rgarren@riggsabney.com
sweaver@riggsabney.com

Robert Allen Nance
Dorothy Sharon Gentry
David P. Page
Riggs Abney

rnance@riggsabney.com
sgentry@riggsabney.com
dpage@riggsabney.com

Louis W. Bullock
Robert M. Blakemore
Miller Keffer & Bullock

lbullock@mkblaw.net
rblakemore@mkblaw.net

William H. Narwold
Elizabeth C. Ward
Frederick C. Baker
Lee M. Heath
Elizabeth Claire Xidis
Motley Rice
**COUNSEL FOR PLAINTIFFS**

bnarwold@motleyrice.com
lward@motleyrice.com
fbaker@motleyrice.com
lheath@motleyrice.com
cxidis@motleyrice.com

Stephen L. Jantzen

sjantzen@ryanwhaley.com

Paula M. Buchwald                                   pbuchwald@ryanwhaley.com
Ryan, Whaley & Coldiron, P.C.

Mark D. Hopson                                      mhopson@sidley.com
Jay Thomas Jorgensen                                jjorgensen@sidley.com
Timothy K. Webster                                  twebster@sidley.com
Gordon D. Todd                                      gtodd@sidley.com
Sidley Austin LLP

Michael R. Bond                                     michael.bond@kutakrock.com
Erin W. Thompson                                    erin.thompson@kutakrock.com
Kutack Rock LLP

**COUNSEL FOR TYSON FOODS, INC., TYSON POULTRY, INC., TYSON CHICKEN, INC.; AND COBB-VANTRESS, INC.**

R. Thomas Lay                                       rtl@kiralaw.com
Kerr, Irvine, Rhodes & Ables

Jennifer S. Griffin                                 jgriffin@lathropgage.com
Lathrop & Gage, L.C.

**COUNSEL FOR WILLOW BROOK FOODS, INC.**

Robert P. Redemann                                  rredemann@pmrlaw.net
Lawrence W. Zeringue                                lzeringue@pmrlaw.net
David C .Senger                                     dsenger@pmrlaw.net
Perrine, McGivern, Redemann, Reid, Berry & Taylor, PLLC

Robert E. Sanders                                   rsanders@youngwilliams.com
E. Stephen Williams                                 steve.williams@youngwilliams.com
Young Williams P.A.

**COUNSEL FOR CAL-MAINE FOODS, INC. AND CAL-MAINE FARMS, INC.**

George W. Owens                                     gwo@owenslawfirmpc.com
Randall E. Rose                                     rer@owenslawfirmpc.com
The Owens Law Firm, P.C.

James M. Graves                                     jgraves@bassettlawfirm.com
Gary V. Weeks
Paul E. Thompson, Jr.
Woody Bassett
K.C.Dupps Tucker

Bassett Law Firm

**COUNSEL FOR GEORGE'S INC. AND GEORGE'S FARMS, INC.**

John R. Elrod                                       jelrod@cwlaw.com

Vicki Bronson                          vbronson@cwlaw.com
Bruce W. Freeman                       bfreeman@cwlaw.com
Conner & Winters, LLLP
**COUNSEL FOR SIMMONS FOODS, INC.**

A. Scott McDaniel                      smcdaniel@mhla-law.com
Nicole M. Longwell                     nlongwell@mhla-law.com
Philip D. Hixon                        phixon@mhla-law.com
Craig Mirkes                           cmirkes@mhla-law.com
McDaniel, Hixon, Longwell & Acord, PLLC
Sherry P. Bartley                      sbartley@mwsgw.com
Mitchell Williams Selig Gates & Woodyard
**COUNSEL FOR PETERSON FARMS, INC.**

Michael D. Graves                      mgraves@hallestill.com
Dale Kenyon Williams, Jr.              kwilliams@hallestill.com
**COUNSEL FOR CERTAIN POULTRY GROWERS**

Mia Vahlberg                           mvahlberg@gablelaw.com
**COUNSEL FOR NATIONAL CHICKEN COUNCIL,
U.S. POULTRY & EGG ASSOCIATION AND NATIONAL
TURKEY FEDERATION**

Adam J. Siegel                         ajsiegel@hhlaw.com
James T. Banks                         jtbanks@hhlaw.com
John D. Russell                        jrussell@fellerssnider.com
**ATTORNEYS FOR ARKANSAS FARM BUREAU FEDERATION**

Barry G. Reynolds                      Reynolds@titushillis.com
**ATTORNEYS FOR AMERICAN FARM BUREAU FEDERATION
AND NATIONAL CATTLEMEN'S BEEF ASSOCIATION**

Jessica E. Rainey                      jrainey@titushillis.com
**ATTORNEYS FOR AMERICAN FARM BUREAU FEDERATION
AND NATIONAL CATTLEMEN'S BEEF ASSOCIATION**

M. Richard Mullins                     Richard.mullins@mcafeetaft.com
**ATTORNEYS FOR TEXAS FARM BUREAU,
TEXAS CATTLE FEEDERS ASSOCIATION,
TEXAS PORK PRODUCERS ASSOCIATION, AND
TEXAS ASSOCIATION OF DAIRYMEN**

William A. Waddell, Jr.                waddell@fec.net

Charles Livingston Moulton             Charles.Mouton@arkansasag.gov

Arkansas Natural Resources Commission

     I also hereby certify that I served the attached documents by United States Postal Service, proper postage paid, on the following who are not registered participants of the ECF System:

C. Miles Tolbert
Secretary of the Environment
State of Oklahoma
3800 North Classen
Oklahoma City, OK 73118
**COUNSEL FOR PLAINTIFFS**

Thomas C. Green
Sidley Austin Brown & Wood LLP
1501 K Street NW
Washington, DC 20005
**COUNSEL FOR TYSON FOODS, INC., TYSON POULTRY, INC., TYSON CHICKEN, INC.; AND COBB-VANTRESS, INC.**

    s/ John H. Tucker