**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STATE OF OKLAHOMA, ex rel. W.A. DREW EDMONDSON, in his capacity as ATTORNEY GENERAL OF THE STATE OF OKLAHOMA and OKLAHOMA SECRETARY OF THE ENVIRONMENT C. MILES TOLBERT, in his capacity as the TRUSTEE FOR NATURAL RESOURCES FOR THE STATE OF OKLAHOMA, | ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 05-CV-329-GKF-SAJ |
| | ) | |
| TYSON FOODS, INC., TYSON POULTRY, INC., TYSON CHICKEN, INC., COBB-VANTRESS, INC., CAL-MAINE FOODS, INC., CAL-MAINE FARMS, INC., CARGILL, INC., CARGILL TURKEY PRODUCTION, LLC, GEORGE'S, INC., GEORGE'S FARMS, INC., PETERSON FARMS, INC., SIMMONS FOODS, INC., and WILLOW BROOK FOODS, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

This matter comes before the Court on the State of Oklahoma's Motion for Preliminary Injunction. [Docket No. 1373]. The State seeks to enjoin the defendant poultry integrators pending a trial on the merits from (1) applying poultry litter to any land within the Illinois River Watershed (the "IRW"), and (2) allowing the application of poultry litter generated at the integrators' poultry feeding operations and/or the poultry feeding operations under contract with the integrators to any land within the IRW. [Docket No. 1373 at 6].

As more fully discussed below, the Court concludes that the State's motion for an injunction pending trial on the merits must be denied. The State has not yet met its burden of proving that bacteria in the waters of the IRW are caused by the application of poultry litter rather than by other

sources, including cattle manure and human septic systems.  As a result, the State has failed to meet the heightened standard for a preliminary injunction, set forth in the following section.

## I.  Preliminary Injunction Standard

A preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal.  *Nova Health Systems v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006). Generally, in order for a party to be entitled to a preliminary injunction, that party must establish four equitable factors:

> (1) the movant will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.

*Summum v. Pleasant Grove City,* 483 F.3d 1044, 1048 (10th Cir. 2007); *Nova Health Systems*, 460 F.3d at 1298; *Schrier v. University of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005).

When a case is brought pursuant to an environmental or public health statute, including the Resource Conservation Recovery Act ("RCRA"), the primary focus shifts from "irreparable injury" to concern for the general public interest.  *Wilson v. Amoco Corporation*, 989 F. Supp. 1159, 1171 (D. Wyo. 1998).   In *Wilson*, the U.S. District Court for the District of Wyoming concluded that "although it is not appropriate to dispense with the required showing of irreparable harm, it is permissible as part of the traditional balancing process to lessen the weight attributable to that usually dispositive factor."  *Id.*  In reaching its conclusion, the court relied upon the Supreme Court's advice (Justice White writing for the majority) that, in the absence of express Congressional intent to the contrary, a plaintiff seeking injunctive relief – even under an environmental or public health statute – still must demonstrate irreparable harm.  *Wilson*, 989 F. Supp. at 1171; *Weinberger*

2

*v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).   The district court applied the traditional equitable factors, but in balancing those factors weighed heavily the general public's interest in the issuance of the injunction.   Because plaintiffs in *Wilson* sought a mandatory injunction, however, they bore the burden of showing that on balance the four factors weighed compellingly in their favor.   *Wilson*, 989 F.Supp. at 1171.

Similarly, in *U.S. v. Power Engineering Co.*, 10 F. Supp. 2d 1145, 1149 (D. Colo. 1998), *aff'd* 191 F.3d 1224 (10th Cir. 1999), a case in which the Environmental Protection Agency sought a preliminary injunction under RCRA, the U.S. District Court for the District of Colorado applied the four traditional equitable factors, "as modified for RCRA."   *Id.* at 1149.   In doing so, the court stated:

> Normally, the most important equitable factor is irreparable harm. When a case is brought pursuant to an environmental or public health statute, however, the primary focus shifts from irreparable harm to concern for the general public interest.  A plaintiff seeking injunctive relief, however, still must demonstrate irreparable harm in the absence of express Congressional intent to the contrary.   Based on these established standards, I will apply the traditional equitable factors, as modified for RCRA, and weigh more heavily the general public's interest in the issuance of the injunction. Because the United States seeks a mandatory injunction, however, it bears the burden of showing that the four factors, when balanced, weigh compellingly in its favor.

*Id.* [citations omitted].   On appeal, the Tenth Circuit affirmed, using the four traditional equitable factors.  191 F.3d at 1230.   As part of the traditional balancing process, this court will lessen the weight attributable to irreparable harm and will weigh heavily the general public interest in the issuance of the injunction.

Because a preliminary injunction is an extraordinary remedy and is intended merely to preserve the relative positions of the parties until a trial on the merits can be held, the Tenth Circuit

Court of Appeals has held that the moving party must meet a heightened standard when requesting one of the three types of historically disfavored injunctions. *Summum*, 483 F.3d at 1048; *Schrier*, 427 F.3d at 1258-59. The three types of disfavored injunctions are "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; (3) and preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd and remanded, Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,* 546 U.S. 418 (2006); *Summum*, 483 F.3d at 1048; *Schrier*, 427 F.3d at 1258.  When a preliminary injunction falls into one of these categories, it "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro,* 389 F.3d at 975; *Summum,* 483 F.3d at 1048-49; *Schrier,* 427 F.3d at 1259.  A party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms. *O Centro*, 389 F.3d at 976; *Summum*, 483 F.3d at 1049; *Schrier*, 427 F.3d at 1261.

