**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| State of Oklahoma, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 4:05-cv-00329-GKF-PJC** |
| | ) | |
| Tyson Foods, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THE CARGILL DEFENDANTS' MOTION TO STRIKE PLAINTIFFS'
NATURAL DAMAGES REPORTS OR TO COMPEL COMPLETE
EXPERT DISCLOSURES AND INTEGRATED BRIEF**

Pursuant to Fed. R. Civ. P. 26 and 37(a) and (c), the Cargill Defendants respectfully

move the Court to strike Plaintiffs' natural resource damages reports or, in the alternative, to

compel Plaintiffs to disclose a complete statement of the separate opinions that each of their

seven damages experts will offer.  Plaintiffs' failure to disclose these seven experts' individual

opinions violates the plain mandate of Rule 26(a), which requires a clear statement of what each

of Plaintiffs' experts will testify to at trial.  Further, Plaintiffs' withholding of these opinions also

violates the purposes of Rule 26(a), which seeks to eliminate unfair surprise, conserve resources,

provide a reasonable opportunity to prepare for effective cross examination, and eliminate the

need for, shorten, or minimize the expense of depositions.  Finally, Plaintiffs' incomplete

disclosures will also prejudice the ability of the Court to determine if Plaintiffs have met their

burden to show their reports are admissible under Fed. R. Evid. 702.

Because the first of Plaintiffs' damages expert depositions may take place as early as

April 6, 2009, and because Plaintiffs' deficient disclosures will make this deposition and any

subsequent damages experts' depositions lengthy, costly, and inefficient, Defendants will request

expedited consideration of this motion in a separate submission forthcoming shortly.

## FACTUAL AND PROCEDURAL BACKGROUND

### Plaintiffs' Natural Resource Damages Reports

Plaintiffs' damages reports were due January 5, 2009.  (Dkt. No. 1376 at 2.)  In response

to this deadline, Plaintiffs provided two Natural Resource Damages ("NRD") reports in January

and February 2009.  (See Dkt. No. 1854 at 2, 6-8.)  The first report, entitled "Natural Resource

Damages Associated with Aesthetic and Ecosystem Injuries to Oklahoma's Illinois River System

and Tenkiller Lake" (hereafter "future NRD report") purports to measure the monetary value of

alleged future injuries caused by past application of poultry litter to soil, which would allegedly

be incurred by Oklahoma public trust resources in the Illinois River system and Tenkiller Lake.

(Dkt. No. 1853-4.)  The future NRD report's conclusion stems from a survey that asked

respondents to place a monetary value on a plan that would allegedly return the river system to

its 1960 condition by 2018 and the lake to its 1960 condition by 2028, along with various

economic calculations.  (Id. at page 1-7.)  The report contains seven chapters, broken into more

than 90 sections, and contains nearly 50 data tables and seven appendices, broken into more than

15 sections.  (Id. at iv-xii.)

The second NRD report, entitled "Natural Resource Damages Associated with Past

Aesthetic and Ecosystem Injuries to Oklahoma's Illinois River System and Tenkiller Lake"

(hereafter "past NRD report"), purports to measure in 15 pages the value of alleged past injuries

caused by application of poultry litter to soil, which allegedly were incurred by Oklahoma public

trust resources for the same water bodies.  (Ex. 1: Past NRD Report.)  The past NRD report's

conclusion is based on alleged injuries from 1981-2008 and assumes the accuracy of the future

NRD report's determination of the value that survey respondents placed on the clean up plan proposed in the first report.  (Id.)  Thus, the conclusions of the past NRD report depend entirely on the validity and reliability of the future NRD report's conclusions.  (See Desvousges Decl. ¶ 11: Dkt. No. 1854-5.)

Together, the future and past NRD reports and their appendices—which serve as the basis for Plaintiffs' claim of more than $610 million in natural resources damages—total more than 700 pages in length.  (Id. ¶ 4.)

