**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **STATE OF OKLAHOMA, et al.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 05-CV-329-GKF-PJC |
| ) | |
| **TYSON FOODS, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

Before the Court is Defendants' Joint Motion to Strike Portions of Plaintiffs' Damages Experts' Report (Dkt. #1950). Defendants move to strike "any and all results, opinions, and conclusions based on representations or assumptions about proposals for alum treatments of Lake Tenkiller or any portion of the IRW ["Illinois River Watershed"] including but not limited to the Contingent Valuations ("CV") survey portion of the Stratus Consulting report" from the State of Oklahoma's ("Oklahoma") damages experts' January 2009 disclosures. *Defendants' Joint Motion, p. 2* (Dkt. #1950).

Defendants specifically take issue with the representation made to the CV survey respondents that alum treatments would speed the recovery of the Illinois River system from the deposits of excess phosphorus attributable to poultry litter applied in the IRW. Defendants contend that if Oklahoma intends to claim at trial that this representation is scientifically accurate and that it will use alum treatment as a remedial measure, the Court should strike all evidence relating to alum treatments, including the CV survey results, as Oklahoma has not timely disclosed any expert opinions on this treatment, the details of any treatment program, or the likely effects such treatments would have on the IRW or Lake Tenkiller and has not

produced any supporting materials regarding such expert opinion. If not, however, Defendants assert that the Court should still strike all the alum treatment evidence because it is irrelevant and lacks foundation.

In this motion, Defendants are trying to force the clubfoot of a *Daubert* challenge into the slender slipper of Rule 26 apparently to insure they have two punts on the Plaintiffs' damages experts' CV report. If the Defendants' purpose in filing this motion is to find Oklahoma's hidden ball regarding its "intentions as to alum,"[1] they have done so, as Oklahoma makes clear in the attached declarations of two of the authors of the CV survey report, Drs. Michael Hanemann and Roger Tourangeau, and the deposition testimony of the Stratus Consulting project manager for the CV survey, Dr. David Chapman, that these experts are not opining as to the efficacy of alum treatments as a remedial action as they have no expertise in this area; rather, the "alum scenario" is used in the contingent valuation survey as a "plausible" means to elicit survey respondents' "truthful valuations of the scenario *outcome*, namely an accelerated reduction in future natural resource injuries to the Illinois River System and Tenkiller Lake." *Declaration of Michael Hanemann, Ph.D., ¶¶ 9 and 10,* Exhibit B to Plaintiffs' Response (Dkt. #1987). Dr.

---

[1] In their motion Defendants complain of Oklahoma's "coyness" regarding its intent in proposing an alum treatment as a remedial program in the CV survey:
> Plaintiffs are coy as to their intentions. Their CV survey rests entirely on a proposed alum treatment program. As the Stratus report recounts,
>> [t]he survey narrative explained that with alum treatments, it would take about 10 years for the river and 20 years for the lake to return to 1960 conditions, compared with 50 and 60 years, respectively, if alum was not applied. Hence, alum treatments would reduce the period over which the injuries would be present by 40 years for both the river and lake.
>
> (Dkt. No. 1853-4 at Pages 1-7.) Yet, having assured survey participants that this alum program, without regard to any other source of nutrients in the IRW, could restore the IRW to "1960 conditions" within 10 to 20 years, the Stratus Report also notes that "the State is not actually proposing this specific alum treatment program at this time." (Id.)

*Defendants' Motion, p. 11 n.5* (Dkt. #1950).

2

Haneman further explains that "[i]t is immaterial to the validity of the results whether the mechanism generating the outcome is fictitious as long as it is accepted by respondents." *Id*. at ¶11.

The pertinent inquiry then is not whether there is a timely, Rule 26-sufficient expert opinion supporting the efficacy of alum treatment as a remedial measure but whether this "outcome" is an appropriate mechanism to use as a valuation measure. The latter is perhaps an appropriate subject of a *Daubert* motion challenging the CV report - which Defendants have predictably promised to file; thus, the Court will not address it here.[2]

Accordingly, the Court **DENIES** Defendants' Joint Motion to Strike Portions of Plaintiffs' Damages Experts' Report (Dkt. #1950).

IT IS SO ORDERED, this 10th day of May, 2009.

Paul J. Cleary
United States Magistrate Judge

---

[2] As the parties are "overwhelmed" with last minute discovery and *Daubert* motion preparation, the Court would suggest that the parties' and the Court's time is much better spent on matters that move this case forward rather than motions such as this one, particularly one in which the final argument is -
> "Plaintiffs' failure to timely disclose the alum-treatment opinion on which they now rely is even more egregious given the apparently fabricated character of that opinion" as "a timely disclosure [of] the CV survey's opinion about alum treatment would have been simple: being fictional, the opinion has no factual basis, no analysis, and no supporting materials, and all Plaintiffs would have needed to do was articulate the opinion itself."

*Defendants' Reply, p. 9* (Dkt. #2018).

3