**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **STATE OF OKLAHOMA, et al.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 05-CV-329-GKF-PJC |
| ) | |
| **TYSON FOODS, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Before the Court is the Motion to Compel Expert Discovery Regarding Dr. Thomas Ginn filed by Plaintiff State of Oklahoma ("Oklahoma") (Dkt. #2011). Oklahoma contends it is entitled to this expert discovery because the Cargill Defendants transitioned Dr. Ginn from a consulting expert in his individual capacity and as the Project Manager for all of the consulting work conducted by Exponent, Inc. ("Exponent") to a testifying expert. Exponent's consulting work was carried out by two teams of consultants, a "transport fate source dynamics" ("TFSD") team and a "biological issues" team. Dr. Ginn was in charge of the biological issues team, but also received, reviewed and participated in the presentation of the TFSD team's reports and analytical results. Oklahoma asserts the Cargill Defendants waived any work product protection or Rule 26(B)(4) privilege they had regarding the research and information Dr. Ginn received and reviewed of the TFSD team when they designated him as an expert witness. Thus, it asks the Court to order the Cargill Defendants to do the following:

> (1) produce Dr. Thomas Ginn ("Dr. Ginn") for a second deposition, wherein he will be required to answer all questions concerning information he generated and obtained in his role as a consulting expert and project manager for consulting work conducted in connection with this case, including all information contained in materials produced after April 13, 2009; (2) produce all documents and other information that Dr. Ginn received from any of the Defendants' consulting

> experts or which Dr. Ginn himself generated as a consultant in connection with this case; and (3) strike the "redaction log"[1] produced to the State on April 14, 2009 and immediately provide the State with non-redacted copies of all materials listed on the "redaction log."

*Plaintiff's Motion to Compel, p. 1* (Dkt. #2011).

Although they have no objection to producing Dr. Ginn for a second deposition on the supplemental materials produced on April 14, 2009 (hereafter, the "April 14th materials), the Cargill Defendants object to –

> (1) subject[ing] Dr. Ginn to a wide-ranging second deposition regarding his former role as a consulting expert and the role and work product of other independent consulting experts who advised the Cargill Defendants' attorneys separate and apart from Dr. Ginn;
> (2) obtain[ing] all "consulting" documents Dr. Ginn ever "received" or "generated," regardless of whether they relate to the subject matter of his expert opinions or whether he considered the documents in forming his opinions in this case; and
> (3) discover[ing] the privileged consulting information of a separate undisclosed expert on a separate subject, which has been redacted from the April 14, 2009 materials and is reflected in the accompanying redaction log.

*Cargill Defendants' Response, pp. 2-3* (Dkt. #2019). They contend they have produced all materials "considered" by Dr. Ginn in forming his expert opinion and supplemented those materials with a subset of redacted materials that Dr. Ginn had "seen" as a consulting expert which are factually related to the subject matter of his expert report. The Cargill Defendants assert that any remaining consulting expert materials are protected by Rule 26(b)(4) which states in relevant part the following:

> B) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert

---

[1] Oklahoma seeks a second deposition of Dr. Ginn because the Cargill Defendants' produced a "large volume" of materials the day before Dr. Ginn's deposition including a two-page redaction log with redacted materials (the "April 14th materials"). The Cargill Defendants agree to produce Dr. Ginn for deposition; however, they seek to limit the scope of the discovery as argued herein.

> who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: . . .
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed.R.Civ.P. 26(b)(4)(B)(ii). As Oklahoma has not shown such "exceptional circumstances," they contend no other consulting expert materials are discoverable and Dr. Ginn cannot be deposed about them.

Oklahoma responds that Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure "trumps" Rule 26(b)(4)(B) in cases such as this in which a consulting expert becomes a testifying expert. Rule 26(a)(2)(B) expressly requires that a testifying expert provide a written report prepared and signed by the expert witness which contains a complete statement of all opinions to be offered, and provide, *inter alia,* "data or other information *considered* by the witness in forming the opinions." Fed.R.Civ.P. 26(a)(2)(B) (emphasis added). Accordingly, Oklahoma urges it is entitled to all materials Dr. Ginn "considered" when he was a consulting expert, including those of other consulting experts.

