# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 05-CV-329-GKF-PJC |
| TYSON FOODS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter comes before the court on defendants' Motion to Strike Plaintiffs' New and Undisclosed Expert Opinions [Doc. No. 2241]. For the reasons set forth below, defendants' motion is granted in part and denied in part. Additionally, the State of Oklahoma ("State") is ordered to file, by July 27, 2009, a revised affidavit of Christopher Teaf [Doc. No. 2130, Ex. 82, 2130-3] in which each opinion Teaf expresses references the paragraph or paragraphs in Teaf's expert report supporting the affidavit opinions. The State is also ordered to file, by July 27, 2009, a revised declaration of J. Berton Fisher [Doc. No. 2198, Ex. H, 2198-5] in which each opinion Fisher expresses references the paragraph or paragraphs in Fisher's expert report supporting the declaration opinions.

### I. Background

The State's expert reports were originally due on December 3, 2007. [Doc. No. 1075]. In November of 2007, the court granted the State an extension for all expert reports on all issues except damages until April 1, 2008. [Doc. No. 1376]. In March of 2008, the State sought another extension until May 15, 2008, to produce expert witness reports on all issues except damages, which the court granted. [Doc. No. 1658]. On May 13, 2008, the State filed an Emergency Motion for a Brief Extension of Certain of the Expert Witness Report Disclosure Deadlines Set

Forth in the March 27, 2008 Scheduling Order.  A two-week extension of the May 15, 2008, deadline was granted. [Doc. No. 1706].

On September 29, 2008, the court denied the State's Motion for Preliminary Injunction, finding that the State "has not yet met its burden of proving that bacteria in the waters of the IRW are caused by the application of poultry litter rather than by other sources, including cattle manure and human septic systems." [Doc. No. 1765, pp. 1-2].  In so ruling, the court stated:

> Upon consideration of the evidence presented, the Court concludes that the testimony and conclusions of expert witnesses [Dr. Valerie] Harwood and [Dr. Roger] Olsen presented at the hearing are not sufficiently reliable under the standards enunciated in *Daubert*.  The expert witnesses' work has not been peer reviewed or published.  The testimony before this Court reveals no one outside this lawsuit who has either validated or sought to validate Harwood's and Olsen's scientific work.

[*Id.,* pp. 6-7].  The court's decision was affirmed on appeal by the Tenth Circuit. [Doc. No. 2044].

In the meantime, after the State's expert reports were served, the State embarked on a course of serving supplemental expert reports, purportedly to correct errors in the original reports. The supplementations necessitated extension of the deadline for defendants' reports.  On January 21, 2009, nine days before the January 30, 2009, deadline for defendants' expert reports, the State filed a motion to serve yet another supplemental report by Drs. Cooke and Welch. [Doc. No. 1826].  The court concluded the proposed supplement did not correct or complete errors in the original reports and therefore denied the State's motion. [Doc. No.1839].  In so doing, the court observed:

> A supplemental expert report that states additional opinions or rationale or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(a).

[*Id.,* p. 2] (citations omitted).

The State also filed a Motion for Leave to Serve Rebuttal Expert Reports [Doc. No. 1819]. The court denied the motion, commenting:

> To alter the course previously plotted by the scheduling orders entered by the magistrate judge and permit rebuttal expert reports (and, presumably, sur-rebuttal expert reports) at this late date would unduly increase the cost of this litigation and delay its ultimate resolution. Rebuttal expert testimony will be permitted at trial to the extent it constitutes rebuttal.

[Doc. No. 1842, p. 2]. Subsequently, in response to defendants' Joint Motion for Clarification of the Court's January 29, 2009 Orders [Doc. No. 1972], the court elaborated on the meaning of "rebuttal," stating:

> As the experienced trial lawyers in this case already know, rebuttal denotes evidence introduced by a plaintiff to meet new facts brought out in his opponent's case in chief. At trial, it is properly within the discretion of the trial judge to limit rebuttal testimony to that which is precisely directed to rebutting new matter or new theories presented by the defendant's case-in-chief. Rebuttal is not an opportunity for the correction of any oversights in the plaintiff's case in chief.

