## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-CV-329-GKF-PJC |
| | ) | |
| TYSON FOODS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

Before the Court is the Plaintiff State of Oklahoma's ("Oklahoma") Motion for Sanctions Directed to the Cargill Defendants ("Cargill") for Discovery Misconduct (Dkt. #2459).    A hearing on Plaintiff's motion was held on September 25, 2009.

Oklahoma seeks sanctions against Cargill for withholding and misrepresenting the existence of the contents of a Summary of Cargill Grower Farming Operation ("Grower Summary") and a chart of the frequency and amounts of Cargill grower land application within the Illinois River Watershed ("IRW") ("Applications Chart").  (Dkt. #2452, Exs. A and L, respectively).  These documents were eventually produced after the Court ordered Cargill to turn over the materials considered by Dr. Thomas Ginn at the time he was a consulting expert when Cargill later converted Dr. Ginn to a testifying expert. (Dkt. # 2356).

Oklahoma contends the Grower Summary and Applications Chart contain highly relevant information regarding the land application practices of thirty-four (34) of Cargill's IRW contract growers, including:

> (1) the names of the contract growers; (2) the location of each farm; (3) the size of each farm (in acres); (4) the number of birds raised on each farm; (5) the types of birds raised on each farm; (6) the amount of poultry waste annually generated at each farm; (7) whether, how much, and when poultry waste is land applied on or

near each farm; (8) whether the growers sell all or some of the poultry waste; and (9) the identities of the purchasers of that poultry waste.

(Dkt. #2459, p. 2).  These documents show that since the fall of 2005, Cargill has known of the information in the Grower Summary and since spring of 2006, the information in the Applications Chart.

Oklahoma maintains that, despite this knowledge, on November 16, 2007, Cargill responded that "CTP[1] has no information regarding the amounts of litter used by its independent contract growers and directs Plaintiffs [sic] to the contract growers themselves for this information" to Oklahoma's September 13, 2007 Interrogatory Request No. 6 which requested the following:

For poultry waste generated at your own poultry growing / feeding operations and/or poultry growing / feeding operations under contract with you in the Illinois River Watershed since 1980 that has not been transported out of the Illinois River Watershed, please state, broken down by year, how the poultry waste was disposed of (e.g., land application within the Illinois River Watershed, burning as fuel within the Illinois River Watershed, etc.) and the amount disposed of in each particular manner.

(Dkt. #2452, Ex. B).  And on May 13, 2008, Cargill again asserted that it had "no information regarding the amounts of litter used by its independent contract growers" when it submitted its Supplemental Response to Oklahoma's Interrogatory Request No. 6.  (Dkt. #2452, Ex. C).

Finally, on March 17, 2009, Oklahoma submitted  Interrogatory No. 1 requesting that Cargill -

identify each instance (including, where available, specific date, specific location, tonnage of waste applied, acreage upon which it was applied, and STP before application) in which poultry waste generated at your poultry feeding operations, or at poultry feeding operations under contract with you, has been land applied within the IRW as fertilizer, identifying all witnesses to the application and all documents evidencing it.

_____

[1] CTP stands for Defendant Cargill Turkey Production, LLC.

2

(Dkt. #2452, Ex. D).  Cargill again responded that it had "no additional information responsive to this Interrogatory beyond CTP's supplemental response to Plaintiff's September 13, 2007 Interrogatory 6," and referred Oklahoma to that supplemental response.  *Id*.  Cargill's responses to Interrogatory No. 6 and March 17, 2009 Interrogatory No. 1 were verified by H. Steve Willardsen ("Willardsen"), as President of CTP. *Id*. at 40.  As in both Corporate Verifications, Willardsen also attested at his deposition that he did not prepare the interrogatory responses, did not have personal knowledge of certain matters and was informed that facts were assembled by CTP employees (Tim Alsup and Timothy Maupin) and Cargill's counsel. (Dkt. #2452, Ex. H at 137-44).

Oklahoma further asserts that Cargill's designee in Oklahoma's Rule 30(b)(6) deposition, Timothy Maupin ("Maupin"), misrepresented that Cargill "do[es not] track the poultry litter on our contract producers' farms." (Dkt. #2452, Ex. I at 230).  And, on June 18, 2009, in its response to Oklahoma's motion for partial summary judgment Cargill misrepresented that it "do[es] not generally know whether [its] individual contract growers in the IRW land-apply, sell, trade, or otherwise make use of the poultry litter generated by the Cargill Defendants' turkeys but owned by the growers."  (Dkt. #2200, Disputed Fact #28).[2]

---

[2] When asked by the Court at the September 25, 2009 hearing what was meant by using the word "generally," Cargill's counsel responded:

> An illustration of what that applies to
> is that Cargill has had, as Tim Alsup has testified, had kind
> of a standing that -- there's an organization called BMPs, Inc.
> and every company has committed to make available a certain
> amount of litter to BMPs, Inc. for export out of the watershed.
> And Cargill has a kind of a standing offer to growers.
> If you're having a situation where you weren't able to sell
> your litter this year and you need to move it, if you'll call
> us, then we'll have it -- we'll pay you X dollars and it will
> go out through BMPs, Inc. So for those things we know where

Oklahoma contends that the failure of Cargill and its counsel to produce the Grower Summary and Applications Chart and their false statements, some under penalty of perjury, violate the following Federal Rules of Civil Procedure:

> (1) Rule 16(f) because it failed timely to produce the Grower Summary and Applications Chart;
> (2) Rule 26(e) because it made — and, in light of the Grower Summary and Applications Chart, failed to correct — misstatements of fact in its interrogatory responses and Rule 30(b)(6) deposition testimony; and
> (3) Rule 26(g) because counsel for Cargill certified that Cargill's interrogatory responses were correct even though a reasonable inquiry (i.e., reviewing the Grower Summary and Applications Chart) would have revealed that they obviously were not.

(Dkt. #2459, p. 12).  Oklahoma further contends that it has been prejudiced thereby by being denied the benefit of the information in these documents when it filed its motion for partial summary judgment and response to Cargill's motion for summary judgment and in its depositions of Cargill's experts, Drs. Andy Davis and Brian Murphy.  Thus, pursuant to Rule 37(c)(1),[3] Oklahoma seeks the following sanctions:

------

> that litter goes, because it goes to BMP, Inc. For others --
> so, generally, we don't know, but a grower might come this
> year, a different grower might come next year, three growers
> might have come at one time. That's what's meant by that.
> Generally, we don't know, but on some occasions we do.

Transcript of September 25, 2009 hearing, pp. 64-65 (Dkt. #2673).  The Court finds this explanation credible.

> [3](c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> > (B) may inform the jury of the party's failure; and
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

(1) direct that, for the purposes of this action — including trial — it shall be established fact that Cargill has placed poultry waste in a location where it is likely to cause runoff or pollution of the State's waters, see Fed. R. Civ. P. 37(b)(2)(i);
(2) prohibit Cargill from introducing evidence or argument that it or its independent contractors have not placed any poultry waste in a location or locations where it is likely to runoff or pollute the State's waters, see Fed. R. Civ. P. 37(b)(2)(ii);
(3) prohibit Cargill from introducing evidence or argument that the State lacks evidence of Cargill-specific waste disposal practices or causation, see Fed. R. Civ. P. 37(b)(2)(iii);
(4) require Cargill and/or its attorneys to pay the State's reasonable expenses, including attorney's fees, caused by Cargill's misconduct, see Fed. R. Civ. P. 16(f)(2), 26(g)(3), 37(c)(1)(A); and
(5) grant whatever other relief the Court deems just given the circumstances.

(Dkt. #2612, pp. 9-10).

