# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE OF OKLAHOMA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-329-GKF-SH |
| | ) | |
| TYSON FOODS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS
## AND BRIEF IN SUPPORT

Mark D. Hopson
Frank R. Volpe
Gordon D. Todd
Cody L. Reaves (*pro hac vice* forthcoming)
Peter A. Bruland (*pro hac vice* forthcoming)
Sidley Austin LLP
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
(202) 736-8711 (facsimile)
mhopson@sidley.com
fvolpe@sidley.com
gtodd@sidley.com
cody.reaves@sidley.com
pbruland@sidley.com

*Attorneys for Tyson Foods, Inc.,*
*Tyson Poultry, Inc., Tyson Chicken, Inc.,*
*and Cobb-Vantress, Inc.*

(additional counsel listed on inside cover)

October 26, 2023

A. Scott McDaniel, OBA #16460
McDaniel Acord, PLLC
9343 East 95th Court
Tulsa, OK  74133
(918) 382-9200

*Attorney for Tyson Foods, Inc., Tyson Poultry, Inc., Tyson Chicken, Inc., Cobb-Vantress, Inc., and Peterson Farms, Inc.*

Robert George, OBA #18562
George's, Inc.
402 W. Robinson Ave.
Springdale, AR  73764
(479) 927-7249

Gary V. Weeks
K.C. Dupps Tucker
The Law Group of Northwest
  Arkansas PLLC
1830 Shelby Lane
Fayetteville, AR 72704
(479) 316-3760

Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

Clinton Russell, OBA # 19209
Taylor, Foster, Mallett, Downs,
  Ramsey & Russell
400 West Fourth Street
Claremore, OK 74018
(918) 343-4100
crussell@soonerlaw.com

*Attorneys for George's, Inc. and George's Farms, Inc.*

John R. Elrod (admitted *pro hac vice*)
Vicki Bronson, OBA 20574
Conner & Winters, P.C.
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Simmons Foods, Inc.*

Robert P. Redemann, OBA #7454
William D. Perrine, OBA #11955
Perrine, Redemann, Berry,
  Taylor & Frette, PLLC
1800 S. Baltimore Ave., Suite 900
Tulsa, OK 74119
(918) 382-1400
(918) 382-1499 (facsimile)
rredemann@pmrlaw.net
wperrine@pmrlaw.net

Robert E. Sanders, MSB#6446
  (admitted *pro hac vice*)
Young Wells Williams P.A.
P.O. Box 6005
Ridgeland, MS   39158-6005
(601) 948-6100
(601) 355-6136 (facsimile)
rsanders@youngwells.com

*Attorneys for Cal-Maine Foods*

John H. Tucker, OBA 9110
Theresa N. Hill, OBA 19119
Rhodes Hieronymus Jones
   Tucker & Gable
Two W. 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK  74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com

Delmar R. Ehrich
   (admitted *pro hac vice*)
Bruce Jones (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN  55402-3901
(612) 766-7000
(612) 766-1600 (facsimile)
Delmar.ehrich@faegredrinker.com
Bruce.jones@faegredrinker.com

*Attorneys for Cargill, Inc. and Cargill
Turkey Production, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

REQUEST FOR ORAL ARGUMENT .......................................................vi

INTRODUCTION .................................................................................... 1

BACKGROUND ...................................................................................... 2

LEGAL STANDARD................................................................................ 4

ARGUMENT ........................................................................................... 4

    A.    Oklahoma's claims for injunctive relief are constitutionally moot on this record. ............................................................. 5

    B.    At a minimum, Oklahoma's claims for injunctive relief are prudentially moot. ..................................................... 12

    C.    Granting injunctive relief on this record would violate due process.... 13

CONCLUSION....................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Amoco Prod. Co. v. Vill. of Gambell,*
    480 U.S. 531 (1987) .......................................................................................... 12

*Arbaugh v. Y&H Corp.,*
    546 U.S. 500 (2006) ........................................................................................... 4

*Bd. of Cnty Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,*
    25 F.4th 1238 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023) ................... 16

*Bender v. Williamsport Area Sch. Dist.,*
    475 U.S. 534 (1986) ........................................................................................... 5

*Bldg. & Constr. Dep't v. Rockwell Int'l Corp.,*
    7 F.3d 1487 (10th Cir. 1993) .............................................................................. 12

*Church of Scientology of Cal. v. United States,*
    506 U.S. 9 (1992) ............................................................................................... 6

*Corbet v. Johnson,*
    6 F. Cas. 524 (C.C.D. Va. 1805) (No. 3218) ......................................................... 16

*Davis v. Colerain Twp.,*
    51 F.4th 164 (6th Cir. 2022) ................................................................................ 8

*DeLancy v. Caldwell,*
    741 F.2d 1246 (10th Cir. 1984) ........................................................................... 14

*Donahue v. Kan. Bd. of Educ.,*
    827 F. App'x 846 (10th Cir. 2020) ........................................................................ 7

