UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, *et al.*, <br>                             *Plaintiffs,* <br> v. <br> TYSON FOODS, INC., *et al.*, <br>                             *Defendants.* | No.  4:05-cv-329-GKF-SH |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Submitted by:

GENTNER DRUMMOND, OBA #16645
  *Attorney General*
GARRY M. GASKINS, II, OBA #20212
  *Solicitor General*
JENNIFER L. LEWIS, OBA #32819
  *Deputy Attorney General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Gentner.Drummond@oag.ok.gov
Garry.Gaskins@oag.ok.gov
Jennifer.Lewis@oag.ok.gov

M. DAVID RIGGS, OBA #7583
KRISTOPHER E. KOEPSEL, OBA #19147
Riggs, Abney, Neal, Turpen, Orbison & Lewis
502 West 6th Street
Tulsa, OK 74119
(918) 587-3161

ROBERT A. NANCE, OBA #6581
W.A. DREW EDMONDSON, OBA #2628
Riggs, Abney, Neal, Turpen, Orbison & Lewis
528 N.W. 12th Street
Oklahoma City, OK 73103
(405) 843-9909

LOUIS W. BULLOCK, OBA #1305
Bullock Law Firm PLLC
110 W. 7th Street
Tulsa, OK 74119
(918) 584-2001

FREDERICK C. BAKER, admitted *pro hac vice*
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9186

COUNSEL FOR PLAINTIFFS                                                                        November 10, 2023

# TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................. 1

**BACKGROUND** ............................................................................................................. 1

**LEGAL STANDARD** .................................................................................................... 3

**ARGUMENT** .................................................................................................................. 4

   I.  There have been no intervening circumstances that moot this case. ............................. 4

      A. *The passage of time, on its own, is not an intervening circumstance that constitutes mootness.* ................. 5

      B. *The Defendants have not alleged that they have changed their poultry waste practices.* .......................... 7

      C. *Effectual relief remains available to the State.* ................................................................. 9

   II. Granting relief to the State does not violate due process. ............................................... 11

**CONCLUSION** ............................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ................................................................................................. 8, 9

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
  25 F.4th 1238 (10th Cir. 2022) ................................................................................. 13

*Boykin v. Georgia-Pacific Corp.*,
  706 F.2d 1384 (5th Cir. 1983) ................................................................................ 6, 7

*Citizens for Responsible Gov't State Political Action Comm. v. Davidson*,
  236 F.3d 1174 (10th Cir. 2000) ................................................................................. 4

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) .................................................................................................. 3

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) .................................................................................................. 8

*City of Milwaukee v. Illinois (Milwaukee II)*,
  451 U.S. 304 (1981) ................................................................................................ 13

*City of Tulsa v. Tyson Foods, Inc.*,
  258 F.Supp.2d 1263 (N.D. Okla. 2003) .................................................................... 3

*Donnell v. General Motors Corp.*,
  576 F.2d 1292 (8th Cir. 1978) ................................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
  528 U.S. 167 (2000) .................................................................................................. 9

*Illinois v. City of Milwaukee (Milwaukee I)*,
  406 U.S. 91 (1972) .................................................................................................. 13

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990) .................................................................................................. 3

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
  601 F.3d 1096 (10th Cir. 2010) ................................................................................. 4

*Smith v. Becerra*,
  44 F.4th 1238 (10th Cir. 2022) ............................................................................. 3, 4

*Spencer v. Kemna*,
  523 U.S. 1 (1998) ...................................................................................................... 3

*State ex rel. Hunter v. Johnson and Johnson*,
  499 P.3d 719 (Okla. 2021) ................................................................................ 11, 12

*Taylor v. Teletype Corp.*,
  648 F.2d 1129 (8th Cir. 1981) ................................................................................... 7

*United States v. Oregon State Medical Society*,
    343 U.S. 326 (1952) ................................................................................................ 6

*Vulcan Constr. Materials LLC v. City of Tishomingo*,
    526 P.3d 1171 (Okla. Civ. App. 2022) ................................................................ 12

*Webb v. Missouri Pacific Railroad Co.*,
    98 F.3d 1067 (8th Cir. 1996) ........................................................................ 5, 6, 7

*West Virginia v. Env't Prot. Agency*,
    142 S. Ct. 2587 (2022) ........................................................................................... 4

