## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE OF OKLAHOMA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-329-GKF-SH |
| | ) | |
| TYSON FOODS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS TO
## CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)
## AND STAY FURTHER PROCEEDINGS PENDING APPEAL

Mark D. Hopson
Frank R. Volpe
Gordon D. Todd
Cody L. Reaves (*pro hac vice* forthcoming)
Peter A. Bruland (*pro hac vice* forthcoming)
David H. Kinnaird (*pro hac vice* forthcoming)
Sidley Austin LLP
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
(202) 736-8711 (facsimile)
mhopson@sidley.com
fvolpe@sidley.com
gtodd@sidley.com
cody.reaves@sidley.com
pbruland@sidley.com
dkinnaird@sidley.com

*Attorneys for Tyson Foods, Inc.,*
*Tyson Poultry, Inc., Tyson Chicken, Inc.,*
*and Cobb-Vantress, Inc.*

(additional counsel listed on inside cover)

September 20, 2024

A. Scott McDaniel, OBA #16460
McDaniel Acord, PLLC
9343 East 95th Court
Tulsa, OK  74133
(918) 382-9200

*Attorney for Tyson Foods, Inc., Tyson
Poultry, Inc., Tyson Chicken, Inc.,
Cobb-Vantress, Inc., and Peterson
Farms, Inc.*

Robert George, OBA #18562
George's, Inc.
402 W. Robinson Ave.
Springdale, AR  73764
(479) 927-7249

K.C. Dupps Tucker
Kristy E. Boehler
The Law Group of Northwest
   Arkansas PLLC
1830 Shelby Lane
Fayetteville, AR 72704
(479) 316-3760

Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

Clinton Russell, OBA # 19209
Taylor, Foster, Mallett, Downs,
   Ramsey & Russell
400 West Fourth Street
Claremore, OK 74018
(918) 343-4100
crussell@soonerlaw.com

*Attorneys for George's, Inc. and
George's Farms, Inc.*

John R. Elrod (admitted *pro hac vice*)
Vicki Bronson, OBA 20574
Conner & Winters, P.C.
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Simmons Foods, Inc.*

Robert P. Redemann, OBA #7454
William D. Perrine, OBA #11955
Perrine, Redemann, Berry,
   Taylor & Frette, PLLC
1800 S. Baltimore Ave., Suite 900
Tulsa, OK 74119
(918) 382-1400
(918) 382-1499 (facsimile)
rredemann@pmrlaw.net
wperrine@pmrlaw.net

Robert E. Sanders, MSB#6446
   (admitted *pro hac vice*)
Young Wells Williams P.A.
P.O. Box 6005
Ridgeland, MS   39158-6005
(601) 948-6100
(601) 355-6136 (facsimile)
rsanders@youngwells.com

*Attorneys for Cal-Maine Foods*

John H. Tucker, OBA 9110
Theresa N. Hill, OBA 19119
Rhodes Hieronymus Jones
   Tucker & Gable
Two W. 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK  74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com

Delmar R. Ehrich
   (admitted *pro hac vice*)
Bruce Jones (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN  55402-3901
(612) 766-7000
(612) 766-1600 (facsimile)
Delmar.ehrich@faegredrinker.com
Bruce.jones@faegredrinker.com

*Attorneys for Cargill, Inc. and Cargill
Turkey Production, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

I.     The Court should certify its orders for interlocutory appeal. .......................... 4

     A.    The orders involve a controlling question of law. .................................. 5

          1.    The orders raise a question of law. ............................................... 5

          2.    The question is controlling. ........................................................... 6

     B.    There is substantial ground for difference of opinion. ........................... 8

          1.    Whether district courts have the authority to issue
               injunctive relief on a stale record is a difficult question
               of first impression in this circuit. .................................................. 8

          2.    Numerous courts have held that a stale record cannot
               support prospective relief. ........................................................... 12

     C.    Resolving the proposed question would materially advance the
          ultimate termination of this case. ........................................................ 16

II.    If the Court certifies its orders, it should stay all further proceedings
     pending appeal. ................................................................................................... 18

CONCLUSION ................................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**

Page(s)

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ................................................... 5

*Aikins v. Microsoft Corp.*,
2000 WL 310391 (E.D. La. Mar. 24, 2000) ........................................ 20

*In re Air Disaster at Lockerbie, Scotland*,
733 F. Supp. 547 (E.D.N.Y. 1990) .............................................. 7

*AK Steel Corp. v. PAC Operating Ltd. P'ship*,
2018 WL 1536501 (D. Kan. Mar. 29, 2018) .................................... 6, 7

*Alberty v. Rankins*,
2024 WL 3433656 (N.D. Okla. July 15, 2024) ................................... 20

*Am. Fidelity Assurance Co. v. Bank of N.Y. Mellon*,
2014 WL 8187951 (W.D. Okla. Dec. 12, 2014) ........................... 6, 8, 16

*Am. Comm. for Prot. of Foreign Born v.*
*Subversive Activities Control Bd.*,
380 U.S. 503 (1964) ...................................................... 12, 13

*Atl. Richfield Co. v. NL Indus., Inc.*,
2023 WL 5333756 (D. Colo. Aug. 18, 2023) ................................. 6, 20

*AutoAlert, Inc. v. DealerSocket, Inc.*,
2014 WL 12581767 (C.D. Cal. July 18, 2014)................................... 20

*Baker v. Biddle*,
2 F. Cas. 439 (C.C.E.D. Pa. 1831) ........................................... 10

*Benisek v. Lamone*,
585 U.S. 155 (2018) ......................................................... 10

*United States ex rel. Blyn v. Triumph Grp., Inc.*,
2016 WL 3546244 (D. Utah June 23, 2016) ..................................... 19

*Boellstorff v. State Farm Mut. Auto. Ins. Co.*,
2007 WL 552247 (D. Colo. Feb. 20, 2007)...................................... 5

