# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TYSON FOODS, INC., *et al.*, ) <br> ) <br> Defendants. ) | Case No. 05-cv-329-GKF-SH |

## DEFENDANTS' EXPEDITED MOTION AND BRIEF IN SUPPORT OF POSTPONING EVIDENTIARY HEARING AND APPLYING THE FEDERAL RULES OF CIVIL PROCEDURE

On September 13, 2024, having rejected Defendants' arguments that the suit was stale and moot and should be dismissed, the Court set this matter for an evidentiary hearing starting December 3, 2024. The Court did so over Defendants' objections. Defendants argued that any reopening of the record should include the entire case and be conducted subject to the full protections of the Federal Rules of Civil Procedure. The Court disagreed. Instead, the Court set a hearing on two issues: whatever unknown remedies the Plaintiffs will ask the Court to impose; and whether the Court should stay further action under the doctrine of prudential mootness. The Court appears to have viewed these issues as narrow and discrete: the Court noted that no discovery was necessary, skipped fact discovery, required simultaneous expert disclosures, and—on 12 weeks' notice—set the case for a 4 day trial, with an additional 5 days reserved, if necessary.

On November 18, as required, both sides disclosed their cases, and it is now clear that the forthcoming hearing will be no mere freshening up of discrete portions of the record. The parties have disclosed a combined 12 expert and opinion witnesses and a further approximately 20 fact witnesses,[1] along with 629 exhibits. What is more, far from being constrained to specific remedies to be imposed in the watershed, Plaintiffs' case attempts to retry significant parts of the underlying record, including the introduction of an entirely new (to this litigation) watershed causation model. Last time around, after extensive discovery, *Daubert* practice, and multiple rounds of testimony, the Court rejected the State's modeling work. *Id.* at 144–157. This time, Defendants have only four days, and no discovery, to raise *Daubert*/Rule 702 objections and two weeks to prepare to defend against this case, some of which—such as the model—the State has been working on for years.

The Federal Rules of Civil Procedure do not countenance such trial-by-ambush. For example, FRCP 26(a)(2)(D)(i) requires expert disclosures 90 days before trial and FRCP 26(a)(2)(B) and (b)(4)(A) ensure the ability to depose experts following the exchange of reports. However the Court conceived of this hearing back in September, it is now vastly more. As Defendants argued at the September 13, 2024 hearing, the issues in this case are all interrelated. Any reopening should fairly include the entire case, and both parties should be afforded the full protections and benefits of the Federal Rules. Any contrary approach—and particularly the one that is playing out

---

[1] We say "approximately," as there are some overlaps and some witnesses identified by category, not name.

2

now—would violate the parties' right to due process of law. Accordingly, Defendants respectfully move the Court to cancel the hearing and to reset this litigation for full discovery and a proper re-trial.[2]

## BACKGROUND

The Court held trial in this matter in 2009–2010, with post-trial briefing submitted February 5, 2010. Nearly thirteen years later, on January 18, 2023, the Court issued its Findings of Fact and Conclusions of Law. *See* Dkt. 2979 (FFCL). The Court found Defendants liable and concluded that "the State is entitled to injunctive relief for each defendant's violations of 27A Okla. Stat. § 2-6-105." *Id.* at 202. The Court did not, however, make findings as to any specific remedy to be imposed or enter final judgment. Rather, the Court directed the parties to "meet and attempt to reach an agreement with regard to remedies to be imposed," *id.* at 213, which efforts proved unsuccessful.

After mediation failed, Defendants filed a motion to dismiss on the bases that the then-14 year old record was stale and therefore could not support any judgment and relief, and that proceeding would violate due process. *See* Dkt. 3010. Although the Court denied the motion, *see* Dkt. 3023, it did not disagree that the record was stale. Rather, in the Court's view, the appropriate remedy was not dismissal but reopening the record to take new evidence and make new findings. *Id.* at 8.

At a September 13, 2024 status conference the Court confirmed this approach, setting the matter for trial on two issues: (i) "the specific terms of injunctive relief in

---

[2] Plaintiffs object to the requested relief.

3

the act or acts to be restrained or required based on the current conditions in the IRW upon which the plaintiffs bear the burden of proof," and (ii) "prudential mootness." Dkt. 3040 ("Hr'g Tr.") at 5:19-24.  Plaintiffs bear "the burden of showing continued necessity and the specific types of injunctive relief that need to be imposed," and "the state bears the burden to show that the specific form of injunctive relief is warranted, the state must show that the prohibitions or conditions they seek to impose are justified based on the current condition of the IRW." *Id.* at 7:19–21, 27:5–8.

