IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 05-cv-329-GKF-SH |
| ) | |
| TYSON FOODS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT MOTION AND BRIEF IN SUPPORT OF EXCLUDING THE TESTIMONY OF CITY OF TULSA EMPLOYEES, ERIC LEE AND MATTHEW YOCKEY FROM THE EVIDENTIARY HEARING**

If resolving the complex issues in the Illinois River Watershed ("IRW") were not challenging enough for the parties and the Court, Plaintiffs now seek to expand the upcoming evidentiary hearing to re-litigate the similarly complex but distinct issues of point and non-point sources of phosphorus and water quality in the Eucha-Spavinaw Watershed ("ESW").  By disclosing on November 18, 2024[1] their intent to sponsor two City of Tulsa employees, Eric Lee ("Lee") and Matthew Yockey ("Yockey"), as non-retained experts to offer opinion testimony about the purported relationship between agriculture in the ESW and Tulsa's raw water supply, Plaintiffs seek to draw the Court and Defendants into a trial within a trial to relitigate the dispute between the City of Tulsa and its utility authority and certain members of the poultry industry that was resolved more than twenty-one (21) years ago. *See, City*

---

[1] *See* The State of Oklahoma's Designation of Witnesses at Dkt. No. 3058.

1

*of Tulsa, et al. v. Tyson Foods, Inc., et al.,* N.D. Okla. Case No. 01-cv-0900-CVE-PJC (hereinafter the "*City of Tulsa* lawsuit"). On relevance and prejudice grounds alone, Plaintiffs' quest to expand this lawsuit into a distinctly separate watershed that is under the continuing jurisdiction of another Judge of this Court is highly improper, and should not be countenanced by the Court.

Despite not disclosing any expertise or the facts underlying their wide-ranging proposed testimony, Plaintiffs intend to offer Lee and Yockey to offer expert opinions on (1) poultry operations in the ESW; (2) the alleged connection between the land application of poultry litter on the surface water in the ESW, including Lakes Eucha and Spavinaw; (3) agronomy in the ESW; (4) phosphorus dynamics in ESW soils; and (5) Tulsa's raw water treatment. Furthermore, Plaintiffs intend to use Lee and Yockey to level a direct challenge to the Court's Orders in the *City of Tulsa* lawsuit that established the nutrient management protocols in the ESW that have been in force for the last twenty (20) years, and which were adopted into Oklahoma and Arkansas law.

Plaintiffs' disclosures for Lee and Yockey fail to show that either gentleman has the education and training to offer opinions in the multiple fields of science and engineering covered by the narrative scope of their testimony. Thus, Lee and Yockey would have been prohibited from giving expert testimony even in the *City of Tulsa* lawsuit based on these disclosures. Add into the analysis that this case involves neither the City of Tulsa, nor the ESW, Lee's and Yockey's testimony is inadmissible under Federal Rule of Evidence Nos. 402, 403, 702 and Fed. R. Civ. P. 26(a)(2).

## BACKGROUND

Given that Lee's and Yockey's testimony relates to the ESW and not the IRW, a summary of the long history of the *City of Tulsa* lawsuit, its settlement, and the Court's supervision and jurisdiction of the implementation of the settlement parameters brings into focus the inadmissibility of the proffered testimony of Lee and Yockey in the upcoming evidentiary hearing.

On December 10, 2001, the City of Tulsa and the Tulsa Metropolitan Utility Authority (collectively "Tulsa") filed the *City of Tulsa* lawsuit against a number of poultry companies and the City of Decatur, Arkansas, alleging that phosphorus from the land application of poultry litter in the ESW and the discharge from the City of Decatur's POTW were causing nutrient enrichment and eutrophication of Lakes Eucha and Spavinaw, from which Tulsa draws raw water for treatment and distribution to approximately one-half of its customers. The defendants asserted numerous factual and legal defenses to Tulsa's claims and denied causing or contributing to Tulsa's alleged injury.

