**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STATE OF OKLAHOMA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-329-GKF-SH |
| | ) | |
| TYSON FOODS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO
STRIKE DEFENDANTS' JOINT SUPPLEMENTAL LIST OF WITNESSES
WITH SUMMARY OF EXPECTED TESTIMONY AS TO PATRICK FISK**

Mark D. Hopson
Frank R. Volpe
Gordon D. Todd
Benjamin M. Mundel
Cody L. Reaves
David H. Kinnaird (*pro hac vice* forthcoming)
Sidley Austin LLP
1501 K Street, NW
Washington, D.C.  20005
(202) 736-8000
(202) 736-8711 (facsimile)
mhopson@sidley.com
fvolpe@sidley.com
gtodd@sidley.com
bmundel@sidley.com
cody.reaves@sidley.com
dkinnaird@sidley.com

*Attorneys for Tyson Foods, Inc.,
Tyson Poultry, Inc., Tyson Chicken, Inc.,
and Cobb-Vantress, Inc.*

December 9, 2024                     (additional counsel listed on inside cover)

A. Scott McDaniel, OBA #16460
McDaniel Acord, PLLC
9343 East 95th Court
Tulsa, OK  74133
(918) 382-9200

*Attorney for Tyson Foods, Inc.,*
*Tyson Poultry, Inc., Tyson Chicken,*
*Inc., Cobb-Vantress, Inc., and*
*Peterson Farms, Inc.*

Robert George, OBA #18562
George's, Inc.
402 W. Robinson Ave.
Springdale, AR  73764
(479) 927-7249

K.C. Dupps Tucker
   (admitted *pro hac vice*)
Kristy Boehler
   (admitted *pro hac vice*)
The Law Group of Northwest
   Arkansas PLLC
1830 Shelby Lane
Fayetteville, AR 72704
(479) 316-3760

Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

Clinton Russell, OBA # 19209
Taylor, Foster, Mallett, Downs,
   Ramsey & Russell
400 West Fourth Street
Claremore, OK 74018
(918) 343-4100
crussell@soonerlaw.com

*Attorneys for George's, Inc. and*
*George's Farms, Inc.*

John R. Elrod (admitted *pro hac vice*)
Vicki Bronson, OBA 20574
Conner & Winters, P.C.
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Simmons Foods, Inc.*

Robert P. Redemann, OBA #7454
William D. Perrine, OBA #11955
Perrine, Redemann, Berry,
   Taylor & Frette, PLLC
1800 S. Baltimore Ave., Suite 900
Tulsa, OK 74119
(918) 382-1400
(918) 382-1499 (facsimile)
rredemann@pmrlaw.net
wperrine@pmrlaw.net

Robert E. Sanders, MSB#6446
   (admitted *pro hac vice*)
Young Wells Williams P.A.
P.O. Box 6005
Ridgeland, MS   39158-6005
(601) 948-6100
(601) 355-6136 (facsimile)
rsanders@youngwells.com

*Attorneys for Cal-Maine Foods*

John H. Tucker, OBA 9110
Theresa N. Hill, OBA 19119
Colin H. Tucker
Rhodes Hieronymus Jones
   Tucker & Gable
Two W. 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK  74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com
chtucker@rhodesokla.com

Jacob D. Bylund (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Main: (515) 248-9000
jacob.bylund@faegredrinker.com

Delmar Ehrich (admitted *pro hac vice*)
Bruce Jones (admitted *pro hac vice*)
Aaron D. Van Oort (admitted *pro hac vice*)
Christopher H. Dolan (admitted *pro hac vice*)
Jeffrey P. Justman (admitted *pro hac vice*)
Faegre Drinker Biddle & Reath LLP
2200 Well Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Main:  (612) 766-7000
delmar.ehrich@faegredrinker.com
bruce.jones@faegredrinker.com
aaron.vanoort @faegredrinker.com
chris.dolan@faegredrinker.com
jeff.justman@faegredrinker.com

