# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**STATE OF OKLAHOMA,** *et al.*

**Plaintiffs,**

vs.                                                    Case No.  05-CV-0329-GKF-SH

**TYSON FOODS, INC.,** *et al.*

**Defendants.**

### CONSENT JUDGMENT

A.        Plaintiffs, the State of Oklahoma ("State") and the Oklahoma Secretary of Energy and Environment, in his capacity as trustee for natural resources for the State of Oklahoma ("Secretary," and collectively with the State, "Plaintiffs") filed a civil Complaint on June 13, 2005 alleging that George's, Inc. and George's Farms, Inc. (collectively "George's") and various other defendants degraded and impaired the lands, waters, and other natural resources of the Illinois River Watershed ("IRW"). For the avoidance of doubt, the IRW is the watershed with its terminus at Lake Tenkiller Ferry Lake ("Lake Tenkiller") and with its headwaters in Northwest Arkansas. The 8-Digit Hydrologic Unit Code for this watershed is 11110103.  In this Consent Judgment, IRW means the Illinois River Watershed encompassing approximately 1,069,530 acres located in northeastern Oklahoma (Adair, Cherokee, Delaware, and Sequoyah Counties) and northwestern Arkansas (Crawford, Benton, and Washington Counties) and depicted in State's Ex. 3351 at OSU0005147.  Within the IRW are the Illinois River, as well as its major tributaries, including the Baron (aka Barren) Fork River, the Caney Creek, and the Flint Creek.  State's Ex. 3351 at OSU0005160; *see also* Daily Trans., 10105:7-20 (Grip Testimony).  The IRW includes the 12,900 acre Tenkiller Ferry Lake.  State's Ex. 3351 at OSU0005174.

B.      After decades of litigation, Plaintiffs and George's (the "Parties"; singularly a "Party") have agreed to the entry of this consent judgment ("Consent Judgment") in full settlement of all claims that were brought or could have been brought against George's in the above-styled proceedings. As to George's, this Consent Judgment supersedes and replaces the Judgment (Doc. No. 3192) entered by the Court on December 19, 2025 (the "December 19, 2025 Judgment"). George's does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the Complaint. This Consent Judgment shall not be used against George's as evidence of liability, fault, or wrongdoing in any proceeding, and shall not have collateral estoppel or res judicata effect as to issues not expressly resolved herein.

C.      The Parties agree, and the Court by entering this Consent Judgment finds, that this Consent Judgment, and the remedial and monetary obligations thereunder, address only the acts or omissions of George's, as alleged in the Complaint, and do not address the alleged acts and omissions of any other person or entity, aside from those expressly released herein.

D.      The Parties agree, and the Court by entering this Consent Judgment finds, that this Consent Judgment has been negotiated by the Parties in good faith and the terms memorialized in this Consent Judgment will avoid further prolonged and complex litigation and appeal between the Parties.

E.      This Consent Judgment constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Judgment, and the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Judgment.

F.      The Parties waive any right they may have to appeal as to each other from the December 19, 2025 Judgment and all earlier decisions by this Court, as well as from this Consent Judgment and from any order adopting it, provided that no substantive changes are made to the Consent Judgment after it has been presented by the Parties to the Court for approval. For the avoidance of doubt, in the event that this Consent Judgment is withdrawn by the Parties prior to entry, is substantively modified by the Court without the Parties' consent or is vacated after entry by the Court, both Parties retain the right to appeal as to each other from the December 19, 2025 Judgment and all earlier decisions by this Court. Within five (5) days of the Effective Date, George's will withdraw as a movant from the request(s) for a stay of the December 19, 2025 Judgment. Plaintiffs retain the right to appeal vis-à-vis other defendants, until and unless that right is extinguished by other Consent Judgments.

**NOW, THEREFORE,** without admission by George's of the allegations in the Complaint, and upon the consent and agreement of the Parties to this Consent Judgment, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

## I. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action. This Court also has personal jurisdiction over the Parties. Solely for the purposes of this Consent Judgment and any enforcement of its provisions, George's waives all objections and defenses that it may have to jurisdiction of the Court.

2.      The Parties have read and understand this Consent Judgment and enter into it voluntarily, each having been advised by their undersigned counsel of the meaning and effect of each provision of this Consent Judgment.