In this case, the requested preliminary injunction falls within two categories of disfavored injunctions:  it would alter the status quo and it would be mandatory.[1]  The status quo is the "last peaceable uncontested status existing between the parties before the dispute developed." *Schrier*, 427 F.3d at 1260 (quoting 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948, at 1136 (2d ed. 1995)).  In this case, the State clearly seeks to alter the status quo.  Although "determining whether an injunction is mandatory as opposed to prohibitory can be

---

[1]The State argues, and the Court agrees, that the third category of disfavored injunction does not apply here because the State does not seek through preliminary injunction all the relief it could recover on all its claims at the conclusion of the trial on the merits.

4

vexing," *O Centro*, 389 F.3d at 1006 (Seymour, J., dissenting in part), an injunction is mandatory

if the requested relief "affirmatively require[s] the nonmovant to act in a particular way, and as a

result ... place[s] the issuing court in a position where it may have to provide ongoing supervision

to assure the nonmovant is abiding by the injunction." *Id.* at 979 (quoting *SCFC ILC, Inc. v. VISA

USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991)).   Here, the State has both requested an injunction

which would affirmatively require the defendants to act in a particular way, and which would require

the Court to provide ongoing supervision  to assure the defendants are abiding by the injunction.

The State has asked the Court

> to direct the companies to notify their growers within one week of the
> Court's order, because they do weekly visits to the growers, that
> further application within the Illinois River Watershed is a violation
> of federal law and thus prohibited under the contract. We're asking
> the Court to enter an order to monitor this injunction and to maintain
> it pending further order of this Court following the trial of the case-
> in-chief next year.

[Transcript, Docket No. 1636, p. 31, line 19 to p. 32, line 1].

The State, citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484 (1996), contends the

heightened standard does not apply because the State seeks to restrain defendants from further

violations of RCRA.  *Meghrig*, however, does not stand for such a proposition.  Nor does it involve

a motion for a preliminary injunction or the standards to be applied with respect thereto.  Rather, the

Supreme Court merely held that a private party cannot recover the cost of a past cleanup effort under

RCRA.  *Meghrig*, 516 U.S. at 488.

In sum, the Court will apply the traditional equitable factors, weighing heavily the general

public's interest in the issuance of an injunction.  Because the preliminary injunction requested by

the State falls within two of the disfavored categories identified by the Tenth Circuit, the State must

meet the heightened standard.

II.  <em>Daubert</em> and its Application in a Motion for Preliminary Injunction

In a case where the court functions as the trier of fact, it is the Court's duty to assess and

weigh the credibility of all expert witnesses, while guided by the standards of Rule 702 of the

Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

*Seaboard Lumber Co. v. U.S.,* 308 F.3d 1283, 1301-02 (Fed. Cir. 2002); *New York v. Solvent Chem.*

*Co.*, 2006 WL 2640647 (W.D.N.Y. 2006).  In *Daubert*, the Supreme Court reaffirmed that the trial

judge is to screen scientific evidence for relevance and reliability.  *Daubert*, 509 U.S. at 589.

> The primary purpose of the *Daubert* filter is to protect juries from
> being bamboozled by technical evidence of dubious merit, as is
> implicit in the courts' insistence that the *Daubert* inquiry performs a
> "gatekeeper" function.  In a bench trial it is an acceptable alternative
> to admit evidence of borderline admissibility and give it the (slight)
> weight to which it is entitled.  The Federal Circuit in *Seaboard*
> *Lumber Co. v. United States* . . . , while pointing to the concern with
> protecting juries from confusion, did say that the *Daubert* standard
> must be followed in bench trials as well.  But it did not say that it
> must be followed rigidly in such trials.  *Daubert* requires a binary
> choice – admit or exclude – and a judge in a bench trial should have
> discretion to admit questionable technical evidence, though of course
> he must not give it more weight than it deserves.

*SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011 (N.D. Ill. 2003) (Posner, C.J.,

sitting by designation) (citations omitted), *aff'd*, 403 F.3d 1331 (Fed. Cir. 2005), *cert. denied*, 126

S. Ct. 2887 (2006).

In this proceeding on the State's request for a preliminary injunction, the Court admitted all

proffered expert testimony, with *Daubert* and other evidentiary considerations governing the weight

to be given the evidence.  Upon consideration of the evidence presented, the Court concludes that

6

the testimony and conclusions of expert witnesses Harwood[2] and Olsen[3] presented at the hearing are not sufficiently reliable under the standards enunciated in *Daubert*.  The expert witnesses' work has not been peer reviewed or published.  The testimony before this Court reveals no one outside this lawsuit who has either validated or sought to validate Harwood's and Olsen's scientific work.

### III.  Causation

The evidence produced to this Court reflects that fecal bacteria in the waters of the IRW come from a number of sources, including cattle manure and human waste from growing numbers of human septic systems in that area's karst topography.  The record reflects levels of fecal bacteria at similar levels in rivers and streams throughout the State of Oklahoma, including waterways in whose watersheds the record does not evidence similar application of poultry waste.  At this juncture in the action, the State has failed to meet the applicable standard of showing that the bacteria levels in the IRW can be traced to the application of poultry litter.

WHEREFORE, plaintiff's Motion for Preliminary Injunction [Docket No. 1373] is denied.

IT IS SO ORDERED this 29th day of September 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[2]Plaintiff presented the testimony of Professor Valerie Harwood concerning the identification of a "poultry-specific biomarker" in attempting to track the source of the microbes to poultry litter.  Dr. Harwood herself described her own work and this new method as "uncharted waters."

[3]Plaintiff presented the testimony of Dr. Roger Olsen regarding his identification of an unique poultry-specific biological and chemical "signature"