**Plaintiffs' NRD Reports' Expert Authors**

Plaintiffs have identified seven authors of the future NRD report:

- Richard Bishop, Ph.D. Agricultural Economics

- David Chapman, M.S. Natural Resources Economics

- W. Michael Hanemann, Ph.D. Economics

- Barbara Kanninen, Ph.D. Agricultural Economics

- Jon Krosnick, Ph.D. Social Psychology

- Edward Morey, Ph.D. Economics

- Roger Tourangeau, Ph.D. Psychology

Plaintiffs identify all of these authors as "testifying experts."  (Dkt. No. 1854 at 2.)  Each of the seven experts signed a signature page at the end of the future NRD report identifying that expert as "[t]he primary authors of this report."  (See id. at 2, 6-8.)  For the past NRD report, three "authors" signed—Bishop, Chapman, and Hanemann—and all were identified as testifying experts and "primary authors" of the report.  (Id.; Ex. 1 at 22.)

**Plaintiffs' Evasion of the Mandates of Rule 26(a) on Expert Disclosures**

After receiving Plaintiffs' damages expert disclosures, Defendants asked Plaintiffs to

identify what portions of the future NRD report were attributable to each of their experts.  (See

Ex. 2: Feb. 13, 2009 Xidis email.)  Plaintiffs responded: "Your latest request, asking the State to

separately identify each piece of the report each author wrote and the corresponding materials is

also unreasonable."  (Id.)  As the basis for their refusal to comply with Rule 26(a), Plaintiffs

cited Defendants' experts' reports authored by two or three experts and Defendants' willingness

to tolerate Plaintiffs' failure to provide a specific-author-opinion delineation for another of

Plaintiffs' reports that had only two authors.  (Id.)  In the meantime, Defendants' damages

experts reviewed Plaintiffs' NRD reports to determine if they could discern which of the seven

experts wrote the many divisions of the future NRD report.

When Defendants' efforts to identify the roles and opinions of each of Plaintiffs' authors

by reviewing Plaintiffs' January and February 2009 disclosures were unsuccessful, Defendants

again reminded Plaintiffs of their obligation under Rule 26(a) "to disclose for each witness his

opinions and bases therefore, as well as the considered materials for each such witness,

appropriately marked as such."  (Ex. 3: Mar. 10-20, 2009 email chain between D. Ehrich and C.

Xidis.)  Plaintiffs again rebuffed this demand and merely referred Defendants to Plaintiffs'

earlier characterization of the request as "unreasonable."  (Id.)  After Defendants again requested

Plaintiffs identify which authors wrote each part of the report, Plaintiffs refused and instead

informed Defendants that "David Chapman was the project manager for Stratus for this report.

He is the first person we have offered for deposition, and he will be able to explain the

framework in which the report and underlying work were done."  (Id.)

Defendants, facing the proposition of taking seven possibly duplicative depositions, again

reminded Plaintiffs that Rule 26(a) required Plaintiffs to disclose the opinions and bases

therefore for each expert they intended to call at trial.  (Id.)  Defendants explained tht Plaintiffs'

-5-

position suggested that they intended to offer seven experts to testify to exactly the same thing,

making their testimony duplicative.  (Id.)

On March 16, 2009, Plaintiffs finally agreed to provide Defendants with "a list of which

Stratus team members were the primary authors on which portions of the CV report."  (Id.)  In

response, Defendants again reminded Plaintiffs that, while such a list was a step toward full

disclosure, Rule 26(a) required Plaintiffs to disclose which "opinions" in the report belonged to

each author.  (Id.)  Plaintiffs responded:

> You will have ample opportunity to ask the authors about the Stratus Report in
> their depositions, and it should be abundantly clear to you after deposing these
> folks what their respective roles were.  The State is not going to break down the
> Stratus Report that Defendants have had for two and a half months into seven
> separate reports between now and these depositions if that is what you are asking
> for.  As we have told you repeatedly, the Stratus Report was a collaborative effort
> of all of the experts.

(Id.)