## Applicable Law

*A.   The Bright-Line Approach to Rule 26*

Rule 26 requires the parties to produce all materials a testifying expert considered in forming his expert opinion and subjects that expert to cross-examination about those materials through deposition. The 1993 Amendments to Rule 26 make clear that any type of work product or other privilege is lost when the material is disclosed to and considered by a testifying expert. *Johnson v. Gmeinder*, 191 F.R.D. 638, 647 (D.Kan.2000) ("[A]ny type of privileged material, including materials or documents prepared by a non-testifying expert, lose their privileged status

when disclosed to, and considered by, a testifying expert."); *Elm Grove Coal Co. v. Director, O.W.C.P.,* 480 F.3d 278, 302-303 (4th Cir. 2007) ("[D]raft expert reports prepared by counsel and provided to testifying experts, and attorney-expert communications that explain the lawyer's concept of the underlying facts, or his view of the opinions expected from such experts, are not entitled to protection under the work product doctrine."): *Regional Airport Authority of Louisville v. LFG, LLC,* 460 F.3d 697, 715 (6th Cir. 2006) ("We agree with the district court and the majority view that Rule 26 now requires disclosure of all information provided to testifying experts."); *In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed.Cir.2001) ("[F]undamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony," regardless of whether such information falls under the attorney-client or core work product privilege.). First, the amended Rule 26(a)(2)[2] mandates the disclosure of information relating to a testifying expert without any discovery request from the opposing party. Further, this mandated disclosure is of all information "considered" by the testifying expert, a significantly broader discovery scope than that of the first draft of amended Rule 26(a)(2) which only allowed discovery of expert information that was *relied upon* by the expert. *See Proposed Rules*, 137 F.R.D. 53, 89 (Sept. 1991);[3] Michael E. Plunkett,

---

[2] The Court is aware that Rule 26 was again amended, effective December 1, 2007. However, these amendments do not alter the relevant portions of Rule 26. *See* Advisory Committee Note to 2007 Amendment (indicating no substantive change to Rule 26(a)(2)(B), Rule 26(b)(3), or Rule 26(b)(4)(B)).

[3] The initial draft of the amended Rule 26(a)(2)(A) stated the following:
(2) Disclosure of Expert Testimony.
(A) In addition to the disclosures required in paragraph (1), each party shall disclose to every other party any evidence that the party may present at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence. This disclosure shall be in the form of a written report prepared and signed by the witness which includes a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information

4

*Discoverability of Attorney Work Product Reviewed by Expert Witnesses: Have the 1993 Revisions to the Federal Rules of Civil Procedure Changed Anything?*, 69 Temple L.Rev. 451, 478 (1996). In addition, the amended Rule expands the means of discovery to include depositions of the testifying expert. Fed.R.Civ.P. 26(b)(4)(A).[4] Finally, the Advisory Committee Notes to the 1993 Amendments reinforce that the drafters intended that the information given to a testifying expert must be disclosed:

> The [expert] report is to disclose the data and other information considered by the expert and any other exhibits or charts that summarize or support the expert's opinions.  Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – *whether or not ultimately relied upon by the expert* – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Fed.R.Civ.P. 26, advisory committee's note to 1993 Amendments (emphasis added).

The rationale for this "waiver" of privilege or protection is that "any disclosure to a

---

*relied upon* in forming such opinions; any exhibits to be used as a summary of or support for such opinions; the qualifications of the witness; and a listing of any other cases in which the witness has testified as an expert at trial or in deposition within the preceding four years.
*Proposed Rules*, 137 F.R.D. 53, 89 (Sept. 1991) (emphasis added).

[4]The pre-1993 Rule 26(b)(4)(A) was amended as follows:
(A) (I) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(c) of this rule, concerning fees and expenses as the court may deem appropriate.+depose, after any report required under subdivision (a)(2) has been provided, any person who has been identified as an expert whose opinions may be presented at trial.
*Id.* at 93 (redacted section is highlighted and added text follows the + sign).