[Doc. No. 1989, pp. 1-2] (citations omitted). In a footnote, the court stated:

> Upon reflection, this general rule may be unlikely to have any application whatsoever in the context of expert testimony at the trial of this case. The opinions and theories of defendants' experts will have been fully revealed to plaintiff through expert reports. It is unlikely that any attempt by defendants' experts to opine as to some as yet unrevealed theory or opinion will be permitted.

[*Id.,* p. 2, n. 1].

Thus, the court has previously instructed the parties that (1) supplemental reports aimed at strengthening or deepening previous expert reports rather than providing corrections or completions will not be permitted and (2) written rebuttal testimony will not be permitted and (3) rebuttal testimony will be allowed at trial, but only to the extent it constitutes actual rebuttal.

Subsequently, the State has filed a series of declarations appended as exhibits to various *Daubert* motions, responses to defendants' *Daubert* motions, summary judgment motions and

3

responses to defendants' summary judgment motions. [Doc. Nos. 2058, 2064, 2071, 2072, 2074, 2083, 2103, 2116, 2130, 2156, 2158 and 2198]. In moving to strike the declarations, defendants argue each is an impermissible supplemental expert opinion, and many of the declarations are from previously undisclosed experts.

## II. Legal Standard

### A. Disclosure of Expert Testimony

Rule 26(e)(1) imposes on parties a general duty to supplement or correct, in a timely manner, disclosures made in discovery, "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing..." Fed.R.Civ.Proc. 26(e)(1). Rule 26(e)(2) provides:

> Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes in this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed.R.Civ.P. 26(e)(2). Thus, Rule 26(e) imposes upon parties an affirmative duty to supplement expert reports where a disclosing party learns that its information is incorrect or incomplete. *Quarles v. United States,* 2006 U.S. Dist. LEXIS 96392 (N.D.Okla. Dec. 5, 2006). However, as the court has noted in its previous order, a supplemental expert opinion which attempts to strengthen or deepen opinions expressed in the original expert report "exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1)." [Doc. No.1839, p. 2] citing *Palmer v. Asarco Inc.,* 2007 WL 2254343, at *3 (N.D.Okla. Aug. 3, 2007). Further:

> [Rule 26(e)] does not cover failures of omission because the expert did an inadequate or incomplete preparation. To construe supplementation to apply

4

> whenever a party wants to bolster or submit additional expert opinions would reek [*sic*] havoc in docket control and amount to unlimited expert opinion preparation.

*Aveka L.L.C. v. Mizuno Corporation,* 212 F.R.D. 306, 310 (M.D.N.C. 2002).  Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report.  *Palmer v. Asarco,* 2007 WL 2254343, at *3.  Additionally, Rule 26(a)(2)(A) requires disclosure of the identity of experts a party intends to use pursuant to Federal Rules of Evidence 702, 703 and 705.

Rule 26(a)(2)(B)(i) requires an expert witness to prepare a report containing "a complete statement of all opinions to be expressed."  Under Rule 37(c)(1), a party's failure to disclose the identity of an expert witness or provide an expert report, as required by Rule 26(a)(2), mandates that the court exclude expert testimony unless the failure was "substantially justified or is harmless."  Fed.R.Civ.P. 37(c)(1).  "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  *Woodworker's Supply, Inc. v. Princiipal Mutual Life Insurance Company,* 170 F.3d 985, 993 (10th Cir. 1999).  In *Woodworker's,* the Tenth Circuit identified four factors the court should consider: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.  *Id.*

### B.  Use of Declarations in *Daubert* Proceedings

The court may consider the testimony of an expert who will not testify at trial in the context of evaluating a *Daubert* motion.  *See Reed v. Smith & Nephew, Inc.,* 527 F.Supp.2d 1336,