Cargill views the matter differently.  It claimed attorney work product protection of the two documents until the Court ruled that the documents should have been produced once Dr. Ginn was converted from a consulting expert to an expert witness.  Cargill explains that it started with the same grower information it delivered to Oklahoma in the form of Initial Disclosures and then counsel decided to interview growers, consult non-testifying experts and prepare the charts at issue as part of their strategy to defend the lawsuit.  It claims it properly answered the interrogatories by incorporating the following "general" objections: (1) "to producing *any information* that it did not maintain in the ordinary course of business;[4] and (2) (when "expressly" responding to the March 17, 2009 interrogatories), "to disclosure of *documents*

Fed.R.Civ.P. 37(c)(1).

---

[4] "General Objections" are often problematic for many reasons.  But here, Cargill's general objection effectively changes Cargill's obligations under the Federal Rules.  Rule 26 requires disclosure of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed.R.Civ.P. 26(b)(1). The Rule does not exempt otherwise discoverable matter if it does not happen to be maintained in the ordinary course of business.

5

protected as attorney work product." (Dkt. # 2452, Exs. B, C and D)(emphasis added).

Cargill states that it was understood by the parties that attorney work product and information gathered by consulting experts would be withheld unless that information formed the basis for a testifying expert's opinion.  And, in accordance with Local Rule 26.4(b), "work product material created after commencement of the action" need not be listed on a privilege log.[5]  LCvR26.4   Cargill maintains that Oklahoma also " *withheld* their attorney work product and the information gathered by their consulting experts unless and until that information formed the basis for a testifying expert's opinion," and cites the following example:

> CTP's Amended Request for Production No. 26 sought all documents "relating to any... sampling or analysis of any of the public waters supplies located within the IRW. (Ex A: Pls.' Oct. 31, 2006 Resp. to CTP's Amended First Set of Interrog. and Req. for Prod. at 21.)  In response, Plaintiffs:
> - objected to the production of "documents which have been prepared in anticipation of litigation or trial by the State's counsel, expert consultants, or agents, which have not yet been identified as experts in this matter. (id. at 21: Pls.' Oct. 31, 2006 Resp. to CTP's Amended First Set of Req. for

---

[5] Rule 26.4 of the Local Civil Rules for the Northern District of Oklahoma instructs the following regarding the use of privilege logs:

> a) In accordance with Fed. R. Civ. P. 26(b), when a claim of privilege or work product protection is asserted in response to a discovery request for documents, the party asserting the privilege or protection shall provide the following information with respect to each document in the form of a privilege log: the type of document; the general subject matter of the document; the date of the document; the author of the document; whether or not the author is a lawyer; each recipient of the document; and the privilege asserted. This rule shall apply only to document requests.
> (b) If information called for by one or more of the foregoing categories is itself privileged, it need not be disclosed. However, the existence of the document and any non-privileged information called for by the other categories must be disclosed. This rule requires preparation of a privilege log with respect to all documents withheld on the basis of a claim of privilege or work product protection except the following: written communications between a party and its trial counsel after commencement of the action and the work product material created after commencement of the action.

LCvR26.4.

Prod. No. 26), [6]
- objected to "the production of documents or information in the possession of or obtained from non-testifying consultants or experts who have been specifically retained to assist counsel for the State with the prosecution of this litigation.(id. at 1),
- objected "to the extent that [the requests] seek the discovery of information that is already in the procession [sic] of defendant. (id. at 2), and
- asserted that "Cargill Turkey has had ample opportunity by discovery in this action to obtain the information sought. (id. at 2).

(Dkt. #2598, p.5). Oklahoma, in its response, similarly directed Cargill to available data on the Oklahoma Department of Environmental Quality ("ODEQ") website.

Cargill points out that further evidence of this shared understanding was the fact that Oklahoma did not produce the document containing phosphorus testing data that its attorney Rick Garren had collected on August 1, 2005 from the Tahlequah Public Works Authority ("TPWA") and then transmitted to Plaintiff's then consulting expert, Bert Fisher ("Fisher"). (Dkt. #2598, Ex. B). Nor did Oklahoma disclose the factual information that its attorneys consistently sent their consulting experts in April 2005, although it was responsive to Cargill's discovery requests. (Dkt. #2598, Ex. C (April 18, 2005 email from attorney David Page ("Page") to Fisher summarizing land application data gathered by Oklahoma's investigators), Ex.D (April 18, 2005 email from Page to consultants Roger Olsen ("Olsen") and Fisher containing a link to research on phosphorus loading), Ex. E (April 19, 2005 email from Page to Fisher and Olsen forwarding arsenic research), Ex. F (April 12, 2005 from Page to Fisher and Olsen attaching report of phosphorus reduction in Beaty Creek with handwritten notes), and Ex. G (email from

---

[6] There is a crucial difference in Oklahoma's and Cargill's responses regarding documents that are protected by work product. Oklahoma specifically states its objection to production or response based on attorney work product, non-testifying expert materials, etc; while Cargill simply states that it has "no information regarding the amounts of litter used by its contract growers."

Page to Larry Hight, Fisher's associate, containing stream photographs)). As both parties' conduct shows, Cargill was legitimately protecting attorney work product in the hands of its then consulting expert, Dr. Ginn.

In any case, Cargill argues, there is no prejudice to Plaintiff from the later production of the documents as Oklahoma had all the information other than the work product information collected by counsel: (1) Cargill produced 5,547 pages of the documents Dr. Ginn held in his consulting role the week after the Court's July 20, 2009 Order and an additional 42 pages four weeks later; (2) Plaintiff deposed Dr. Ginn for a second time on August 7, 2009; (3) Plaintiff had access to the information in the two documents from the Oklahoma Department of Agriculture, Food and Forestry ("ODAFF") for all of the Oklahoma contract poultry growers in the IRW including the number of houses; capacity of houses; number of flocks per year; soil test phosphorus levels on growers' fields; records of growers' litter application; and whether the growers stored, sold, or gave their litter away (which Oklahoma produced in its initial disclosures in June 2006) - the same types of information contained in the Cargill work product documents at issue here; (4) Cargill produced all their contract growers files from throughout the IRW that it kept in the ordinary course of business, which included inspection checklists, waste application annual reports, and any Nutrient/Animal Waste Management Plans ("NMPs") on file, as well as contact information for its growers and driving directions to their locations; and (5) Oklahoma was allowed to supplement the summary judgment record with the documents without objection by Cargill.

Cargill also denies that it provided untruthful discovery responses and testimony.  It had no duty to discover and disclose adverse work product not in Cargill's files or given to a

testifying expert, and Maupin's Rule 30(b)(6) testimony that Cargill "do[es not] track the poultry litter on our contract producers' farms" was truthful as the work product had not been provided to him at the time of his testimony.

Finally, Cargill denies any prejudice to Plaintiff's depositions of Drs. Davis and Murphy because the deponents did not have access to the documents or rely on the information therein in developing their opinions.  Rather, they used the environmental data collected by Oklahoma to assess whether that data would tie a specific effect to litter application at a specific Cargill location.  And, in fact, Plaintiff's theory of causation is IRW-wide and not specific to any grower location.

Oklahoma responds that it has indeed been prejudiced by Cargill's failure to provide responsive information and its affirmative denial that it possessed the requested information as Oklahoma was foreclosed from discovery of all relevant and admissible facts in support of its claims[7] as well as from questioning Drs. Davis and Murphy about the data contained in the documents and the impact that data might have had on their opinions had the data been provided to them.