*Est. of Schultz v. Brown,*
    846 F. App'x 689 (10th Cir. 2021) .................................................................... 5, 6

*FTC v. Merch. Servs. Direct, LLC,*
    No. 13-CV-0279-TOR, 2013 WL 4094394 (E.D. Wash. Aug. 13, 2013) ............... 11

*Harris v. Champion,*
    15 F.3d 1538 (10th Cir. 1994) ............................................................. 14, 15, 16, 17

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ........................................................................................... 6

*Hickman v. Subaru of Am., Inc.,*
    No. 1:21-CV-02100-NLH-AMD, 2022 WL 11021043 (D.N.J. Oct. 19,
    2022) ................................................................................................................... 12

*In re Hood,*
    135 F. App'x 709 (5th Cir. 2005) .................................................................... 14

*Horne v. Flores,*
    557 U.S. 433 (2009) ......................................................................................... 8

*Hu v. Holder,*
    579 F.3d 155 (2d Cir. 2009) ........................................................................... 11

*Huddleston v. Dwyer,*
    322 U.S. 232 (1944) ......................................................................................... 15

*State ex rel. Hunter v. Johnson & Johnson,*
    2021 OK 54, 499 P.3d 719 .............................................................................. 15

*Hurtado v. California,*
    110 U.S. 516 (1884) ......................................................................................... 13

*Ind v. Colo. Dep't of Corr.,*
    801 F.3d 1209 (10th Cir. 2015) ...................................................................... 4

*Jackson v. Los Lunas Cmty. Program,*
    880 F.3d 1176 (10th Cir. 2018) ...................................................................... 8

*Johnson v. Rogers,*
    917 F.2d 1283 (10th Cir. 1990) ................................................................ 14, 15

*Jones v. Shell,*
    572 F.2d 1278 (8th Cir. 1978) ....................................................................... 14

*McClellan v. Young,*
    421 F.2d 690 (6th Cir. 1970) ......................................................................... 14

*McClendon v. City of Albuquerque,*
    100 F.3d 863 (10th Cir. 1996) ....................................................................... 7

*Morrissey v. Brewer,*
    408 U.S. 471 (1972) ......................................................................................... 14

*Providence Rubber Co. v. Goodyear,*
    76 U.S. (9 Wall.) 805 (1869) .......................................................................... 16

*Rio Grande Found. v. Oliver*,
57 F.4th 1147 (10th Cir. 2023)..................................................................5

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
601 F.3d 1096 (10th Cir. 2010) ............................................................5, 6

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ..............................................................................13

*Smith v. Becerra*,
44 F.4th 1238 (10th Cir. 2022)........................................................4, 6, 11

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..................................................................................5

*Sturgis Motorcycle Rally, Inc. v. Mortimer*,
2:14-CV-00175-WCO, 2014 WL 12479644 (N.D. Ga. Dec. 23, 2014)....................11

*T-Mobile S, LLC v. City of Roswell*,
No. 1:10-cv-1464-AT, 2016 WL 11745937 (N.D. Ga. Oct. 7, 2016) ........................7

*In re United States ex rel. Drummond*,
886 F.3d 448 (5th Cir. 2018) ................................................................14

*United States v. Or. State Med. Soc'y*,
343 U.S. 326 (1952) .....................................................................6, 7, 8, 11

*United States v. Price*,
44 F.4th 1288 (10th Cir. 2022)..................................................................6

*United States v. Shorter*,
27 F.4th 572 (7th Cir. 2022).....................................................................4

*United States v. Zalazar-Torres*,
25 F. App'x 707 (10th Cir. 2001) .............................................................14

*Vulcan Constr. Materials, LLC v. City of Tishomingo*,
526 P.3d 1171 (Okla. Civ. App. 2022).......................................................15

*Webb v. Mo. Pac. R. Co.*,
98 F.3d 1067 (8th Cir. 1996) ..................................................2, 4, 7, 9, 11

*WildEarth Guardians v. Pub. Serv. Co. of Colo.*,
690 F.3d 1174 (10th Cir. 2012) ................................................................6

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
681 F.3d 1208 (10th Cir. 2012) .....................................................5, 12, 13

**Statutes and Regulations**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 2

Okla. Stat. tit. 2, § 10- 9.19a(1) (2010) ...................................................... 10

Okla. Stat. tit. 27A, § 2-3-504(A)(2) .......................................................... 11

Okla. Stat. tit. 27A, § 2-6-105 ...................................................................... 3

28 U.S.C. § 1292(a)(1) ................................................................................ 16

Ark. Code Ann. § 15-20-1106(f) ................................................................ 10

Ark. Code Ann. § 15-20-1108 .................................................................... 10

**Other Authorities**

EPA, *Cooperative Efforts Build Trust While Reducing Pollution*
   (Apr. 2020), http://bit.ly/3MnqcmU ....................................................... 10

Jeff Della Rosa, *Northwest Arkansas Continues to Lead State Growth,
   13th Fastest-Growing U.S. Metro over Past Decade*, Talk Business &
   Politics (Mar. 26, 2020), https://bit.ly/3Qm9XIl .................................... 10