**Statutes and Regulations**

2 Okla. Stat. § 2-18.1 ..................................................................................................... 2

2 Okla. Stat. § 10-9.7 ............................................................................................ 2, 8, 12

27A Okla. Stat. § 2-6-105 ......................................................................................... 2, 10

50 Okla. Stat. § 4 .......................................................................................................... 12

82 Okla. Stat. § 896.5 ..................................................................................................... 1

Okla. Admin. Code § 35:17-3-14 .................................................................................... 2

Okla. Admin. Code § 35:17-5-5 ...................................................................................... 2

**INTRODUCTION**

Oklahoma's rivers, streams, and lakes are its treasures. The waters of the Illinois River Watershed (IRW) are no exception, and they should not be cast aside. Indeed, "the Oklahoma Legislature found the Illinois River and its tributaries 'possess[ed] such unique natural scenic beauty, water, fish, wildlife and outdoor recreational values of present and future benefit to the people of the state' that it designated most of the Illinois River and two of its tributaries as Scenic Rivers." Findings of Fact and Conclusions of Law (Order), Doc. 2979 at 1 (quoting 82 Okla. Stat. § 896.5). The IRW is a place of childhood memories, Doc. 2979 at FOF 219 (citing Phillips testimony); a recreational and spiritual retreat, Doc. 2979 at FOF 109 (citing Fite testimony); a source of drinking water, Doc. 2979 at FOF 17 (citing Tolbert testimony); and a place where, historically, the waters of the Illinois River and Lake Tenkiller were clear, Doc. 2979 at FOF 9.

Sadly, the waters of the IRW that once ran clear are now polluted by excess phosphorus from the land application of poultry waste. The Court previously found that Defendants' poultry waste practices caused this pollution. Doc. 2979 at COL 11, COL 60-61. There is no suggestion in Defendants' motion to dismiss that their poultry waste practices have changed such that they no longer pollute the IRW. The Defendants are fully capable of handling their poultry waste in accordance with the laws that prohibit pollution. As a result, this Court should require Defendants to follow these laws and protect the "unique natural scenic beauty, water, fish, wildlife and outdoor recreational values" of the IRW.

**BACKGROUND**

On June 13, 2005 – following months of unsuccessful pre-filing negotiations – the State filed suit against the Defendants seeking injunctive relief, monetary damages, and statutory penalties for Defendants' alleged acts and omissions, and/or the acts and omissions of their growers, which the State claimed have caused damage to the waters of the IRW. The State asserted ten causes of action:

1

(1) cost recovery under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA); (2) natural resource damages under CERCLA; (3) a Solid Waste Disposal Act (RCRA) citizen suit; (4) state law nuisance (including nuisance *per se*); (5) federal common law nuisance; (6) trespass; (7) violation of 27A Okla. Stat. § 2-6-105 and 2 Okla. Stat. § 2-18.1; (8) violation of 2 Okla. Stat. § 10-9.7 and Oklahoma Administrative Code (OAC) § 35:17-5-5; (9) violation of OAC § 35:17-3-14; and (10) unjust enrichment/restitution/disgorgement.

Prior to the start of trial, the Court dismissed the State's damages claims, holding that the State had failed to join the Cherokee Nation as a necessary party. Following presentation of the State's evidence, the Court granted the Defendants' Rule 52(c) motion with respect to RCRA, holding that poultry waste is not a "solid waste" under RCRA.

On January 18, 2023, the Court entered its Order, "find[ing] in favor of the State and against defendants on the State's claims of statutory public nuisance, federal common law nuisance, trespass, for violation of 27A Okla. Stat. § 2-6-105, and for violation of 2 Okla. Stat. § 2-18.1." Doc. 2979 at 213. Specifically, the Court found: the waters of the IRW have elevated phosphorus levels, *see* Doc. 2979 at FOF 130, FOF 168, and FOF 239; the principal contributor of these phosphorus levels in the waters of the IRW is run-off from poultry waste, *see* Doc. 2979 at FOF 288, FOF 539, FOF 585, and FOF 586; and banked phosphorus in the soils of the IRW due to land application of poultry waste is a source of this phosphorus run-off. *See* Doc. 2979 at FOF 81, FOF 362, FOF 531, FOF 535, COL 49, and COL 61 (stating "[P]oultry waste continues to be applied in the phosphorus-saturated fields in the Oklahoma portion of the IRW, where an environmentally significant portion of the phosphorus contained in the waste runs off the fields and enters the waters of the IRW.").