*Boykin v. Georgia-Pacific Corp.*,
706 F.2d 1384 (5th Cir. 1983) .......................................... 11, 15

*C.L. v. Del Amo Hosp., Inc.*,
   2023 WL 2770918 (9th Cir. Apr. 4, 2023)..................................................... 15

*In re Coleman*,
   2008 WL 11516440 (N.D. Cal. Aug. 26, 2008)........................................... 6

*In re Coleman*,
   345 B.R. 203 (N.D. Cal. 2006) ...................................................................... 6

*In re Cox Enters., Inc.*,
   2015 WL 11233118 (W.D. Okla. Feb. 13, 2015) ................................... 8, 9

*Curtis v. Metro Ambulance Serv., Inc.*,
   982 F.2d 472 (11th Cir. 1993) ...................................................................... 7

*Oklahoma ex rel. Doak v. Staffing Concepts Int'l, Inc.*,
   2014 WL 12493351 (W.D. Okla. Feb. 4, 2014) ............................. 6, 8, 19

*Does 1–11 v. Bd. of Regents of Univ. of Colo.*,
   100 F.4th 1251 (10th Cir. 2024)................................................................... 7

*Duncan v. Finch*,
   10 Ill. (5 Gilman) 296 (1848) ...................................................................... 11

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
   858 F. Supp. 2d 306 (S.D.N.Y. 2012) ....................................................... 17

*Forest Guardians v. Bureau of Land Mgmt.*,
   188 F.R.D. 389 (D.N.M. 1999) .................................................................... 7

*Goodly v. Check-6, Inc.*,
   2018 WL 11512880 (N.D. Okla. Dec. 17, 2018) ...................................... 5

*Johnston v. Standard Min. Co.*,
   148 U.S. 360 (1893) ..................................................................................... 10

*Kansas v. Colorado*,
   514 U.S. 673 (1995) ..................................................................................... 10

*Kerr v. Hickenlooper*,
   2012 WL 4359076 (D. Colo. Sept. 21, 2012) ......................................... 19

*Lasley v. Segal*,
   2024 WL 3626690 (N.D. Okla. Aug. 1, 2024) ........................................ 20

*Martinez v. Back Bone Bullies Ltd.*,
   2022 WL 1027148 (D. Colo. Apr. 6, 2022) ............................................. 19

iii

*N. Plains Res. Council, Inc. v. Surface Transp. Bd.*,
    668 F.3d 1067 (9th Cir. 2011) .................................................................. 15

*New York v. Gutierrez*,
    623 F. Supp. 2d 301 (E.D.N.Y. 2009) ..................................................... 17

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................. 19

*N. Arapaho Tribe v. Ashe*,
    925 F. Supp. 2d 1206 (D. Wyo. 2012)........................................................ 8

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................. 10

*Paper, Allied-Ind., Chem & Energy Workers*
    *Int'l Union v. Cont'l Carbon Co.*,
    428 F.3d 1285 (10th Cir. 2005) .................................................................. 8

*Priorities USA v. Nessel*,
    860 F. App'x 419 (6th Cir. 2021) ............................................................ 21

*Romero v. Securus Techs., Inc.*,
    383 F. Supp. 3d 1069 (S.D. Cal. 2019) ................................................... 21

*Rural Water Dist. No. 4 v. City of Eudora*,
    875 F. Supp. 2d 1260 (D. Kan. 2012) ............................................... 8, 16

*Schmidt v. Navistar, Inc.*,
    2019 WL 2233832 (D.N.M. May 23, 2019) .......................................... 19

*In re SemGroup Energy Partners, L.P.*,
    729 F. Supp. 2d 1276 (N.D. Okla. 2010) ................................................. 5

*Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*,
    2021 WL 945237 (C.D. Cal. Feb. 22, 2021)..................................... 17, 18

*Tarver v. Ford Motor Co.*,
    2017 WL 9477739 (W.D. Okla. 2017) ..................................................... 5

*Tuttle v. Church*,
    53 F. 422 (C.C.D.R.I. 1892) ................................................................... 11

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) ................................................................................. 10

*United States v. Or. State Med. Soc'y*,
    343 U.S. 326 (1952) ........................................................................ 10

*Veterans of Abraham Lincoln Brigade v.
    Subversive Activities Control Bd.*,
    380 U.S. 513 (1965) ........................................................................ 13

*Webb v. Mo. Pac. R. Co.*,
    98 F.3d 1067 (8th Cir. 1996) .................................................. 7, 9, 14

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) .................................................................. 10, 11

*Windsor v. McVeigh*,
    93 U.S. (3 Otto) 274 (1876) ............................................................ 9

*XTO Energy, Inc. v. ATD, LLC*,
    189 F. Supp. 3d 1174 (D.N.M. 2016) ........................................... 12

## Statutes

28 U.S.C. § 1292(b) .................................................................. 2, 4, 17, 19

## Other Authorities

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
    Procedure* § 3930 (3d ed. 2024) ............................................. 6, 7, 16, 17

## INTRODUCTION

In its June 26, 2024 Order denying Defendants' Motion to Dismiss (ECF No. 3023, denying ECF No. 3010), the Court reaffirmed its January 2023 conclusion that Defendants may be held liable and Oklahoma is "entitled to injunctive relief" on this now-fourteen-year-old record. F&C at 202 (ECF No. 2979). Yet the Court recognized during the September 13, 2024 scheduling conference that so stale a record would be "vulnerable" on appeal. Sept. 13, 2024 Tr. 21:6–8 (ECF No. 3040). To shore up the record, the Court has now ordered the parties to appear at a hearing starting December 3, 2024, at which the State will bear the burden to prove up whatever remedy it proposes based on current watershed conditions, and Defendants will bear the burden to prove "prudential mootness" based on changed circumstances. (ECF No. 3023 at 8; ECF No. 3038). As we explained at the status conference, Defendants respectfully disagree with the Court's proposed course of action for multiple reasons.