To accomplish this, the Court directed the parties to exchange witness lists, exhibits, and expert reports simultaneously on November 18, 2024.  As to discovery otherwise, the Court stated, "[f]rankly, I don't see any need for discovery, but if you all believe it's necessary, you can work that out between yourselves." *Id.* at 6:23–25.

Defendants objected.  Under the circumstances, and with a now-15 year old trial record, we argued that this case "functionally requires a new trial."  "[A]n expert witness who relies on the old record for some factual predicates," we explained, could be challenged for relying on evidence that was stale and unreliable. *Id.* at 14:4–7. Conversely, "[a]ny witness offering new evidence today or new opinions today is necessarily going to be relying on … current data, that's going to require underlying fact discovery" and that "needs to be tested in the discovery process." *Id.* at 14:14–20. Counsel pointed out that "in federal court before judgement is entered, we're still in the trial phase, [and] the rules of civil procedure still apply," and "[t]o the extent that experts are coming in … discovery should be required." *Id.* at 15:1–5.

4

The Court again rejected Defendants' objections. As to discovery, the Court responded "I learned trial work from guys who were stand-up trial lawyers. They didn't do discovery. They just came in and duked it out." *Id.* at 14:22–24. And as to applying the Federal Rules of Civil Procedure more generally, the Court rejected them as too time consuming. Defendants' "proposal [to conduct discovery in accordance with the Federal Rules] would, you know, kick this thing out another two, three years." *Id.* at 15:11–12. Accordingly, the Court set trial for less than 12 weeks later on December 3, 2024. *Id.* at 32:9; Dkt. 3038.

On September 16, the Court issued a minute order further narrowing pre-trial fact development. The order (1) required the parties to exchange witness lists on November 18 (the same day expert reports are due), (2) set deadlines of November 22 and November 27, respectively, for the filing of *Daubert* (Rule 702) motions and responses, and (3) required the parties to file trial briefs by November 27. Dkt. 3039. The Court's orders otherwise provided for no additional discovery.

Mindful of the Court's direction that "if you all believe it's necessary, you can work [additional discovery] out between yourselves," Hr'g. Tr. 6:24–25, Defendants attempted to arrange some additional discovery with Plaintiffs. As noted above, the Court's orders called for the simultaneous exchange of cases. That meant that Defendants' reports had to be disclosed at the same time as the Plaintiffs' reports they were rebutting. To address this, Defendants asked Plaintiffs to share with Defendants a list of whatever remedies they would propose at trial, and that expert disclosures be staggered. *See* Ex. A. Plaintiffs refused. Not only did they refuse but,

5

notwithstanding the Court's directive that the parties should work such things out between themselves, Plaintiffs took the position that no discovery at all beyond the Court's narrow allowances was allowed or appropriate. *See* Ex. B. Plaintiffs also represented that they would not be presenting testimony as to specific remedies. *Id.* ("[A]ddressing the details of remedies is a subject for a later date – not the focus of the evidentiary hearing."). As to discovery, Plaintiffs have maintained that position refusing any other discovery to this day. *See* Ex. C ("[T]he Court has denied discovery for the upcoming December hearing ….").

On November 18, the day of disclosure arrived. Defendants identified six retained experts and produced four expert reports addressing current water quality in the IRW, changed circumstances, and a list of remedies Plaintiffs had mentioned in 2009. Defendants also disclosed 14 fact witnesses and several categories of witnesses they may have to call after seeing the Plaintiffs' case. *See* Dkt. 3059. And, Defendants disclosed 261 exhibits, again along with a broad reservation of rights to produce additional evidence to rebut the Plaintiffs' as-yet-undisclosed case-in-chief. *See* Dkt. 3060.