The litigation proceeded for two years with significant investment in fact investigation, discovery, numerous experts, and motion practice. The pre-trial period was marked by significant decisions by the Court. On March 10, 2003, the Court barred Tulsa's modeling expert, Daniel Storm, PhD., from testifying to any allocation of phosphorus discharge to the ESW waterways to the defendants based on his use of the SWAT hydrologic model, finding the model and its application to Tulsa's claims unreliable. Dkt. No. 435. On March 14, 2003, the Court entered an order sustaining

the defendants' motion for summary judgment, in part, and sustaining the City of Tulsa's motion for summary judgment, in part. Dkt. No. 444. The matter was set for jury trial to commence on March 24, 2003.

On the morning of trial, the parties reached a settlement. As it relates to nutrient management, the parties agreed that a new Phosphorus Index would be developed for use in the ESW through the cooperative efforts of the scientists at Oklahoma State University and the University of Arkansas. This new Phosphorus Index, which would become known as the "Eucha-Spavinaw Phosphorus Index" or "ESPI" would be implemented through the promulgation of new Nutrient Management Plans ("NMPs") that would govern the land application of poultry litter in the ESW. A moratorium was imposed on the land application of poultry litter until application sites received new NMPs incorporating ESPI. The settlement also provided for the employment of a Watershed Management Team ("WMT") to develop the new NMPs, conduct soil and litter testing, and to verify compliance with the new protocols. A Special Master was to be appointed by the Court to oversee the WMT and to report to the Court and the parties on the implementation. The parties agreed that this new program under the Court's jurisdiction would exist for four years, at which time the case would be dismissed with prejudice. There was no water quality term in the parties' settlement agreement, and thus, defendants' satisfaction of the settlement terms was not contingent upon achieving any specific water quality goal.

On July 16, 2003, the Court entered an Order approving the parties' Settlement Agreement. While developing ESPI, a dispute arose between the scientists from

4

Oklahoma State University and the University of Arkansas. The Court held an evidentiary hearing, and on February 13, 2004, entered its Order adopting the University of Arkansas' proposal for ESPI with modifications as the initial PI. Dkt. No. 499. In its Order, the Court stated,

> The Court encourages an annual goal that the total amount of litter that may be land applied annually in the Eucha/Spavinaw Watershed from all sources covered by the Moratorium not exceed two-thirds of the amount of litter produced annually within the Eucha/Spavinaw Watershed by the Poultry Defendants and their Contract Growers.

*Id.* at 5.[2]

In September 2007, Tulsa filed a Motion requesting the Court continue its jurisdiction and order that ESPI be updated using current data. Dkt. No. 512. Over the next few years, the Court extended the terms of the Special Master and WMT, and the parties conferred with the Court on resolving Tulsa's objection to ESPI and the termination of the case. In September 2011, frustrated with the lack of progress, the poultry company defendants filed a motion to terminate the case. Dkt. No. 574.

The parties resolved their dispute over ESPI with a Supplemental Settlement Agreement that was approved by the Court on March 28, 2012. Dkt. No. 579. The Court's Order provided for ESPI to be updated by the University of Arkansas, and imposed a litter application cap prohibiting application on soils with phosphorus of 300 lbs per acre or more. The Court's and parties' intent was that after a year of

---

[2] While Judge Eagan set a goal of exporting 33% of the litter from the ESW, this goal was exceeded within a few years of the implementation of the program. In 2017, ODAFF reported that 97% of the litter generated in the ESW was exported outside the watershed.

implementation of the Revised ESPI, and assuming all other conditions were met, the case would be dismissed and the Court's jurisdiction terminated. *Id.*

On July 17, 2013, the poultry company defendants moved for approval of Revised ESPI as the final PI and the entry of dismissal. Tulsa objected. On September 12, 2013, the Court approved Revised ESPI with modifications noting that "[w]e have finally reached the point in this protracted settlement where we are counting angels on the point of a needle." Dkt. Nos. 602 and 603. The effect of these Orders was to require new NMPs to be issued for application sites based on the Revised ESPI and another one-year implementation period. There has been no further formal action in the *City of Tulsa* lawsuit since 2013, and notably as it relates to these two proposed witnesses, Tulsa has made no request of the Court in the last eleven (11) years to further revise ESPI based on any allegation that it is not meeting the requirements of the Settlement Agreements or Orders of the Court.