*Attorneys for Cargill, Inc. and Cargill
Turkey Production, LLC*

**ARGUMENT**

This past week, Plaintiffs' witnesses testified repeatedly as to their befuddlement regarding poultry operations in Arkansas. Mr. Fite testified that he has been unable to obtain hard data regarding litter generation, storage, and transportation in Arkansas. Ms. Phillips, for her part, testified that 75% of birds are located on the Arkansas side of the IRW, yet rejected real Arkansas data as nonsense and instead resorted to Google Earth in an admitted first attempt at using such software to estimate the number of poultry houses, generate bird-counts based on assumptions, and calculate unverified litter generation numbers—the latter calculation being *18 times* what Arkansas's actual data showed. *See* Hr'g Tr. (Vol. 5 – AM) at 583:10–18 (Dec. 5, 2024); *cf.* Doc. 2979 (finding that 76.5% of active poultry houses in the IRW are "located in Arkansas").

On November 18, and again in more detail on November 27, Defendants disclosed the testimony of Mr. Patrick Fisk, the Director of Arkansas' Division of Livestock and Poultry, who is responsible for gathering, maintaining, and promulgating data regarding Arkansas Registered Feeding Operations. Mr. Fisk will testify regarding poultry data, detail substantial evolution in poultry management and practices, and generally provide the Court with real and actual data regarding Arkansas. Rather than welcome this clarifying testimony, Plaintiffs have instead moved to exclude Mr. Fisk's testimony as distracting and unnecessary. While Plaintiffs may find his testimony inconvenient, it is hardly distracting. Mr. Fisk's testimony goes to the heart of the actual changed circumstances that lie at the core of this trial and should be heard in full. The motion should be denied.

As an initial matter, Plaintiffs do not question Mr. Fisk's qualifications as a fact or non-retained expert.  Nor could they.  Mr. Fisk has spent his entire career in and around the Arkansas poultry industry, and played a leading role in standing up and implementing Arkansas' programs regulating poultry litter.[1]  Plaintiffs likewise do not question the sufficiency of Mr. Fisk's disclosure.  Nor could they again.  Mr. Fisk's non-retained opinion witness disclosure is more detailed and substantive than those provided by any of Plaintiffs' Rule 26(a)(2)(C) witnesses and found sufficient by the Court.  Nor again do Plaintiffs allege Defendants failed to disclose Mr. Fisk.  Once again, they cannot, as he was timely and properly disclosed as required on November 18, without objection.  Rather, Plaintiffs object because Defendants subsequently and voluntarily provided expanded detail as to testimony Mr. Fisk *might* give depending on Plaintiffs' witnesses' testimony.

Plaintiffs ask the Court to strike this expanded disclosure and to bar Mr. Fisk from offering any FRE 702 opinion testimony on the grounds that it was untimely.  Doc. 3110 ("Mot.") at 1 (citing Fed. R. Civ. P. 26(a), 37(c)).  As an initial matter, the disclosure of Mr. Fisk was not untimely.  Every subject in Mr. Fisk's second disclosure comes squarely within and simply expands on his first, *see infra* § I, to which Plaintiffs raised no objection.  Moreover, as discussed *infra* § II, we explained

---

[1] Plaintiffs do question whether Mr. Fisk can testify regarding poultry operations in Oklahoma.  Doc. 3110 ("Mot.") at 4.  This is a bit much, coming from the party whose witnesses offered rank speculation regarding Arkansas and who resorted to Google Earth in lieu of using Arkansas' own data regarding poultry operations.  To the extent Mr. Fisk has percipient observations regarding Oklahoma, or can supply the foundation for Rule 702 opinion, he should be allowed to provide it just like any other witness.  Plaintiffs may raise that objection when he testifies.

contemporaneously the justification for this expanded disclosure. *See* Doc. 3090 at 7. *First*, due to Arkansas policy on state employees testifying in civil cases where the state is not a party, Defendants were unable to prepare a more detailed disclosure until Mr. Fisk received the required approval from his superiors. *Second*, any opinion testimony Mr. Fisk shares would bear on Plaintiffs' non-retained experts, whose opinions were not disclosed until November 18th, and who did not testify until this past week. Defendants should not be faulted for circumstances outside their control.