## II. EFFECTIVE DATE

3

3.     The effective date of the Consent Judgment (the "Effective Date") shall be the day the Court enters the Parties' proposed Consent Judgment until and unless a Party successfully challenges it. The Parties agree to work together in good faith to achieve the entry of this proposed Consent Judgment and to oppose any efforts by others who are not Parties to this Consent Judgment to appeal, materially modify, or otherwise challenge it. The Parties also agree to make best efforts to encourage third parties to support the terms and intent of this Consent Judgment. The Parties agree to work together cooperatively to support the aims of the Consent Judgment by encouraging engagement with stakeholders and participation in educational programs to increase the likelihood of implementation practices that reduce the impact of excess phosphorus in the IRW.

### III. MONETARY RELIEF AND WITHDRAWAL OF NOTICE OF APPEAL

4.     Thirty (30) days after the Effective Date, provided that no appeal or objection regarding this Consent Judgment is pending on such date, George's will: (a) voluntarily dismiss George's notice of appeal as to the December 19, 2025 Judgment; and (b) make a one-time payment in the amount of $5,000,000 to the State (the "Monetary Relief Fund") for purposes including, but not limited to, remediation or conservation projects in the IRW and for payment of attorney's fees and litigation costs in an amount to be determined either by order of the Court or by agreement between the State and its outside private lawyers. In the event an appeal or objection regarding this Consent Judgment is pending on the date that is thirty (30) days after the Effective Date, George's obligations under this Paragraph 4 will be suspended until thirty (30) days after the date when such appeal or objection is resolved, unless George's obligations under this Paragraph are no longer enforceable as a result of the appeal or objection.

5.      No part of the Monetary Relief Fund shall constitute, nor shall it be construed as, or treated as constituting payment for penalties, fines, treble or multiple damages, forfeitures, or punitive recoveries.

## IV. LITTER REMOVAL

6.      **Litter Removal Commitments.**   George's, through its own efforts and/or coordinated efforts with independent contract growers raising its birds, shall meet or exceed the following requirements or, upon written election by George's, the least restrictive requirements contained within any binding and enforceable consent judgment or settlement agreement between the State and any other company named as a defendant in this case that continues to raise poultry in the IRW after the Effective Date:

| Time Period | Land Application Restrictions |
|---|---|
| Years 1 & 2 | No more than 40% of litter removed each year from poultry houses in the IRW owned or operated by or under contract with George's (each an "IRW Grower" and collectively the "IRW Growers") will be land applied to soils located within either the Oklahoma or Arkansas portions of the IRW.<br><br>None of the litter exported from the IRW to meet the foregoing requirement may be land applied to soils located within the Oklahoma portion of any Oklahoma Nutrient Sensitive Watershed ("ONSW") defined below.[1] |
| Years 3 & 4 | No more than 30% of litter removed each year from poultry houses of the IRW Growers will be land applied to soils located within either the Oklahoma or Arkansas portions of the IRW.<br><br>None of the litter exported from the IRW to meet the foregoing requirement may be land applied to soils located within the Oklahoma portion of any ONSW. |
| Years 5, 6 & 7 | No more than 20% of litter removed each year from poultry houses of the IRW Growers will be land applied to soils located within either the Oklahoma or Arkansas portions of the IRW.<br><br>None of the litter exported from the IRW to meet the foregoing requirement may be land applied to soils located within the Oklahoma portion of any ONSW. |

---

[1] Neither this provision, nor any other provision in this Consent Judgment, allows for, or should be construed as allowing for, non-compliance with any and all applicable laws, regulations, rules, court orders, and judgments.

"Year 1" for purposes of the foregoing land application restrictions shall be the twelve (12) month period commencing on the Effective Date, and each subsequent year shall commence on the anniversary of the Effective Date and end twelve (12) months thereafter. For compliance purposes the percentages in the table above shall be based on the weight of litter removed each year from the houses of the IRW Growers. If the weight of a load of litter removed from a house of an IRW Grower cannot be reasonably determined using a scale, such litter will not be land applied in the IRW or in the Oklahoma portion of any other ONSW, and such litter will not be included in calculations for showing George's compliance with the litter removal requirements of this Paragraph 6. Poultry litter removed from a house and stored temporarily in a covered litter shed or stacking shed or in any other manner allowed by state law shall not be considered "removed" for purposes of the foregoing restrictions unless and until such stored litter is subsequently hauled away from the farm or land applied to soils in a manner compliant with all applicable laws, regulations, rules, court orders, and judgments, including this Consent Judgment. For the calculations for showing George's compliance with the litter removal requirements of this Paragraph 6, the weight of the litter removed from a house of an IRW Grower is the weight of the litter at the time the litter is removed from the farm or applied to land on the farm. The land application restrictions described for "Years 5, 6 & 7" in the table above may be extended by mutual written agreement of the Parties, or under the conditions set forth in Paragraph 24 for additional time periods after the conclusion of "Year 7."