On March 23, 2009, Plaintiffs provided Defendants with a chart of the "lead authors" of

the future NRD report.  (Ex. 4: Mar. 23, 2009 email chain between D. Ehrich and C. Xidis.)  The

chart identified up to six "lead authors" per chapter:

> Chapter 1 – Introduction
>         Bishop
>         Chapman
>         Hanemann
> Chapter 2 – Economic Value: Theory and Measurement
>         Bishop
>         Chapman
>         Hanemann
>         Morey
> Chapter 3 – Development of the Survey Instruments
>         Bishop
>         Chapman
>         Hanemann
>         Krosnick
>         Morey
>         Tourangeau

>
> Chapter 4 – Structure and Content of the Final Base and Scope Instruments
> >     Bishop
> >     Chapman
> >     Krosnick
> >     Tourangeau
>
> Chapter 5 – Implementation of the Main Survey
> >     Chapman
> >     Krosnick
> >     Tourangeau
>
> Chapter 6 – Distribution of Votes and Tests of Validity
> >     Chapman
> >     Hanemann
> >     Kanninen
> >     Krosnick
> >     Morey
> >     Tourangeau
>
> Chapter 7 – Estimate of Natural Resource Damages
> >     Chapman
> >     Hanemann
> >     Kanninen
> >     Morey
> >     Tourangeau

(Ex. 5: Pls.' "Lead Author" Chart.)  Despite the multiple "lead authors" they listed for each

chapter, Plaintiffs further qualified the above list as follows:

> The authors listed in this chart are "lead authors," but as explained previously to
> Defendants, the report was a collaborative project among all the authors and
> although a witness may not be listed as a "lead" author for a particular chapter,
> that witness may have provided input and/or feedback on that chapter.

(Id.)

With the disclosure of Plaintiffs' "lead author" chart, Defendants finally learned that

Plaintiffs' future damages report's claim that each of the seven authors was "[t]he primary

authors of th[e] report" as a whole (Dkt. No. 1854 at 2, 6-8), was at least misleading.

Consequently, Defendants again informed Plaintiffs that their disclosures were

plainly deficient under Rule 26 because the plaintiff has not disclosed the

> opinions of each expert the plaintiff may call to testify at trial.  Even the list you
> sent ... is insufficient because it does not disclose the opinions about which each
> will testify.  Some chapters list as many as six "lead authors." ... [A]t least five are

listed as lead authors for the key last chapter on the estimation of the natural
resource damages claimed by plaintiff.  If plaintiff intends to call each to testify as
to the whole chapter, or the entire report, any expert after the first will be
excluded as duplicative.  Because this outcome can be so easily foreseen,
[Defendants] conclude that the plaintiff, instead wants to call each expert to
testify to a portion of the report ... and your list, fail[s] to disclose the specific,
limited opinions to which each might, in his or her turn, testify.

(See Ex. 4.)  As to the proposal for serial depositions, Defendants objected that Plaintiffs were

"trying to put [Defendants] in the position of having to take seven depositions, not all of which

may need to have been taken, if plaintiff had made the proper disclosures."  (Id.)

Plaintiffs nevertheless refused to provide any additional information (Ex. 6:  Mar. 27,

2009 email from C. Xidis to D. Ehrich), and Defendants were forced to bring this motion.

## ARGUMENT

Defendants move the Court to strike Plaintiffs' NRD reports because Plaintiffs have

failed to comply with Rule 26's expert disclosure requirements.  "If a party fails to provide

information ... required by Rule 26(a) ... the party is not allowed to use that information ... to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless."  Fed. R. Civ. P. 37(c) (1).  Plaintiffs failed to disclose the opinions of

each of its seven damages experts as required under Rule 26, that failure was not substantially

justified, the deficient disclosures have been and will continue to be highly prejudicial to

Defendants and the Court, and the Court should strike them.  In the alternative, Defendants move

the Court under Rule 37(a)(1) to enter an order directing Plaintiffs to disclose the separate

opinions which each of its seven damages experts will testify to at trial.[1]

---

[1] The Cargill Defendants certify they have in good faith conferred with Plaintiffs in an effort to
obtain the discovery sought by this motion without court action.

I.      **Plaintiffs' Expert Disclosures Do Not Comply with the Plain Text of Rule 26, Requiring a Complete Statement of the Opinion Each Expert Will Offer.**

An expert report "must contain: a complete statement of all opinions *the* witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). This plain language states that Plaintiffs must provide a clear statement of what *each* of their experts will testify to at trial.  See 6 Moore's Federal Practice § 26.23[4] (2009) ("All elements of the expert witness report must be actually prepared and signed by the expert witness.").