testifying expert in connection with his testimony assumes that privileged or protected material will be made public." *Pioneer Hi-Bred Int'l*, 238 F.3d at 1375-76. And given the clear intent of the 1993 amendment of Rule 26(a)(2) and its supporting commentary, the majority of courts have since favored a "bright-line" approach that mandates "full disclosure of those materials reviewed by an expert witness" - period. *Karn v. Ingersoll-Rand Co.*, 168 F.R.D. 633, 639 (N.D.Ind. 1996); *see also ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1304 (Fed.Cir. 2009) (Plaintiffs "failed to make a disclosure required by Rule 26(a); they withheld test results reviewed by a testifying expert"); *Regional Airport Authority*, 460 F.3d at 717 ("[W]e now join the 'overwhelming majority' of courts . . . in holding that Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts." ); *Elm Grove Coal Co.*, 480 F.3d at 302 n.24 (adopting the "vastly superior view" of Rule 26 that a testifying expert's draft reports and attorney-expert communications must be disclosed); *Gmeinder*, 191 F.R.D. at 646 (The "amended rule 'unambiguously provide[s] a "bright-line" rule in favor of production of *any information* which the expert considers.'"); 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2016.2 at 250-52 (1994) ("[W]ith respect to experts who testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege."). Thus, the "bright line rule" interprets "considered " in Rule 26(a)(2)(B) as requiring disclosure of all information, whether privileged or not, that a testifying expert "generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected." *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 462 (E.D.Pa. 2005).

Courts and commentators have cited the following policy considerations supporting this bright-line rule: "effective cross examination of expert witnesses will be enhanced; the policies underlying the work product doctrine will not be violated; and, finally, litigation certainty will be achieved-counsel will know exactly what documents will be subject to disclosure and can react accordingly." *Karn*, 168 F.R.D. at 639; *Synthes Spine*, 232 F.R.D. at 464; *Gmeinder*, 191 F.R.D. at 646. Effective cross-examination of expert witnesses is particularly crucial as their subjects are generally outside the common knowledge of jurors and the Court and their opinions can be based on evidence which would otherwise be inadmissible if relied on by others in their field. *See* Lee Mickus, *Discovery of Work Product Disclosed to a Testifying Expert under the 1993 Amendments to the Federal Rules of Civil Procedure*, 27 Creighton L.Rev. 773, 788 (1993-1994) and Fed.R.Evid. 703. In addition, pre-trial access to the information the attorney has given the expert can reveal the attorney's influence on the expert's testimony. *Gmeinder*, 191 F.R.D. at 646; Karn, 168 F.R.D. at 639; Mickus, *supra* at 790-91. Neither is the purpose of the work product doctrine - "to allow counsel unfettered latitude to develop new legal theories or to conduct a factual investigation, . . . without knowing beforehand if the results will be favorable to the client's case" - restricted by disclosure of the materials considered by the expert witness. *Karn*, 168 F.R.D. at 640. "Rather, the work product either informs the expert as to what counsel believes are relevant facts, or seeks to influence him to render a favorable opinion." *Id*. Finally, because of its simplicity and clarity, the bright-line rule avoids confusion over what materials will be discoverable.[5] *Id*. at 640-41; *Gmeinder*, 191 F.R.D. at 646. If counsel does not want the

---

[5]As this Court has previously cited,
to determine whether an expert "considered" materials, as that term is commonly used, would require the court to explore the expert's subjective mental processes and risks the creation of an unwieldy rule that would provide uncertainty as to the protected status of

7

information disclosed, she need only withhold it from the testifying expert, or decline to morph a consulting expert into an expert witness.

The Tenth Circuit has not yet addressed the bright-line rule in the context of the discoverability of information considered by an expert witness. However, the language of Rule 26(a)(2) and relevant commentary, the changes in the draft of 1993-amended Rule 26(a)(2), the policy arguments and the clear trend of the courts, including the district courts in this circuit, persuade the Court to adopt the rule. *See Gmeinder*, 191 F.R.D. at 647 (adopting the bright-line rule and holding that "any type of privileged material, including materials or documents prepared by a non-testifying expert, lose their privileged status when disclosed to, and considered by, a testifying expert." ); *Western Resources, Inc. v. Union Pac. Railroad Co.*, 2002 WL 181494 at *9, n. 15 (D.Kan.) ("[A]ny type of work product or other privileged information, including opinion work product, loses its privileged status when disclosed to, and considered by, a testifying expert."); *Melton v. Encana Oil & Gas (USA) Inc.*, 2007 WL 1468591 at *1 (D.Utah) (citing *Karn* in support of its holding that the requirement of Rule 26(a)(2) trumps any assertion of privilege or work product and "'considered' simply means 'to take into account'").