1347 (W.D.Okla. 2007). Specifically, a court may permit such testimony in order to evaluate the reliability of the testifying expert's testimony. *City of Owensboro v. Kentucky Utilities Company,* 2008 U.S. Dist. LEXIS 79292, at *3 (W.D.Ky. Oct. 8, 2008). "The test...is not whether the consulting expert's evidence would be independently admissible under *Daubert,* but whether it is sufficiently reliable to be persuasive to the court's evaluation of the expert reports that it criticizes." *Celebrity Cruises Inc. v. Essef Corp.,* 434 F.Supp.2d 169, 190 (S.D.N.Y. 2006). However, courts disfavor late-disclosed expert opinions even if offered in connection with a *Daubert* challenge. *See Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 597 (1993) ("Scientific conclusions are subject to perpetual revision. Law, on the other hand, must resolve disputes finally and quickly"); *Miller v. Pfizer Inc.,* 356 F.3d 1326, 1334 (10th Cir. 2004) ("The orderly conduct of litigation demands that expert opinions reach closure."); *Palmer,* 2007 WL 2254343 at *3.

In *Palmer,* plaintiffs, in response to a *Daubert* motion, offered an affidavit by their testifying expert which contained new opinions, facts and testing not previously disclosed. 2007 WL 2254343 at *2-3. The court, in considering the motion, conducted a Rule 37(c)(1) inquiry and, finding the nondisclosure was neither justified nor harmless, struck the expert's affidavit. Thus, although the court *may* consider evidence that would not be admissible at trial, the court is not *required* to do so, and may decline to consider previously undisclosed expert opinions.

The State contends Rule 26(b)(4)(B) exempts nontestifying consulting experts from the disclosure requirements of Rule 26(a) and therefore, the holding in *Palmer* is inapplicable to the declarations of Chappell, Loftis, Sadowsky, Macbeth and Weidhaas. These consulting experts' opinions, the State argues, can be used in connection with *Daubert* motions without prior

6

disclosure. The court finds this approach troubling in light of the State's repeated supplementation of expert reports, and the court's admonition that it would only permit supplemental reports that provided corrections or completions. Further, it strikes the court as fundamentally unfair, given the history of this case, to permit the State to supplement the record with reports of alleged "consulting experts" whose identity and opinions have been shielded pursuant to Rule 26(b)(4)(B). Defendants have had no opportunity to conduct discovery about the consulting experts' credentials, opinions, work or considered materials. Finally, the court has concerns about the ultimate reliability and admissibility of a testifying expert's opinion where–in order to withstand a *Daubert* challenge–it must be shored up by the previously undisclosed opinion of a consulting expert whose testimony will *not* be admissible at trial.

Because defendants have had no opportunity to discover *anything* about the consulting experts, the court will not consider any portion of the consulting experts' declarations, unless the State demonstrates the nondisclosure was justified or harmless. However, notwithstanding the court's previous orders regarding rebuttal testimony, it will permit opinions from previously disclosed expert witnesses that are simply critiques of defendants' expert reports, inasmuch as these opinions may assist the court in evaluating the reliability of the challenged expert's opinion. However, if the testimony is *not* rebuttal testimony in nature, the court will not permit previously undisclosed opinions from testifying experts in connection with the pending *Daubert* motions unless the proffering party demonstrates the nondisclosure was justified or harmless.

### C.  Use of Declarations in Summary Judgment Proceedings

An affidavit or declaration used to support or oppose a summary judgment must set out facts that would be admissible in evidence. Fed.R.Civ.P. 56(e)(1). A summary judgment

declaration or affidavit may not contain expert testimony unless the affiant has first been designated an expert witness under Rule 26(a)(2). *Bryant v. Farmers Insurance Exchange,* 432 F.3d 1114, 1122 (10th Cir. 2005). As discussed above, Rule 26(a)(2)(B)(i) imposes a requirement that the expert disclose in a written report "a complete statement of *all* opinions the witness will express and the basis and reasons for them." (emphasis added). Thus, any prior undisclosed opinions set forth in a declaration submitted to support or oppose a summary judgment is inadmissible, absent a showing the nondisclosure was justified or harmless under Rule 37(c)(1).