---

[7] Oklahoma specifically cites its inability to discover the amounts of litter generated and land applied in the IRW by independent poultry growers in Arkansas, which it claims Cargill possessed in the form of nutrient management plans in its ordinary course of business.  At the hearing, Cargill denied that it possessed the plans in its regular business course and argued that Oklahoma could have subpoenaed the plans directly from the growers.  Cargill also stated that it had produced Ex. H, which is a chart created by a Cargill employee setting forth the amount of litter produced on its growers' farms and delivered to land within the IRW.  Further, Cargill's attorneys took the names and addresses of its growers from Ex. E and interviewed all the growers for the information that is the Grower Summary.  Oklahoma could have done the same.

## I.  APPLICABLE LAW

As noted above, Oklahoma bases its request for sanctions under Rule 37(c) on Cargill's

alleged violations of

> (1) Rule 16(f) for failing timely to produce the Grower Summary and
> Applications Chart;
> (2) Rule 26(e) for misstatements of fact in its interrogatory responses and Rule
> 30(b)(6) deposition testimony; and
> (3) Rule 26(g) for certifying that Cargill's interrogatory responses were correct
> even though a reasonable inquiry (i.e., reviewing the Grower Summary and
> Applications Chart) would have revealed that they obviously were not.

Oklahoma contends that, in light of the Growers' Summary and Applications Chart,  Cargill's

statement in its motion for summary judgment that it "do[es] not generally know whether their

individual contract growers in the IRW land-apply, sell, trade, or otherwise make use of the

poultry litter generated by the Cargill Defendants' turkeys but owned by the growers" further

evidences its bad faith.  (Dkt. #2200 at 5).

As Cargill's defense to the alleged violations of Rule 16(f) and Rule 26(e) and (g) is that

the Grower Summary and Applications Chart were attorney work product containing information

gathered by the attorneys from the "public library," and not Cargill's "library" of information,

the Court first addresses what constitutes attorney work product and, if the two documents are

protected by the work product doctrine, whether Cargill was required to disclose the "facts"

contained in the documents which were requested in the interrogatories and at the Rule 30(b)(6)

deposition of Maupin.

### A.    Sources of the Work Product Doctrine

The work product doctrine originated in the seminal United States Supreme Court case,

*Hickman v. Taylor*, 329 U.S. 495 (1947).   In *Hickman*, the Supreme Court held that written

materials prepared by an attorney and the attorney's mental impressions formed in the course of

the attorney's legal duties for a client were protected from disclosure as the attorney's "work

product," absent undue prejudice or hardship to the party seeking discovery:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from
> unnecessary intrusion by opposing parties and their counsel. Proper preparation of
> a client's case demands that he assemble information, sift what he considers to be
> the relevant from the irrelevant facts, prepare his legal theories and plan his
> strategy without undue and needless interference. That is the historical and the
> necessary way in which lawyers act within the framework of our system of
> jurisprudence to promote justice and to protect their clients' interests. This work is
> reflected, of course, in interviews, statements, memoranda, correspondence,
> briefs, mental impressions, personal beliefs, and countless other tangible and
> intangible ways-aptly though roughly termed . . . as the 'Work product of the
> lawyer.' Were such materials open to opposing counsel on mere demand, much of
> what is now put down in writing would remain unwritten. An attorney's thoughts,
> heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp
> practices would inevitably develop in the giving of legal advice and in the
> preparation of cases for trial. The effect on the legal profession would be
> demoralizing. And the interests of the clients and the cause of justice would be
> poorly served.

*Id*. at 510-11.  *Hickman* implicitly recognized two levels of protection for an attorney's trial

preparation materials: the heightened level of protection going to the attorney's mental

impressions; the factual work product discoverable if the opposing party establishes necessity

and inability to otherwise obtain the information.  *Id*. at 512.

In the wake of inconsistent lower court interpretations of *Hickman*, the Supreme Court

adopted Rule 26(b)(3) to the Federal Rules of Civil Procedure in 1970, thereby codifying the

work product doctrine. Fed.R.Civ.P. 26(b)(3)(Amended March 30, 1970, effective July 1, 1970).

The word product doctrine is expressed in the current Rule 26(b)(3) as follows:

> (3) Trial Preparation: Materials.
> (A) Documents and Tangible Things. Ordinarily, a party may not discover
> documents and tangible things that are prepared in anticipation of litigation or for
> trial by or for another party or its representative (including the other party's

11

attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule
26(b)(4), those materials may be discovered if:
      (i) they are otherwise discoverable under Rule 26(b)(1); and
      (ii) the party shows that it has substantial need for the materials to
      prepare its case and cannot, without undue hardship, obtain their
      substantial equivalent by other means.
(B) Protection Against Disclosure. If the court orders discovery of those
materials, it must protect against disclosure of the mental impressions,
conclusions, opinions, or legal theories of a party's attorney or other
representative concerning the litigation.

Fed.R.Civ.P. 26(b)(3)(Amended April 30, 2007, effective December 1, 2007).  Accordingly, a

party seeking work product immunity under Rule 26(b)(3) must establish that the materials are

(1) "documents and tangible things;"[8] (2) "prepared in anticipation of litigation or for trial;" (3)

"by or for another party or by or for that other party's representative." *Feldman v. Pioneer*

*Petroleum, Inc*.  87 F.R.D. 86, 88 (W.D.Okla. 1980) (quoting 8 Charles Alan Wright & Arthur

R. Miller, Federal Practice and Procedure § 2024 (3d ed. 1998) (hereafter, "Wright & Miller")).

Rule 26(b)(3) also incorporates the two-tier protection of work product implicit in *Hickman*.

The discovering party may overcome work product protection of "documents and tangible

things" if it establishes a "substantial need" for the materials and an inability "without undue

hardship [to] obtain their substantial equivalent of the materials by other means."  Fed.R.Civ.P.

26(b)(3).  However, the Rule instructs that "the mental impressions, conclusions, opinions, or

---

[8] Rule 26(b)(3) recognizes only "documents and tangible things"; "intangible things" such as oral
communications, thoughts and recollections of the attorney are not addressed.  Thus, courts look to
*Hickman* to protect "intangible things" as work product.  *See, e.g., In re Cendant Corp. Sec. Lit*ig., 343
F.3d 658, 663 (3d Cir. 2003)(quoting *Hickman,* 329 U.S. at 511 ("This work is reflected . . . in interviews,
statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other
tangible and *intangible* ways - aptly though roughly termed . . . 'work product of the lawyer.'")(emphasis
added)). Federal Rules of Evidence Rule 502(g)(2), however, specifically includes intangible work
product. ("'work product protection' means the protection that applicable law provides for tangible
material (or its intangible equivalent) prepared in anticipation of litigation or for trial").

legal theories" of the attorney require heightened or special protection.  *Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 439 (D. Kan. 1987) ("This doctrine provide[s] an almost absolute protection for an attorney's mental impressions and conclusions.").

The Restatement (Third) of the Law Governing Lawyers[9] more explicitly defines work product[10]; including the "intangible equivalent" of "tangible material" from *Hickman* that is absent in Rule 26(b)(3): "Work product consists of tangible material or its intangible equivalent in unwritten or oral form, other than underlying facts, prepared by a lawyer for litigation then in progress or in reasonable anticipation of future litigation."  Restatement (Third) of the Law Governing Lawyers, §87 (2000) (hereafter, "Restatement").