Randy Krehbiel, *The Illinois River Is Cleaner, But The Hard Work Has
   Just Begun*, Tulsa World (Oct. 20, 2015), http://bit.ly/3K6Okra ........... 9

Doug Thompson, *Arkansas, Oklahoma Officials To Host Public
   Meeting On Illinois River*, Ark. Democrat Gazette (Jan. 14, 2023),
   http://bit.ly/3ZEBxlG ............................................................................... 9

## REQUEST FOR ORAL ARGUMENT

Defendants request oral argument on this motion. As set forth herein, defendants' motion raises novel and important questions regarding constitutional mootness, prudential mootness, and due process, and defendants respectfully submit that oral argument would assist the Court in resolving those issues.

## INTRODUCTION

When the Court heard closing arguments in this matter in February 2010, President Obama was barely a year into office, Solicitor General Kagan was fielding questions from Justices Stevens and Scalia, the economy floundered but Deepwater Horizon was afloat, and fewer than one in four Americans owned a smartphone.

The ensuing thirteen years brought significant change, locally as well as globally.  As relevant here, the human population in the Illinois River Watershed (IRW) more than doubled, farming and land-management practices evolved, communities on both sides of the border poured hundreds of millions of dollars into improving wastewater treatment, and water quality demonstrably improved.  The IRW of today is not the IRW of 2010.  Nor was the law static.  Since 2010, federal and state courts have issued path-marking decisions addressing nuisance, trespass, causation, and federal common law.

Yet for all that time, despite claims of exigent environmental harm, the Plaintiff, the State of Oklahoma, has sat idly by.  Six Oklahoma Attorneys General have held that office, but despite bearing the burden of proof, not one of them asked this Court to rule or sought relief from the Tenth Circuit.  Instead, for thirteen years, Oklahoma continued to issue nutrient-management plans to farmers and ranchers, instructing them to abide by these plans to avoid polluting the waters of the IRW.

When the Court ruled that Oklahoma was "entitled to injunctive relief," Findings and Conclusions at 202 (ECF No. 2979), it was constrained to base that ruling on a record thirteen years old, and in significant part much older.  Such a ruling is

unprecedented.  Defendants are unaware of any court, in any jurisdiction, federal or state, ever awarding injunctive relief on a record so stale.  *See, e.g.*, *Webb v. Mo. Pac. R. Co.*, 98 F.3d 1067, 1068 (8th Cir. 1996) (abuse of discretion to grant injunction based on five-year-old record).

This case should go no further.  The Court's jurisdiction extends only to live cases and controversies.  When no effectual relief can be entered on the record before the Court, the dispute is moot and must be dismissed.  In 2010, the State entreated the Court to enter sweeping injunctive relief.  But injunctive relief requires evidence of current and ongoing harm or impending injury, and the record before the Court says nothing about whether injunctive relief is needed or justified in 2023 and beyond.  Likewise, the Court has already properly dismissed any damages remedy, and it has made no findings to support, nor does the record contain evidence to support, any award of penalties.  In all events, ordering any remedy on this record, following so lengthy and prejudicial a delay, would violate Defendants' due process rights.  Because no effectual relief can be entered on this record, Oklahoma's remaining claims must be dismissed as moot.  *See* Fed. R. Civ. P. 12(b)(1).

## BACKGROUND

This case began nearly two decades ago.  In 2005, Oklahoma sued a group of poultry producers for allegedly polluting the waters of the IRW.  Although the State sought an array of remedies, only two groups of claims survived motions practice: claims for injunctive relief and claims for civil penalties.  F&C at 1, 180.  Those claims went to trial in September 2009.  *See* ECF No. 2644.  In January 2010, the trial ended, and the record closed.

After trial, both sides moved for judgment in their favor. Defendants argued that neither the law nor the record evidence supported any of Oklahoma's claims. For its part, Oklahoma sought an order requiring "remediation of the IRW, at Defendants' expense." Oklahoma's Proposed F&C at 356 (ECF No. 2873). According to the State, the "exact nature" of that remediation was uncertain and needed to be "determined following an investigation … funded by Defendants." *Id.* Among Oklahoma's suggestions for "further investigation" and possible implementation were costly and invasive steps including "buffer strips," "bank stabilization," "excavation," "alum application," and "constructed wetlands." *Id.* at 274. The State also sought "civil penalties for each defendant's violation of 27A Okla. Stat. § 2-6-105(A)." F&C at 202.