The Court concluded that the Defendants knew their growers, in the ordinary course of their work for the Defendants, spread poultry waste on the land in the IRW, and knew or should have known no later than the late 1990s that their growers' land application of poultry waste was a primary

2

source of the excess phosphorus in the waters of the IRW. Doc. 2979 at COL 11. "Once on notice, defendants had a duty to abate the nuisance and put a stop to the trespass, neither of which they have done." Doc. 2979 at COL 11 (citing *City of Tulsa v. Tyson Foods, Inc.*, 258 F.Supp.2d 1263, 1295-96 (N.D. Okla. 2003), *vacated in connection with settlement*). Therefore, the Defendants "are liable for any trespass or nuisance created by their growers." Doc. 2979 at COL 11 (citing *City of Tulsa*, 258 F.Supp.2d at 1296).

Furthermore, the Court ordered the State and the Defendants to meet and attempt to reach an agreement with regard to remedies to be imposed in this action. Doc. 2979 at 213. Pursuant to the Court's Order, the State and the Defendants engaged in good faith deliberations in an attempt to reach a full settlement of the litigation that would include remedies to address the State's concerns. As a part of these efforts the Parties participated in mediation. Nevertheless, the Parties were unable to reach a mutual agreement on the remedies to be imposed. Thus, the matter of remedies to be imposed remains unresolved.

## LEGAL STANDARD

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). The requirement of a case or controversy "subsists through all stages of federal judicial proceedings, trial and appellate … The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citation omitted). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Id.* (citation omitted).

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citation omitted). "In other words, '[i]f an intervening circumstance deprives the plaintiff of a "personal stake

3

in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot.'" *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (citations omitted). "The crucial question is whether 'granting a present determination of the issues offered … will have some effect in the real world.'" *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (citation omitted).

The defendant bears the burden of establishing that a case has become moot. *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022). "An injunctive relief claim becomes moot when the 'plaintiff's continued susceptibility to injury' is no longer 'reasonably certain' or is based on 'speculation and conjecture.'" *Smith*, 44 F.4th at 1247 (citations omitted).

## ARGUMENT

"Under both Article III and prudential mootness doctrines, the central inquiry is essentially the same: have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010) (citation omitted).

Here, there have been no intervening circumstances that moot this case; mere passage of time does not make the case moot. The Defendants have not alleged that they have changed their poultry waste practices, or that they are planning on doing so. Effectual remedies remain available to the State, such as limiting land application of poultry waste in the IRW to the agronomic critical level for phosphorus. Other necessary remedies inside the IRW are those that prevent excess phosphorus in the soil from being washed into the Illinois River and Lake Tenkiller, as well as remediating the Lake itself. Therefore, this case has not been rendered moot.

**I.     There have been no intervening circumstances that moot this case.**

4

> A. *The passage of time, on its own, is not an intervening circumstance that constitutes mootness.*

In their motion to dismiss, Defendants have not identified any precedent that requires dismissal of this case as moot due to the mere passage of time. The Defendants rely heavily on *Webb v. Missouri Pacific Railroad Co.*, 98 F.3d 1067 (8th Cir. 1996), for the proposition that the passage of time renders the State's claims moot. *Webb* involved a class-action employment discrimination lawsuit brought against the Missouri Pacific Railroad Company in 1975. *Id.* at 1068. Between 1985 and 1989, a trial was conducted. *Id.* In 1986, the defendant merged with the Union Pacific Railroad Company. *Id.* "Relying almost exclusively on evidence of discriminatory treatment before the merger, … and nearly three and one-half years after the trial record was closed, the district court found there was class-wide discrimination and ruled in favor of the employees in Missouri Pacific's maintenance-of-way (MOW) and transportation departments." *Id.* About a year later, the Court enjoined Union Pacific from using discriminatory employment practices. *Id.* On appeal, the Eighth Circuit vacated an injunction and returned the case to the district court to conduct the yet-to-be tried remedy phase. *Id.* at 1069.