It is no answer that, as the Court indicated at the status conference, this hearing will be focused on remedy and "changed circumstances." As a practical matter, the hearing cannot be so cabined. Any witness who opines on current conditions in the watershed will necessarily be relying on facts, data, and causal assumptions— any of which will have to be confirmed or rebutted through fact and expert discovery. After fourteen years, Defendants are also entitled to question ascribing any current conditions to their past or present conduct. And as a legal matter, the path the Court charts does not cure the problems Defendants have raised. In response to our justi-ciability argument, Oklahoma and the Court both pointed to the prior record. But if

we are correct, that record cannot support any prospective injunctive relief *because it is stale*. The Court may hear evidence on remedy, but if it does not also hear current evidence on all other pertinent issues, the record will remain irretrievably flawed.

Defendants respectfully urge an alternative course. When a "controlling question of law" offers "substantial ground[s] for difference of opinion," Congress has authorized district courts to certify an interlocutory appeal to "advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

This case is an ideal candidate for certification. The decisions at issue implicate the same controlling question of law: whether district courts have the authority to grant injunctive relief on a record as stale as this one. The Court concluded that it may; yet there are substantial grounds for the Tenth Circuit to disagree, since the controlling question raises novel, difficult issues under justiciability doctrines and the law of remedies. The Supreme Court, along with the Fifth, Eighth, and Ninth Circuits, have all declined to grant prospective relief under analogous circumstances. Finally, an interlocutory appeal stands to advance the case—and save both the Court and the parties considerable time and resources. If the Tenth Circuit later reversed on the threshold ground that district courts lack authority to grant injunctive relief on a stale record, any efforts spent litigating a remedy will have been wasted. In short, this is the rare case where certification under section 1292(b) is appropriate. We appreciate the Court has already indicated it will not look favorably upon this motion. But we file it nonetheless to let the Court consider it in full, and respectfully

petition the Court to certify its decisions for interlocutory review and to stay further proceedings while the Tenth Circuit reviews the case.

## BACKGROUND

This case began nineteen years ago.  In 2005, Oklahoma sued a group of poultry producers for allegedly polluting the waters of the Illinois River Watershed.  The State sought an array of remedies, including an injunction requiring Defendants to "remediat[e]" the watershed.  Oklahoma's Proposed F&C at 356 (ECF No. 2873).  The case went to trial in September 2009, *see* ECF No. 2644, and the record closed in January 2010.

Thirteen years later, in January 2023, the Court concluded that "the State is entitled to injunctive relief."  F&C at 202.  The freshest evidence underlying that holding is from 2010—and much of the record dates from the 1990s and early 2000s. For example, the Court gave "considerable weight" to reports from 1992, 1999, 2006, and 2008, several of which analyzed data that were already years old.  F&C at 104– 05.  The Court also placed "substantial weight" on observations from 2007, *id.* at 158, and expert analyses based on water samples collected between 2005 and 2007, *id.* at 136–40, 144.  And it relied on runoff data from 2000–2004, *id.* at 75, along with soil tests from 1999, 2000, and 2003, *id.* at 101.

Defendants moved to dismiss for lack of subject-matter jurisdiction on the ground that injunctive relief cannot issue on such a stale record.  *See* MTD at 6–8 (ECF No. 3010).  Because the record here is clearly stale, Defendants argued that Oklahoma's claims for injunctive relief are no longer redressable.  *Id.*  "Even if the record could have supported injunctive relief at the close of trial, it is too stale" to

warrant such relief today.  *Id.* at 11.  Although Oklahoma opposed Defendants' motion, *see* ECF No. 3012, it did not dispute Defendants' premise that the record is stale as a matter of law.

This Court denied Defendants' motion.  Like Oklahoma, the Court did not disagree that a thirteen-year-old record is stale.  Still, the Court reiterated that "injunctive relief is warranted" on the grounds "previously set forth in [its] Findings of Facts and Conclusions of Law."  MTD Op. at 7.  Having reaffirmed its answer to that threshold question, the Court stated that it would hear "new evidence" and "make additional findings and conclusions as to the specific terms of [that] relief and the act or acts to be restrained or required."  *Id.* at 8.  The Court has now set a hearing to that end for December 3, 2024.

## ARGUMENT

## I.  The Court should certify its orders for interlocutory appeal.

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory appeal of orders that (i) "involve[] a controlling question of law," (ii) "as to which there is substantial ground for difference of opinion," when doing so (iii) "may materially advance the ultimate termination of the litigation."  All three conditions are met here.  The relevant orders implicate a predicate question of law whose answer will control the next stage of this case: whether district courts may issue injunctive relief on a stale record.  This Court necessarily held that they can, but there are substantial grounds for the Tenth Circuit to disagree.  And certifying the question for immediate appeal has the potential to hasten termination of the litigation while avoiding an unnecessary waste of time and resources. In short: the "exceptional circumstances"

of this case make it an easy candidate for certification. *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1312 (N.D. Okla. 2010).

### A.   The orders involve a controlling question of law.

This Court's findings and conclusions and its order denying Defendants' motion to dismiss both raise the same controlling question of law: whether a district court has the authority to grant injunctive relief on a stale record.

### 1.   The orders raise a question of law.

A "question of law" is one that "requir[es] resolution of 'abstract' legal issues," *In re SemGroup*, 729 F. Supp. 2d at 1312, with "general relevance" beyond the "facts of a particular case." *Tarver v. Ford Motor Co.*, 2017 WL 9477739, at *2 (W.D. Okla. 2017) (citation omitted).  Simply put, a legal question is "something the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000).  "[T]hreshold procedural issues" are quintessential legal questions, *Boellstorff v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 552247, at *2 (D. Colo. Feb. 20, 2007), as are issues involving the meaning of constitutional or common-law doctrines, *see Goodly v. Check-6, Inc.*, 2018 WL 11512880, at *1 (N.D. Okla. Dec. 17, 2018).