Plaintiffs' disclosures swept more broadly. Plaintiffs identified 368 trial exhibits spanning thousands of pages and six expert reports totaling 265 pages. *See* Dkt. 3057. Plaintiffs proffer two opinion witnesses to testify (contrary to Attorney General Drummond's representations in Exhibit B) as to various remedies Plaintiffs will be advancing—the creation of vegetative buffer strips, cessation of litter application, and the creation of artificial wetlands. *See* Dkt. 3058. Two other opinion witnesses were

6

tasked with reviewing the Court's findings based on the now-15 year old trial record and will testify that at least some of those findings "still hold true today." *Id.* A fifth witness will address a smorgasbord of issues, including using Google Maps to count poultry houses and map litter hauling routes, as well as Oklahoma's participation in the Joint Compact Commission and water quality standards. *Id.*

The sixth and last witness is a researcher at Texas A&M University who has for years been employed by the State of Oklahoma to undertake modeling of the IRW in connection with the preparation of Oklahoma's updated Watershed Management Plan. *Id.* Arkansas' updated plan was released just last week, and Oklahoma's is due in several months. This last witness proposes to drop in the Court's lap years of modeling work and reams of data, including a host of disagreements between Oklahoma and Arkansas as to how properly to model the IRW.[3] This goes far beyond the Court's directive to present evidence as to the need for specific remedies based on current conditions in the watershed, and is instead an attempt to backfill the modeling and causation evidence the Court soundly *rejected* in its FFCL. *See* FFCL ¶¶ 478–513 (according no weight to Plaintiffs' modeling expert).

In addition, Plaintiffs also identify a further six witnesses. *See* Dkt. 3058. Although designated as fact witnesses, they too will mostly be offering opinion testimony. Ed Fite, for example, has extensive opinions about all sorts of things to do with the IRW. *Id.* Although he may know lots of facts, his testimony will contain a

---

[3] This witness's files were so large that they had to be transferred to Plaintiffs via hard drive, instead of produced electronically.

7

litany of opinions. *Id.* Tim Knight, a scuba instructor, will also offer opinion testimony including about water clarity, visibility, and scuba training. *Id.* Eric Lee and Matthew Yockey are employees of the City of Tulsa who will, apparently, be called to testify about the Eucha-Spavinaw watershed. *Id.* Here, Plaintiffs are sponsoring opinion testimony about steps taken and their efficacy in an entirely different piece of litigation in a different watershed.

Trial is now two weeks away and *Daubert* motions are due in two days. Defendants respectfully move for application of the Federal Rules of Civil Procedure to allow discovery into the relevant underlying facts and the bases for every opinion disclosed by Plaintiffs, including the data underlying the expert reports, which will be impossible to conduct by the time *Daubert* motions are due on November 22. Failure to apply the Federal Rules of Civil Procedure and proceeding on the existing schedule would be fundamentally unfair and violate Defendants' due process rights. The Court should not abide the State's attempted trial-by-ambush.

## ARGUMENT

### A. The Federal Rules of Civil Procedure Apply to This Action and the December Hearing

The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts." This "action[] and proceeding[]" is no different. *See* Fed. R. Civ. P. 1.

Rules 26 through 37 allow each side to learn facts known to the other. Here, fact discovery would include water quality data, ODAFF records, regulatory undertakings including modeling, and other facts now disclosed for the first time as part of

8

the Plaintiffs' case.  The State, for its part, could have inquired into *inter alia* growing houses, litter management, and transportation, rather than trying to use Google.

The Rules also address expert discovery.  As relevant here, the Rules require disclosures of expert reports "at least 90 days before the date set for trial or for the case to be ready for trial." *See* Fed. R. Civ. P. 26(a)(2)(D)(i).  Further, "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." *See* Fed. R. Civ. P. 26(b)(4)(A).  If Rule 26(a)(2)(B) requires a report from the expert, "the deposition may be conducted only after the report is provided." *See* Fed. R. Civ. P. 26(b)(4)(A).  The Court should apply those rules here.

At the September status hearing, we expressed our worry that failure to allow discovery as contemplated by the Federal Rules would cause the case and this hearing to "spin out of control."  Hr'g Tr. 15:6.  That concern has now come to pass.  The parties' disclosures total 12 experts witnesses, ~20 fact witnesses, and 629 proposed exhibits, all of which numbers will almost certainly increase as each side assesses the other's case and looks to rebuttal.  This is no longer a two-week trial.  Before then, the parties now have two days (of four allowed) to assess and bring forward any Rule 702/*Daubert* issues as to any of these experts, and without the benefit of depositions and rebuttal reports.  In fact, Defendants had to prepare their *opposition* reports before seeing Plaintiffs' *opening* reports.