## ARGUMENT

**A. Plaintiffs Make No Showing that Lee and Yockey are Qualified by Education and Experience to Offer Opinions on the Wide-Ranging Scientific and Engineering Topics They Disclose**

The Court has held that whether to admit expert witness testimony is determined under Fed R. Evid. 702, which permits a witness to testify and render opinions when the witness "is qualified as an expert by knowledge, skill, experience, training, or education" and "it is more likely than not that:"

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

6

> (b) The testimony is based on sufficient facts or data:
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

*United States v. Atkins*, 2024 WL 4003518 at *3 (N.D. Okla. Aug. 30, 2024); Fed. R. Evid. 702. Rule 702 imposes on the court the obligation to serve as the gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The proponent of the expert testimony bears the burden to prove that the expert is qualified and that the testimony satisfies the remaining elements of Rule 702. *Id.* at 1222; *Hampton v. Utah Dep't of Corrections*, 87 F.4th 1183, 1201 (10th Cir. 2023). "An expert who 'possesses knowledge as to a general field' but 'lacks specific knowledge does not necessarily assist [the trier of fact].'" *Boulac v. SMG*, 2024 WL 2830496 at *2 (N.D. Okla. June 4, 2024) (quoting *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998)).

As for the two purported experts at issue in this motion, Plaintiffs make no showing whatsoever to satisfy the threshold question of either Lee's or Yockey's qualifications to give expert testimony on the broad scope of issues for which they are offered. So barren are Plaintiffs' disclosures that the Court and Defendants have not one biographical fact about either of these gentlemen other than for whom they work. One would think that a good starting point would have been to disclose in what

7

capacity these gentlemen work for the City of Tulsa, and whether they attained a high school diploma or any higher education that might have some bearing on the issues about which they intend to testify.

The disclosures for Lee and Yockey suggest that they are prepared to offer opinions with regard to the ESW and the City of Tulsa's water supply by delving into the fields of (1) poultry operations in the ESW; (2) the alleged connection between the land application of poultry litter on the surface water in the ESW, including Lakes Eucha and Spavinaw; (3) agronomy in the ESW; (4) phosphorus dynamics in ESW soils; and (5) Tulsa's raw water treatment. By comparison, covering similar topics for the IRW over 50+ days of trial required a legion of experts in the fields of environmental engineering, soil science, hydrology, geochemistry, limnology, agronomy, animal science, and water resource engineering. One would assume that if Lee and Yockey hold such broad and impressive credentials to qualify them to expertly testify about every aspect of the subjects they propose, that they would be eager to share those qualifications with the Court and Defendants, yet we know nothing about them.

The status of Lee and Yockey as non-retained experts does not diminish Defendants' rights to receive sufficient disclosures in advance of trial to afford a reasonable opportunity to prepare for cross examination. Fed. R. Civ. P. 26(a)(2); *Crouch v. State Farm Mut. Ins. Co.*, 2019 WL 5310247 at *3 (D. Kan. Oct. 21, 2019). Plaintiffs have the burden to show that their purported experts are sufficiently qualified to render the opinions they desire. Plaintiffs utterly failed to meet this burden, and thus, Defendants respectfully submit that the testimony of Lee and Yockey should be

8

excluded from the forthcoming evidentiary hearing under Fed. R. Evid. 702 and Fed. R. Civ. P. 37(c).