In all events, as discussed *infra* § III, the subsequent expanded disclosure was harmless—to the contrary, if anything, it was *helpful* to Plaintiffs. *First*, Plaintiffs are not prejudiced by the timing of the disclosure. They will have had more time—at least 17 days—to prepare for Mr. Fisk's testimony than Defendants had to prepare for any of Plaintiffs' experts. *Second*, any possible prejudice—and there was none—has since been cured. As the Court made clear in its December 2 order, the proper remedy for an incomplete disclosure is supplemental disclosure. It would be counterproductive to order Defendants to disclose less after voluntarily disclosing more. That is particularly true after Plaintiffs were ordered to disclose more. *Third*, the timing of the disclosure will not disrupt trial. The vast majority of Mr. Fisk's testimony will be the percipient fact testimony that forms the basis for any opinions he shares. *Finally*, Plaintiffs do not suggest—nor could they—that the disclosure's timing was the product of underhanded gamesmanship.

In no event should Mr. Fisk's testimony be crimped. As the Court recently explained, "[i]n ruling on a motion to exclude expert testimony under Rule 37(c)(1),

3

the court should bear in mind that it is a drastic sanction."  Doc. 3094 at 9 (quoting *Hayes v. Am. Credit Acceptance, LLC*, 2014 WL 3927277, at *3 (D. Kan. Aug. 12, 2014)).  "The parties to a litigation are not merely players in a game, trying to catch each other out.  Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits."  *Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009) (discussing Rules 26 and 37).  Mr. Fisk has already been referenced repeatedly by Plaintiffs' witnesses, who have acknowledged him to be competent and trustworthy.  His testimony will bear directly on issues put in dispute by Plaintiffs, and will "help the trier of fact to understand th[at] evidence" through both his direct observations and his "specialized knowledge" earned over years working in and regulating Arkansas poultry industry.  Fed. R. Evid. 702(a). For this reason alone, exclusion is improper.  In any event, the timing of the disclosure for Mr. Fisk is both substantially justified and harmless.[2]

## I.     Each subject in Defendants' supplemental disclosure for Mr. Fisk falls squarely within the subjects set out in Defendants' initial disclosure.

In their initial disclosure for Mr. Fisk, Defendants provided:

Mr. Fisk is expected to testify regarding poultry litter regulation and management in Arkansas, including without limitation nutrient management plans, litter application, litter transportation, storage, and

---

[2] As other courts in this circuit have noted, substantial justification and harmlessness are two separate reasons not to impose sanctions under Rule 37(c)(1).  *See Diener v. Malewitz*, 2019 WL 13223871, at *3 n.2 (D. Wyo. Oct. 18, 2019) ("The analysis of whether a failure to disclose is substantially justified or harmless is often conflated."); *Pratt v. Petelin*, 2010 WL 5463123, at *3 (D. Kan. Dec. 29, 2010) ("As Defendant has shown that his untimely disclosure was substantially justified, he need not also show that his untimeliness is harmless to Plaintiff."); *see also* Fed. R. Civ. P. 37(c)(1) advisory committee notes to 2000 amendment ("Even if the failure was not substantially justified, a party should be allowed to use the material that was not disclosed if the lack of earlier notice was harmless.").

> export, training, agronomic practices, grower trends, agricultural data, and other subjects relevant to current and historical conditions in the watershed.

Doc. 3059 at 3. This disclosure was consistent with all of Defendants' other witness disclosures, to which Plaintiffs made no objection. A week later, Defendants provided a much more detailed disclosure expanding on the subjects Mr. Fisk may address, including potential rebuttal to expert opinions newly disclosed by Plaintiffs regarding *inter alia* poultry operations in Arkansas. All of these subjects fall squarely within those disclosed in Defendants' initial disclosure for Mr. Fisk.