"Oklahoma Nutrient Sensitive Watershed" (each an "ONSW" and collectively the "ONSWs") means those watersheds shown in the map in Attachment A. The watersheds shown in the map in Attachment A each include a waterbody listed on the 2022 Oklahoma 303(d) List of Impaired

Waters[2], whereby the waterbody is impaired for nutrient-related causes including nitrogen, phosphorus, low dissolved oxygen in lakes, or high chlorophyll-a concentrations.

7.    **Covenant Not to Sue.**  Provided that George's complies with the land application restrictions described in Paragraph 6 above, the State will not bring any claim, alleging or asserting that George's is liable for contamination (through any known or reasonably discoverable constituents of poultry litter as of the Effective Date) to the land, surface waters or groundwaters within the IRW including Lake Tenkiller, arising from or relating to poultry litter generated by current or former IRW Growers.  The foregoing covenant not to sue shall apply for the duration of the Term specified in Paragraph 23 and additional time periods, if any, for which the Parties mutually agreed to extend the land application restrictions in accordance with Paragraph 6 above. If the Parties mutually agree to extend the land application restrictions in accordance with Paragraph 6 above, to claim the benefit of the covenant not to sue under this Paragraph 7, or pursuant to Paragraph 24, for any time period after the conclusion of "Year 7," George's will provide, upon request, written records from the IRW Growers and the litter haulers demonstrating that, for the time period at issue, it has continued to meet the land application restrictions described for Year 7 in the table included in Paragraph 6.

## V.  SPECIAL MASTER[3]

---

[2] The 2022 Oklahoma 303(d) List of Impaired Waters is Appendix C of the 2022 Integrated Report on Water Quality in Oklahoma. Appendix C is available at https://oklahoma.gov/content/dam/ok/en/deq/documents/water-division/OK_2022-Appendix-C-Final.pdf.

[3] If Plaintiffs enter into subsequent Consent Judgments that provide for a different term to describe the role of the special master, the Parties intend that the same person or entity oversee all defendants. Further, if the Court appoints a special master under the December 19, 2025 Judgment with respect to any other defendant, the Parties intend that the same person or entity oversee all defendants, with the special master's oversight of George's governed by the requirements of this Consent Judgment.

8.      Within thirty (30) days after the Effective Date, the State will apply to the Court for the appointment of a special master to monitor compliance by George's with the applicable land application restrictions of Paragraph 6.  George's will not oppose such appointment, however, George's will be afforded the opportunity to object, consistent with Paragraph 9 below, to the person or entity selected by the State.  The special master will be entitled to judicial immunity in the performance of his or her duties within the scope of the special master's court-approved engagement under this Consent Judgment.

9.      The special master shall meet the following minimum requirements:  (a) knowledgeable by experience or training in agricultural practices; (b) knowledgeable by experience or training in water quality concerns related to agriculture; and (c) no prior involvement as a lawyer, witness or consultant for any party to this proceeding.  The State shall confer with George's on the selection of the person or entity to serve as the special master.  If the Parties are unable to agree on the person or entity to serve as the special master, then the State will petition the Court for approval of the person or entity selected by the State with George's being afforded an opportunity to submit an objection to the Court within ten (10) days of the State's petition.  The Court shall be free to appoint the person or entity selected by the State for special master or any other person or entity meeting the minimum requirements for the special master, if the Court deems appropriate or necessary. Any vacancy of the special master's position occurring for any reason during the Term shall be filled in the manner described in this Paragraph 9.

10.     Within sixty (60) days of the conclusion of each year included in the table in Paragraph 6, George's shall certify under oath compliance with the applicable land application restrictions of Paragraph 6 and provide the special master with business records and supporting documentation sufficient to substantiate such compliance.