Although there is nothing inherently wrong with reports authored by multiple experts, Plaintiffs cannot hide the anticipated individual testimony of each expert by claiming the future damages report was a "collaborative project" or "collaborative effort" of all testifying damages experts—especially where Plaintiffs: (1) declare (in the report itself) that there are seven "primary authors" of the report as a whole and provide no means to differentiate among the authors' opinions, (2) identify between three and six "lead authors" for each chapter, and (3) qualify their "lead author" designation by claiming further, unidentified collaboration *may* have occurred on each chapter.  It is incredible for Plaintiffs to suggest that experts such as Jon Krosnick (Ph.D. Social Psychology) and Roger Tourangeau (Ph.D. Psychology) will express the same opinions as the agricultural and natural resources experts, yet that is essientially what Plaintiffs suggest when they say: "The State is not going to break down the Stratus Report . . . . the Stratus Report was a collaborative effort of all of the experts."  (Ex. __: Mar. 10-20, 2009 email chain between D. Ehrich and C. Xidis.)  Plaintiffs' report does not comply with the letter of Rule 26.

II.     **Plaintiffs' Expert Disclosures Do Not Comply with the Purpose of Rule 26 to Eliminate, Reduce, or Shorten Expert Depositions, Conserve Resources, and Eliminate Unfair Surprise at Trial.**

Plaintiffs' shotgun approach to their damages expert also violated the spirit of Rule 26(a).

The Rule's reason for requiring expert reports is 'the elimination of unfair surprise to the

opposing party and the conservation of resources.'" Reed v. Binder, 165 F.R.D. 424, 429

(D.N.J. 1996) (quoting Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir.

1995)).  To achieve this, the Rule 26 expert disclosure requirements impose a "duty to disclose

information regarding expert testimony sufficiently in advance of trial that opposing parties have

a reasonable opportunity to prepare for effective cross examination ...."  Fed. R. Civ. P. 26(a)(2)

advisory committee notes (1993).  Although depositions of experts are authorized under the

Rules, the intent of the disclosure-requirement amendments to Rule 26 was to reduce or

eliminate the need for expert depositions:

> Revised subdivision (b)(4)(A) authorizes the deposition of expert witnesses.
> Since depositions of experts required to prepare a written report may be taken
> only after the report has been served, the length of the deposition of such experts
> should be reduced, and in many cases the report may eliminate the need for a
> deposition.

Id.

As a consequence, Plaintiffs' assertion here that Defendants can cure Plaintiffs' defective

disclosures by noticing the depositions of their seven experts "to ask the authors about the

Stratus Report" for the purpose of determining "what their respective roles were" flies in the face

of the purpose of the Rule to reduce or eliminate depositions.  Plaintiffs' approach would *require*

depositions of each of the experts, not reduce them.  "The test of a report is whether it was

sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated,

unnecessary depositions are avoided, and costs are reduced."  Reed, 165 F.R.D. at 429.  It is a

violation of the discovery rules if the party receiving the expert report is "forced to take [expert]

depositions ... to avoid ambush at trial."  Id. at 430; see Smith v. State Farm Fire and Cas. Co.,

164 F.R.D. 49, 53-54 (W.D. Va. 1995) (noting incomplete reports by plaintiffs "fulfill none of

the purposes of the Rule as they leave Defendants open to unfair surprise.  If Defendants depose

each expert to avoid the risk of ambush, no resources are conserved.").

Moreover, even if Defendants were to decide (as the Rules permit) to depose each of

Plaintiffs' expert damages witnesses, the information Defendants have sought from Plaintiffs for

more than a month now is critical to conducting efficient and productive examinations of each of

Plaintiffs' experts.  Plaintiffs' failure to provide the opinions that each of their experts will

express at trial in advance of the depositions will greatly increase the length of these depositions,

as Defendants will be forced to engage in the expensive and involved task of preparing to

explore and exploring each chapter, each section, and each appendix part with each deponent

merely to determine what the expert will state at trial.