*B.     Converting a Consulting Expert to Expert Witness*

Complicating the Rule 26(a)(2) analysis is the strategic decision to designate a consultant into a testifying expert, the "two hats" problem. *Employees Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008) (citing  *S.E.C. v. Reyes*, 2007 WL 963422, at

---

work product or other privileged materials. The Court believes it is important for practitioners to have a more definitive rule under which they can determine whether waiver has occurred.
*Palmer v. Asarco, Inc.*, 225 F.R.D. 258, 262 (N.D.Okla. 2004) (quoting *Western Resources, Inc. v. Union Pac. Railroad Co.*, 2002 WL 181494, at *9 (D.Kan.)).

*1 (N.D.Cal.)(describing the problems arising when an expert "alternately dons and doffs the 'privileged hat' of a litigation consultant and the 'non-privileged hat' of the testifying witness")). It is a common trial tactic, particularly in environmental cases, for counsel to retain a consulting expert to review the available evidence and reach preliminary opinions under the protection of Rule 26(b)(4)(B). If those preliminary opinions are not favorable to the retaining party, counsel would not list the consultant as a testifying expert in the case, and the consultant's review and opinions would not be discoverable absent "exceptional circumstances under which it is impracticable for the party to obtain facts or opinion on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(B)(ii). But if the consultant's opinions are in line with counsel's theory of the case, counsel would then designate the consultant as an expert witness. The risk of this strategy is that listing the expert witness can disclose materials "considered" by that expert while a consultant.

The Cargill Defendants assert that it is Oklahoma's burden to prove the waiver of their consulting expert privilege under Rule 26(b)(4) (or work product protection) in the information redacted in the April 14th materials, as well as other unproduced materials they contend Dr. Ginn considered as a consulting expert but did not consider in formulating the opinions in his expert report. Although generally analyzed as a "waiver" of privilege and work product protection, disclosure under Rule 26(a)(2) seems more aptly analyzed as an exception to attorney-client privilege and work product protection.[6] Rule 26(a)(2) expressly mandates the disclosure of

---

[6] As the majority view is that the party claiming waiver has the burden of proof on that issue, it would then be Oklahoma's burden to establish (1) principles of law from which the court can conclude that waiver is proper and (2) the facts necessary to find waiver under those legal principles. *See, e.g., Holder v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 655 (N.D. Okla. 2005). This seems counterintuitive, however, when it is the Cargill Defendants' duty under Rule 26(a)(2) to disclose all information "considered by" Dr. Ginn in forming his expert opinions and it is the Cargill Defendants, not

9

testifying expert opinions and the "data or other information considered by the witness in forming them," regardless of whether that information is otherwise privileged or protected as work product. In addition, disclosure of that information trumps the protection provided by Rule 26(b)(4)(B) if the information is considered by the expert witness.

In any case, as the Cargill Defendants have redacted information and refused to produce materials their testifying expert Dr. Ginn considered, under the bright-line rule it is the Cargill Defendants' burden to show that those materials were not considered by Dr. Ginn in forming his expert opinion; *i.e.*, that is, to demonstrate (1) a clear delineation between Dr. Ginn's shifting roles from consultant to testifying expert; and (2) a clear distinction between information "having no relation to" Dr. Ginn's role as a testifying expert and that considered by him in developing his expert opinions.[7] *Holder*, 239 F.R.D. at 660; *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.*, 171 F.R.D. 57, 61 (S.D.N.Y. 1997) (quoting

---

Oklahoma, who have the facts necessary to find waiver.

[7] The Court, however, appreciates the following distinction made by the *Reyes* court in concluding that it is the character of the documents that is determinative:

> As a conceptual matter, courts addressing the "hats" problem have often failed to distinguish between two distinct ideas: the character of the documents reviewed, on the one hand, and the particular role ostensibly played by the expert when reviewing them, on the other. . . . This Court finds that the appropriate test for disclosure is not what function the expert was ostensibly serving when he reviewed or generated the particular documents in question. Rather, the test must be whether the documents reviewed or generated by the expert could reasonably be viewed as germane to the subject matter on which the expert has offered an opinion. First, this focus on the nature of the materials is more consistent with Rule 26(a)(2)(B), which identifies the formation of the expert's "opinions" as the touchstone for disclosure. Second, this rule is in accord with other decisions concerning the scope of waiver regarding the work-product privilege. Third, this standard for disclosure is preferable because it emphasizes the concrete subject matter contained within the documents, rather than the artificial and illusory distinction of the "hat" worn by the expert at any particular time.