### III. Analysis

#### A. Rick Chappell's Declarations

The State has submitted declarations of Dr. Rick Chappell in support of its *Daubert* motion to exclude expert testimony of Charles Cowan [Doc. No. 2072, Ex. E, 2072-6], and its response to defendants' *Daubert* motion to exclude expert testimony of Roger Olsen, Ph.D. [Doc. No. 2198, Ex. E, 2198-4]. Based upon Chappell's declarations and the deposition testimony of Dr. Olsen, it appears Chappell has expertise in statistical analysis, wrote the proprietary software for Dr. Olsen's PCA runs, and generated the PCA runs. Plaintiffs failed to disclose Dr. Chappell or to provide any disclosures of his expertise, opinions or bases for the opinions, as required by Rule 26(a).

The Chappell declaration in support of the State's *Daubert* motion attacks Dr. Cowan's qualifications as an expert and his critique of Dr. Olsen's report. The Chappell declaration also contains extensive testimony clearly aimed at bolstering and supplementing the report of the State's expert, Roger Olsen. Likewise, Chappell's declaration in support of the State's

opposition to defendants' motion to exclude Dr. Olsen's testimony is largely an attempt to supplement Dr. Olsen's expert report with additional background facts, explanation and analysis.

Other than its argument that it had no obligation to disclose Chappell or his opinions to defendants, the State offers no justification for its nondisclosure, nor can the nondisclosure be characterized as "harmless." Expert discovery for the State's non-damages experts closed in May 2008. [Doc. No. 1658]. Trial of this case is less than two months away, and the parties and the court must deal with the press of pretrial motions and preparation. Clearly, defendants are prejudiced by the State's nondisclosure, for they have had no opportunity to ocnduct discovery regarding Chappell's qualifications, opinions or bases for the opinions. Due to the impending trial, the prejudice cannot be remedied without disrupting the schedule and potentially delaying trial. While the court stops short of finding the State acted in bad faith, nonetheless the filing of these "bolstering" declarations directly contravenes the court's previous orders. Therefore, the State has not shown the nondisclosures were justified or harmless.

Both Chappell declarations [Doc. No. 2072, Ex. E, 2072-6 and Doc. No. 2198, Ex. E, 2198-4] are stricken.

### B. Jim Loftis Declarations

The State has submitted declarations of Dr. Jim Loftis in support of its *Daubert* motions aimed at excluding the testimony of defendants' experts, Dr. Andy Davis [Doc. No. 2064, Ex. 4, 2064-5], Dr. Glenn W. Johnson [Doc. No. 2083, Ex. C, 2083-4]; Dr. Brian Murphy [Doc. No. 2074, Ex. C, 2074-4]; and Dr. Charles Cowan [Doc. No. 2072, Ex. D, 2072-5]; and in support of the State's response to defendants' *Daubert* motions regarding Dr. Roger Olsen [Doc. No. 2198,

Ex. D, 2198-4] and Dr. Valerie J. Harwood [Doc. Nos. 2115, 2116, Ex. H, 2116-6].

Dr. Loftis is a consulting expert for the State. Neither Loftis' identity as an expert nor the subject matter of his opinion was previously disclosed to defendants. In his recent declarations, he discloses he was retained by the State in September of 2007 to provide environmental statistical expertise and assistance in the analysis of water quality monitoring data for the IRW and analysis of sources of contamination. [Doc. 2072, Ex.D., 2072-5, ¶5]. He states that his "greatest involvement in the case has been in providing peer review for Dr. Roger Olsen in his principal components analysis (PCA) of the IRW data and closely related areas of work, including the development of conclusions from the PCA in light of other evidence in the case as well as statistical review of some expert reports." [*Id.*]

Loftis has submitted an omnibus declaration criticizing expert opinions of Davis, Johnson, Murphy and Cowan. The Loftis declaration attacks Cowan's qualifications as an expert and purports to rebut the opinions of Davis, Johnson, Cowan and Murphy. However, the omnibus declaration contains extensive explanation, elaboration, and supplementation of Olsen's report.