> Tangible materials include documents, photographs, diagrams, sketches, questionnaires and surveys, financial and economic analyses, hand-written notes, and material in electronic and other technologically advanced forms, such as

---

[9]  The Oklahoma Supreme Court describes the purpose and importance of the Restatements as follows:
> "... The restatements 'provide lawyers and judges with carefully formulated descriptions of the [common] law and traditionally have served as authoritative guides for both legal briefs and judicial opinions.' " The ALI restatements are scholarly "codifications of American common law in various substantive law areas, based upon the decisions of the courts of last resort of the states." As one legal commentator noted, "Because of the reputation enjoyed by the ALI among judges and practitioners, and because restatement 'black letter' rules are accompanied by thorough research, they are often used and cited. In this fashion, an ALI restatement of a rule can confirm that it is accepted by all or nearly all of the states. When such a degree of acceptance does not exist, the restatement makes that clear as well." According to Chief Justice Wilkins (of the Massachusetts Supreme Judicial Court), "The American Law Institute has been a major force in the sound development of American law. Its monumental first Restatements, pronouncing on the fundamental principles of the common law, have greatly influenced the advancement and unification of legal principles in this country. Revisions of the initial Restatements have permitted the Institute to reassess stated principles and to recognize developing concepts."

*Gomes v. Hameed,*  184 P.3d 479, 492 n. 3 (Okla. 2008)(Opala, J. dissenting) (citations omitted).

[10]  The scope of the Restatement, however, is limited to work product immunity as it applies to lawyers and does not include that applied to a party's or a party's representative's litigation preparation.

stenographic, mechanical, or electronic recordings or transmissions, computer data bases, tapes, and printouts. Intangible work product is equivalent work product in unwritten, oral or remembered form. For example, intangible work product can come into question by a discovery request for a lawyer's recollections derived from oral communications.

*Id.  See In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980) (defining work product as "the tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions");  *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 1, 4 (D.D.C. 2004) ("The federal courts also protect work product even if it has not been memorialized in a document. Questions of a witness that would disclose counsel's mental impressions, conclusions, opinions, or legal theories may be interdicted to protect 'intangible work product.'").

The Restatement labels the two types of work product identified implicitly in *Hickman* and in Rule 26(b)(3) as  "opinion work product" and "ordinary work product."  Restatement, *supra*, at § 87. ("Opinion work product consists of the opinions or mental impressions of a lawyer; all other work product is ordinary work product.").  Examples of opinion work product are memoranda analyzing law or fact, trial strategy, strengths and weaknesses of a case, legal theory and the application of the law to the facts (but not bare facts or legal theory alone); selections or compilations of documents[11] or data which reveal counsel's thought processes; and

---

[11]  The general rule is that third-party documents are not protected by the work product doctrine. However, some courts treat compilations or distillations of documents as opinion work product, even if they are composed of non-work product materials. *See Sporck v. Peil*, 759 F.2d 312, 315-317 (3d Cir. 1985). (Selection process can create opinion work product even though the documents themselves do not qualify for work product protection.)  Other courts find the "selection and compilation" exception to be a narrow one, requiring "the party asserting the privilege [to] show 'a real, rather than speculative, concern'

attorney notes of witness interviews.  Ordinary work product is generally defined as materials

generated by attorneys that are not opinion work product; *e.g.*, witness statements, investigative

reports, photographs, diagrams, and charts prepared in anticipation of litigation or for trial

preparation.

The Restatement also clarifies the different standards to be met to overcome the

protection afforded ordinary work product versus opinion work product.  A party seeking

ordinary work product must establish a "substantial need for the material in order to prepare for

trial" and an inability "without undue hardship to obtain the substantial equivalent of the

material by other means." Restatement, *supra* at §§ 88-89.  However, a party may overcome

"opinion work product" protection only when "extraordinary circumstances justify disclosure."

[12] *Id.*

---

that counsel's thought processes 'in relation to pending or anticipated litigation' will be exposed through disclosure of the compiled documents." *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) (citation omitted); *see Raytheon Aircraft Co. v. U.S. Army Corps of Eng'rs*, 183 F. Supp. 2d 1280, 1290-91 (D. Kan. 2001) (Work product protection did not apply to disclosure of list of publicly available documents selected by counsel that did not reveal counsel's mental process.); *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, 164 F.R.D. 250, 252 (D. Kan. 1996) (Collecting and organizing discoverable documents in a notebook does not make the notebook protected work product.).


[12]   The Reporter's Note to § 89, Comment b identifies three standards applied by courts to opinion work product: absolute protection, balancing, and strict protection. Absolute protection provides a complete bar to discovery. *See, e.g.*, *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir.1974), *cert. denied*, 420 U.S. 997 (1975).  According to Comment b, the balancing approach is applied "on a case-by-case basis to weigh such things as the systemic interests in liberal discovery against the needs for privacy of lawyers and their representatives." *See, e.g., Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir.1970), *aff'd by equally divided court*, 400 U.S. 348  (1971).  And finally:

> [a] strict protection standard requires a greater showing for discovery of opinion work product than ordinary work product, yet does not absolutely bar discovery of opinion materials. The standard allows exceptions for discovery of materials relating to future crime or fraud and for cases in which the attorney's mental processes are 'at issue.' In all other instances, a strict protection standard requires an extraordinary showing of

Finally, pertinent to the present dispute, the Restatement expressly excepts "underlying facts" from work product protection.  "Work product consists of tangible material or its intangible equivalent in unwritten or oral form, *other than underlying facts*, prepared by a lawyer for litigation then in progress or in reasonable anticipation of future litigation."  *Id*. at §87(1) (emphasis added.).

## B.    Work product does not include underlying facts

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).  Unlike the attorney-client privilege which protects the confidentiality of communications between attorney and client, thereby encouraging open dialogue, the work product doctrine "is an intensely practical [doctrine], grounded in the realities of the litigation in our adversary system." *Id.*;  *In re Qwest Communications Int'l Inc.*,  450 F.3d 1179, 1186 (10th Cir. 2006).  As such, the doctrine has been shaped by the opposing forces of "openness and secrecy" endemic to pre-trial discovery under the Federal Rules of Civil Procedure:

---

necessity and hardship to obtain discovery.
Jeff A. Anderson, et al., *The Work Product Doctrine*,  68 Cornell L. Rev. 760, 828 -829 (1983); *see, e.g., Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir. 1992) ("We agree with the several courts and commentators that have concluded that opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling."); *In re Sealed Case*, 676 F.2d 793, 810 (D.C. Cir.1982) ("[A] party seeking discovery [of opinion work product] must show extraordinary justification.").  The Supreme Court declined to decide the degree of protection other than to suggest it was at least as great as the strict protection standard provides. *Upjohn Co. v. United States*, 449 U.S. 383, 401-402 (1981). ("While we are not prepared at this juncture to say that such material is always protected by the work-product rule, we think a far stronger showing of necessity and unavailability by other means than was made by the Government" is required. (Referring to the standard for ordinary work product protection))

16

> [U]nder Federal Rule 26(b), the identity of witnesses must be disclosed even if ascertaining their identity has been burdensome or involved confidential consultations with a client. Similarly, under Rule 26(b) statements given by a party to an opposing lawyer are subject to discovery, even though such a statement necessarily reflects the lawyer's thought process in some degree. So also are the opinions of an expert who is expected to testify at trial. A nonparty witness's statement must be produced upon demand by that witness. A party's documents and other records are generally discoverable even if they have been reviewed by counsel. On the other hand, the identity of an expert consulted but who will not testify is protected against discovery, even if that expert's opinion is highly material. So also, the classification systems employed by a lawyer in reviewing a client's documents are not subject to discovery.

Restatement, *supra,* §87, cmt (b). Accordingly, Rule 26(b)(1) defines a broad scope of discovery ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ."),[13] which combined with the other civil discovery rules advances the discovery of facts and the formulation, clarification and narrowing of issues, while still protecting attorney mental impressions, conclusions or opinions. Anderson, *supra*, n.12 at 789.

The work-product doctrine strikes a balance between the benefits of an adversary system and liberal discovery rules. *Anderson v. Hale*, 202 F.R.D. 548 (N.D.Ill. 2001).