In January 2023, the Court issued its findings of fact and conclusions of law. Relevant here, the Court found that "defendants' conduct … constitutes a public nuisance" under Okla. Stat. tit. 27A, § 2-6-105, and that "the actual and ongoing injury to the waters of the IRW constitutes irreparable harm." F&C at 212–13. The Court did not make the defendant-specific, violation-specific findings necessary to support civil penalties, and it awarded none. Instead, the Court concluded simply that "the State is entitled to injunctive relief for each defendant's violations of 27A Okla. Stat. § 2-6-105." *Id.* at 202. Rather than order relief immediately, the Court directed the parties to "meet and attempt to reach an agreement with regard to remedies to be imposed." *Id.* at 213. If the parties were "unable to reach an accord," the Court said that it would "enter judgment." *Id.* Consistent with the Court's directive, the parties participated in mediation on October 12, 2023 but were unable to resolve the dispute.

## LEGAL STANDARD

"Because mootness is an issue of subject matter jurisdiction, it can be raised at any stage of the proceedings." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (Rule 12(b)(1) motion may be raised "at any stage in the litigation, even after trial"). Courts "take a claim-by-claim approach to mootness and must decide whether a case is moot as to each form of relief sought." *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (cleaned up) (quoting *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019)). "An injunctive relief claim becomes moot when the 'plaintiff's continued susceptibility to injury' is no longer 'reasonably certain' or is based on 'speculation and conjecture.'" *Id.* (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)). A court "must dismiss the case" when it "cannot fashion any relief that would have a meaningful impact" on the plaintiff. *United States v. Shorter*, 27 F.4th 572, 575 (7th Cir. 2022).

## ARGUMENT

Article III empowers federal courts to resolve live and ripe cases and controversies. Implicit in that authority is an obligation to make decisions timely and on current facts. *Cf. Webb*, 98 F.3d at 1068 (injunction entered five years after trial was abuse of discretion because record was stale and could not support prospective relief). Here, thirteen years elapsed between trial and decision—with not a word from Oklahoma—a situation for which there simply is no supporting precedent.

Two doctrines require dismissal in these circumstances. *First*, mootness requires dismissal. A court lacks jurisdiction when it can no longer grant effectual

4

relief, and here, Oklahoma's claims for injunctive relief are barred by the passage of time. "Courts recognize two kinds of mootness: constitutional mootness and prudential mootness." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010). Constitutional mootness "act[s] as a jurisdictional bar against even entertaining a case," whereas prudential mootness permits a court to "withhold relief [that it has] the authority to grant." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1209 (10th Cir. 2012) (Gorsuch, J.). This case is moot in both respects. As a matter of Article III subject-matter jurisdiction, this Court can no longer grant Oklahoma any effectual relief. And as a prudential matter, this Court should exercise its remedial discretion to deny injunctive relief. *Id.* at 1210. *Second*, proceeding on this record, after all this time, would violate defendants' due-process rights. Either way, the case should be dismissed.

## A.   Oklahoma's claims for injunctive relief are constitutionally moot on this record.

**1.**      "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). That limits federal courts' jurisdiction to justiciable disputes: cases in which the plaintiff has suffered "actual injury redressable by the court." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (citation omitted). Two related doctrines—standing and mootness—"aim to ensure federal courts stay within Article III's bounds." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1159 (10th Cir. 2023). "Standing does so at a case's inception, asking 'whether a plaintiff's action qualifies as a case or controversy when it is filed.'" *Est. of Schultz v.*

*Brown*, 846 F. App'x 689, 693 (10th Cir. 2021) (quoting *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016)).  And mootness "kicks in once the case gets going, ensuring that a live dispute exists" throughout the litigation.  *Id.*

"Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation …." *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012).  As relevant here, if it "becomes impossible at any point for a court to grant effective relief," then the plaintiff's alleged injury is "no longer redressable." *United States v. Price*, 44 F.4th 1288, 1293 (10th Cir. 2022) (citation omitted).  In that case, the court "ha[s] no subject-matter jurisdiction," *Rio Grande Silvery Minnow*, 601 F.3d at 1109, and the claim for relief "must be dismissed," *Smith*, 44 F.4th at 1247; *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"  (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895))).

2.    This case is constitutionally moot because the Court can no longer grant any effectual relief.  The Court's findings and conclusions rest upon a record compiled in 2005–2009.  The time when any injunction could have been entered on a record that old has long passed; decades-old evidence cannot support an injunction today.  Oklahoma's claims thus lack a remedy and must be dismissed.

The "sole function" of injunctive relief is to "forestall future violations." *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952); *see also Hecht Co. v. Bowles*,

321 U.S. 321, 329 (1944) (injunctions are "designed to deter, not to punish").  It follows that courts may not grant injunctive relief based solely on past conduct.  *See McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("[P]ast exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects."); *cf. Donahue v. Kan. Bd. of Educ.*, 827 F. App'x 846, 850 (10th Cir. 2020) ("[P]ast harm cannot establish irreparable harm ….").  Instead, injunctive relief is proper only if "the record shows 'a real threat of future violation or a contemporary violation of a nature likely to continue or recur.'"  *Webb*, 98 F.3d at 1068 (alterations omitted) (quoting *Or. State*, 343 U.S. at 333).