The Defendants' reliance on *Webb* is misplaced as *Webb* is readily distinguishable. In *Webb*, the injunction aimed to enjoin the acquiring company (Union Pacific) was based upon evidence from before its merger with the defendant (Missouri Pacific). *Id.* at 1068. Prior to the issuance of the injunction, the acquiring company (Union Pacific) presented to the district court an affidavit establishing that there had been no complaints of racial harassment by MOW employees on the Arkansas Division roster since the merger. *Id.* As such, the Eighth Circuit noted that the only information in front of the district court was the evidence from before the merger plus an affidavit "showing the effective implementation of comprehensive antidiscrimination and affirmative action programs after Union Pacific took control over Missouri Pacific's operations." *Id.* The court went on to explain that even if the district court's findings were correct, "*Missouri Pacific's past transgressions* will

5

not support an injunction that was not issued until five years after the close of all the evidence." *Id.* at 1069 (emphasis added). The court concluded "we are unable to say *Union Pacific's employment practices* justify the district court's decision to grant class-wide injunctive relief." *Id.* (emphasis added).

Put another way, in *Webb*, the situation had changed over the course of the litigation such that plaintiffs did not face a violation that was likely to continue. The circumstances had changed because the two companies merged and Union Pacific took control over Missouri Pacific's operations. *Id.* at 1068. Under different corporate leadership, Union Pacific had implemented effective corrective action. *Id.*

The same cannot be said in this case. The Defendants' brief is strikingly silent regarding their duty to abate the nuisance and their failure to do anything to remediate the harm that they have caused. The State continues to be exposed to an actual, future threat under the Defendants' practices – the threat that the pollution will not be remediated and that it will be made worse by continued poultry waste application. As a result, the *Webb* case does not support the Defendants' position.

Moreover, the *Webb* court cited to four cases where injunctions were inappropriate when the evidence was stale. *Id.* at 1069. A close read of these cases only serves to underscore the factual differences from this case and undercut the Defendants' argument that this Court should dismiss this case as moot. Specifically, the four cases relied upon by *Webb* provide examples where the passage of time was important, *not for its own sake*, but because things had changed through the years. First, in *United States v. Oregon State Medical Society*, 343 U.S. 326 (1952), the defendants had made "an overt and visible reversal of policy" that constituted changed circumstances. *Id.* at 334. Although the Court recognized it was their duty to "beware of efforts to defeat injunctive relief by protestations of repentance and reform," the Court had "not the slightest reason to doubt the genuineness, good faith or permanence of the changed attitude and strategy of [the] defendant-appellees." *Id.* at 333-34. Second, in *Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384 (5th Cir. 1983), the appropriate remedy was

6

not dismissal of the case. Rather, the court remanded for the district court to undertake the relevant inquiry concerning injunctive relief. *Id.* at 1394. Third, in *Taylor v. Teletype Corp.*, 648 F.2d 1129 (8th Cir. 1981), the court held an injunction was not appropriate when weighing the findings of discrimination against the findings of no discrimination for the three years immediately preceding the injunction. *Id.* at 1136. Finally, in *Donnell v. General Motors Corp.*, 576 F.2d 1292 (8th Cir. 1978), the injunction was inappropriate where, over the course of five years, discriminatory policies had changed such that there was no longer evidence of racial discrimination. *Id.* at 1301. Thus, the cases relied upon by *Webb* show that it is not the years that make the difference. It is the change of circumstances.

   B.  *The Defendants have not alleged that they have changed their poultry waste practices.*

The Court found "[t]he evidence that phosphorus from land-applied poultry waste can and does run off into the waters of the IRW is convincing." Doc. 2979 at FOF 539. The State's evidence showed that runoff from land-applied poultry waste contains an environmentally significant amount of phosphorus. Doc. 2979 at FOF 543. In fact, the Court found "poultry waste is the principal contributor of the phosphorus causing injuries to the waters of the IRW." Doc. 2979 at FOF 586.

Since long before this case was filed, the Defendants have known about the environmental consequences of their practices of land-applying poultry waste. Doc. 2979 at FOF 544 – FOF 561 (compiling the Court's findings concerning Defendants' awareness that phosphorus from land-applied poultry waste is contributing to water pollution in the IRW). The Court found "each defendant has known and/or has had reason to know that injuries to the waters of the IRW were and continue to be substantially certain to result from the land application of poultry waste in the IRW." Doc. 2979 at FOF 561.