Whether district courts may grant injunctive relief on a stale record is an archetypal question of law.  It involves "abstract" principles of federal jurisdiction and equitable relief, *In re SemGroup*, 729 F. Supp. 2d at 1312—matters of "general relevance" that transcend the "evidence or facts" of this case, *Tarver*, 2017 WL 9477739, at *2.  In other words, the Tenth Circuit could "quickly and cleanly" decide the certified question "without having to study the record." *Ahrenholz*, 219 F.3d at 677.  Here,

Oklahoma did not meaningfully dispute the staleness of the record; rather, the State asserted that it continues to suffer injury.  Indeed, at the subsequent status conference the Court and the State acknowledged that the record is "vulnerable" on account of the staleness.  Sept. 13, 2024 Tr. 21:6–8.  Whether prospective injunctive relief may be granted on such a record is readily addressable as a matter of law

### 2. The question is controlling.

**a.** A legal question is "controlling" when "its resolution is quite likely to affect the further course of the litigation." *Atl. Richfield Co. v. NL Indus., Inc.*, 2023 WL 5333756, at *5–6 (D. Colo. Aug. 18, 2023) (quoting *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996)).  That will be true whenever "interlocutory reversal might save time for the district court, and time and expense for the litigants." *Oklahoma ex rel. Doak v. Staffing Concepts Int'l, Inc.*, 2014 WL 12493351, at *2 (W.D. Okla. Feb. 4, 2014) (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)).  By the same logic, there is "no doubt" that an issue is controlling when its "incorrect disposition would require reversal of a final judgment."  16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3930 (3d ed. 2024); *see also Am. Fidelity Assurance Co. v. Bank of N.Y. Mellon*, 2014 WL 8187951, at *3 (W.D. Okla. Dec. 12, 2014).

Questions that implicate justiciability plainly fit the bill.  *In re Coleman*, 345 B.R. 203, 206 (N.D. Cal. 2006), is a good example.  Although the district court denied a motion to dismiss that case on ripeness grounds, it later certified an interlocutory appeal, deeming ripeness a controlling question of law, *In re Coleman*, 2008 WL 11516440, at *1 (N.D. Cal. Aug. 26, 2008); *see also, e.g., AK Steel Corp. v. PAC*

6

*Operating Ltd. P'ship*, 2018 WL 1536501, at *2 (D. Kan. Mar. 29, 2018) ("[S]ubject matter jurisdiction is a controlling question of law."); *Forest Guardians v. Bureau of Land Mgmt.*, 188 F.R.D. 389, 396 (D.N.M. 1999) ("Standing is a controlling question ....").

Questions about the availability of particular remedies are also controlling. The Eastern District of New York's decision in *In re Air Disaster at Lockerbie, Scotland*, 733 F. Supp. 547 (1990), illustrates this point.  The district court there dismissed all claims for punitive damages, reasoning that such relief is "barred by the Warsaw Convention."  *Id.*  But it later agreed that the issue was a controlling question of law and "certif[ied] an interlocutory appeal."  736 F. Supp. 18, 21 (E.D.N.Y. 1990); *see also Curtis v. Metro Ambulance Serv., Inc.*, 982 F.2d 472, 473 (11th Cir. 1993) (availability of compensatory and punitive damages was controlling question warranting interlocutory appeal).

**b.**     Like the justiciability question in *Coleman* and the remedy question in *Lockerbie*, the question whether this Court may award injunctive relief on a stale record is controlling.  Start with the obvious: "incorrect disposition" of that question would "require reversal of a final judgment."  16 Wright & Miller, § 3930; *compare Does 1–11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1261 (10th Cir. 2024) (Tenth Circuit "must reverse ... if the district court abused its discretion" as to injunctive relief.), *with Webb v. Mo. Pac. R. Co.*, 98 F.3d 1067, 1069 (8th Cir. 1996) ("[T]he district court abused its discretion by granting an injunction on a stale record ....").  On the other hand, "interlocutory reversal might save time" for the Court and

"time and expense" for both parties. *Staffing Concepts*, 2014 WL 12493351, at *2. If the Tenth Circuit ultimately vacates injunctive relief—whether on justiciability grounds or under the law of remedies—any effort spent briefing and deciding the scope of that injunction will have been for nought. *See also infra* § I.C.

> **B.    There is substantial ground for difference of opinion.**

The challenged orders meet the second certification criterion for two independent reasons. *First*, the orders implicate difficult questions about justiciability and equitable remedies that the Tenth Circuit has yet to confront. And *second*, their logic cannot be squared with persuasive authority from the Supreme Court and three federal courts of appeal.

> **1.    Whether district courts have the authority to issue injunctive relief on a stale record is a difficult question of first impression in this circuit.**

"[A] substantial ground for difference of opinion" exists when the issue is "difficult, novel, and involve[s] 'a question on which there is little precedent.'" *Am. Fidelity*, 2014 WL 8187951, at *4 (citation omitted). Although "the mere presence of a disputed issue" of first impression does not warrant certification, *N. Arapaho Tribe v. Ashe*, 925 F. Supp. 2d 1206, 1224 (D. Wyo. 2012) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)), the Tenth Circuit routinely accepts interlocutory appeals when district courts have "waded into uncharted waters," *Paper, Allied-Ind., Chem. & Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1291 (10th Cir. 2005). District courts will certify an appeal so long as the movant's arguments are "colorable," *Rural Water Dist. No. 4 v. City of Eudora*, 875 F. Supp. 2d 1260, 1274 (D. Kan. 2012), or "tenable," *Am. Fidelity*, 2014 WL 8187951, at *4; *see also In re Cox*

*Enters., Inc.*, 2015 WL 11233118, at *2 (W.D. Okla. Feb. 13, 2015) ("While the Court is persuaded that its decision on these issues is correct, it cannot be said that [movant's position is] insubstantial.").