Nothing better underscores the point, substantively or procedurally, than Plaintiffs' proposed modeling expert who, as noted, has been working on her model literally for years.  This testimony goes far beyond the Court's description and

9

mandate for this hearing. As Defendants' expert disclosures show, current conditions in the watershed do not require a model, but simply a review of data depicting current conditions. A model goes not to remedy but to causation; it attempts to ascribe responsibility for conditions. To be sure, Defendants have argued that causation *and every other issue in the case* should be retried. But that is not what the Court ordered. Combined with the Attorney General's refusal to negotiate *any* additional discovery or to stagger expert reports, Defendants would have had to guess that Plaintiffs' would offer a new model, which one it would employ, scry its inputs and assumptions, and rebut it, all sight unseen—an impossible task. And now Defendants must digest years' worth of modeling work and data to prepare a *Daubert* motion in two days.

The Federal Rules should have been applied to these renewed proceedings in full from the outset. If that was not clear in September, it surely is clear now. Defendants could not possibly have anticipated and pre-emptively addressed Plaintiffs' decision to present a case vastly in excess of what the Court called for. Defendants asked then that the Rules be followed and the Court refused. In view of what has come to pass, Defendants respectfully move the Court to apply the Rules going forward. The appropriate course is to halt the hearing and back up to fact discovery, followed by expert discovery, and on to trial.[4]

---

[4] If the Court determines to proceed despite Defendants' procedural and due process objections, the Court should still strike the evidence that goes beyond the Court-ordered scope of the hearing.

10

### B.   Failure to Apply the Federal Rules of Civil Procedure Violates Defendants' Due Process Rights

The Fifth and Fourteenth Amendments require courts to exercise the judicial power "within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Hurtado v. California*, 110 U.S. 516, 535 (1884). Accordingly, due process requires "meaningful notice and opportunity to be heard." *Blanca Tel. Co. v. Fed. Commc'n Comm'n*, 991 F.3d 1097, 1116 (10th Cir. 2021); *see Denny v. Richardson*, 234 F. App'x 862, 865 (10th Cir. 2007) ("[d]ue process requires, at a minimum, that there be notice and an opportunity to be heard at a meaningful time and in a meaningful manner"); *Turney v. F.D.I.C.,* 18 F.3d 865, 868 (10th Cir. 1994) (citing *In re A.H. Robins Co.,* 107 F.R.D. 2, 6 (D. Kan. 1985) and *Goldberg v. Kelly,* 397 U.S. 254 (1970)). If discovery is not conducted pursuant to the Federal Rules of Civil Procedure, Defendants will be afforded neither.

It may well be that once upon a time, and in less complicated matters, "stand-up trial lawyers" "didn't do discovery" and "just came in and duked it out" with no advance notice of the evidence the opposing party will offer. Hr'g Tr. at 14:23–24. But that is simply not the case in mass tort litigation such as this, involving sovereign states, transboundary issues, and federal and state law. Due Process requires more; much more. The factors that determine whether a due process violation has occurred bear this out. In the criminal context, four factors are determinative: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of rights, and (4) prejudice to the defendant. *See Harris v. Champion*, 15 F.3d 1538, 1558–59 (10th

Cir. 1994) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)).  While the "demands of due process" are "less strict" in civil litigation than in a criminal case, *United States v. Zalazar-Torres*, 25 F. App'x 707, 708 (10th Cir. 2001), due process still requires much in civil proceedings.  *Cf. Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").  Applying those same four factors here favors Defendants.

*First*, the length of the delay to trial is only that required by the deadlines and time periods contained within Fed. R. Civ. P. 26(a)(2)(D)(i), which are presumptively reasonable.  *Second*, Plaintiffs are responsible for the delay.  Plaintiffs chose to depart from the scope the Court set; Attorney General Drummond refused to negotiate discovery; Plaintiffs chose to introduce a new and massive watershed model that will require time and expert analysis to parse; and Plaintiffs elected to retry the prior trial record, including causation.

*Third*, the Defendants have repeatedly asserted their due process rights, both in their Motion to Dismiss and at the status hearing.  *See* Dkt. 3010 at 13–17; Hr'g Tr. at 15:1–7.  The Court rejected Defendants' prior request that the Federal Rules apply.  *Fourth*, Defendants will be prejudiced by refusal to apply the Federal Rules of Civil Procedure.  As the Advisory Committee notes to Rule 26(b)(4)(A) state, "[e]ffective cross-examination of an expert witness requires advance preparation," and "effective rebuttal requires advance knowledge of the line of testimony of the other side.  If the latter is foreclosed by a rule against discovery, then the narrowing of issues and

12

elimination of surprise which discovery normally produces are frustrated." *See* Fed. R. Civ. P. 26(b)(4)(A), advisory committee's note to the 1970 amendment.