B.  **Lee and Yockey's Proposed Testimony is Irrelevant, Unhelpful, and Prejudicial**

Plaintiffs' charge to Lee and Yockey is to come before this Court in a proceeding to address complex issues involving the IRW to espouse their opinions derived from and pertinent solely to the ESW. There is no place in the upcoming evidentiary hearing for testimony about a separate and distinct watershed that is subject to another Judge's continuing jurisdiction, and that would merely re-open a legal battle that is long-since concluded. This is emblematic of why it is so critical to the Court's gatekeeping role to assure that any expert testimony is relevant and helpful to the trier of fact. Fed. R. Evid. 702; *Dodge*, 328 F.3d at 1221. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591; *The Thomas Pearson and Pearson Family Foundation v. The Univ. of Chicago*, 2024 WL 2848670 at *3 (N.D. Okla. June 5, 2024); Fed R. Evid. 402. The relevance bar is simply out-of-reach for Plaintiffs with these two witnesses.

Plaintiffs' disclosures for Lee and Yockey shed no light on why their opinions based on Tulsa's purported experiences with the ESW translate to or inform any decision presently before the Court. The sole commonalities between the two watersheds are that they both contain dirt, water, agriculture, poultry operations, industry, and people. Where the ESW is a significantly smaller land mass with much lower population, development, industry, recreation / tourism, and publicly-owned treatment works that drains to two reservoirs aligned in series, the IRW is a much more

9

complex geophysical and fast-growing anthropogenic setting that drains into a single reservoir that dwarfs Lakes Eucha and Spavinaw.

Plaintiffs desire for Lee and Yockey to testify to the Court that the nutrient management program developed from the settlement of the *City of Tulsa* lawsuit has netted no improvement to the waters of Lakes Eucha and Spavinaw. Such testimony is improper and problematic on many bases. Most striking is that Lee and Yockey want to complain to this Court that Tulsa is not seeing the results it expected from the *City of Tulsa* settlement when Tulsa has raised no complaint or concern with Judge Eagan over the ESW nutrient management program in the last eleven (11) years. Hence, Plaintiffs want representatives of Tulsa to come into this Court to air their opinions attempting to influence the Court's disposition of Plaintiffs' claims about the IRW rather than leaving it to Tulsa to raise these issues where they belong - before Judge Eagan who has continuing jurisdiction over the dispute.[3]

"[A] judge assessing a proffer of expert…testimony under Rule 702 should be mindful of other applicable rules' including Fed. R. Evid. 403. [Daubert] permits the exclusion of otherwise relevant evidence if its probative value is substantially

---

[3] It appears that Plaintiffs intend to use Lee and Yockey to level a direct challenge to Judge Eagan's rulings post-settlement. The disclosures state that Lee and Yockey will testify that "the 300 lb/acre parameter for application of poultry waste in the ESW has inhibited improvement in water quality in the ESW." The 300 lb/acre application cut-off was ordered by Judge Eagan after an evidentiary hearing where Tulsa was permitted to put on evidence to support its quest for an agronomic limit of 65 STP. Having lost its argument before Judge Eagan, Tulsa, or at least individuals working for the City, seeks to change the outcome by a collateral attack on Judge Eagan's finding before this Court. The Court should not allow this proceeding to be highjacked in such a manner.

10

outweighed by a danger of …unfair prejudice….." *United States v. Atkins*, 2024 WL 4003518 at *4 (N.D. Okla. Aug. 30, 2024). That opening the upcoming proceeding to Tulsa's complaints and this evidence from the ESW will create a war within a war is not hyperbole. Plaintiffs have disclosed no current data or analysis from the ESW and Defendants have been afforded no means for rebutting Lee or Yockey's testimony. As the record of the *City of Tulsa* lawsuit shows, the issues of causation and alleged injury were vigorously contested even after the settlement was reached. The parties settled that case to avoid the cost and risk of trial, and the notion that any *City of Tulsa* issue it will be decided, or even addressed within the context of this action is absurd. Such misdirection will greatly prolong and exacerbate the evidentiary hearing and severely prejudice Defendants beyond any marginal relevance it may have to this proceeding. Accordingly, Defendants respectfully submit that Lee and Yockey should be excluded from the upcoming evidentiary hearing.

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court issue an Order excluding Eric Lee and Matthew Yockey from testifying at the evidentiary hearing.