Defendants initially disclosed that Mr. Fisk may testify regarding poultry litter regulations and management in Arkansas, including "agronomic practices, grower trends," and "other subjects relevant to current and historical conditions in the watershed." Doc. 3059 at 3. The supplemental disclosure provides more specific information for these subject matters, including that Mr. Fisk will testify regarding his extensive career in the industry, starting with his experience as a service technician who regularly met with growers and monitored poultry houses, and his current work in Arkansas's Department of Agriculture as Director of the Livestock and Poultry Division. In that position, he has gained firsthand knowledge regarding poultry growers, the exportation of litter, and poultry litter data collection. Doc. 3090 at 9, 12. The supplemental disclosure also provided more specific information as to his testimony concerning changed agronomic practices including de-caking and windrowing and much longer house clean-out intervals ranging as long as 3 to 7 years. *Id.* at 10–11.

5

Defendants also initially disclosed that Mr. Fisk may testify regarding litter application, litter transportation, storage, and export. Doc. 3059 at 3. The supplemental disclosure again provides more specific information regarding these subjects, including that Mr. Fisk will testify that he "receives and regularly reviews data from growers concerning litter management and regularly prepares reports for the state based on this data." Doc. 3090 at 10 (citing exhibits); *see id.* at 12 (citing specific data and analyses contained in exhibits). Defendants further disclosed that Mr. Fisk's testimony regarding exporting litter would include that "more poultry litter is leaving the [IRW] than ever before." *Id.* at 10. That is because improved practices have made litter more valuable than 15 years ago, so the break-even point for exporting litter has changed, making exporting outside the IRW—including to Kansas, Missouri, Colorado, and Wisconsin—"increasingly profitable for growers." *Id.*; *see id.* at 12–13 (stating that "Mr. Fisk is expected to testify that enhanced value translates into a greater incentive for growers to sell litter and ship it greater distances" instead of "land applying").

Defendants' supplemental disclosure provided even more specifics on these subject matters, including that Mr. Fisk is expected to testify regarding grower practices of "stacking, storing, [and] selling" poultry litter, the increasing frequency with which growers send stacked litter to stockpilers. *Id.* at 11. Defendants further provided that Mr. Fisk is expected to testify that the data show a trend toward storing and transferring litter rather than land applying and the reasons Mr. Fisk expects these trends to continue. *Id.* at 13–14. In addition, Defendants' initial disclosure

6

provided that Mr. Fisk is expected to testify regarding nutrient management plans, Doc. 3059 at 3, and the supplemental disclosure provided more specifics, including that Mr. Fisk will testify regarding his personal experience implementing Arkansas' NMP requirements, the development of these plans, their current operation, and compliance with these plans.  Doc. 3090 at 12.

To the extent the supplemental disclosure adds anything arguably new, it was specifying that Mr. Fisk's testimony may include opinions rebutting the opinion testimony of Shanon Phillips and Edward Fite.  Doc. 3090 at 8–9.  But as explained, Defendants *could not* have included this in Mr. Fisk's original disclosure.  Indeed, it would have been impossible for Defendants to know that Plaintiffs' witnesses would offer detailed opinions regarding Arkansas's poultry records, including opinions that those records cannot be trusted.  Defendants should be permitted to respond to that testimony, particularly here where Ms. Phillips is calling into question the very data for which Mr. Fisk is responsible.

Defendants did not have to tender the supplemental disclosures.  They could simply have presented Mr. Fisk and elicited rebuttal testimony without additional disclosure, arguing correctly that the Court's scheduling order made no provision for and did not require rebuttal disclosures.  Indeed, at the close of their case Plaintiffs settled except as to the need for rebuttal, yet have not made any rebuttal disclosures. Rather than do so, Defendants expanded Mr. Fisk's disclosure to make clear that he would offer rebuttal non-retained expert opinions, a disclosure that is *helpful* to Plaintiffs.  Defendants should not be punished for doing so.