11.    George's shall cooperate with all reasonable requests by the special master to obtain and/or inspect records of George's, the IRW Growers and the haulers removing litter from the farms of IRW Growers to the extent necessary to monitor compliance with the litter application restrictions of Paragraph 6. If the special master believes that additional information is needed to assess George's compliance with the terms of this Consent Judgment, he or she shall first request that information from George's. If George's does not provide the requested information to the special master's satisfaction, he or she may petition the Court, which petition shall set forth the requested information, an explanation as to why the information is needed to assess George's compliance with the terms of this Consent Judgment and efforts to obtain that information from George's. Both George's and Plaintiffs may be heard regarding the request. In the event that the special master wishes to conduct an onsite inspection, the special master must show the Court by a preponderance of the evidence why such an inspection is necessary to effectuate the terms of this Consent Judgment.

12.    Within thirty (30) days of the Effective Date, George's will arrange for direct payment of $250,000 to the State for deposit into an escrow account to be used to pay for the services and/or expenses of the special master in monitoring compliance with the litter application restrictions of Paragraph 6. The State will approve distributions from the escrow account to the special master and George's financial obligations for cost of the special master shall be fully and finally satisfied through the $250,000 payment described in this Paragraph 12 regardless of the actual cost of the compliance monitoring by the special master. Once the escrow account established under this Consent Judgment is exhausted, the State shall be responsible thereafter for funding any future cost of compliance monitoring by the special master, including by using funds obtained from other sources, including other defendants. Any surplus or balance remaining in the

escrow account as of the termination of this Consent Judgment shall be used by the State for remediation or conservation of the IRW.

13.     If the special master believes that George's has Materially failed to meet the land application restrictions of Paragraph 6 during the Term of this Consent Judgment, the special master shall provide written notice of the violation to George's and the Oklahoma Attorney General.  "Material" in this context shall mean that George's failed to meet an applicable land application restriction of Paragraph 6 by more than five percent (5%).[4]  During the sixty-day period after providing notice, the special master shall make himself or herself reasonably available to meet with George's and the Oklahoma Attorney General to discuss the substance of the alleged violation, including but not limited to the reason(s) for the special master's belief that George's is in violation, and the special  master shall consider in good faith any additional evidence or arguments that George's chooses to submit to demonstrate its compliance with this Consent Judgment and any additional evidence or arguments that the State chooses to submit to demonstrate non-compliance with this Consent Judgment.

14.     If, after considering any additional evidence or arguments presented by George's and the State, the special master concludes that a Material violation of the land application restrictions of Paragraph 6 occurred, then George's will make a one-time payment to the State equal to the sum of (1) $10,000 plus (2) $30/ton for each ton of litter that produced the violation .[5]

---

[4] By way of illustration only, during Year 1, if 100,000 tons of litter was removed from the houses of the IRW Growers, and more than 42,000 tons of such litter was land applied in the IRW, in the Oklahoma portion of any ONSW or ONSWs, or in any combination of the IRW and the Oklahoma portion of any ONSW or ONSWs, then George's would have Materially failed to meet the land applications restrictions of Paragraph 6.

[5] By way of an illustration only, if 5,000 tons of litter more than was permitted under Paragraph 6 was land applied in the IRW, then the stipulated penalty for that violation would be $160,000 computed as follows:  $10,000 + (5,000 tons x $30).

Any payment to the State for a Material violation of the land application restrictions of Paragraph 6 will be used for remediation or conservation projects in the IRW or will be used to pay for the services of the special master at the State's sole discretion.

15.    If George's disputes the existence of a Material violation or the calculation of a penalty amount, George's may, within thirty (30) days of the issuance of a penalty demand, petition the Court to resolve any such dispute.  George's shall pay any undisputed amount before petitioning the Court but may withhold payment of any disputed amount until thirty (30) days after the determination is made without incurring any interest or further penalty provided the Court determines that the dispute was instituted in good faith.  The Court may award reasonable attorney's fees and costs to the prevailing party in a proceeding initiated under this Paragraph 15.

16.    The special master shall annually prepare a report describing the status of George's compliance with the provisions of this Consent Judgment including progress toward and/or satisfaction of the land application restrictions set forth in Paragraph 6, any Material violation of the land application restrictions set forth in Paragraph 6, and any penalty demands.  Such reports shall be delivered to the Oklahoma Attorney General and to the Court.  The annual reports required under this Paragraph 16 shall be treated by the State and the Court as public records provided that no information specifically identifying the name or location of poultry farms or landowners is contained within such reports.