Defendants obviously need to prepare for and conduct these preliminary scoping

depositions *before* inquiring into the reliability and fit of the expert's opinion, which runs

counter to the purpose of Rule 26 to shorten and reduce the expense of conducting depositions.

See Krischel v. Hennessy, 533 F. Supp. 2d 790, 796-97 (N.D. Ill. 2008) (noting that while

"Defendants have the right to depose [Plaintiffs' experts], one of the purposes of amending Rule

26(a)(2)(B) to require a detailed report was so that 'the length of the deposition of such experts

should be reduced, and in many cases the report may eliminate the need for a deposition'")

(quoting 1993 advisory committee notes); In re Sulfuric Acid Antitrust Litig., 235 F.R.D. 646,

650 (N.D. Ill. 2006) ("One purpose of the expert disclosure rule is to allow the opposing party to

dispense with the expert's deposition.  Other purposes include the minimization of the expense

of deposing experts, the shortening of direct examination, and the prevention of ambush at

trial.") (citations omitted).

In addition, because of Plaintiffs' deficient disclosures, Defendants will need to dedicate

-10-

substantial additional attorney resources to these depositions (the first of which Plaintiffs wish to

proceed on April 6, 2009) to accommodate the added preparation and length of the depositions at

a time when many other close-of-discovery pieces need to be wrapped up to meet the Court's

May 15, 2009 discovery cut-off deadline.

**III.    Plaintiffs' Disclosure Deficiencies Will Prejudice the Court's Ability to
Evaluate the Admissibility of Plaintiffs' NRD Damages Reports.**

Plaintiffs' opaque damage expert disclosures will also impose an additional burden on the

Court if not stricken or corrected.  Insufficient disclosure of expert opinion "is a problem not

only for Defendants but also for the court" because the purpose of complete expert disclosure is

to "allow[] the opposing party to explore, and the court ultimately to determine, whether the

proposed testimony on that issue meets the standards of Daubert and Rule 702." Krischel v.

Hennessy, 533 F. Supp. 2d 790, 796-97 (N.D. Ill. 2008).  The Court serves as the "gatekeeper"

for expert evidence.  Goebel v. Denver and Rio Grande W. R.R. Co., 215 F.3d 1083, 1087 (10th

Cir. 2000).  The objective of this scrutiny is to ascertain whether the proffered expert testimony

is 'not only relevant, but reliable.'" In re Williams Sec. Litig., 496 F. Supp. 2d 1195, 1231 (N.D.

Okla. 2007).  "[A]ny step that renders the analysis unreliable ... renders the expert's testimony

inadmissible .... whether the step completely changes a reliable methodology or merely

misapplies that methodology." Goebel v. Denver & Rio Grande W. R.R., 346 F.3d 987, 992

(10th Cir. 2003).

As presently written, Plaintiffs' report represents that non-economist experts will testify

to all aspects of their future NRD report, including apparently the economic analysis therein,

and, conversely, that non-social psychologists will testify to areas involving social psychology.

It seems unlikely, however, that each of Plaintiffs' experts include in their areas of expertise the

mechanics of proper survey design and implementation.  This raises the specter that at least some

of the opinions Plaintiffs ascribe to their experts will be outside the scope of a particular expert's

knowledge and area of expertise, which is certainly an appropriate area for Daubert inquiry.

"The court, in performing its gatekeeping function necessarily must ensure that [the testifying

expert] is not merely parroting the opinions of others, but that the matters upon which she will

opine are clearly within her area of expertise."  Bouygues Telecom, S.A. v. Tekelec, 472 F.

Supp. 2d 722, 729-30 (E.D.N.C. 2007); cf. Alexander v. Smith & Nephew, P.L.C., 98 F. Supp.

2d 1310, 1315 n.2 (N.D. Okla. 2000) (noting that a "scientist or medical doctor is not presumed

to have expert knowledge about every conceivable scientific principle or disease") (quoting

Whiting v. Boston Edison Co., 891 F. Supp. 12, 24 (D. Mass. 1995)).