*Reyes*, 2007 WL 963422, at *2 n.2 (N.D.Cal.) (citations omitted).

*Beverage Marketing Corp. v. Ogilvy & Mather,* 563 F.Supp. 1013, 1014 (S.D.N.Y.1983)) ("It is conceivable that an expert could be retained to testify and in addition to advise counsel outside of the subject of his testimony.  Under such a circumstance it might be possible to claim a work product privilege if this delineation were clearly made.");  *In re Air Crash at Dubrovnik*, 2001 WL 777433, at *3 (D.Conn.) (Where "an expert is retained as both a consultant and a testifying witness, the work-product doctrine may be invoked to protect work completed by the expert in [her] consultative capacity as long as there exists a clear distinction between the two roles.") (quoting *Messier v. Southbury Training School*, 1998 WL 422858, at *2 (D.Conn.).  As a clear distinction must be made between documents the expert considered in his role as a consultant and those he considered in his role as a testifying expert,

> [w]hen . . . the subject matter of those materials relates to the facts and opinions the expert expressed in his report, the courts should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion. In most instances, if the subject matter directly relates to the opinion in the expert report, there will be at least an ambiguity as to whether the materials informed the expert's opinion.

*Monsanto Co. v. Aventis Cropscience, N.V.,*  214 F.R.D. 545, 547 (E.D.Mo. 2002); *B.C.F. Oil Refining*, 171 F.R.D. at 62 ("[A]ny ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery.").

### Analysis

The Cargill Defendants contend that (1) Dr. Ginn had separate and distinct roles as administrative Project Manager, consulting expert, and testifying expert and none of the roles relates substantively to the work of the other undisclosed consulting expert; and (2) Dr. Ginn did not consider or rely upon the redacted or withheld materials in forming his expert opinions; thus (3) the undisclosed consulting expert materials are protected by Rules 26(b)(4)(B).  In support,

11

they cite Dr. Ginn's expert report and the following deposition testimony.

Dr. Ginn was initially retained as a consulting expert by the Cargill Defendants in this case in 2005 to evaluate information relating to the IRW and provide "general consulting advice" regarding available data. *Ginn Dep.* at 183, 208-09. At that time the Cargill Defendants hired consultants from Exponent to head two consulting teams: the "biological issues" and "transport fate source dynamics" (hereafter, "TFSD") teams. *Id*. at 208-09. Dr. Ginn was in charge of the biological issues team and an undisclosed consulting expert was in charge of the TFSD team. *Id*. at 183-84, 188-89, 208-09. Although Dr. Ginn was the Project Manager over all the consultants from Exponent, he did not participate in the TFSD team's analyses, determinations or conclusions. *Id*. at 210-211. As Project Manager, his responsibilities included insuring that the teams were on time, within budget and staffed appropriately. *Id*. at 212.

Dr. Ginn and his biological issues team studied the status of the biological communities in the IRW, looking at the available information on the presence of communities such as fish, benthic macroinvertebrates, and fresh water mussels. *Id*. at 188-89, 216. Dr. Ginn remained a consultant until May 2008 when Oklahoma disclosed its first liability reports and the Cargill Defendants determined that Dr. Ginn would became a testifying expert on the status of the biological communities in the IRW, specifically focusing on fish and benthic macroinvertebrate communities. *Id*. at 189, 218.

The Cargill Defendants assert that the "general background and preliminary advice Dr. Ginn provided in his consulting role is unrelated to the biological community data that is the subject of his expert opinions." *Response, p. 8* (Dkt. #2019). And all the materials related to the biological community data and considered for his expert opinion - both before or after he

transitioned to a testifying expert - have been produced.. The Cargill Defendants state that Dr. Ginn neither considered the TFSD team's work nor his general consulting work in formulating his expert opinion. Whether as a consulting or testifying expert, Dr. Ginn did not evaluate temperature data, dissolved oxygen, phosphorus levels, phytoplankton or algae, nitrogen levels, chlorophyll-a levels, aerial hypolimnetic oxygen demand or bacterial levels, *id*. at 108-110; did not evaluate fate and transport, or particular phosphorus sources, *id.* at 182; did not evaluate water quality data, *id*. at 189-90; and did not review materials indicating poultry waste application contributes phosphorus to the IRW, *id*. at 202. In sum, all non-biological communities materials and information in Dr. Ginn's files that he created, received or reviewed, including the undisclosed consultant's work, is protected under Rule 26(b)(4).