Loftis has also submitted a declaration in support of the State's response to defendants' *Daubert* motion regarding Dr. Olsen. The declaration is, in essence, a lengthy explanation of and elaboration on Olsen's PCA work. Similarly, Dr. Loftis' declaration in support of the State's response to defendants' *Daubert* motion directed at Dr. Harwood is a detailed analysis, explanation and defense of Dr. Harwood's opinion. The Loftis declarations, like the Chappell declarations, contain previously undisclosed expert opinions aimed at bolstering the Olsen and Harwood reports.

As with the Chappell declarations, the State argues disclosure of the Loftis opinions was not required. As discussed above, the nondisclosure is prejudicial to defendants, the prejudice cannot be remedied without compromising the pretrial and trial schedule, and the submission contravenes the court's previous orders. Therefore, the Loftis declarations [Doc. No. 2064, Ex. 4, 2064-5; Doc. No. 2083, Ex. C, 2083-4; Doc. No. 2074, Ex. C, 2074-4; Doc. No. 2072, Ex. D, 2072-5; Doc. No. 2198, Ex. D, 2198-4; and Doc. No. 2116, Ex. H, 2116-6] are stricken.

### C. Michael J. Sadowsky Declaration

Dr. Michael J. Sadowsky is a consulting witness who has signed declarations containing previously undisclosed opinions in support of the State's response to defendants' *Daubert* motion challenging Dr. Harwood's testimony. [Doc. Nos. 2115, 2116, Ex. D, 2116-1, 2116-2, Ex. E]. A 39-page report titled "Quantification of Poultry Litter-Specific Marker Genes in Environmental DNAs and Optimization of a QPCR Method to Detect Brevibacterium Marker Genes in Environmental Samples" is attached to Sadowsky's declaration. [*Id.*]

Dr. Sadowsky was retained in April 2008 to "examine and validate the use of a *Brevibacterium*-derived biomarker gene (in the form of DNA primers), that when used with the polymerase chain reaction (PCR) technique, was purported to specifically identify fecal contamination originating from poultry litter." [Doc. 2116, Ex. D. pp. 3-4]. Dr. Sadowsky's declaration and supporting attachments contain new analyses and methodologies never previously disclosed to defendants. It appears to be an effort to "back door" a new expert opinion. The State offers no justification for its failure to disclose either Sadowsky's identity or his opinions. Admission of the testimony would clearly prejudice defendants and/or delay trial. The filing of the delcaration contravenes the court's previous orders. Therefore, the opinion of

11

Dr. Sadowsky and supporting materials [Doc. No. 2116, Ex. D, 2116-1] are stricken.

### D. Declarations of Tamzen Macbeth and Jennifer Weidhaas

The State has also filed declarations of Dr. Tamzen Macbeth and Dr. Jennifer Weidhaas in support of its response to defendants' *Daubert* motion on Dr. Harwood. [Doc. No. 2115, 2116, Ex. F, 2116-4, and Ex. G, 2116-5]. Drs. Macbeth and Weidhaas are consulting experts who have conducted biomarker studies for Dr. Harwood. In their declarations, they provide extensive testimony about the general protocol for developing new Microbial Source Tracking ("MST") methods, the stages of methodology development, the steps they undertook during the biomarker testing, and the methodology used in identification of a bacterium associated with poultry litter. All of these areas are new and previously undisclosed. Further, their discussion of testing indicates that since the State's expert reports were submitted, they have tested hundreds of samples using their biomarker methodology. None of the samples or test results has been produced to defendants.