> On the one hand, liberal discovery rules provide parties with the fullest possible knowledge of the operative facts of the case before trial to reduce surprise and ensure that cases are decided on the merits. On the other hand, to arrive at the truth, the adversary system pits attorneys against each other and charges them with gathering information, sifting through it, and developing

---

[13] Rule 26(b)(1) provides a broad scope of discovery:
Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).
Fed.R.Civ.P. 26(b)(1)

strategy.

*Id.* at 553-554 (citations omitted).  So it is not surprising that while the work product doctrine shields the documents and things prepared by an attorney or party representative, it does not protect the underlying facts contained in the documents from discovery.  *Resolution Trust Corp. v. Dabney*  73 F.3d 262, 266 (10th Cir. 1995)("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product.");  *Marcin Eng'g, LLC. v. Founders at Grizzly Ranch, LLC.*, 219 F.R.D. 516, 525 (D. Colo. 2003) ("[The work-product doctrine] does not apply to facts underlying or contained in such documents [prepared in anticipation of litigation]."); *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003) ("However, because the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or fact contained within the work product. Only when a party seeking discovery attempts to ascertain facts, which inherently reveal the attorney's mental impression, does the work product protection extend to the underlying facts." (citations and quoting references omitted)); *In re Theragenics Corp. Sec. Litig.,* 205 F.R.D 631, 634 (N.D. Ga. 2002) ("Numerous courts since Hickman v. Taylor . . . have recognized that names and addresses of witnesses interviewed by counsel who have knowledge of the facts alleged in the complaint are not protected from disclosures."); *Guardsmark, Inc. v. Blue Cross & Blue Shield*, 206 F.R.D. 202, 207 (W.D. Tenn. 2002) ("[T]he "work product" doctrine does not protect facts concerning the creation of work product or facts contained within the work product."); *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 303 (D. Utah 2002) ("Because the work product doctrine

18

is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts within the product.").

> This is true even if those facts are attained due to the efforts of the attorney.

> The courts [have] consistently held that the work product concept [furnishes] no shield against discovery, by interrogatories or by deposition, *of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents*, even though the documents themselves may not be subject to discovery.

Wright & Miller, *supra*, §2023  (emphasis added); *see also Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 121-22 (D.N.J. 2002) (Information in pricing spreadsheets gathered at attorney's request was not protected by work product doctrine.); *Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.,* 129 F.R.D. 515, 518 (N.D. Ill. 1990) ("[T]he work product doctrine does not protect discovery of the underlying facts of a particular dispute, even if a deponent's response to a particular factual question is based upon information provided by counsel."); *Feldman v. Pioneer Petroleum, Inc.*, 87 F.R.D. 86, 89 (W.D.Okla. 1980) (citing above); *Casson Const. Co., Inc. v. Armco Steel Corp.*, 91 F.R.D. 376, 384 -385 (D.Kan. 1980) (same).

## C.    Discovery of facts in work product by interrogatory or deposition

Consequently, whether the information in the protected documents is known to the party or is known only to the party's counsel, "it does not contravene the work product rule for an attorney to question an opposing party as to the information contained in protected documents."[14]

---

[14]    It is important to distinguish between facts learned by a lawyer, a memorandum or document containing those facts prepared by the lawyer, and the lawyer's mental impressions of the facts. The facts are discoverable if relevant. The document prepared by the lawyer stating the facts is not discoverable absent a showing required by Federal Rule of Civil Procedure 26(b)(3). Mental impressions of the lawyer regarding the facts enjoy nearly absolute immunity.

*Koch Materials,* 208 F.R.D. at 122.  The rationale behind this is "where an attorney is 'incisive enough to recognize and question' an opposing party on facts contained in protected documents, "[t]he fear that [opposing counsel's] work product would be revealed would thus become groundless."  *Id.* (quoting *Sporck v. Peil,* 759 F.2d 312, 318 (3d Cir.1985)).  "The [party] may choose in what form it produces relevant factual information. But, it cannot withhold relevant information on the basis of attorney work product." *Id.*; *In re Bank One Sec. Litig.,* 209 F.R.D. 418, 423 (N.D. Ill. 2002) ("Factual information may not be withheld under the work-product doctrine, but must be produced through interrogatories, depositions or other discovery.").

The general method of discovery for this factual information is through interrogatories to parties under Rule 33.  The scope of discovery by interrogatory is as broad as that under Rule 26(b). *See* Fed.R.Civ.P. 33(a)(2) and 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .").  Further, a corporation response to interrogatories is not limited to information maintained in the ordinary course of business.  The corporation "must furnish the information *available* to the party."  Fed.R.Civ.P. 33(b)(1)(B) (emphasis added).  Thus, although a party is protected from producing work product documents through requests for production, the facts contained in that work product can be discovered through the use of interrogatories.  *ERA Franchise Sys., Inc. v. Northern Ins. Co. of New York,* 183 F.R.D. 276, 280 (D.Kan. 1998) ("Unless an interrogatory specifically asks for the content of a document protectable as work product, it is inappropriate to raise an objection of work product against an interrogatory, which includes no request for production of

_____

*Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.* 137 F.R.D. 267, 279 n. 1 (D.Neb. 1989).

documents.").

Neither can a party refuse to respond to an interrogatory requesting factual information because that information is known only to its attorney.

> A party is charged with knowledge of what its agents know, or what is in records available to it, or even, for purposes of Rule 33, information others have given it on which it intends to rely in its suit. A party must disclose facts in its attorney's possession even though the facts have not been transmitted to the party.

Wright & Miller, *supra*, §2177; *see also Hickman*, 329 U.S. at 504 ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."); *Essex Builders Group, Inc. v. Amerisure Ins. Co.*  230 F.R.D. 682, 685 (M.D.Fla.2005) (same); *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684  (D.Kan.1991) (same); *Niasmith v. Prof'l Golfers Assoc.*, 85 F.R.D. 552, 565 (N.D.Ga. 1979) ("It is clear that a party served with interrogatories has an obligation to reveal information held by his attorneys."); *Miller v. Doctor's Gen. Hosp'l*, 76 F.R.D. 136, 140 (W.D.Okla. 1977) ("The answers to interrogatories must be responsive, full, complete and unevasive. The answering party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control."); *Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 369-370 (D.Utah 1968) ("A party cannot refuse to answer interrogatories merely on the ground that the information sought is solely within the knowledge of his attorney.").[15]

---

[15]Attorneys often refuse to disclose during discovery those facts that they have acquired through their investigative efforts and assert, as the basis for their refusal, the protections of the work product doctrine. Where such facts are concerned, as opposed to the documents containing them or the impressions and conclusions drawn from them, they must be disclosed to the opposing party in response to a proper request for discovery. Otherwise, discovery would be a meaningless tool and we would be back to the era before the advent of the Federal Rules of Civil Procedure when "mutual knowledge of all the relevant facts

Indeed, Rule 33 expressly permits contention interrogatories that delve into opinion work product "because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed.R.Civ.P. 33(a)(2). Contention interrogatories, however, serve "to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D.Kan. 2000). The Advisory Committee Notes for the 1970 amendment to the Rule explains:

> Efforts to draw sharp lines between facts and opinions have invariably been unsuccessful, and the clear trend of the cases is to permit "factual" opinions. As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery. On the other hand . . . interrogatories may not extend to issues of "pure law," i.e., legal issues unrelated to the facts of the case.

Fed.R.Civ.P. 33(a)(2) advisory comm. n. (b).

Similarly, factual information contained in work product can be discovered through deposition of the party, though interrogatories are the generally preferred route due to the inherent risk of the deponent inadvertently disclosing protected work product; *i.e.*, the mental impressions of the attorney. Again, this discovery is permitted through deposition of the party even if questions seek relevant facts gathered by the party's attorney.