A stale record cannot support injunctive relief.  After all, if an injunction aims to "undo existing conditions," then a record that no longer "illuminates or explains the present" cannot warrant that sort of remedy.  *Or. State*, 343 U.S. at 333.  The Eighth Circuit's decision in *Webb* well illustrates the point.  The plaintiffs there alleged that Missouri Pacific Railroad discriminated against black employees.  98 F.3d at 1068.  Following trial and a lengthy delay, the district court "found there was class-wide discrimination and ruled in favor of the employees."  *Id.*  Then—five years after the trial record closed—the court ordered injunctive relief.  The Eighth Circuit vacated, holding that "the district court abused its discretion by granting an injunction on a stale record."  *Id.* at 1069.  As the panel explained, "[e]ven [if] the district court's findings of widespread discrimination [were] correct, Missouri Pacific's past transgressions w[ould] not support an injunction that was not issued until five years after the close of all the evidence."  *Id.*; *see also T-Mobile S., LLC v. City of Roswell*, No.

1:10-cv-1464-AT, 2016 WL 11745937, at *21 (N.D. Ga. Oct. 7, 2016) (explaining that injunction was "inappropriate" because "the latest evidence" was "at least five to six years old").

That stands to reason. When a properly entered injunction "remain[s] in force for many years," the "passage of time frequently brings about changed circumstances … that warrant reexamination of the original judgment." *Horne v. Flores*, 557 U.S. 433, 448 (2009). In such cases, "a court abuses its discretion 'when it refuses to modify an injunction … in light of such changes.'" *Id.* at 447 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)); *see also Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1201–02, 1206–07 (10th Cir. 2018) (injunctive relief must remedy current and ongoing harms, and changed circumstances may warrant revising or dissolving an injunction). By the same token, when years pass between the close of evidence and the entry of judgment, changed circumstances can make a request for injunctive relief stale before it even issues.

**3.**     There may be cases where reasonable minds could debate whether a record has become stale—but this is not one of them. After thirteen years, the record no longer "illuminates or explains the present," making it impossible for this Court to redress Oklahoma's claims for injunctive relief. *Or. State*, 343 U.S. at 333; *see also Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022) (plaintiff "may not seek a forward-looking remedy … without evidence that the harmful conduct will reoccur" (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983))). As a result, those claims must be dismissed as moot.

When this Court issued its findings and conclusions, the freshest evidence was from 2010—and much of the record dated from the 1990s and early 2000s. The Court gave "considerable weight," for example, to government reports from 1992, 1999, 2006, and 2008, several of which analyzed data that were already years old when the reports issued. F&C at 104–05. So too, the Court placed "substantial weight" on observations from 2007, *id.* at 158, and expert analyses based on samples collected between 2005 and 2007, *id.* at 136–40, 144. It also relied on runoff data from 2000–2004, *id.* at 75, along with soil tests from 1999, 2000, and 2003. *Id.* at 101.

Whatever that evidence showed about the IRW in 2010—and there was much dispute about the evidence the State offered during trial—it does not speak to conditions in 2023. *But see Webb*, 98 F.3d at 1068 (record must show "a real threat of future violation or a contemporary violation of a nature likely to continue or recur" (alterations omitted) (quoting *Oregon State*, 343 U.S. at 333)).

Consider just a few developments since the record closed. At trial in 2009, Oklahoma's experts testified that phosphorus levels in the watershed were "increasing." F&C at 65, 134. Yet by 2015, the *Tulsa World* reported "recent *decreases* in phosphorus readings."[1] And the years that followed brought a "steady drop in phosphorus levels,"[2] thanks in part to "local communities' $300 million investment in

---

[1] Randy Krehbiel, *The Illinois River Is Cleaner, But The Hard Work Has Just Begun*, Tulsa World (Oct. 20, 2015), http://bit.ly/3K6Okra (emphasis added).

[2] Doug Thompson, *Arkansas, Oklahoma Officials To Host Public Meeting On Illinois River*, Ark. Democrat Gazette (Jan. 14, 2023), http://bit.ly/3ZEBxlG.

[wastewater treatment plants]."[3]  Small wonder that an Oklahoma conservation offi-cial reported in 2020 that there had been "measurable improvements" in both "bacte-ria and phosphorus levels in the river."[4]  Likewise, land uses have changed.  The Arkansas portion of the IRW was among the fastest-growing metropolitan areas in the United States between 2010 and 2019,[5] and farms on both sides of the border have given way to subdivisions, apartment complexes, and retail spaces.  In fact, it is likely some farms that allegedly contributed phosphorus in the IRW in 2010 no longer raise chickens for any defendant, or even support farming operations at all.

At the same time, while state-mandated poultry-litter "management plans" were new to Oklahoma in 1998 and to Arkansas in 2007, poultry farmers have now been following the plans for almost twenty-five years and fifteen years, respectively. F&C at 35, 171.  These plans—which "set[] forth the time, location, and amount of poultry litter that may be applied" to each parcel of land—have now ensured that, for well over a decade, the *State* has consented to—and even controlled—all poultry-litter applications.  *Id.* at 4–6, 24–25; *see* Okla. Stat. tit. 2, § 10-9.19a(1) (2010); Ark. Code Ann. §§ 15-20-1106(f), 15-20-1108.  Despite knowing of this lawsuit, Oklahoma has made no effort legislatively or administratively to alter its litter-management

---

[3] *See* EPA, *Cooperative Efforts Build Trust While Reducing Pollution* 6 (Apr. 2020), http://bit.ly/3MnqcmU.