Despite knowing that land application of poultry waste continues to be substantially certain to result in injuries to the IRW, the Defendants have not indicated that they have changed their ways. Reports in the media that phosphorus readings have decreased at certain times, or that land uses have

7

changed, or that local communities have invested in infrastructure, do not show that the Defendants ceased to be the IRW's principal source of phosphorus pollution. *See* Doc. 3010 at 9-10. Without a change in how the Defendants handle their poultry waste, there is no reason to conclude that the poultry waste is not continuing to be substantially certain to result in injuries to the waters of the IRW.[1]

Likewise, it is of no avail for the Defendants to point to the state-mandated poultry-litter management plans in Oklahoma and Arkansas. *See* Doc. 3010 at 10-11. Such laws in Oklahoma were put into place well before this case was filed, and Arkansas's laws were enacted years before the close of trial. Thus, the poultry-litter management plans are not a new development.

Nor have the poultry-litter management plans stopped the Defendants from allowing poultry waste from their birds to run off the land and pollute the IRW in violation of the law. The plans do not provide permission to pollute. To the contrary, the Court expressly found that Oklahoma statutes and Oklahoma animal waste management plans provide that poultry waste management must not result in pollution of the waters of the State. Doc. 2979 at COL 27 (quoting 2 Okla. Stat. § 10-9.7(B)(4)). Simply put, Oklahoma filed this case to enforce the law, and the Court found the Defendants liable for polluting practices they have not ceased.

Even if the Defendants had ceased their practices causing the pollution, which they have not, the cessation would not be sufficient alone to moot the case because the Defendants have failed to meet their heavy burden of showing it is reasonably clear that they will not revert to the unlawful conduct again. The Supreme Court recognized as much in *Already, LLC v. Nike, Inc.*, which provides:

> We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Otherwise, a

---

[1] At no point following the close of the evidence have the Defendants moved to reopen the evidentiary record. To this very day, they have not presented any evidence alleging any material change in the conduct which the Court has found to be causing pollution in the IRW.

8

>> defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000).

568 U.S. 85, 91 (2013).

Here, the Defendants' Motion provides no evidence or suggestion that they have stopped polluting. Further, it contains no evidence where the Court could conclude that it is reasonably clear that Defendants will not revert to the same unlawful conduct at issue in this case. Accordingly, there is no evidence establishing a change of circumstances sufficient to moot this case.

C.   *Effectual relief remains available to the State.*

The State seeks a remedy from the Court to address the harms to the IRW. Remediation is necessary to reduce phosphorus loadings and abate the impacts of the pollution caused by decades of overapplication of poultry waste.

An effective remedial program includes the appointment of a Master to implement and oversee all phases of the remediation from assessment and planning to implementation and monitoring. The Master should be charged with conducting an assessment of the status of poultry waste pollution in the IRW, which would include an investigation into the current practices relating to the disposal of poultry waste generated by the Defendants' growing operations. Based upon the findings of the assessment, the Master should be charged with proposing a remediation plan to the Court. Options to evaluate for the remediation plan include: buffer strips, increased treatment of drinking water, excavation, alum application to fields, crop and nutrient management with nitrogen supplementation, bank stabilization, constructed wetlands, alum application of Lake Tenkiller,

9

sediment removal from Lake Tenkiller, layered aeration of Lake Tenkiller, and exportation of poultry litter outside the IRW for application to phosphorus-deficient soil. *See* Doc. 2979 at FOF 594-95.

To stop the phosphorus overloading from continuing to get worse, the remedy should preclude land application of poultry waste in the IRW at rates greater than the agronomic rate of 65 lbs./acre Soil Test Phosphorus (STP). *See* Doc. 2979 at FOF 81 ("[T]he agronomic critical level for phosphorus in the IRW is 65 lbs/acre STP, and the land application of poultry litter in the IRW in excess of this agronomic critical level is not protective of the environment and likely results in continued phosphorus pollution."). The Master should be charged with overseeing a Watershed Monitoring Team that would prepare and oversee implementation of nutrient management plans that incorporate the agronomic rate of 65 lbs./acre STP.