**a.**      Certification is warranted here because this Court's orders implicate difficult, novel questions about justiciability.  Our motion to dismiss explained that issuing injunctive relief on a stale record raises serious jurisdictional concerns.  *See* MTD at 5–11.  In denying that motion, the Court pointed to the fourteen-year-old record itself to conclude that Oklahoma is suffering "continu[ing] *injury*."  MTD Op. at 5 (emphasis added).  But if the record is stale, it cannot support that conclusion. Moreover, our jurisdictional argument focused on a different issue: redressability. The point here is not to relitigate that motion but instead to highlight the difficulty of the jurisdictional questions involved.  Congress enacted section 1292(b) precisely for such issues.  Although Defendants recognize that the Court disagrees about jurisdiction, we respectfully submit that the Tenth Circuit has substantial grounds to find that a stale record renders claims for injunctive relief nonredressable.

Even if Oklahoma's claims for injunctive relief are not moot, staleness also implicates concerns under broader justiciability principles.  *See Windsor v. McVeigh*, 93 U.S. (3 Otto) 274, 282 (1876) ("Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments.").  Injunctive relief is proper only if "the record shows a 'real threat of future violation or a contemporary violation of a nature likely to continue or recur.'"  *Webb*, 98 F.3d at 1068 (alterations omitted)

(quoting *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952)).  Yet a stale record no longer "illuminates or explains the present," *see Or. State*, 343 U.S. at 333, and so cannot support such relief.  Much like the doctrines of mootness and ripeness, then, staleness is "the doctrine of standing set in a time frame."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)).  This Court would not have jurisdiction to grant injunctive relief if Oklahoma filed a complaint whose latest allegations were more than a decade old.  *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure" to alleged harm "does not in itself show a present case or controversy regarding injunctive relief ….").  By the same token, a court in 2024 can no longer issue injunctive relief on a factual record that closed in 2010.

  **b.** Certification also is warranted because the orders implicate difficult questions of first impression under the law of remedies. Because an injunction is an "extraordinary remedy" that does not "issue[] as of course," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982), plaintiffs seeking injunctive relief must "pursue[] their claims diligently," *Benisek v. Lamone*, 585 U.S. 155, 159 (2018).  This duty is not discharged when a plaintiff files its complaint.  Instead, the doctrine of laches precludes equitable relief for plaintiffs "who slumber on their rights" at *any* stage of the case. *Kansas v. Colorado*, 514 U.S. 673, 687 (1995); *see also Johnston v. Standard Min. Co.*, 148 U.S. 360, 370 (1893) ("[T]he mere institution of a suit does not, of itself, relieve a person from the charge of laches."); *Baker v. Biddle*, 2 F. Cas. 439, 450 (C.C.E.D. Pa. 1831) (No. 764) (Baldwin, J., riding circuit) ("[A] defendant may, at any

10

stage of the cause, rely on the want of equity in the bill …."). When a plaintiff "fail[s] in the diligent prosecution of the action[,] the consequences are the same as though no action had been begun." *Johnson*, 148 U.S. at 370. In short: "no relief will be granted in equity where a party has been guilty of great laches." *Tuttle v. Church*, 53 F. 422, 427–28 (C.C.D.R.I. 1892).

Here, the fourteen-year delay offers substantial grounds for the Tenth Circuit to find that injunctive relief cannot issue. *Cf. Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384, 1385 (5th Cir. 1983) (calling five-year delay "shocking" and "unconscionable"). If Oklahoma truly desired the "extraordinary remedy" of injunctive relief, *Weinberger*, 456 U.S. at 312, it should have urged this Court to rule while the record was still fresh—or, failing that, sought mandamus. Instead, Oklahoma sat idly by and watched the record go stale. *See Tuttle*, 53 F. at 428 ("A delay of three years or more has been ordinarily held to be such laches as will preclude a party from [equitable] relief …."). "It was the duty of the complainants to speed the cause with diligence, and if they would not do that, they must suffer the just penalty of their negligence." *Duncan v. Finch*, 10 Ill. (5 Gilman) 296, 297 (1848).

**c.** It is no answer that the Court will take "new evidence" about the "specific terms of the injunctive relief and the act or acts to be restrained or required." ECF No. 3023 at 8; ECF No. 3038. That conflates two questions:

*Question One:* Is Oklahoma entitled to injunctive relief in the first place?

*Question Two:* If so, what form should that injunction take?

Evidence adduced to answer Question Two cannot shore up the answer to Question One any more than evidence adduced at sentencing could shore up a shaky conviction. If Defendants are right, then reaching Question Two at all would be improper—just like the Court could not hold a sentencing hearing if a jury acquitted. Defendants are asking this Court to certify the orders that answered "yes" to Question One because there are substantial grounds for the Tenth Circuit to reach the opposite conclusion.

### 2. Numerous courts have held that a stale record cannot support prospective relief.

Novelty and difficulty aside, there are also substantial grounds for disagreement when a district court's order "appears contrary" to persuasive authority. *XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1194 (D.N.M. 2016) (quoting 2 Fed. Proc., L. Ed. § 3:218). Here, the Court found it proper to grant an injunction—a form of prospective relief—on a stale record. But the Supreme Court and federal courts of appeal across the country have held that a stale record cannot support prospective relief. That alone is reason to certify the issue.