That is the case here, where the Court's schedule and Plaintiffs' intransigence have deprived Defendants of *any* meaningful discovery. The Federal Rules give Defendants the right to discover and test any new evidence and expert theories through (among other things) interrogatories, *see* Fed. R. Civ. P. 33, document requests, *see* Fed. R. Civ. P. 34, fact witness depositions, *see* Fed. R. Civ. P. 30, and expert depositions, *see* Fed. R. Civ. P. 26(b)(4)(A). To rebut the State's expert opinions, Defendants must be able to conduct discovery into the basis for the opinions of all 12 of Plaintiffs witnesses (most of whom are opinion witnesses). So too, while Defendants rely on the same expert firms involved in the first trial and build on their prior analysis, the State has chosen to offer an entirely new expert case using witnesses, models, and methods that were not involved in the 2009–2010 trial.

Again, take just the Oklahoma SWAT model which, like the corresponding model prepared by Arkansas, was created as part of the States' cooperative efforts regarding the Illinois River Watershed. Oklahoma regulators have been working on their SWAT Model since *at least* 2022. Whether intentionally or not, Oklahoma waited until the last possible minute to disclose its model, making effective analysis of its conclusions extremely challenging.

This model is complex and contains a significant number of inputs, assumptions, and data. Before Defendants can even articulate the grounds for a *Daubert* motion, Defendants must engage a modeling expert and perform (1) a careful analysis

13

of each of the State's expert's opinions, (2) a thorough vetting of the methodology each expert used, (3) a detailed examination of the data underlying the expert's opinions, and (4) an evaluation of the expert's application of the methodology to the foundation. *See* Fed. R. Evid. 702.  That is not fully possible in two weeks before trial—which amounts to eight business days with the Thanksgiving holiday weekend intervening—let alone the compressed four-day window for *Daubert* motions.

Nor is meaningful discovery and full cross-examination possible as to the balance of the State's witnesses.  Defendants are and will be prejudiced.

Providing additional time for the parties to prepare for the remedies trial is reasonable, especially considering the four years it took the parties to build their cases for the first trial in 2009-2010.  Attorney General Drummond himself suggested at the September 13, 2024 status conference a period of 12-18 months for the parties to "refresh" the record (using a special master) before presenting the issues to the Court.  *See* Hr'g Tr. at 21:15–20 (Attorney General Drummond: "I am intrigued by the thought for the court to entertain you enter an order that directs the parties and the special master to work together for a period of one year or 18 months to which the record is refreshed for a recommendation to the court for a final order.")

As Attorney General Drummond's comments show, a continuance of the trial would not prejudice Plaintiffs.  Plaintiffs have suggested no urgency in resolving this action or arriving at remedies.  During the 13 years in which the Court had the matter under advisement following the original trial, Plaintiffs never once urged the Court to resolve the matter quickly and applied no pressure on the Court or Defendants for

14

any injunctive relief. In the 20 months since the Court issued its Findings of Fact and Conclusions of Law, Plaintiffs have neither served on Defendants nor filed any proposed remedies putting the Court's finding and conclusions into effect. Indeed, former Attorney General Edmondson stated publicly last July that Plaintiffs are in no hurry, and that even an additional two years would mean nothing to them.

## CONCLUSION[5]

For all these reasons, Defendants respectfully request that the Court issue an Order applying the Federal Rules of Civil Procedure by:

1. Setting an immediate status conference;
2. Cancelling the existing schedule including the December 3 hearing;
3. Issuing a case management order setting the following or similar schedule:
    a. Fact discovery December 2, 2024 through August 22, 2025;
    b. Plaintiffs' expert reports due October 24, 2025;
    c. Defendants' expert reports due February 27, 2026;
    d. Discovery completed April 24, 2026;
    e. Pre-trial motions due June 26, 2026;
    f. Trial on all issues set at the Court's convenience thereafter.
4. Enter such other relief as is necessary and appropriate.