November 22, 2024                                                   Respectfully submitted,


/s/ *Gordon D. Todd*                                                /s/ *A. Scott McDaniel*
Mark D. Hopson                                                      A. Scott McDaniel, OBA #16460
Frank R. Volpe                                                      McDaniel Acord, PLLC
Gordon D. Todd                                                      9343 East 95th Court
Benjamin M. Mundel                                                  Tulsa, OK  74133
  (*pro hac vice* forthcoming)                                      (918) 382-9200
Cody L. Reaves
  (*pro hac vice* forthcoming)                                      *Attorneys for Tyson Foods, Inc., Tyson*
Peter A. Bruland                                                    *Poultry, Inc., Tyson Chicken, Inc.,*
  (*pro hac vice* forthcoming)                                      *Cobb-Vantress, Inc., and Peterson*
David H. Kinnaird                                                   *Farms, Inc.*
  (*pro hac vice* forthcoming)
Sidley Austin LLP
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
(202) 736-8711 (facsimile)
mhopson@sidley.com
fvolpe@sidley.com
gtodd@sidley.com
cody.reaves@sidley.com
pbruland@sidley.com
dkinnaird@sidley.com

*Attorneys for Tyson Foods, Inc.,*
*Tyson Poultry, Inc., Tyson Chicken,*
*Inc., and Cobb-Vantress, Inc.*

/s/ *Robert George*
Robert George, OBA #18562
George's, Inc.
402 W. Robinson Ave.
Springdale, AR  73764
(479) 927-7249

K.C. Dupps Tucker
Kristy E. Boehler
The Law Group of Northwest
 Arkansas PLLC
1830 Shelby Lane
Fayetteville, AR 72704
(479) 316-3760

Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

Clinton Russell, OBA # 19209
Taylor, Foster, Mallett, Downs,
 Ramsey & Russell
400 West Fourth Street
Claremore, OK 74018
(918) 343-4100
crussell@soonerlaw.com

*Attorneys for George's, Inc. and George's Farms, Inc.*

/s/ *John R. Elrod*
John R. Elrod (admitted *pro hac vice*)
Vicki Bronson, OBA 20574
Conner & Winters, P.C.
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Simmons Foods, Inc.*

/s/ *Robert P. Redemann*
Robert P. Redemann, OBA #7454
William D. Perrine, OBA #11955
Perrine, Redemann, Berry,
 Taylor & Frette, PLLC
1800 S. Baltimore Ave., Suite 900
Tulsa, OK 74119
(918) 382-1400
(918) 382-1499 (facsimile)
rredemann@pmrlaw.net
wperrine@pmrlaw.net

Robert E. Sanders, MSB#6446
 (admitted *pro hac vice*)
Young Wells Williams P.A.
P.O. Box 6005
Ridgeland, MS   39158-6005
(601) 948-6100
(601) 355-6136 (facsimile)
rsanders@youngwells.com

*Attorneys for Cal-Maine Foods*

/s/ *John H. Tucker*
John H. Tucker, OBA 9110
Colin H. Tucker, OBA 16325
Theresa N. Hill, OBA 19119
Rhodes Hieronymus Jones
  Tucker & Gable
Two W. 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK  74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com

Jacob D. Bylund, admitted *pro hac vice*
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Main: (515) 248-9000
jacob.bylund@faegredrinker.com

Delmar Ehrich, admitted *pro hac vice*
Bruce Jones, admitted *pro hac vice*
Aaron D. Van Oort, admitted *pro hac vice*
Christopher H. Dolan, admitted *pro hac vice*
Jeffrey P. Justman, admitted *pro hac vice*
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Well Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Main: (612) 766-7000
delmar.ehrich@faegredrinker.com
bruce.jones@faegredrinker.com
aaron.vanoort.jones@faegredrinker.com
chris.dolan@faegredrinker.com
jeff.justman@faegredrinker.com

*Attorneys for Cargill, Inc. and Cargill Turkey Production, LLC*

**CERTIFICATE OF SERVICE**

I certify that on November 22, 2024, I caused this document to be filed with the Clerk of Court through CM/ECF, which will serve copies on all registered counsel.

/s/ *A. Scott McDaniel*
A. Scott McDaniel