## II.    The timing of Defendants' supplemental disclosure for Mr. Fisk was substantially justified by the circumstances.

Even if the supplemental disclosure for Mr. Fisk was somehow in default—and it was not—its timing was substantially justified.  As the Supreme Court has explained, the substantial-justification standard used throughout Rule 37 "has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action].'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (cleaned up).  Put differently, the timing of the supplemental disclosure need only be "justified to a degree that could satisfy a reasonable person."  *Id.*; *see also Leadville Corp. v. U.S. Fid. & Guar. Co.*, 55 F.3d 537, 540–41 (10th Cir. 1995) (explaining, in a different context, that "'[s]ubstantial justification exists when [a party] has adequate excuse for noncompliance' or has demonstrated 'a justifiable excuse or extenuating circumstances explaining the delay'") (citations omitted).

Such justification exists here.  As Defendants explained at the time, Defendants were unable to prepare a detailed disclosure for Mr. Fisk as he had not yet received the requisite approval from his supervisors "to provide testimony in a civil matter to which Arkansas is not a party."  Doc. 3090 at 7.  In evaluating compliance with disclosure requirements under Rule 26(a)(2)(C), courts have acknowledged the practical reality that parties do not have unlimited access to their experts and have adjusted the demands of their evaluation accordingly.  *See, e.g., Crouch v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 5310247, at *6 (D. Kan. Oct. 21, 2019); *see also* Fed R. Civ. P. 26(a) advisory committee notes to 2010 amendment (reminding courts "that

8

these witnesses have not been specially retained and may not be as responsive to counsel as those who have"). This Court noted the same in sustaining Plaintiffs' disclosures. Doc. 3094 at 2.

Here, the practical reality is that, at the time of the initial disclosures, Defendants were unsure whether Mr. Fisk would be able to testify at all, let alone the details of that testimony. Accordingly, in an attempt to be as forthcoming as reasonably possible, Defendants disclosed his identity and hoped-for subjects of his testimony generally. *See* Doc. 3059 at 3. The supplemental disclosure simply filled in the details after permission was secured and counsel had an opportunity to confer with him in detail.[3]

Moreover, as was also explained in the supplemental disclosure, the scope of Mr. Fisk's anticipated testimony has expanded in light of Plaintiffs' expert disclosures, and "Defendants now expect that Mr. Fisk's testimony will include rebuttal testimony to opinions offered by Plaintiffs' [expert] witnesses." Doc. 3090 at 7. It would have been impossible for Defendants, without knowing the opinions that Plaintiffs' witnesses would provide, to have anticipated that Mr. Fisk would be able to provide on-point rebuttal testimony. This too is a substantial justification. "It is axiomatic that the law will not require the impossible." *Shackelford v. Pool*, 9 P.2d 756, 757 (Okla. 1932); *see also Pratt*, 2010 WL 5463123, at *3 (finding "substantial justification for [Defendant's] failure to serve the disclosures by the deadline" where

---

[3] Plaintiffs chippy retort that this "rings hollow" (Mot. at 5) is unbecoming. This is precisely what happened, and Defendants made the best we could of the circumstances.

"it was only after the deposition of [other experts] in early October 2010 that he real-ized the need to designate Plaintiff's health care providers as his own expert wit-nesses"); *Am. Family Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.*, 2014 WL 1962180, at *1 (D. Kan. May 15, 2014) (similar).  In light of these substantial justifi-cations, the Court should deny Plaintiffs' motion.

### III.    Exclusion of Mr. Fisk's opinion testimony is improper because the tim-ing of the supplemental disclosure was harmless.

Even if this justification were not substantial, the Court nevertheless should not exclude Mr. Fisk's opinion testimony because the timing of the supplemental dis-closure was harmless.  In arguing to the contrary, Plaintiffs correctly identify the four factors that "should guide [the Court's] discretion" in deciding whether any remedy is necessary, *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999), but ignore most authorities and misapply those stand-ards.  The standards, properly applied, support Defendants.