## VI. STATE NUTRIENT MANAGEMENT LAWS NOT SUPERSEDED

17.    Litter applications occurring within the IRW during the Term of the Consent Judgment, if any, and applications occurring after the expiration of the Term of the Consent Judgment will remain subject to all state litter management laws and regulations as amended from time to time including laws and regulations requiring adherence to state-issued nutrient

11

management plans. The special master shall have no authority to investigate, enforce or monitor compliance with legal requirements applicable to poultry litter or agricultural operations other than the land application restrictions agreed to by the Parties as set forth in Paragraph 6 of this Consent Judgment.

## VII. EFFECT OF SETTLEMENT AND RELEASE

18.    This settlement is conditioned upon the approval of the Consent Judgment by the Court. As of the Effective Date, the State, on behalf of itself and all officers, agencies, divisions, subdivisions, departments, and persons acting or claiming to act on its behalf ("Releasing Parties") shall fully, finally, and forever release, relinquish and discharge George's together with any and all their past and current direct and indirect, corporate parents (including holding companies), owners, subsidiaries, affiliates, departments, divisions, joint ventures, predecessors, and successors, and each of their respective past and current, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, employees, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives, only in his/her/its capacity on behalf of George's (the "Released Parties") from any and all manner of claims, demands, actions, suits or causes of action, that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the conduct alleged or that could have been alleged in the case as it concerns poultry litter in the Illinois River Watershed, any waterways, groundwater or waters of the State in the Illinois River Watershed, and/or Lake Tenkiller (the "Released Claims").

For avoidance of doubt, the Parties agree that all liabilities and obligations of the Released Parties as defined in this Consent Judgment under the provisions of the December 19, 2025 Judgment are Released Claims for purposes of this Consent Judgment. The Releasing Parties further agree that they will not file, or encourage others to file or pursue, any claim against the Released Parties arising out of, or relating to, the Released Claims. However, in the event a non-party to this Consent Judgment files or pursues any claim against the Released Parties arising out of, or relating to, the Released Claims, the State reserves any and all rights to intervene or take other actions necessary to protect the State's interests provided that any such advocacy by the State is not inconsistent with this Consent Judgment. For the avoidance of doubt, the State's reservation of rights includes the right to file a motion to intervene, at the State's sole discretion, in any and all cases where the State is implicated as a necessary party.

19.    The Parties agree the IRW Growers were never sued by the State in this lawsuit. However, for the avoidance of doubt, as of the Effective Date, the Releasing Parties shall fully, finally, and forever release, relinquish and discharge any person that is or was previously under contract with any Released Party for the production or care of poultry or eggs in the Illinois River Watershed (the "Released IRW Growers") from any Released Claim. The Releasing Parties further agree that they will not file, or encourage others to file or pursue, any claim against the Released IRW Growers arising out of, or relating to, the Released Claims. However, in the event a non-party to this Consent Judgment files or pursues any claim against the Released IRW Growers arising out of, or relating to, the Released Claims, the State reserves any and all rights to intervene or take other actions necessary to protect the State's interests provided that any such advocacy by the State is not inconsistent with the terms of this Consent Judgment. For the avoidance of doubt, the State's reservation of rights includes the right to file a motion to intervene, at the State's sole

discretion, in any and all cases where the State is implicated as a necessary party. The Released Parties agree not to use this Consent Judgment as the reason or basis for any decision not to renew contracts with Released IRW Growers. Notwithstanding the preceding sentence, nothing in this Consent Judgment obligates the Released Parties to renew or extend any contract with any particular Released IRW Growers.

20.    As of the Effective Date, all claims asserted in this action by George's against third party defendants shall be dismissed from the case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A).

21.    It is the express intention of the State to reserve any rights, claims or causes of action that the State may have against any person other than the Released Parties but to release fully and completely the Released Parties. Therefore, in consideration of the payments and commitments by George's specified in this Consent Judgment, the State agrees to a reduction of any damages awarded against other defendants to this lawsuit on a joint and several basis to the extent of the pro-rata share of the liability of the Released Parties. It is specifically intended that the Released Parties are, and shall be, to the extent permitted by law, released with respect to any liability or alleged liability as a joint tortfeasor regarding the Released Claims. The State further agrees and intends that this Consent Judgment shall also release any and all claims for damages to the extent of any several share of fault for which contribution might otherwise be had against the Released Parties regarding the Released Claims.