Although Plaintiffs bear the burden of establishing the admissibility of the expert

evidence they intend to offer, id. (citing United States v. Cherry, 217 F.3d 811, 815 (10th Cir.

2000); United States v. Metro. Enters., Inc., 728 F.2d 444, 448-49 (10th Cir. 1984)), Defendants

have a right to the information necessary to test the reliability of the expert evidence offered.

Indeed, it is often only where such evidence is "called sufficiently into question" by the party

opposing the evidence that the Court has the information it needs to make a reliability

determination.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 151 (1999) (noting the opponent

of the testimony moved to exclude).  Thus, without the information Defendants have sought

unsuccessfully to obtain from Plaintiffs, the Court too will be at a disadvantage at a later stage of

this litigation when determining whether Plaintiffs have met their burden of establishing the

admissibility of their NRD reports.

### CONCLUSION

For the reasons set forth above, the Cargill Defendants urge the Court to strike Plaintiffs'

future NRD report.  Because Plaintiffs' past NRD report suffers from the same "multi-author"

problem, and in addition is highly dependent on the future damages report, Defendants also

request the Court strike the past damages report.  In the alternative, the Cargill Defendants

respectfully request the Court enter an Order directing Plaintiffs to immediately produce clear

statement of the opinions to which each of its seven natural resource damages experts will testify

to at trial.

Respectfully submitted,                      Rhodes, Hieronymus, Jones, Tucker & Gable, PLLC

                                             BY:    /s/ John H. Tucker
                                             JOHN H. TUCKER, OBA #9110
                                             THERESA NOBLE HILL, OBA #19119
                                             100 W. Fifth Street, Suite 400 (74103-4287)
                                             P.O. Box 21100
                                             Tulsa, Oklahoma 74121-1100
                                             Telephone: 918/582-1173
                                             Facsimile:  918/592-3390
                                                      And
                                             DELMAR R. EHRICH
                                             BRUCE JONES
                                             KRISANN C. KLEIBACKER LEE
                                             FAEGRE & BENSON LLP
                                             2200 Wells Fargo Center
                                             90 South Seventh Street
                                             Minneapolis, Minnesota 55402
                                             Telephone: 612/766-7000
                                             Facsimile:  612/766-1600
                                             ATTORNEYS FOR CARGILL, INC. AND CARGILL
                                             TURKEY PRODUCTION, LLC

## CERTIFICATE OF SERVICE

I certify that on the 27th day of March, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| W. A. Drew Edmondson, Attorney General | drew_edmondson@oag.state.ok.us |
| Kelly Hunter Burch, Assistant Attorney General | kelly_burch@oag.state.ok.us |
| J. Trevor Hammons, Assistant Attorney General | trevor_hammons@oag.state.ok.us |
| Daniel Lennington, Assistant Attorney General | Daniel.lennington@oag.ok.gov |
| | |
| Melvin David Riggs | driggs@riggsabney.com |
| Joseph P. Lennart | jlennart@riggsabney.com |
| Richard T. Garren | rgarren@riggsabney.com |
| Sharon K. Weaver | sweaver@riggsabney.com |
| Robert Allen Nance | rnance@riggsabney.com |
| Dorothy Sharon Gentry | sgentry@riggsabney.com |
| David P. Page | dpage@riggsabney.com |
| Riggs Abney Neal Turpen Orbison & Lewis, P.C. | |
| | |
| Louis W. Bullock | lbullock@mkblaw.net |
| J. Randall Miller | rmiller@mkblaw.net |
| Miller Keffer & Bullock Pedigo LLC | |
| | |
| William H. Narwold | bnarwold@motleyrice.com |
| Elizabeth C. Ward | lward@motleyrice.com |
| Frederick C. Baker | fbaker@motleyrice.com |
| Lee M. Heath | lheath@motleyrice.com |
| Elizabeth Claire Xidis | cxidis@motleyrice.com |
| Fidelma L Fitzpatrick | ffitzpatrick@motelyrice.com |
| Motley Rice LLC | |
| **COUNSEL FOR PLAINTIFFS** | |
| | |
| Stephen L. Jantzen | sjantzen@ryanwhaley.com |
| Paula M. Buchwald | pbuchwald@ryanwhaley.com |
| Patrick Michael Ryan | pryan@ryanwhaley.com |
| Ryan, Whaley & Coldiron, P.C. | |
| | |
| Mark D. Hopson | mhopson@sidley.com |
| Jay Thomas Jorgensen | jjorgensen@sidley.com |
| Timothy K. Webster | twebster@sidley.com |
| Gordon D. Todd | gtodd@sidley.com |
| Sidley Austin LLP | |
| | |
| L Bryan Burns | bryan.burs@tyson.com |
| Robert W. George | robert.george@tyson.com |