The Cargill Defendants' distinctions lack real substantive definition. First, the Court is not persuaded by the temporal distinction between Dr. Ginn's former and current roles; *i.e.*, that he was a consultant from 2005 until he was designated as an expert witness in May 2008. *Ginn Dep.* at 218. "If chronology was [sic] determinative, the opportunity for parties to shield disclosure of otherwise discoverable documents considered by their experts simply by hiring those individuals first as consultants and later as experts would be too great." *Constr. Indus. Servs. Corp. v. Hanover Ins. Co.*, 206 F.R.D. 43, 53 (E.D.N.Y. 2001). Second, the Cargill Defendants acknowledge that the redacted April 14th materials they produced that Dr. Ginn had "seen" as a consultant are factually related to the subject matter of his expert report. Those documents include email Ginn007033, [8] regarding the "Number of poultry houses and flocks"

---

[8] For some reason, this document is not included in the set of redacted copies presented to the Court.

13

and email Ginn007020, regarding the sampling protocol for "waste, soil, runoff, and groundwater" sent to Dr. Ginn and the undisclosed expert. Dr. Ginn testified that he did some analyses of the "density of upstream poultry houses and the relationship to fish communities" which he included in his expert report regarding the impacts and sources of pollutants on biological communities in the IRW. *Id*. at 216-17. He also opined in his expert report about the impacts of urban land use on the IRW. *Ginn Report*, at §6.5.3, Ex. B (Dkt. # 2011). These opinions certainly appear logically related to the TFSD's team scope of work. Yet, when asked whether these urban and poultry sources were also dealt with by the consulting experts, the Cargill Defendants' counsel instructed Dr. Ginn not to answer. In addition, the redacted information in Ginn006996-7000 shows how interrelated the work performed by the TFSD team was with that of Dr. Ginn and his biological issues team. Indeed, Dr. Ginn testified that he considered or could have considered some of the material from the redaction log in writing his report. *Id*. at 219-20, 222-24.

Further, Dr. Ginn's role as Project Manager over all the consultants employed by Exponent, including the consultant in charge of the TFSD team and its members, appears from his deposition testimony to have been so pervasive and comprehensive the Court finds the "delineation between his two roles has not been clearly made, and the ambiguity must be resolved" in favor of disclosure. *Constr. Indus. Servs.*, 206 F.R.D. at 52. Dr. Ginn received and reviewed reports from the TFSD team and was aware of the team's preliminary results although he did not participate in its analyses, determinations or conclusions; and he and the TFSD consultant conducted joint presentations and meetings with the Cargill Defendants. *Id*. at 182-83, 209-13.

In sum, the Cargill Defendants have not shown that Dr. Ginn neither considered the TFSD team's work nor his general consulting work in formulating his expert opinion. It is not whether Dr. Ginn *evaluated* temperature data, dissolved oxygen, phosphorus levels, phytoplankton or algae, nitrogen levels, chlorophyll-a levels, aerial hypolimnetic oxygen demand, bacterial levels, particular phosphorus sources, water quality data or any of the factors of the TFSD team's scope of work. It is whether he *considered* the information; *i.e.*, whether he reviewed, reflected upon, read and/or used the information in connection with the formulation of his opinions, even if he ultimately rejected the information. *Turnpike Ford, Inc. v. Ford Motor Co.*, 244 F.R.D. 332, 334 (S.D.W.Va. 2007). The Court finds that the delineation between Dr. Ginn's roles as consultant and testifying expert has not been clearly made, and the ambiguity thus must be resolved in Oklahoma's favor. This result is mandated by the policies underlying the requirement that a testifying expert disclose all materials that he considered in reaching his opinion, and on the rule that the party seeking to compel the production of the documents "should not have to rely on the [resisting party's] representation that the documents were not considered by the expert in forming his opinion." *In re Air Crash*, 2001 WL 777433, at *4.

Accordingly, the Court grants Oklahoma's Motion to Compel Expert Discovery regarding Dr. Thomas Ginn (Dkt. #2011). The Cargill Defendants are to disclose all information Dr. Ginn considered in his role as "consultant," including copies of the unredacted April 14th documents on or before June 15, 2009 and produce Dr. Ginn for deposition on or before July 15, 2009.

IT IS SO ORDERED, this 2nd day of June, 2009.

Paul J. Cleary
United States Magistrate Judge