The testimony of Macbeth and Weidhaas constitutes an effort to strength, supplement or bolster Dr. Harwood's report. The State offers no justification for nondisclosure of the witnesses or their opinions. The nondisclosure is plainly prejudicial to defendants, and the prejudice cannot be remedied without causing a delay in proceedings. As with the declarations of the other consulting witnesses, filing of the declarations disregards the court's previous orders. Therefore, the Macbeth and Weidhaas declarations [Doc. No. 2116, Ex. F, 2116-4 and Doc. No. 2116, Ex. G, 2116-5] are stricken.

### E. Darren Brown Affidavit

Darren Brown, a testifying expert for the State, signed an affidavit in support of the

State's *Daubert* motion to exclude the testimony of defendants' expert, Jay Churchill. [Doc. No. 2058, Ex. F, 2058-7].  Brown has previously provided an expert report concerning the State's sampling efforts, including testimony regarding Standard Operating Procedures (SOPs) used in the sampling.  Churchill's report points out alleged deficiencies in the State's SOPs.  Brown's affidavit attacking Churchill, dated February 29, 2008, was prepared in response to Churchill's testimony during the preliminary injunction hearing. [Doc. 2314, p. 16].  The State contends the affidavit was included as part of the production of Mr. Brown's considered materials that accompanied his expert report. [*Id.*].  Defendants do not contest this representation.  Brown's affidavit does not contain previously undisclosed opinions and, therefore, the affidavit is appropriate for consideration in the context of the *Daubert* motion.

### F. Roger Olsen Declarations

Dr. Roger Olsen submitted declarations in support of the State's Motion for Partial Summary Judgment [Doc. Nos. 2062 , Ex. 116, 2103-10], and in support of the State's *Daubert* challenges to Dr. Andy Davis and Dr. Glenn Johnson [Doc. Nos. 2064, Ex. 3, 2064-4; 2083, Ex. D, 2083-5].

In his declaration in support of the State's summary judgment motion, Dr. Olsen both quotes verbatim from his expert report [Doc. No. 2062, Ex. 116, 2103-10, ¶5]  and provides commentary concerning certain figures of the report. [*Id.,* ¶¶6-7].   The commentary in Paragraphs 6-7 is impermissible and is therefore stricken.  The balance of the report may be considered.

Dr Olsen's declaration in support of the State's *Daubert* challenge to Andy Davis alleges Dr. Davis improperly used  wet weight concentrations instead of corrected dry weight

concentrations in section 2.1, Sediment Baseline Phosphorus Concentrations, of his expert report; therefore, all of Davis' conclusions in Section 2.1 are wrong, and conclusions in subsequent sections of the expert report which use the baseline concentration of phosphorus may also be wrong. [Doc. No. 2064, Ex. 3, 2064-4, ¶5]. Having reviewed the Olsen declaration, the court concludes it is primarily a permissible critique of Davis' opinion. [Doc.2064, Ex. 3, 2064-4].

Dr. Olsen's declaration in support of the State's *Daubert* motion against Dr. Glenn Johnson challenges Johnson's opinion that geochemical processes rather than contaminant sources are the controlling factors in Principal Component Analysis ("PCA") and surface water quality data. [Doc. 2083, Ex. D, 2083-5]. Dr. Olsen opines that since Dr. Johnson did not evaluate the sources of phosphorus in the IRW and does not understand the sources or phosphorus levels, he also does not understand and is not qualified to evaluate the physical and geochemical processes he contends control nutrients and water quality in the IRW. [*Id.,* ¶10]. The court has reviewed the Olsen declaration and finds it to be primarily a critique of Johnson's expert report. However, Paragraph 9 of the declaration, in which Olsen attempts to correct a misstatement by the State's attorney in Johnson's deposition concerning the action level for phosphorus in the IRW under Oklahoma law, is stricken. The balance of the declaration [Doc. No. 2083, Ex. D, 2083-5] is appropriate for consideration as part of the State's *Daubert* motion against Johnson.