> The first issue, which seems to bother lawyers more than it should, relates to whether or not the work product doctrine precludes the discovery of relevant facts gathered by the lawyer during his or her efforts on the client's behalf. For example, during the interview of witness A, the lawyer learns of the existence of witness B. Can the lawyer then, in response to an interrogatory requesting the names and addresses of all known witnesses, decline to reveal the existence of witness B based upon the protections of the work product doctrine? The answer to this question was clearly provided by the Supreme Court in *Hickman*. The Court

---

gathered by both parties" was far from the guiding principle of the federal litigation process.

Michael E. Wolfson, *Opinion Work Product-Solving the Dilemma of Compelled Disclosure*, 64 Neb.L.Rev. 248, 256-257 (1985) (footnotes omitted).

> pointed out that where relevant and non-privileged *facts* were contained in an
> attorney's file, and where discovery was essential to preparation of the opposing
> party's case, such facts were clearly discoverable or the "liberal ideals of the
> deposition-discovery portions of the Federal Rules of Civil Procedure would be
> stripped of much of their meaning."
>      . . . [W]hile witness A's written statement may be protected from
> discovery as ordinary work product and an interview summary prepared by the
> lawyer protected from discovery as opinion work product, the basic facts
> provided by witness A, as long as they are relevant and not protected from
> disclosure by another evidentiary privilege, are discoverable by the opposing
> party. Where a document may be insulated from a Request for Production, the
> facts contained therein must be disclosed in response to a properly worded
> interrogatory or deposition question.

*Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 280 (D. Neb. 1989)

(original emphasis).

Depositions taken pursuant to Federal Rule of Civil Procedure 30(b)(6) present unique

problems regarding privilege issues.  Rule 30(b)(6) provides:

> In its notice or subpoena, a party may name as the deponent a public or private
> corporation, a partnership, an association, a governmental agency, or other entity
> and must describe with reasonable particularity the matters for examination. The
> named organization must then designate one or more officers, directors, or
> managing agents, or designate other persons who consent to testify on its behalf;
> and it may set out the matters on which each person designated will testify. A
> subpoena must advise a nonparty organization of its duty to make this
> designation. The persons designated must testify about information known or
> reasonably available to the organization. This paragraph (6) does not preclude a
> deposition by any other procedure allowed by these rules.

Fed.R.Civ.P. 30(b)(6).  Therefore, in response to a Rule 30(b)(6) notice, a corporation must

make a good faith effort to designate representatives having knowledge of the matters listed in

the notice and to prepare those representatives so that they can answer fully, completely, and not

evasively. "The rules require that the corporation select an officer or employee to gather and

obtain from books, records, other officers or employees, or other sources, the information

necessary to answer the interrogatories and sign them on behalf of the corporation not himself."

*Casson Constr.*, 91 F.R.D. at 382.  This may require that a Rule 30(b)(6) deponent testify

regarding facts which the witness has learned from counsel or from his/her review of work

product.  Thus, particular care must be taken to protect against the indirect disclosure of opinion

work product.

The risk of indirect disclosure is particularly heightened in answering deposition

questions regarding facts underlying the party's contentions and affirmative defenses.

*Compare Protective Nat'l*, 137 F.R.D. at 279-281 (Attorney work product doctrine does not

protect "facts [30(b)(6) deponent] was aware of which supported a particular allegation in the

answer and counterclaim.") *with American Nat'l Red Cross v. Travelers Indemnity Co. of R.I.*,

896 F.Supp. 8, 14 (D.D.C.1995) (facts supporting affirmative defenses protected by work

product doctrine).  In decisions following *Protective Nat'l*, the courts find no basis for

distinguishing contention questions at a Rule 30(b)(6) deposition from contention

interrogatories.  *See, e.g., U.S.E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 434

(D.Neb.2006) ("This court cannot discern how the same factual information can be protected . . .

as attorney work product when elicited in oral deposition questions, but fully discoverable within

the context of a written interrogatory."); *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218

F.R.D. 29, 34 (D.Conn.2003) ("As courts have held contention interrogatories seeking the

factual bases for allegations would not encroach on protected information, . . . it is not apparent

how the same information would be otherwise unavailable through questions posed to a

deponent in the course of a deposition.").  On the other side of the argument, the court in

*American Nat'l Red Cross* emphasized the need to protect litigation strategy.  *American Nat'l*

*Red Cross*, 896 F.Supp. at 13 ("When ARC's counsel requested of Yessman a description of the

'facts and documents which Travelers contends support' each affirmative defense, ARC's counsel was asking questions that intruded upon protected work product; in effect, what ARC was requesting was insight into Travelers' defense plan."); *see also Securities and Exchange Commission v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y.1992) (Defendant's notice of Rule 30(b)(6) deposition "constituted an impermissible attempt to inquire into the mental processes and strategies of the SEC [in that defendant's notice] was intended to ascertain how the SEC intends to marshal the facts, documents, and testimony in its possession....").

   In deciding whether to allow contention questions at a Rule 30(b)(6) deposition, one court offered a middle ground by considering two primary issues:

> (1) whether the . . . work product doctrine prevents the witness from answering questions regarding facts supporting the parties' contentions or affirmative defenses, and
> (2) if not, whether a Rule 30(b)(6) deposition is an overly burdensome method of acquiring this information, or whether less burdensome methods exist.

*Caesars Entm't, Inc.*, 237 F.R.D. at 433.  In this way, if the work product doctrine does not prevent the witness from responding, the Court may consider if contention interrogatories would be a more appropriate and less burdensome alternative.  For although there is nothing in the Federal discovery rules that distinguishes depositions from interrogatories in this regard, contention questions at depositions, particularly with Rule 30(b)(6) witnesses, may, in practice, cause more discovery disputes than interrogatories asking the identical question.[16]

---

[16] However, for whatever guidance it may provide, the *Protective Nat'l. Ins. Co.* court offered the following: (1) the deponent must recite the facts upon which it relied to support its allegations without disclosing purely legal theory, even if those facts have been provided to it by its counsel;
and (2) the discovering party's counsel should avoid asking questions which tend to elicit deponent's "counsel's advice, [deponent's] counsel's view as to the significance or lack thereof of particular facts, or any other matter that reveals [deponent's] counsel's mental impressions concerning this case." *Protective Nat'l. Ins. Co.*, 137 F.R.D. at 283.

## II.  ANALYSIS

**A.      Whether Cargill violated Rule 16(f) by failing timely to produce the Grower Summary and Applications Chart**

Oklahoma contends that the Grower Summary and Applications Chart are simply compilations of facts, not work product, and thus should have been timely produced pursuant to Rule 16(f).[17]  Cargill sees the documents as a "unique subset of information that counsel chose to collect from third party interviews, organized in charts created by counsel."  (Dkt. #2598 at 3).  Thus, "they are pure attorney work product under the law of this Court," citing this Court's decision in *Lamer v. Williams Communications, LLC*, 2007 WL 445511 (Feb. 6, 2007).  *Id.*

In *Lamer,* a Title VII sex discrimination and retaliation case, Plaintiff's counsel interviewed several witnesses after the commencement of the lawsuit and, in accordance with Local Rule 26.4, did not list these witness statements on a privilege log.  Defense counsel sought production of  a privilege log of these statements to determine whether they were actually witness statements that would not be afforded work product protection, *i.e.*, affidavits that simply recited the witnesses' statements to the attorney.  *See Schipp v. Gen'l Motors Corp.*, 457 F.Supp.2d 917, 924 (E.D.Ark. 2006) (holding that "any verbatim non-party witness statements are neither privileged nor work product and must be produced.") (citation omitted).

The Court denied the motion holding that Local Rule 26.4 did not require a log of

---

[17] Rule 16 (f) Sanctions.
    (1) In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
        (A) fails to appear at a scheduling or other pretrial conference;
        (B) is substantially unprepared to participate--or does not participate in good faith--in the conference; or
        (C) fails to obey a scheduling or other pretrial order.
Fed.R.Civ.P. 16(f).

privileged documents created after the lawsuit commenced and listing the statements on a privilege log would in itself disclose work product, *i.e.*, the attorney's mental impressions of which witnesses to interview.  Given that the witnesses may have been current employees of Defendant and the very nature of sex discrimination and retaliation cases, disclosure of those interviewed by counsel would be an intrusion into her thoughts and impressions.

Cargill argues that its attorneys, like the attorney who interviewed witnesses in *Lamer*, interviewed its Arkansas contract growers in the IRW for the information contained in the Grower Summary and upon which the Applications Chart was developed, because the information contained therein was not kept by Cargill in the ordinary course of business and was needed to develop its counsel's litigation strategy.  Cargill contends that the information in the documents constitute opinion work product because the attorneys' selection of growers to interview and the data gathered "necessarily reveal the thought processes and mental impressions of counsel."  (Tr. 62).

For the purpose of determining whether Cargill violated Rule 16(f) by failing timely to produce the Grower Summary and Applications Chart, the Court need not decide if the documents  are ordinary or opinion work product, only that they are work product.  They are, as (1) they are documents (2) prepared for trial (3) by Cargill's attorneys.  Fed.R.Civ.P. 26(b)(3). Accordingly, the Court finds that Cargill did not violate Rule 16(f) in failing to produce the documents, as they were shielded from discovery as work product.

**B.      Whether Cargill violated Rule 26(e) and (g) in its interrogatory responses and Rule 26(e) in Maupin's deposition response**

Oklahoma contends that Cargill violated Rule 26(e) and (g) in its interrogatory responses

and violated Rule 26(e) in Maupin's response at his Rule 30(b)(6) deposition.  Rules 26(e) and

(g) provide in pertinent part:

> (e) Supplementing Disclosures and Responses.
> (1) In General. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; . . .

> (g) Signing Disclosures and Discovery Requests, Responses, and Objections.
>> (1) Signature Required; Effect of Signature. Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>>> (A) with respect to a disclosure, it is complete and correct as of the time it is made; and . . . .

Fed.R.Civ.P. 26(e)(1)(A) and (g)(1)(A).  Specifically, Oklahoma asserts Cargill violated Rule

26(e) in failing to supplement or correct its "incomplete or incorrect" responses to interrogatories

and Cargill's attorneys violated Rule 26(g) for certifying Cargill's responses.

As noted above, the interrogatory responses at issue are Cargill's response and

supplemental response to Interrogatory No. 6 which requested the following information:

> For poultry waste generated at your own poultry growing / feeding operations and/or poultry growing / feeding operations under contract with you in the Illinois River Watershed since 1980 that has not been transported out of the Illinois River Watershed, please state, broken down by year, how the poultry waste was disposed of (e.g., land application within the Illinois River Watershed, burning as fuel within the Illinois River Watershed, etc.) and the amount disposed of in each particular manner.

28

(Dkt. #2452, Exs. B and C). Although Cargill's counsel had the Grower Summary and Applications Chart which contained the amount of poultry waste annually generated at each of the Arkansas contract grower's farms in the IRW; whether, how much, and when poultry waste was land applied on or near each farm; and whether the contract growers sold all or some of the poultry waste, Cargill responded to Interrogatory 6 and the supplemental interrogatory that "CTP has no information regarding the amounts of litter used by its independent contract growers and directs Plaintiff to the contract growers themselves for this information." *Id*. Also at issue is Cargill's response to the March 17, 2009 Interrogatory No. 1 requesting that Cargill -

> identify each instance (including, where available, specific date, specific location, tonnage of waste applied, acreage upon which it was applied, and STP before application) in which poultry waste generated at your poultry feeding operations, or at poultry feeding operations under contract with you, has been land applied within the IRW as fertilizer, identifying all witnesses to the application and all documents evidencing it.

(Dkt. #2452, Ex. D). Cargill stated that it had "no additional information responsive to this Interrogatory beyond CTP's supplemental response to Plaintiff's September 13, 2007 Interrogatory 6," and referred Oklahoma to that supplemental response. *Id*.

 Cargill's responses to Interrogatory No. 6, its supplement, and the March 17, 2009 Interrogatory No. 1 were verified by H. Steve Willardsen ("Willardsen"), as President of CTP. *Id*. at 40. As in both Corporate Verifications, Willardsen also attested at his deposition that he did not prepare the interrogatory responses, did not have personal knowledge of certain matters and was informed that facts were assembled by CTP employees (Tim Alsup and Timothy Maupin) and Cargill's counsel. (Dkt. #2452, Ex. H at 137-44). The responses were also signed

29

by Cargill's attorneys as required by Rule 33.[18]

The exchange in Maupin's Rule 30(b)(6) deposition that Oklahoma claims violates Rule 26(e) is the following:

Q.      . . . My concern is what accountability or tracking of land application for Cargill contract growers is occurring in the IRW.
        MS. HILL:      Object to the form.
A.      *We don't track the poultry litter on our contract producers' farms.  That's part of their site-specific plan, and they're responsible for nutrient management and litter storage on the farms.*
Q.      Okay.  I've been given a notice that we've got to change tapes, so let's stop and do that.

(Dkt. # 2452, Ex. I at 230) (emphasis added).

Cargill argues that its responses were correct and not misleading because Cargill had no knowledge of the Grower Summary and Applications Chart.  The documents were attorney work product held by Cargill's attorneys and consulting expert Dr. Ginn and not shared with Cargill or its president, Willardsen, or Rule 30(b)(6) designee, Maupin.

The Court will first dispense with Maupin's deposition response as it finds no violation of Rule 26(e).  First, Maupin was not responding to a question.  Even assuming the question were "What accountability or tracking of land application for Cargill contract growers is occurring in the IRW?," Maupin's response is not a misstatement.  Based on the record before the Court, Cargill does not track the poultry litter on its contract growers' farms; such tracking is part of the growers' site-specific plan; and the growers are responsible for nutrient management and litter storage on the farms.  There is no follow-up to Maupin's response in the record and the Court finds no misrepresentation in the only response before it.

---

[18]  Rule 33(b)(5) requires the following: "The person who makes the answers must sign them, and the attorney who objects must sign any objections."

Not so for Cargill's responses to interrogatories.  Indisputably, Interrogatories 1 and 6 were appropriately requesting factual information that was relevant and non-privileged: *i.e.*, each instance in which poultry waste generated at poultry feeding operation under contract with Cargill (specific date, location, tonnage of waste applied, acreage upon which it was applied and STP before application) has been land applied in the IRW as fertilizer, identifying all witnesses to the application, as well as the amount of poultry litter and how it was disposed of.  Yet, Cargill responded - "CTP has no information regarding the amounts of litter used by its independent contract growers and directs Plaintiff to the contract growers themselves for this information" -

which Cargill's attorneys knew was incorrect.

The Court realizes that Cargill's counsel wrongly believed they had no obligation to share that factual information as it was protected by work product doctrine.  However, it then was Cargill's counsel's responsibility to specifically object to the interrogatories on that ground. "Rule 33(b) requires that an interrogatory must be answered 'to the extent' it is not objectionable."  *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 2008 WL 795815 at *6 (D.Colo. 2008).  Cargill's "general objections" do not remedy the deficiency of its and its counsels' responses.  *See, e.g., Doe v. Nat'l Hemophilia Found.*, 194 F.R.D. 516, 520 (D.Md. 2000) (Rule 33 "requires a party to specify its grounds for an objection to an interrogatory and to 'answer to the extent the interrogatory is not objectionable.'"); *Jackson v. Geometrica, Inc.*, 2006 WL 213860 at *1 (M.D.Fla. 2006)("General or blanket objections should be used only when they apply to every [discovery request at issue.]. Otherwise, '[s]pecific objections should be matched to specific' interrogatories or requests for production.") (citations omitted)

In sum, it is Cargill's position that its attorneys are not required to educate its representative(s) regarding any relevant, non-privileged facts contained in work product documents in responding to interrogatories.  However, the law does not support Cargill's position.  As discussed in Section I (B) above, "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Dabney*, 73 F.3d at 266.  Further,

> [t]he courts have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery.

*Feldman*, 87 F.R.D. at 89 (quoting Wright & Miller, *supra*, §2023); *see also Casson Const.*, 91 F.R.D. at 385.  And finally, "[a] party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney." *Hickman*, 329 U.S. at 504.  The Court thus finds that Cargill and its attorneys have violated Rule 26(e) and Rule 26(g) in the responses and certifications to Interrogatories 1 and 6.

## C.    Sanctions

For the above violations of Rule 26(e) and Rule 26(g), Oklahoma seeks sanctions under Rule 26(g)(3) and Rule 37(c)(1).  Rule 37(c)(1) provides the following sanctions for a party's failure to provide information as required by Rule 26(e):

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or

32

> instead of this sanction, the court, on motion and after giving an
> opportunity to be heard:
>> (A) may order payment of the reasonable expenses,
>> including attorney's fees, caused by the failure;
>> (B) may inform the jury of the party's failure; and
>> (C) may impose other appropriate sanctions,
>> including any of the orders listed in Rule
>> 37(b)(2)(A)(i)-(vi).[19]

Fed.R.Civ P. 37(c)(1).

Oklahoma contends that Cargill failed to correctly respond to Interrogatory #6 and

Interrogatory #1 and to correct its response to the subsequent supplement to Interrogatory # 6.

According to the Rule, unless Cargill can show the failure was substantially justified or

harmless, the Court (A) "may order payment of reasonable expenses, including attorney's fees,

caused by the failure;  (B) may inform the jury of the party's failure and (C) may impose other

appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed.R.Civ

P. 37(c)(1).  "For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified

where the non-moving party has a reasonable basis in law and fact, and where there exists a

genuine dispute concerning compliance." *Strozier v. U.S. Postal Serv.*, 2005 WL 2141709 at *4

(D.Colo. 2005). "Failure to comply with the mandate of the Rule is harmless when there is no

prejudice to the party entitled to the disclosure."  *Id*.

As noted above Cargill argues that its failure to disclose information in the Growers

Summary and/or Applications Chart is harmless because there is no prejudice to Plaintiff from

the later production of the documents as Oklahoma had all the information other than the work

---

[19]   The sanctions under Rule 37(b)(2)(A)(i)-(vi) are not applicable here because they require a
party's "[failure] to obey an order to provide or permit discovery, including an order under Rule 26(f), 35
or 37(a)."  Fed.R.Civ.P. 37(b)(2)(A).  The sanctionable conduct here involves the Cargill Defendants'
incomplete and incorrect responses to interrogatories and their failure to complete or correct them does
not involve any order of the Court.

product information collected by counsel: (1) Cargill produced 5,547 pages of the documents Dr.

Ginn held in his consulting role the week after the Court's July 20, 2009 Order and an additional

42 pages four weeks later; (2) Plaintiff deposed Dr. Ginn for a second time on August 7, 2009;

(3) Plaintiff had access to the information in the two documents from the ODAFF for all of the

Oklahoma contract poultry growers in the IRW including the number of houses; capacity of

houses, number of flocks per year; soil test phosphorus levels on growers' fields; records of

growers' litter application; and whether the growers stored, sold, or gave their litter away (which

Oklahoma produced in its initial disclosures in June 2006) - the same types of information

contained in the Cargill work product documents at issue here (Ex. H, Dkt. #2461); (4)

historical, detailed information all the Arkansas IRW growers, including their names, addresses

and name of operation (Ex. E, Dkt. #2461; (5) Cargill produced all their contract growers files

from throughout the IRW that it kept in the ordinary course of business, which included

inspection checklists, waste application annual reports and any NMPs on file, as well as contact

information for its growers and driving directions to their locations; and (5) Oklahoma was

allowed to supplement the summary judgment record with the documents without objection by

Cargill.

In determining whether there is prejudice, the Court looks to the following factors:

(1) the prejudice or surprise to the party against whom the testimony is offered;
(2) the ability of the party to cure the prejudice; (3) the extent to which
introducing such testimony would disrupt the trial; and (4) the moving party's bad
faith or willfulness.

*Id*. at *4. The Court agrees with Cargill that Oklahoma has suffered no real prejudice or surprise

in the late production of the information in the two documents.  Further, Oklahoma can present

the documents in rebuttal to any attempt by Cargill at the now ongoing trial to represent that its

34

contract growers did not land-apply litter in the IRW.  Finally, the Court finds no bad faith or willfulness on the part of Cargill.

However, that does not end the Court's inquiry into applicable sanctions.  Oklahoma also seeks sanctions under Rule 26(g)(3) for Cargill's counsel's violation of Rule 26(g):

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed.R.Civ.P. 26(g)(3).  The Court finds that Cargill's counsel[20] violated Rule 26(g) in signing the interrogatory objections at issue as they knew they had "information regarding the amounts of litter used by its independent contract growers," and evaded stating their objections to the interrogatories based on attorney work product because they wrongly assumed that the factual information requested was protected.  Thus, according to the rule, the Court "must impose an appropriate sanction on the signer[s]."  *Id*.

The following notes of the Advisory Committee on Rule 26 (Amended April 28, 1983, effective August 1, 1983) further militate in favor of sanctions under Rule 26(g):

> The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. The term "response" includes answers to interrogatories and to requests to admit as well as responses to production requests.

The notes further provide:

---

[20]   Although the Court may sanction Cargill, its counsel or both under Rule 26(g)(3), the Court concludes that the fault lies with counsel and not Cargill, as counsel represented that they did not disclose the Grower Summary and Applications Chart to Williardsen or to any other Cargill employee or officer.

> Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand . . . .

Fed.R.Civ.P. 26(g), advisory comm. n. (g) (1983 Amendment).  Although the Court does not believe Cargill's counsel were acting in bad faith, they clearly needed further research and reflection on the scope of the attorney work product privilege, and hopefully, now have it.  *See Fretz v. Keltner,* 109 F.R.D. 303, 310 (D.Kan.1985).  Counsel clearly knew that Cargill had not provided all the information available to it that was responsive to the interrogatories.

"The purpose of sanctions is not only to compensate innocent parties for the discovery abuses of opponents.  Its primary function is to deter the offending party - and, by that example, all other litigants - from violating the rules in the future."  *Thornton-Trump v. United States*, 12 Cl.Ct. 127, 132 (1987) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)).  Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Oklahoma's Motion for Sanctions Directed to the Cargill Defendants for Discovery Misconduct (Dkt. #2459) and awards Oklahoma its expenses, including reasonable attorney fees, incurred as a result of Cargill's counsel's incorrect and incomplete responses to the interrogatories; *e.g.*, expenses and fees incurred in supplementing the summary judgment motion as well as those incurred in seeking sanctions. Oklahoma is directed to file its brief and affidavit(s) supporting the fees and expenses incurred on or before December 4, 2009; the response and any reply briefs will be due in accordance with Local Rule 7.2.

IT IS SO ORDERED, this 4th day of November, 2009.

_____

Paul J. Cleary
United States Magistrate Judge