[4] *Id.*

[5] *See* Jeff Della Rosa, *Northwest Arkansas Continues to Lead State Growth, 13th Fastest-Growing U.S. Metro over Past Decade*, Talk Business & Politics (Mar. 26, 2020), https://bit.ly/3Qm9XIl.

scheme, to impose lower phosphorous-application limits, or otherwise to effectuate the outcomes requested of this Court so long ago.

While these changed circumstances underscore the staleness problem, this record is legally stale regardless of any evidence of intervening change. *See Hu v. Holder*, 579 F.3d 155, 159 (2d Cir. 2009) ("A four-year-old memory of the witness's demeanor is not entitled to the same deference."); *Webb*, 98 F.3d at 1068 (five-year-old record was stale); *Sturgis Motorcycle Rally, Inc. v. Mortimer*, 2:14-CV-00175-WCO, 2014 WL 12479644, at *7–9 (N.D. Ga. Dec. 23, 2014) (denying injunctive relief based on two-year old evidence and noting that "stale evidence does not carry the same force"); *FTC v. Merch. Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *3 (E.D. Wash. Aug. 13, 2013) (two-year-old record was stale).

Even if the record could have supported injunctive relief at the close of trial, it is too stale to "illuminate[] or explain[]" whether such relief is warranted today. *Or. State*, 343 U.S. at 333; *see Webb*, 98 F.3d at 1068–69. As a result, the Court can no longer grant Oklahoma effectual relief as to its injunctive claims—so any ruling on the merits of those claims "would be nothing more than an advisory opinion." *Smith*, 44 F.4th at 1249. It follows that Oklahoma's claims for injunctive relief here are constitutionally moot and must be dismissed.[6]

---

[6] Nor is jurisdiction rescued by any other remedy. The Court previously and properly dismissed the State's claims for damages, and it has made no findings to support an award of civil penalties under Okla. Stat. tit. 27A § 2-3-504(A)(2). That is not surprising, given the Court's conclusion that defendants are jointly and severally liable for the aggregate impact of growers' farming activities in the IRW. Civil penalties are not unapportioned damages but rather are imposed on specific parties for specific misconduct. Here, Plaintiff nowhere offered the defendant-specific evidence

**B.     At a minimum, Oklahoma's claims for injunctive relief are pru-
dentially moot.**

Even when a case squeaks by under Article III, prudential mootness may bar
relief where the moving party fails to show that "relief is needed." *Winzler*, 681 F.3d
at 1210 (quoting *United States v. W.T. Grant Co.* 345 U.S. 629, 633 (1953)). "[P]ru-
dential mootness arises out of the court's general discretion in formulating prospec-
tive equitable remedies …." *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487,
1492 (10th Cir. 1993). Like other such remedies, an injunction "does not issue as of
course." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). Instead,
claims for injunctive relief "appeal to the 'remedial discretion' of the courts"—inher-
ent in which is the "power to deny relief altogether." *Winzler*, 681 F.3d at 1210 (quot-
ing *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)). Prudential
mootness provides that when "the anticipated benefits of a remedial decree no longer
justify the trouble of deciding the case on the merits," the proper course is "not deci-
sion but dismissal." *Id.*; *cf. Hickman v. Subaru of Am., Inc.*, No. 1:21-CV-02100-NLH-
AMD, 2022 WL 11021043, at *5 (D.N.J. Oct. 19, 2022) ("[A]n attack based on the
prudential mootness doctrine … would fall under Rule 12(b)(1) ….").

Here, Oklahoma's claims for injunctive relief are prudentially moot because
the record has become too stale to support an injunction. As explained above, *see
supra* § A.2, injunctive relief cannot issue today on a record compiled thirteen years
ago based on events occurring long before that. And again: Oklahoma—as plaintiff—

---

necessary to impose penalties, and the record is generally bereft of the sort of evidence
required to be considered, including evidence of violations and good-faith efforts by
the relevant defendant to comply with the applicable requirements.

bears the burden of proving that it is entitled to an equitable remedy.  But the State's own conduct belies its plea for equitable relief: after claiming that time was of the essence, Oklahoma sat silent for over a decade and did nothing to hasten a judicial decision it asserted was urgently needed.  This Court should not award extraordinary relief under those circumstances.  Nor is it even clear what an injunction would look like in the face of changed ownership, overhauled farming practices, improved water quality, farms replaced by subdivisions and shopping centers, and continued, expansive state regulation.  The passage of time has thus created practical problems that would plague crafting relief on this record as it would in any similar circumstances.

At bottom, whether or not this case "still qualif[ies] as an Article III 'case or controversy,'" Oklahoma's inaction has allowed the case to "reach the point where prolonging the litigation any longer would itself be inequitable."  *Winzler*, 681 F.3d at 1210.[7]

## C.    Granting injunctive relief on this record would violate due process.

This action is independently moot because granting relief on this record would violate due process.  The Fifth and Fourteenth Amendments require courts to exercise the judicial power "within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions."  *Hurtado v.*

---

[7] Should the Court dismiss Oklahoma's injunctive claims as prudentially moot, it need not address whether they are constitutionally moot.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999))); *cf. Winzler*, 681 F.3d at 1215 (dismissing on prudential-mootness grounds and declining to address Article III standing).

*California*, 110 U.S. 516, 535 (1884).  Among those principles is that "justice delayed is justice denied."  *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990).  Accordingly, appellate courts routinely issue mandamus to address delays ranging from a few months to a few years.  *See McClellan v. Young*, 421 F.2d 690, 691 (6th Cir. 1970) (granting mandamus after five-month delay); *In re Hood*, 135 F. App'x 709, 711 (5th Cir. 2005) (granting mandamus after seven-month delay); *Johnson*, 917 F.2d at 1285 (fourteen-month delay "for no reason other than docket congestion" was "impermissible"); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("Busy court dockets cannot justify a 14-month delay …."); *In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (granting mandamus after four-year delay).

The Tenth Circuit has recognized that "excessive delay … can amount to a deprivation of due process."  *DeLancy v. Caldwell*, 741 F.2d 1246, 1247 (10th Cir. 1984).  In the criminal context, courts consider four factors to determine whether a due-process violation has occurred: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of rights, and (4) prejudice to the defendant.  *See Harris v. Champion*, 15 F.3d 1538, 1558–59 (10th Cir. 1994) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)).  While the "demands of due process" are "less strict" in civil litigation than in a criminal case, *United States v. Zalazar-Torres*, 25 F. App'x 707, 708 (10th Cir. 2001), due process still requires much in civil proceedings.  *Cf. Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").  Applying those same four factors here favors defendants.

14

*First*, a thirteen-year delay is extraordinary and unprecedented.  *See Harris*, 15 F.3d at 1559–60 (noting that the passage of an "*inordinate* amount of time triggers due process concern[s]," and "presum[ing] that a two-year delay in adjudicating [a habeas] appeal is inordinate" (citation omitted)).  *Second*, there is no "constitutionally sufficient justification" for such a delay.  *Id.* at 1562; *see also Johnson*, 917 F.2d at 1285 ("docket congestion" was "insufficient to justify" fourteen-month delay).  *Third*, defendants did not "affirmatively s[eek] or cause[] delay in the adjudication" of this case.  *Harris*, 15 F.3d at 1563.  *Fourth*, defendants would suffer several forms of prejudice if the Court entered judgment for Oklahoma on a stale and outdated record.

To begin with, the defendants would be prejudiced because the Court's legal conclusions do not reflect current law.  A federal court must apply the law in effect at the time it renders a decision.  *Cf. Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944) ("[A] judgment of a federal court ruled by state law … must be reversed on appellate review if in the meantime the state courts have disapproved of their former rulings and adopted different ones.").  Yet here, the Court's findings and conclusions cite no case law after 2011, *see* F&C at 194 (citing *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410 (2011)), and the opinion omits intervening and material changes in state and federal law.

For example, the Oklahoma Supreme Court recently ruled that the State cannot hold a party liable for nuisance if that party "did not control the instrumentality … alleged to constitute the nuisance at the time the nuisance occurred."  *State ex rel. Hunter v. Johnson & Johnson*, 2021 OK 54, ¶ 30, 499 P.3d 719, 729.  And in *Vulcan*

*Constr. Materials, LLC v. City of Tishomingo*, 526 P.3d 1171, 1175–76 (Okla. Civ. App. 2022), the court confirmed that "[n]othing which is done or maintained under the express authority of a statute"—including site-specific water-management and conservation plans—"can be deemed a nuisance" (citation omitted).  The Tenth Circuit, for its part, ruled recently that "the Clean Water Act displaced the federal common law [of nuisance] for water-based transboundary pollution."  *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1259 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023).

It is no answer that defendants could immediately appeal any injunction and raise these intervening authorities.  *See* 28 U.S.C. § 1292(a)(1).  Equity aims to "protect all rights and do justice to all concerned," *Providence Rubber Co. v. Goodyear*, 76 U.S. (9 Wall.) 805, 807 (1869); *see also Corbet v. Johnson*, 6 F. Cas. 524, 525 (C.C.D. Va. 1805) (No. 3218) (Marshall, J.) ("A court of equity … delights to do complete justice, and not by halves ….").  The right to appeal does not cure the inequity of issuing an injunction as though this were still 2010.  Parties must be allowed to try current facts to current law, and long-delayed appellate review is no substitute.

Because Oklahoma alleges violations that stretch back to 1993, *see* Oklahoma's Proposed F&C at 331 (ECF No. 2873), the passage of thirteen years would also make it all the harder to defend against those allegations at a potential retrial.  *See Harris*, 15 F.3d at 1563 (calling "impairment of the grounds for appeal or the grounds for defense in the event of a retrial" the "most serious form of prejudice").  As the Tenth Circuit has recognized, "excessive delay presumptively compromises the reliability of

a trial," and the "likelihood of injury 'increases with the length of delay.'" *Id.* at 1564 (quoting *Doggett v. United*, 505 U.S. 647, 655–56 (1992)).   Here, the thirteen-year post-trial delay violates due process many times over.

At the same time, defendants would also be prejudiced in their ability to prosecute their third-party complaints against the myriad other parties who contribute phosphorous into the IRW.   Defendants' third-party complaints have been held in abeyance for nearly two decades.   When those cases move forward, they will proceed under the latest law and facts.   Yet the Court proposes to hold defendants liable and impose a remedy based on law and facts from 2010.   In other words: third parties would benefit from every intervening legal and factual change, whereas defendants would be penalized as though none of those developments had occurred.   That would be inconsistent with fundamental principles of liberty and justice.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Oklahoma's remaining claims for relief as moot.

October 26, 2023                              Respectfully submitted,


/s/ *Gordon D. Todd*                          /s/ *Robert George*
Mark D. Hopson                                Robert George, OBA #18562
Frank R. Volpe                                George's, Inc.
Gordon D. Todd                                402 W. Robinson Ave.
Cody L. Reaves                                Springdale, AR  73764
  (*pro hac vice* forthcoming)      (479) 927-7249
Peter A. Bruland
  (*pro hac vice* forthcoming)      Gary V. Weeks
Sidley Austin LLP                             K.C. Dupps Tucker
1501 K Street, NW                             The Law Group of Northwest
Washington, D.C.  20005                         Arkansas PLLC
(202) 736-8000                                1830 Shelby Lane
(202) 736-8711 (facsimile)                    Fayetteville, AR 72704
mhopson@sidley.com                            (479) 316-3760
fvolpe@sidley.com
gtodd@sidley.com                              Perry L. Glantz
cody.reaves@sidley.com                        Stinson LLP
pbruland@sidley.com                           1144 15th Street, Suite 2400
                                              Denver, CO 80202
*Attorneys for Tyson Foods, Inc.,*            (303) 376-8410
*Tyson Poultry, Inc., Tyson Chicken,*
*Inc., and Cobb-Vantress, Inc.*               Clinton Russell, OBA # 19209
                                              Taylor, Foster, Mallett, Downs,
/s/ *A. Scott McDaniel*                         Ramsey & Russell
A. Scott McDaniel, OBA #16460                 400 West Fourth Street
McDaniel Acord, PLLC                          Claremore, OK 74018
9343 East 95th Court                          (918) 343-4100
Tulsa, OK  74133                              crussell@soonerlaw.com
(918) 382-9200
                                              *Attorneys for George's, Inc. and*
*Attorney for Tyson Foods, Inc., Tyson*       *George's Farms, Inc.*
*Poultry, Inc., Tyson Chicken, Inc.,*
*Cobb-Vantress, Inc., and Peterson*
*Farms, Inc.*

/s/ *John R. Elrod*
John R. Elrod (admitted *pro hac vice*)
Vicki Bronson, OBA 20574
Conner & Winters, P.C.
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Simmons Foods, Inc.*

/s/ *Robert P. Redemann*
Robert P. Redemann, OBA #7454
William D. Perrine, OBA #11955
Perrine, Redemann, Berry,
   Taylor & Frette, PLLC
1800 S. Baltimore Ave., Suite 900
Tulsa, OK 74119
(918) 382-1400
(918) 382-1499 (facsimile)
rredemann@pmrlaw.net
wperrine@pmrlaw.net

Robert E. Sanders, MSB#6446
   (admitted *pro hac vice*)
Young Wells Williams P.A.
P.O. Box 6005
Ridgeland, MS 39158-6005
(601) 948-6100
(601) 355-6136 (facsimile)
rsanders@youngwells.com

*Attorneys for Cal-Maine Foods*

/s/ *John H. Tucker*
John H. Tucker, OBA 9110
Theresa N. Hill, OBA 19119
Rhodes Hieronymus Jones
   Tucker & Gable
Two W. 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK 74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com

Delmar R. Ehrich
   (admitted *pro hac vice*)
Bruce Jones (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402-3901
(612) 766-7000
(612) 766-1600 (facsimile)
Delmar.ehrich@faegredrinker.com
Bruce.jones@faegredrinker.com

*Attorneys for Cargill, Inc. and Cargill Turkey Production, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 26, 2023, I caused this document to be filed with the

Clerk of Court through CM/ECF, which will serve copies on all registered counsel.


<u>/s/ *Gordon D. Todd*      </u>
Gordon D. Todd