The State also seeks an award of penalties for violation of 27A Okla. Stat. § 2-6-105 and an award of attorney fees and costs, both of which should be determined by the Court following subsequent briefing by the parties.

The Defendants should be held responsible for all costs of the remedy and required to hold their growers harmless for all costs associated with the remedy.

Because the parties have been unable to mutually agree upon a remedy, the State has requested the Court enter a deadline of December 1, 2023, for the parties to submit their proposed journal entries of judgment. Plaintiffs' Status Report, Doc. 3009. Upon leave of the Court, the State will provide further details of its proposed remedy in a proposed journal entry.

For the purposes of this Response, the overarching point is that remedial relief is available, and necessary, in this case. The State has a present interest in having the pollution remediated. Granting a remedial program such as the one outlined above would have a positive impact on the waters of the IRW. Without action from the Court, the State is likely to continue facing more of the same pollution from the Defendants' practices. All of this is to say, the mere passage of time has not

removed the harms to the State or tied the hands of the Court. Thus, this case is not moot and should not be dismissed.

II.     **Granting relief to the State does not violate due process.**

The Defendants' argument that they have been prejudiced by delay is not convincing. If the passage of time were causing them any harm, they could have said so at any point. But in fact they waited, until after the Order was entered against them, to now complain of prejudice from delay. And once again it is worth noting, the Defendants have not claimed that they have made permanent changes in the way they handle poultry waste. Therefore, the Defendants have not been prejudiced by any delay.

The Defendants assert that they are prejudiced because the Court's legal conclusions supposedly do not reflect current law, and that a federal court judgment must be reversed if the state courts have disapproved of their former rulings and adopted different ones. Doc. 3010 at 15. But Defendants fail to explain how any of these alleged grievances have prejudiced them. Regardless, an examination of Defendants' arguments reveals that there has been no change in the law.

For instance, the Defendants cite the distinguishable case of *State ex rel. Hunter v. Johnson and Johnson*, in which the Oklahoma Supreme Court disapproved of a nuisance judgment against an opioid maker that could not control its drugs once they were out in the market. 499 P.3d 719 (Okla. 2021). There, the Oklahoma Supreme Court held that the defendant opioid makers did not control the instrumentality alleged to constitute the nuisance at the time the nuisance occurred. *Id.* at 729.

In contrast, here, the Defendants *do* control the instrumentality proven to cause the nuisance. That is because the Defendants herein *do* control the poultry waste polluting the IRW. The Defendants bring their chickens into the IRW. The Defendants bring their chicken feed into the IRW. Enormous numbers of the Defendants' chickens eat enormous loads of the Defendants' feed, creating enormous loads of poultry waste, which the Defendants leave with their growers to apply all over the IRW. The

11

Court expressly addressed this control in its Order, Doc. 2979 at COL 10-11, finding the Defendants liable for litter spread by their growers. *See also* COL 60-62, COL 73, and COL 51 (stating "All defendants are vicariously liable for poultry waste causing phosphorus to physically invade the rivers and streams of the Oklahoma portion of the IRW and Lake Tenkiller. Further, the Tyson Defendants, Cargill Defendants, and George's Defendants are directly liable for poultry waste from poultry operations they own or manage."). As a result, the Defendants point to no "new" statement of Oklahoma law that invalidates the Court's conclusion concerning the Defendants' liability. The *Hunter* case is not on point and does not help the Defendants.

Nor are the Defendants helped by the pronouncement in *Vulcan Constr. Materials LLC v. City of Tishomingo,* 526 P.3d 1171, 1175-76 (Okla. Civ. App. 2022), that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance," and making reference to site-specific water management and conservation plans. Doc. 3010 at 15-16. This "new" case rests on old Oklahoma law. The language the Defendants quoted is from an Oklahoma statute, 50 Okla. Stat. § 4, which is not a "new" statement of law but has been on the books in Oklahoma since 1910.

Moreover, the Court has already disposed of this argument in its Order, Doc. 2979 at COL 27, finding animal waste management plans (AWMPs) relied upon by the Defendants were not sufficiently specific for the court to conclude that all of the Defendants' actions creating the nuisance were "expressly authorized by law." To the contrary, the Court found that under 2 Okla. Stat. § 10-9.7(B)(4), poultry waste handling, treatment, management, and removal shall not create an environmental or public health hazard or result in contamination of the waters of the state. Doc. 2979 at COL 27. Also, AWMPs themselves provide that waste will be applied in accordance with state and local laws and ordinances, and that "discharge or runoff from waste application sites is prohibited." Doc. 2979 at COL 27. Therefore, Oklahoma's statutes still support the State's case.

Likewise, the Clean Water Act arguments referenced by the Defendants are not new and have already been addressed by the Court. The Defendants primarily cite *Suncor Energy*, where the Tenth Circuit addressed, among other things, the issue of whether the Clean Air Act preempted the plaintiffs' state law nuisance claims arising from the defendants' role in selling fossil fuels. *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022). As part of its reasoning, the Tenth Circuit noted the progression of preemption and displacement considerations under the Clean Water Act from older caselaw in 1972 and 1981 related to point source pollution of Lake Michigan, i.e., *Illinois v. City of Milwaukee (Milwaukee I)*, 406 U.S. 91 (1972); *City of Milwaukee v. Illinois (Milwaukee II)*, 451 U.S. 304 (1981). *Id.* at 1258-60. The Tenth Circuit summarized this U.S. Supreme Court caselaw as finding "the amendments to the Clean Water Act displaced the federal common law for water-based transboundary pollution." *Id.* at 1259.

Here, this Court has previously denied the Defendants' Rule 52(c) motion on the federal law nuisance claim because the present case involves nonpoint sources of agricultural runoff, not point source discharges, like those of *Milwaukee II*. Doc. 2979, at COL 37. This Court concluded, "The Clean Water Act does not speak directly to regulation of nonpoint pollution, and thus has not displaced the federal common law of nuisance." Doc. 2979, at COL 40. As a result, the Court has already spoken on the issue of federal displacement, and there is nothing in *Suncor Energy* that changes the result.

In sum, none of the Defendants' examples are material changes in the law that are relevant to the outcome of this case. Neither have the Defendants shown any other reason why they have been prejudiced. Thus, granting relief to the State does not violate the Defendants' due process rights.

The remediation the State seeks is aimed at abating the historical, and enduring, harm caused by the Defendants' pollution accurately chronicled in the Court's Order, Doc. 2979, as well as forestalling additional pollution in the future. The Defendants in no way deny that they are carrying on their historical polluting practices right now and have not indicated that they plan to stop polluting.

13

Necessarily there is still an active case and controversy, and it is a case clearly justifying injunctive relief to stop the Defendants' present and future pollution of the IRW.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' motion to dismiss.

Respectfully Submitted,

s/*Jennifer L. Lewis*
Gentner Drummond, OBA #16645
   *Attorney General*
Garry M. Gaskins, II, OBA #20212
   *Solicitor General*
Jennifer L. Lewis, OBA #32819
   *Deputy Attorney General*
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921

M. David Riggs, OBA #7583
Kristopher E. Koepsel, OBA #19147
Riggs, Abney, Neal, Turpen, Orbison & Lewis
502 West 6th Street
Tulsa, OK 74119
(918) 587-3161

Robert A. Nance, OBA #6581
W.A. Drew Edmondson, OBA #2628
Riggs, Abney, Neal, Turpen, Orbison & Lewis
528 N.W. 12th Street
Oklahoma City, OK 73103
(405) 843-9909

Louis W. Bullock, OBA #1305
Bullock Law Firm PLLC
110 W. 7th Street
Tulsa, OK 74119
(918) 584-2001

        Frederick C. Baker, admitted *pro hac vice*
        Motley Rice LLC
        28 Bridgeside Boulevard
        Mount Pleasant, SC 29464
        (843) 216-9186

        On Behalf of the Plaintiffs,
        STATE OF OKLAHOMA, ex rel.
        GENTNER
        DRUMMOND, in his capacity as Attorney
        General of the State of Oklahoma and
        OKLAHOMA SECRETARY OF ENERGY
        AND ENVIRONMENT KEN McQUEEN,
        in his capacity as the TRUSTEE FOR
        NATURAL RESOURCES FOR THE
        STATE OF OKLAHOMA

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants with entries of appearance filed of record.

s/*Jennifer L. Lewis*
Jennifer L. Lewis, OBA #32819
*Deputy Attorney General*