*Supreme Court precedent.* The challenged orders can't be squared with the logic of *American Committee for Protection of Foreign Born v. Subversive Activities Control Board*, 380 U.S. 503, 504 (1964). There, a federal agency held a hearing to determine whether the petitioner was a Communist-front organization. After a four-year delay, the agency found that it was—ignoring the petitioner's protest that the

"case [wa]s stale." *Id.* at 504 & n.1; *see also id.* at 506 & n.1 (Douglas, J., dissenting). The agency therefore ordered the petitioner to register with the government, *id.* at 504 (majority op.), and the D.C. Circuit affirmed, 331 F.2d 53, 60–61 (D.C. Cir. 1963). The Supreme Court vacated and remanded. "Since a registration order operates prospectively," it was "apparent that reasonably current [grounds] must be established to justify [the] order." 380 U.S. at 505. But the "petitioner's current status" was no longer "clear on [the existing] record." *Id.* That made it impossible to sustain the order without first bringing "the record … up to date." *Id.* at 504–05. The Court applied the same reasoning in a companion case whose record was even older. *See Veterans of Abraham Lincoln Brigade v. Subversive Activities Control Bd.*, 380 U.S. 513, 513–14 (1965) (ten-year-old record was "stale").

The Court evidently viewed staleness as a justiciability problem. Dissenting in *Lincoln Brigade*, Justice Douglas argued that the case was "ripe for decision" and that the Court should have "decide[d] the important constitutional questions" lurking behind the registration orders. *Id.* at 514, 517 (Douglas, J., dissenting); *see also Am. Comm.*, 380 U.S. at 511 (Black, J., dissenting) (arguing that the Subversive Activities Control Act was unconstitutional). Yet the majority disagreed—deeming it "[in]appropriate" to decide such "serious constitutional questions" on "so stale a record." *Lincoln Brigade*, 380 U.S. 513, 513–14. In vacating the decisions below, which had affirmed the agency orders, the Supreme Court made it clear that federal courts may not uphold prospective relief on a stale record.

*Federal appellate courts.*   The Fifth, Eighth, and Ninth Circuits have all made clear that a stale record cannot support injunctive relief.  The challenged orders conflict with that persuasive authority.

a.      In the Eighth Circuit, granting injunctive relief on a stale record is an abuse of discretion.  *See Webb*, 98 F.3d at 1069.  The plaintiffs in *Webb* alleged that the defendant railroad discriminated against Black employees.  *See id.* at 1068.  Following trial and a long delay, the district court "ruled in favor of the employees," finding evidence of widespread discrimination.  *Id.*  Then—five years after the trial record closed—the court ordered injunctive relief.  *See id.*  The Eighth Circuit vacated, holding that "the district court abused its discretion by granting an injunction on a stale record."  *Id.* at 1069.

The Eighth Circuit's holding did not depend on "evidence of a change in [the railroad's] practices."  *Contra* MTD Op. at 7.  While the court noted the filing of an affidavit suggesting that the railroad's employment practices had changed, it devoted only two sentences to the contents of that document and did not rely on it.  *See* 98 F.3d at 1068.  Rather, the opinion is strewn with references to "the age of the trial record," *id.*; the date when "the liability phase record … was closed," *id.*; how the "liability phase of the trial [had] ended" six years prior, *id.*; how the injunction had issued "five years after the close of all evidence," *id.* at 1069; and how the "record" was "stale," *id.*  The court also collected cases holding that injunctive relief is "inappropriate" on an outdated record.  *See id.* at 1069.  All of that confirms that the Eighth Circuit grounded its ruling on the staleness of the record, not the affidavit.

**b.**    The Fifth Circuit has likewise held that a stale record cannot support injunctive relief.  The plaintiffs in *Boykin v. Georgia-Pacific Corp.* alleged that their employer had discriminated against them.  Their case went to trial in 1976, but the magistrate judge waited five years before ruling for the defendant.  The Fifth Circuit reversed, finding that the plaintiffs were "entitled to make a claim for back pay and other relief."  706 F.2d at 1394.  The court was "unable" to "evaluate the propriety of granting injunctive relief," however, because the latest evidence was eight years old. *Id.*  Nothing in the Fifth Circuit's opinion suggested that injunctive relief was unwarranted because the employer had changed its ways during the intervening years.  Indeed, the only basis for the court's refusal to grant injunctive relief was that the stale record shed no light on the present circumstances.

**c.**    The Ninth Circuit follows a similar rule.  The plaintiff in *C.L. v. Del Amo Hospital, Inc.*, 2023 WL 2770918, at *1 (9th Cir. Apr. 4, 2023), sought an injunction requiring the defendant to accommodate her service dog.  *Id.*  The district court denied relief, the plaintiff appealed, and the Ninth Circuit vacated "for further development of the factual record." *Id.*  As the panel explained, "[t]he district court's decision was based on stale record evidence"—"preclud[ing] appellate review" of the plaintiff's claim. *Id.*  As in *Webb* and *Boykin*, no injunctive relief could issue because the record was too stale to assess whether such relief was warranted. *Cf. N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1085–86 (9th Cir. 2011) (finding it arbitrary and capricious for agency to rely on "stale" environmental data, without "any

scientific studies or testimony" to show that the environment was unchanged after ten years).

*     *     *

Defendants recognize that the Court sees things differently.  Still, the arguments against proceeding towards injunctive relief in the manner the Court proposes readily meet the threshold for certification.  *See Eudora*, 875 F. Supp. 2d at 1274 (certifying order where movant's arguments were "colorable"); *Am. Fidelity*, 2014 WL 8187951, at *4 (certifying order where movant's arguments were "tenable").  That is especially true because (as we explain next) the Tenth Circuit's guidance on this threshold issue could save both the Court and the parties considerable time and resources.  *See* 16 Wright & Miller, § 3930 ("If proceedings that threaten to endure for several years depend on [a threshold question], certification may be justified at a relatively low threshold of doubt.").

## C.     Resolving the proposed question would materially advance the ultimate termination of this case.

This case also meets the final certification criterion.  While the Tenth Circuit will hear these arguments sooner or later, an interlocutory appeal would save considerable time and effort if Defendants are right.  By contrast, pressing forward to decide the scope of an injunction based on a partial reopening of the record risks wasting time and effort. If that injunction is later overturned on threshold grounds after additional pre-judgment litigation or remedial-phase litigation and implementation, judicial resources will have been spent for nought, and the parties will have incurred costs they cannot recoup.

1.      To decide whether an interlocutory appeal will "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), courts "consider the effect of a reversal on the management of the case." *Sullivan v. Kelly Servs., Inc*, 2010 WL 1445683, at *1 (N.D. Cal. Apr. 7, 2010).   Certification is warranted when reversal would "significantly restrict the scope of th[e] litigation," *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012), or "substantially narrow the scope of potential relief available to plaintiffs," *New York v. Gutierrez*, 623 F. Supp. 2d 301, 317 (E.D.N.Y. 2009), *rev'd on other grounds sub nom. New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524 (2d Cir. 2010).   This criterion is also satisfied when reversal would "bring certainty to the breadth and duration of discovery" and "clarity to [Defendants'] potential exposure" by "dramatically reduc[ing]" the scope of remaining issues.  *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 2021 WL 945237, at *2–3 (C.D. Cal. Feb. 22, 2021).  As various courts and commentators have recognized, "[t]he requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law."  16 Wright & Miller, § 3930; *accord Cap. Records, LLC*, 972 F. Supp. 2d at 551 (S.D.N.Y. 2013).

2.      Here, an interlocutory appeal stands to hasten the end of this case.  If the Tenth Circuit concluded that relief is not available on this record, its ruling would "substantially narrow the scope of potential relief available to plaintiffs." *Gutierrez*, 623 F. Supp. 2d at 317.  That, in turn, would "significantly restrict" the issues left to be litigated. *UBS Americas*, 858 F. Supp. 2d at 338.  And with the scope of the case

"dramatically reduced," Defendants would have "clarity" about the "breadth and duration" of further proceedings. *Starz Entm't*, 2021 WL 945237, at *3. If the Tenth Circuit required the matter dismissed without prejudice, or the record reopened in full, its opinion would clarify the scope of further proceedings. Either way, such clarity would illuminate Defendants' "potential exposure," *Starz Entm't*, 2021 WL 945237, at *3.

By contrast, pressing forward without the Tenth Circuit's guidance at this time risks wasting this Court's time and all parties' resources. As the Court has recognized, determining the proper scope of injunctive relief will require "new evidence" and "additional findings and conclusions as to the specific terms of the injunctive relief and the act or acts to be restrained or required." MTD Op. at 8. But as Defendants have explained, as a matter of law and logic any reopening requires the full protections of the rules of civil procedure, and new evidence on every issue pertinent to liability—not just remedy. But all of those efforts would be wasted if the Tenth Circuit later reversed on the threshold ground that district courts lack authority to grant injunctive relief on a stale record. In that case, this Court would have spent time and effort that cannot be recovered, and both parties would have incurred substantial litigation costs only to start over again after remand.

## II.   If the Court certifies its orders, it should stay all further proceedings pending appeal.

When a court certifies an interlocutory appeal, it may also stay further proceedings pending the outcome of that appeal. This "power to grant a stay pending review" is not only "part of a court's 'traditional equipment for the administration of

18

justice,'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted), but is also contemplated in section 1292(b) itself.  *See* 28 U.S.C. § 1292(b) ("district judge or the Court of Appeals" may "order" that "proceedings in the district court" be "stay[ed]").  Although the Court need not analyze the traditional stay factors under these circumstances, those factors favor a stay in all events.

A.      When courts in this circuit grant section 1292(b) motions, they often stay further proceedings as a matter of course—without marching through the traditional stay factors.  *E.g.*, *Martinez v. Back Bone Bullies Ltd.*, 2022 WL 1027148, at *3 (D. Colo. Apr. 6, 2022) (granting stay pending interlocutory appeal, without citing traditional stay factors); *accord Schmidt v. Navistar, Inc.*, 2019 WL 2233832, at *2 (D.N.M. May 23, 2019); *United States ex rel. Blyn v. Triumph Grp., Inc.*, 2016 WL 3546244, at *3 (D. Utah June 23, 2016); *Staffing Concepts*, 2014 WL 12493351, at *3; *Kerr v. Hickenlooper*, 2012 WL 4359076, at *4 (D. Colo. Sept. 21, 2012).  If the Court certifies its orders here, it should do the same.

B.      A stay is also warranted under the traditional factors.

1.      Some courts in this circuit have stayed further proceedings pending interlocutory appeal after analyzing a modified version of the *Nken* factors.  *See* 556 U.S. at 426.  Those courts have considered: (i) "the plaintiff's interests in expeditiously litigating [the action] and the potential prejudice to plaintiff of a delay," (ii) "the burden on the defendants" of denying a stay, (iii) "the convenience to the court" of staying proceedings, (iv) "the interests of [nonparties]," and (v) "the public

interest." *Atl. Richfield Co.*, 2023 WL 5333756, at *12 n.15 (quoting *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)).

**2.**      Those factors warrant a stay here.  As to the parties' interests, Oklahoma's own conduct belies any claim that it would be prejudiced by a stay.  Throughout the thirteen years when a decision was pending, the State chose not to ask this Court to rule or seek mandamus.  After keeping silent for all that time, Oklahoma can hardly complain about a brief stay while the Tenth Circuit considers the issues to be raised.  On the other hand, forcing the parties to "simultaneously litigate" in "multiple courts" would impose "considerable hardship and inequity." *Aikins v. Microsoft Corp.*, 2000 WL 310391, at *1 (E.D. La. Mar. 24, 2000); *see also, e.g.*, *AutoAlert, Inc. v. DealerSocket, Inc.*, 2014 WL 12581767, at *7 (C.D. Cal. July 18, 2014) (granting stay to "reduce the burden of litigation" and avoid "simultaneous[s]" litigation on "multiple fronts").

A stay would also conserve judicial resources.  If Defendants are right, then pressing ahead without the Tenth Circuit's guidance would only waste time and effort.  That's the last thing this Court needs—especially now, when dockets in the Northern District are busier than ever.  *E.g.*, *Lasley v. Segal*, 2024 WL 3626690 (N.D. Okla. Aug. 1, 2024) (Frizzell, J.) (addressing claim for postconviction relief under *McGirt*); *Alberty v. Rankins*, 2024 WL 3433656 (N.D. Okla. July 15, 2024) (Frizzell, J.) (same). Judicial economy strongly favors a stay.

Finally, a stay would serve the interests of both nonparties and the public at large.  Pressing ahead risks wasting the time of nonparties who would be called to

testify about the scope of any remedy. If the Tenth Circuit vacated an injunction on threshold staleness grounds, those same witnesses may have to testify again on remand—a needless duplication of effort. Additionally, should the Court decide to proceed with the imposition of an injunction during the pendency of the appeal, Defendants could then pursue their third-party contribution claims, which have been stayed since 2006, a further consideration affecting nonparties. *See* ECF No. 914, at 12. For its part, "the public also has an interest in efficient use of judicial resources," *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1077 (S.D. Cal. 2019), and in "correct application of the law," *Priorities USA v. Nessel*, 860 F. App'x 419, 423 (6th Cir. 2021) (citation omitted). Those interests would be best served by staying further proceedings while the Tenth Circuit weighs in. Granting a stay would serve the interests of judicial economy and of the public by creating greater clarity on a path forward before such claims are litigated.

## CONCLUSION

The Court should certify its findings of fact and conclusions of law, ECF No. 2979, and its order denying Defendants' motion to dismiss, ECF No. 3023—specifically, the question whether a district court has the authority to order prospective injunctive relief in whole or in part on a fourteen-year-old record. The Court should also stay further proceedings pending appeal. If the Tenth Circuit agrees to hear the appeal, the stay should remain in effect until that court issues it mandate.

September 20, 2024                            Respectfully submitted,


/s/ *Gordon D. Todd*                         /s/ *A. Scott McDaniel*
Mark D. Hopson                               A. Scott McDaniel, OBA #16460
Frank R. Volpe                               McDaniel Acord, PLLC
Gordon D. Todd                               9343 East 95th Court
Cody L. Reaves                               Tulsa, OK  74133
   (*pro hac vice* forthcoming)          (918) 382-9200
Peter A. Bruland
   (*pro hac vice* forthcoming)          *Attorney for Tyson Foods, Inc., Tyson*
David H. Kinnaird                            *Poultry, Inc., Tyson Chicken, Inc.,*
   (*pro hac vice* forthcoming)          *Cobb-Vantress, Inc., and Peterson*
Sidley Austin LLP                            *Farms, Inc.*
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
(202) 736-8711 (facsimile)
mhopson@sidley.com
fvolpe@sidley.com
gtodd@sidley.com
cody.reaves@sidley.com
pbruland@sidley.com
dkinnaird@sidley.com

*Attorneys for Tyson Foods, Inc.,*
*Tyson Poultry, Inc., Tyson Chicken,*
*Inc., and Cobb-Vantress, Inc.*

/s/ *Robert George*
Robert George, OBA #18562
George's, Inc.
402 W. Robinson Ave.
Springdale, AR  73764
(479) 927-7249

K.C. Dupps Tucker
Kristy E. Boehler
The Law Group of Northwest
 Arkansas PLLC
1830 Shelby Lane
Fayetteville, AR 72704
(479) 316-3760

Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

Clinton Russell, OBA # 19209
Taylor, Foster, Mallett, Downs,
 Ramsey & Russell
400 West Fourth Street
Claremore, OK 74018
(918) 343-4100
crussell@soonerlaw.com

*Attorneys for George's, Inc. and
George's Farms, Inc.*

/s/ *John R. Elrod*
John R. Elrod (admitted *pro hac vice*)
Vicki Bronson, OBA 20574
Conner & Winters, P.C.
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Simmons Foods, Inc.*

/s/ *Robert P. Redemann*
Robert P. Redemann, OBA #7454
William D. Perrine, OBA #11955
Perrine, Redemann, Berry,
 Taylor & Frette, PLLC
1800 S. Baltimore Ave., Suite 900
Tulsa, OK 74119
(918) 382-1400
(918) 382-1499 (facsimile)
rredemann@pmrlaw.net
wperrine@pmrlaw.net

Robert E. Sanders, MSB#6446
 (admitted *pro hac vice*)
Young Wells Williams P.A.
P.O. Box 6005
Ridgeland, MS  39158-6005
(601) 948-6100
(601) 355-6136 (facsimile)
rsanders@youngwells.com

*Attorneys for Cal-Maine Foods*

<u>/s/ *John H. Tucker*</u>
John H. Tucker, OBA 9110
Theresa N. Hill, OBA 19119
Rhodes Hieronymus Jones
   Tucker & Gable
Two W. 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK  74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com

Delmar R. Ehrich
   (admitted *pro hac vice*)
Bruce Jones (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN  55402-3901
(612) 766-7000
(612) 766-1600 (facsimile)
Delmar.ehrich@faegredrinker.com
Bruce.jones@faegredrinker.com

*Attorneys for Cargill, Inc. and Cargill Turkey Production, LLC*

## CERTIFICATE OF SERVICE

I certify that on September 20, 2024, I caused this document to be filed with the Clerk of Court through CM/ECF, which will serve copies on all registered counsel.

/s/ *Gordon D. Todd*
Gordon D. Todd