---

[5] Local Rule 7-1(i) applies only to trials, not evidentiary hearings, and is therefore inapplicable. But in any event this motion arises on account of the parties' case disclosures on November 18, 2024, satisfying the requirements of the rule.

| | |
|---|---|
| November 20, 2024 | Respectfully submitted, |

| | |
|---|---|
| /s/ *Gordon D. Todd* | /s/ *A. Scott McDaniel* |
| Mark D. Hopson | A. Scott McDaniel, OBA #16460 |
| Frank R. Volpe | McDaniel Acord, PLLC |
| Gordon D. Todd | 9343 East 95th Court |
| Benjamin M. Mundel | Tulsa, OK  74133 |
|    (*pro hac vice* forthcoming) | (918) 382-9200 |
| Cody L. Reaves | |
|    (*pro hac vice* forthcoming) | *Attorneys for Tyson Foods, Inc., Tyson* |
| Peter A. Bruland | *Poultry, Inc., Tyson Chicken, Inc.,* |
|    (*pro hac vice* forthcoming) | *Cobb-Vantress, Inc., and Peterson* |
| David H. Kinnaird | *Farms, Inc.* |
|    (*pro hac vice* forthcoming) | |
| Sidley Austin LLP | |
| 1501 K Street, NW | |
| Washington, D.C.  20005 | |
| (202) 736-8000 | |
| (202) 736-8711 (facsimile) | |
| mhopson@sidley.com | |
| fvolpe@sidley.com | |
| gtodd@sidley.com | |
| cody.reaves@sidley.com | |
| pbruland@sidley.com | |
| dkinnaird@sidley.com | |
| | |
| *Attorneys for Tyson Foods, Inc.,* | |
| *Tyson Poultry, Inc., Tyson Chicken,* | |
| *Inc., and Cobb-Vantress, Inc.* | |

/s/ *Robert George*
Robert George, OBA #18562
George's, Inc.
402 W. Robinson Ave.
Springdale, AR  73764
(479) 927-7249

K.C. Dupps Tucker
Kristy E. Boehler
The Law Group of Northwest
 Arkansas PLLC
1830 Shelby Lane
Fayetteville, AR 72704
(479) 316-3760

Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

Clinton Russell, OBA # 19209
Taylor, Foster, Mallett, Downs,
 Ramsey & Russell
400 West Fourth Street
Claremore, OK 74018
(918) 343-4100
crussell@soonerlaw.com

*Attorneys for George's, Inc. and George's Farms, Inc.*

/s/ *John R. Elrod*
John R. Elrod (admitted *pro hac vice*)
Vicki Bronson, OBA 20574
Conner & Winters, P.C.
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Simmons Foods, Inc.*

/s/ *Robert P. Redemann*
Robert P. Redemann, OBA #7454
William D. Perrine, OBA #11955
Perrine, Redemann, Berry,
 Taylor & Frette, PLLC
1800 S. Baltimore Ave., Suite 900
Tulsa, OK 74119
(918) 382-1400
(918) 382-1499 (facsimile)
rredemann@pmrlaw.net
wperrine@pmrlaw.net

Robert E. Sanders, MSB#6446
 (admitted *pro hac vice*)
Young Wells Williams P.A.
P.O. Box 6005
Ridgeland, MS   39158-6005
(601) 948-6100
(601) 355-6136 (facsimile)
rsanders@youngwells.com

*Attorneys for Cal-Maine Foods*

/s/ *John H. Tucker*
John H. Tucker, OBA 9110
Theresa N. Hill, OBA 19119
Rhodes Hieronymus Jones
  Tucker & Gable
Two W. 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK  74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com

Jacob D. Bylund, admitted *pro hac vice*
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Main: (515) 248-9000
jacob.bylund@faegredrinker.com

Delmar Ehrich, admitted *pro hac vice*
Bruce Jones, admitted *pro hac vice*
Aaron D. Van Oort, admitted *pro hac vice*
Christopher H. Dolan, admitted *pro hac vice*
Jeffrey P. Justman, admitted *pro hac vice*
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Well Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Main:  (612) 766-7000
delmar.ehrich@faegredrinker.com
bruce.jones@faegredrinker.com
aaron.vanoort.jones@faegredrinker.com
chris.dolan@faegredrinker.com
jeff.justman@faegredrinker.com

*Attorneys for Cargill, Inc. and Cargill Turkey Production, LLC*

**CERTIFICATE OF SERVICE**

I certify that on November 20, 2024, I caused this document to be filed with the Clerk of Court through CM/ECF, which will serve copies on all registered counsel.

/s/ *Gordon D. Todd*
Gordon D. Todd