### A.    Plaintiffs are not prejudiced by the timing of the disclosure.

As courts in this circuit have explained, "the purpose of Rule 26 [is] to eliminate unfair surprise and to provide enough information to the opposing party about the expert's opinions and methodology to prepare for a deposition, any pretrial motions, and trial." *Cordero v. Froats*, 2016 WL 7426579, at *3 (D.N.M. Oct. 27, 2016) (citing *Dahlberg v. MCT Transp., LLC*, 571 F. App'x 641, 648 (10th Cir. 2014)).  Accordingly, "[t]he type of prejudice that rises to the level of warranting the exclusion of a witness's testimony under [Rule 37(c)(1)] is the inability of the opposing party to fully litigate the case and defend against the new testimony." *Rimbert v. Eli Lilly & Co.*, 647 F.3d

10

1247, 1255 (10th Cir. 2011); *see also Roof Rehab, LLC v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 5579053, at *7 (D. Colo. Nov. 30, 2021) (explaining that the prejudice relevant to Rule 37(c)(1) is "hinder[ance to] a party's ability to adequately or appropriately prepare for trial").

That sort of prejudice is not present here.  Plaintiffs claim that they "ha[ve] not received any information upon which Fisk will base his eight pages of newly-disclosed opinions."  Mot. at 3.  But that is patently untrue.  Defendants' supplemental disclosure (i) specifically identifies documents and exhibits on which Mr. Fisk would base his opinions, all of which Plaintiffs have in their possession, (ii) explains that Mr. Fisk's opinions will otherwise be based on his "observations" and "experience" in his role with the state of Arkansas, and (iii) gives detail on the nature of such "observations" and "experience."  Doc. 3090 at 8–14.  Plaintiffs' complaint of prejudice thus has nothing at all to do with the *timing* of Defendants' disclosure; it is a claim of a *substantively* inadequate disclosure, which plays no part in the four factors that "guide [the Court's] discretion" here.  *See Woodworker's Supply, Inc.*, 170 F.3d at 993.

At bottom, there is no prejudice to Plaintiffs' ability to prepare for cross-examining Mr. Fisk.  Indeed, factoring in the supplemental disclosure, Plaintiffs will still have more time to prepare for Mr. Fisk's testimony than Defendants had to prepare for *any* opposing witness.  Without identification of some specific detriment, Plaintiffs cannot demonstrate prejudice here.

**B.      Plaintiffs' claim of incurable prejudice is inconsistent with how this Court has previously handled inadequate disclosures.**

Even if Plaintiffs' could establish prejudice, that prejudice has already been cured.  The November 18 disclosures identified Mr. Fisk as a witness and described the subjects of his testimony.  Doc. 3059 at 3.  Consistent with the Court's treatment of other Rule 26(a)(2)(C) disclosures, had Plaintiffs objected then, the Court would have ordered Defendants to supplement the disclosures.  *See* Doc. 3094 at 9–10.  That Defendants did so voluntarily should not be held against them.  The supplemental disclosure on November 27 thus cures any previous prejudice resulting from the initial disclosure.  *Cf. Girard Offices, LLC v. Am. Zurich Ins. Co.*, 2022 WL 4467240, at *14 (D. Colo. Sept. 26, 2022) (finding supplemental disclosures to be appropriate remedy); *Radiologix, Inc. v. Radiology & Nuclear Med., LLC*, 2019 WL 354972, at *4 (D. Kan. Jan. 29, 2019) (same); *Roof Rehab*, 2021 WL 5579053, at *7 (same).

**C.      The timing of the disclosure will not disrupt trial.**

Contrary to Plaintiffs' suggestions, a "disrupt[ion]" in the sense intended by *Woodworker's Supply* does not result from (allegedly) off-topic testimony.  *See* Mot. at 4–5.  Under this test, disruption is caused when, in light of the inadequate disclosure, the opposing party "would need additional witnesses to combat improper testimony" or "would have to rework the travel arrangements of many of the out-of-town witnesses" such that "the trial [c]ould not be completed within the [time] that the Court has allotted for it."  *Leon v. FedEx Ground Package Sys., Inc.*, 2016 WL 1158079, at *8–9 (D.N.M. Mar. 1, 2016) (citations omitted); *see Coffey v. United States*, 2012 WL 2175747, at *12–13 (D.N.M. May 26, 2012).

There is no such concern here. Mr. Fisk was already slated to testify, and the bulk of his testimony will be factual in nature—his opinion testimony will add a technical gloss on the facts to aid the Court's understanding. *Cf.* Fed. R. Evid. 702(a) (clarifying that assisting the trier of fact is the touchstone of allowing expert testimony). Plaintiffs do not identify any specific disruptions stemming from the timing of this disclosure. The only "disruptions" they identify are related to the relevance of the subject matter of Mr. Fisk's testimony. *See* Mot. at 4–5. Not only are such complaints irrelevant to Rule 37 exclusion, but they are also completely unrelated to the timeliness of the disclosure—Plaintiffs have known the general subjects of Mr. Fisk's testimony since the original disclosures on November 18. Doc. 3059 at 3. And Plaintiffs' argument that Mr. Fisk should not be permitted to testify regarding subjects such as "how Arkansas collects its poultry litter data"—a subject Plaintiffs themselves have directly put in issue and attacked—should be rejected. Mot. at 4.

## D.    The timing of the disclosure was not the result of any bad faith or willfulness from the Defendants.

As explained *supra* § II and in the supplemental disclosure, Mr. Fisk's opinions and the factual bases for them were not disclosed until November 27 because Mr. Fisk had not gotten the requisite approval from his supervisors and Defendants did not know the content of Plaintiffs' experts' opinions that Mr. Fisk will now be rebutting. Doc. 3090 at 7. These facts alone foreclose the possibility of any bad faith or willfulness.

But even if things were as Plaintiffs say—that the "untimely disclosure is purely due to Defendants' failure to comply with the Court's clear deadlines," Mot. at

5—this factor *still* would not be satisfied.  Mere fault does not constitute bad faith or willfulness.  *See Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 82 n.4 (10th Cir. 2011) (explaining that even an "utter lack of regard to the deadlines" does not meet this standard); *see also In re Commercial Fin. Servs., Inc.*, 2010 WL 1008887, at *6 (N.D. Okla. Mar. 16, 2010) (noting that this standard typically demands an "intent unreasonably to delay the proceedings") (quoting *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992)).  "Without a finding of bad faith or gamesmanship . . . courts are loathe to invoke the strong medicine of precluding expert testimony."  *McAdoo v. ITT Educ. Servs., Inc.*, 2011 WL 2198568, at *2 (D. Colo. June 6, 2011) (citation omitted).  The Court should not do so here.

## CONCLUSION

A close reading of Plaintiffs' motion to strike reveals the true nature of their objection: that Mr. Fisk's testimony "conflicts with the scope and purpose of this evidentiary hearing," "will confuse the issues," and "will only distract the Court from the matter at hand."  Mot. at 4.  These are not grounds for exclusion for untimely disclosure under Rule 37(c)(1); they are a poorly disguised attack on the inconvenient nature of Mr. Fisk's evidence.  *Cf.* Fed. R. Evid. 403.  Mr. Fisk's expert opinion testimony will aid the Court in this matter, and the timing of the disclosure for Mr. Fisk is both substantially justified and harmless.  The Court therefore should deny Plaintiffs' motion.  *See Coffey*, 2012 WL 2175747, at *12–13.

14

December 9, 2024                                    Respectfully submitted,


/s/ *Gordon D. Todd*                               /s/ *A. Scott McDaniel*
Mark D. Hopson                                     A. Scott McDaniel, OBA #16460
Frank R. Volpe                                     McDaniel Acord, PLLC
Gordon D. Todd                                     9343 East 95th Court
Benjamin M. Mundel                                 Tulsa, OK  74133
Cody L. Reaves                                     (918) 382-9200
David H. Kinnaird
  (*pro hac vice* forthcoming)                     *Attorneys for Tyson Foods, Inc., Tyson*
Sidley Austin LLP                                  *Poultry, Inc., Tyson Chicken, Inc.,*
1501 K Street, NW                                  *Cobb-Vantress, Inc., and Peterson*
Washington, D.C.  20005                            *Farms, Inc.*
(202) 736-8000
(202) 736-8711 (facsimile)
mhopson@sidley.com
fvolpe@sidley.com
gtodd@sidley.com
cody.reaves@sidley.com
pbruland@sidley.com
dkinnaird@sidley.com

*Attorneys for Tyson Foods, Inc.,*
*Tyson Poultry, Inc., Tyson Chicken,*
*Inc., and Cobb-Vantress, Inc.*

15

/s/ *Robert George*
Robert George, OBA #18562
George's, Inc.
402 W. Robinson Ave.
Springdale, AR  73764
(479) 927-7249

K.C. Dupps Tucker
Kristy E. Boehler
The Law Group of Northwest
  Arkansas PLLC
1830 Shelby Lane
Fayetteville, AR 72704
(479) 316-3760

Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

Clinton Russell, OBA # 19209
Taylor, Foster, Mallett, Downs,
  Ramsey & Russell
400 West Fourth Street
Claremore, OK 74018
(918) 343-4100
crussell@soonerlaw.com

*Attorneys for George's, Inc. and
George's Farms, Inc.*

/s/ *John R. Elrod*
John R. Elrod (admitted *pro hac vice*)
Vicki Bronson, OBA 20574
Conner & Winters, P.C.
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@cwlaw.com
vbronson@cwlaw.com

*Attorneys for Simmons Foods, Inc.*

/s/ *Robert P. Redemann*
Robert P. Redemann, OBA #7454
William D. Perrine, OBA #11955
Perrine, Redemann, Berry,
  Taylor & Frette, PLLC
1800 S. Baltimore Ave., Suite 900
Tulsa, OK 74119
(918) 382-1400
(918) 382-1499 (facsimile)
rredemann@pmrlaw.net
wperrine@pmrlaw.net

Robert E. Sanders, MSB#6446
  (admitted *pro hac vice*)
Young Wells Williams P.A.
P.O. Box 6005
Ridgeland, MS  39158-6005
(601) 948-6100
(601) 355-6136 (facsimile)
rsanders@youngwells.com

*Attorneys for Cal-Maine Foods*

/s/ *John H. Tucker*
John H. Tucker, OBA 9110
Theresa N. Hill, OBA 19119
Colin H. Tucker
Rhodes Hieronymus Jones
  Tucker & Gable
Two W. 2nd Street, Suite 1000
P.O. Box 21100
Tulsa, OK  74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com
chtucker@rhodesokla.com


Jacob D. Bylund, admitted *pro hac vice*
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Main: (515) 248-9000
jacob.bylund@faegredrinker.com


Delmar Ehrich, admitted *pro hac vice*
Bruce Jones, admitted *pro hac vice*
Aaron D. Van Oort, admitted *pro hac vice*
Christopher H. Dolan, admitted *pro hac vice*
Jeffrey P. Justman, admitted *pro hac vice*
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Well Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Main:  (612) 766-7000
delmar.ehrich@faegredrinker.com
bruce.jones@faegredrinker.com
aaron.vanoort.jones@faegredrinker.com
chris.dolan@faegredrinker.com
jeff.justman@faegredrinker.com


*Attorneys for Cargill, Inc. and Cargill Turkey Production, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 9, 2024, I caused this document to be filed with the

Clerk of Court through CM/ECF, which will serve copies on all registered counsel.


<u>/s/ *Gordon D. Todd*</u>
Gordon D. Todd