## VIII. ATTORNEYS' FEES AND COSTS

22.    Provided that this Consent Judgment is entered without material modification of the terms negotiated by the Parties and is not thereafter successfully challenged or vacated, George's waives and releases any right available to it at law to seek to recover its attorney's fees,

costs and expenses incurred in connection with this lawsuit from the State. The State reserves the right to apply to the Court, at an appropriate time, for an award of its attorney's fees and litigation costs incurred in connection with this lawsuit. The State further reserves the right, if necessary, to petition the Court for a determination of the costs and fees owed by the State to the outside or private counsel representing the State in this litigation as a result of this settlement between the State and George's. The Parties agree, however, that George's liability under any award or determination for costs or attorneys' fees by the Court, including by not limited to any award arising from the December 19, 2025, Judgment, has been fully satisfied and released under the terms of this Consent Judgment, provided that this Consent Judgment is not successfully challenged. For the avoidance of doubt, the Parties further agree that George's liability for any award or determination by the Court for costs or attorneys' fees, whether based upon work performed by private or outside attorneys or by attorneys who are current or former employees of the State, has been fully satisfied and released under the terms of this Consent Judgment.

## XI. TERM AND TERMINATION

23.    Unless extended by the Court in accordance with Paragraph 24, the obligations of George's under the Consent Judgment and the Court's continuing jurisdiction over this settlement will automatically terminate seven (7) years from the Effective Date ("Term").

24.    Prior to expiration of the Term, the State may petition the Court to retain jurisdiction beyond the Term only upon a showing by clear and convincing evidence that George's has materially violated the provisions of this Consent Judgment and has failed or refused to adequately cure or remedy such violations within a reasonable time following George's receipt of written notice of such violations. The State shall bear the burden of proof as to any petition asking for a continuation of the Court's jurisdiction beyond the Term. If the State prevails on such petition, the

Court shall retain jurisdiction to the extent necessary for George's to cure or remedy the violations proven by the State and the provisions of this Consent Judgment will remain in force until George's shows by clear and convincing evidence that George's has cured or remedied such violations.

## XII. SIGNATORIES

29.    Each Undersigned signatory certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind such Party to this document.

**State of Oklahoma and the
Oklahoma Secretary of Energy and Environment**

_____
GENTNER DRUMMOND, OBA #16645
*Attorney General*
GARRY M. GASKINS, II, OBA #20212
*Solicitor General*
JENNIFER L. LEWIS, OBA #32819
*Deputy Attorney General*
OFFICE OF ATTORNEY GENERAL STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Direct: (405) 521-3921
jennifer.lewis@oag.ok.gov

M. David Riggs, OBA #7583
Kristopher E. Koepsel, OBA #19147
Riggs, Abney, Neal, Turpen, Orbison & Lewis
502 West 6th Street
Tulsa, OK 74119
(918) 587-3161

Robert A. Nance, OBA #6581
W.A. Drew Edmondson, OBA #2628
Riggs, Abney, Neal, Turpen, Orbison & Lewis
528 N.W. 12th Street
Oklahoma City, OK 73103
(405) 843-9909

Louis W. Bullock, OBA #1305
Bullock Law Firm PLLC
110 W. 7th Street
Tulsa, OK 74119
(918) 584-2001

Frederick C. Baker, admitted *pro hac vice*
Cynthia Solomon, admitted *pro hac vice*
Kristin Hermiz, admitted *pro hac vice*
Madeline Becker, admitted *pro hac vice*
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9186

*Counsel for Plaintiffs*

**George's, Inc. and George's Farms, Inc.**

Robert George, OBA #18561
Georges, Inc.
402 W. Robinson Ave.
Springdale, AR  73764
(479) 927-7249

And

K.C. Dupps Tucker
Kristy Boehler
The Law Group of Northwest Arkansas LLP
1830 Shelby Lane
Fayetteville, AR 72704

And

Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

And

Clinton Derek Russell
Taylor Foster Law Firm
P.O. Box 309
Claremore, OK  74018
(918) 343-4100

On Behalf of the Defendants,
George's, Inc. and George's Farms, Inc.

       IT IS SO ORDERED this _____ day of January 2026.


_____
HON. GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

ATTACHMENT A