-14-

| | |
|---|---|
| Michael R. Bond | michael.bond@kutakrock.com |
| Erin W. Thompson | erin.thompson@kutakrock.com |
| Dustin R. Darst | dustin.dartst@kutakrock.com |

Kutack Rock LLP
**COUNSEL FOR TYSON FOODS, INC., TYSON POULTRY, INC., TYSON CHICKEN, INC.; AND COBB-VANTRESS, INC.**

R. Thomas Lay                    rtl@kiralaw.com
Kerr, Irvine, Rhodes & Ables

Jennifer S. Griffin              jgriffin@lathropgage.com
Lathrop & Gage, L.C.
**COUNSEL FOR WILLOW BROOK FOODS, INC.**

| | |
|---|---|
| Robert P. Redemann | rredemann@pmrlaw.net |
| Lawrence W. Zeringue | lzeringue@pmrlaw.net |
| David C .Senger | dsenger@pmrlaw.net |

Perrine, McGivern, Redemann, Reid, Berry & Taylor, PLLC

| | |
|---|---|
| Robert E. Sanders | rsanders@youngwilliams.com |
| E. Stephen Williams | steve.williams@youngwilliams.com |

Young Williams P.A.
**COUNSEL FOR CAL-MAINE FOODS, INC. AND CAL-MAINE FARMS, INC.**

| | |
|---|---|
| George W. Owens | gwo@owenslawfirmpc.com |
| Randall E. Rose | rer@owenslawfirmpc.com |

The Owens Law Firm, P.C.

| | |
|---|---|
| James M. Graves | jgraves@bassettlawfirm.com |
| Gary V. Weeks | gweeks@bassettlawfirm.com |
| Woody Bassett | wbassett@bassettlawfirm.com |
| K.C.Dupps Tucker | kctucker@bassettlawfirm.com |

Bassett Law Firm
**COUNSEL FOR GEORGE'S INC. AND GEORGE'S FARMS, INC.**

| | |
|---|---|
| John R. Elrod | jelrod@cwlaw.com |
| Vicki Bronson | vbronson@cwlaw.com |
| Bruce W. Freeman | bfreeman@cwlaw.com |
| P. Joshua Wisley | jwisley@cwlaw.com |

Conner & Winters, LLLP
**COUNSEL FOR SIMMONS FOODS, INC.**

| | |
|---|---|
| A. Scott McDaniel | smcdaniel@mhla-law.com |
| Nicole M. Longwell | nlongwell@mhla-law.com |
| Philip D. Hixon | phixon@mhla-law.com |
| Craig Mirkes | cmirkes@mhla-law.com |

McDaniel, Hixon, Longwell & Acord, PLLC

Sherry P. Bartley               sbartley@mwsgw.com
Mitchell Williams Selig Gates & Woodyard
**COUNSEL FOR PETERSON FARMS, INC.**

-16-

Michael D. Graves                                    mgraves@hallestill.com
Dale Kenyon Williams, Jr.                            kwilliams@hallestill.com
**COUNSEL FOR CERTAIN POULTRY GROWERS**

  I also hereby certify that I served the attached documents by United States Postal Service, proper postage paid, on the following who are not registered participants of the ECF System:

Thomas C. Green
Sidley Austin Brown & Wood LLP
1501 K Street NW
Washington, DC 20005
**COUNSEL FOR TYSON FOODS, INC., TYSON POULTRY, INC., TYSON CHICKEN, INC.; AND COBB-VANTRESS, INC.**

         s/ John H. Tucker

-16-