### G. Christopher Teaf Declaration and Affidavit

The State submitted a declaration by Dr. Christopher Teaf in support of its *Daubert* motion challenging defendants' expert Dr. Timothy Sullivan [Doc. No. 2071, Ex. C, 2071-4] and

a declaration by Teaf in response to defendants' *Daubert* challenge to his own testimony. [Doc. No. 2156, Ex. 1, 2156-2]. The State also submitted the affidavit of Teaf in support of the State's opposition to defendants' motion for summary judgment. [Doc. No. 2130, Ex. 82, 2130-3].

Teaf is a testifying expert for the State on toxicology and human health for issues associated with the land application of poultry waste. [Doc. No. 2071, Ex. C, 2071-4, ¶7.] His declaration in support of the State's *Daubert* motion against Sullivan appears to be a critique of Sullivan's report. The Teaf testimony as to Sullivan's report does not appear to raise any new issues. Therefore, it is appropriate for consideration in the context of the *Daubert* challenge.

Teaf's declaration in response to defendants' *Daubert* motion pertaining to Teaf's expert testimony, on the other hand, appears to be nothing more than an effort to bolster his original opinion in order to stave off the *Daubert* challenge to his expert testimony. [Doc. No. 2156, Ex. 1, 2156-2] Teaf opines, among other things, that he is qualified to render the opinions stated in his expert report, and he attempts to elaborate upon opinions in his report. The declaration is not appropriate for consideration of the *Daubert* motion against him and should be stricken.

Teaf has filed an affidavit in support of the State's response to defendants' Motion for Summary Judgment on Plaintiffs' RCRA Claim [Doc. No. 2130, Ex. 82, 2130-3]. Defendants characterize the affidavit as a combination of impermissible rebuttal testimony and new, previously undisclosed opinions. [Doc. No. 2241, pp.22-23]. Portions of the affidavit appear to be taken from Teaf's report. However, since Teaf's affidavit does not cite to the report, it is very difficult to discern whether the opinions have been previously disclosed. Therefore, the court orders the State to file, by July 27, 2009, a revised affidavit in which each opinion Teaf expresses references the paragraph or paragraphs in Teaf's expert report supporting the affidavit

opinions.

## H.  Bernard Engle Declaration

Dr. Bernard Engle is the State's modeling expert.  Engle has submitted a 33-page declaration in response to defendants' *Daubert* motion aimed at him. [Doc. No. 2158, Ex. C]. The State argues Engle's declaration should be considered because it attacks the reliability of defendants' expert, Dr. Bierman.  However a review of the Engle declaration reveals it is aimed primarily at bolstering his original report by providing further explanation, analysis and commentary.   The opinions were not previously disclosed and the State offers no justification for the nondisclosure.  They are clearly prejudicial to defendants, who have not had an opportunity to conduct discovery on them.  Curing the problem would likely cause pretrial and trial delays.  The submission of the new material violates the court's earlier orders.   Therefore, the declaration is stricken.

## I.  J. Berton Fisher Declaration

The State has submitted the declaration of Dr. J. Berton Fisher in response to defendants' *Daubert* motion against Dr. Olsen. [Doc. No. 2198, Ex. H, 2198-5].  Fisher is a testifying expert regarding poultry waste generated by poultry operators in the IRW. [*Id.,* ¶6].  His expert report, dated May 15, 2008, is attached to his declaration. To the extent Fisher's declaration is based on his attached expert report, the declaration is permissible.  However, the declaration fails to cite the portions of his report supporting the opinions expressed therein.  Moreover, the declaration attempts to explain or supplement Olsen's report, specifically regarding sampling results on the property of Ed Fite. [*Id.,* ¶¶11-12].  This constitutes an impermissible attempt to bolster Olsen's

report. Paragraphs 11 and 12 of the declaration are therefore stricken and the State is directed to file a revised declaration on or before July 27, 2009, in which each opinion Fisher expresses references the paragraph or paragraphs in Fisher's expert report supporting the declaration opinions.

## IV. Conclusion

Defendants' Motion to Strike Plaintiffs' New and Undisclosed Expert Opinions {Doc. No. 2241] is granted in part and denied in part, as set forth above.

ENTERED this 24th day of July, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma