**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **STATE OF OKLAHOMA,** *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| **v.** | ) | **Case No.  05-cv-329-GKF-SH** |
| | ) | |
| **TYSON FOODS, INC.,** *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM IN SUPPORT OF THE STATE OF OKLAHOMA'S BILL OF COSTS

## TABLE OF CONTENTS

I.    **BACKGROUND** .......................................................................................... 2

II.   **LEGAL STANDARD** ................................................................................... 5

III.  **COSTS** ....................................................................................................... 7

   **A.**  **Fees of the clerk and marshal** ........................................................ 7

   **B.**  **Fees for transcripts** ........................................................................ 9

       **1.**  **Fees for transcripts of hearings** ........................................ 9

       **2.**  **Fees for trial transcripts** ................................................... 10

       **3.**  **Fees for depositions** .......................................................... 12

   **C.**  **Fees for exemplification and copies** .............................................. 15

       **1.**  **Paper copies** ...................................................................... 15

       **2.**  **Electronic copies** ............................................................... 16

   **D.**  **Docket Fees** .................................................................................... 17

   **E.**  **Witness fees** ................................................................................... 17

       **1.**  **Witness attendance** ........................................................... 18

       **2.**  **Expenses of Travel** ........................................................... 18

       **3.**  **Subsistence fees** ................................................................ 19

IV.  **CONCLUSION** ......................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*AgJunction, LLC v. Agrian, Inc.*, 2016 WL 3031088, at *4 (D. Kan. May 27, 2016) ...... 10, 15, 16

*Allison v. Bank One–Denver*, 289 F.3d 1223, 1249 (10th Cir. 2002) ........................................... 13

*Attorney General for Oklahoma, et al. v. Tyson Foods, Inc., et al.*,

    No. 08-05154 (10th Cir. 2009).................................................................................................... 2

*Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) ...................................... 4

*Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1078-79

    (D. Kan. 2005) .......................................................................................................................... 8, 9

*Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998) ........................ passim

*Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 458-59

    (10th Cir. 1995).......................................................................................................................... 4, 5

*Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1259 (10th Cir.1998) ................................. 14

*CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328-32 (Fed. Cir. 2013)............ 15

*Colosi v. Jones Lang LaSalle Ams., Inc.*, 781 F.3d 293, 297 (6th Cir. 2015)................................ 15

*Country Vitner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 261

    (4th Cir. 2013)............................................................................................................................... 15

*Debord v. Mercy Health Sys. of Kan., Inc.,* 737 F.3d 642, 659 (10th Cir. 2013) ........................... 5

*Ellis v. Sheriff*, 2024 WL 866352, *10 (N.D. Okla. Feb. 29, 2024)................................................. 9

*Furr v. AT&T Techs., Inc.,* 824 F.2d 1537, 1550 (10th Cir. 1987) ................................................. 11

*Green Const. Co. v. Kansas Pwr. & Light Co.*, 153 F.R.D. 670, 679 (D. Kan. 1994) ................. 11

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 927-28 (9th Cir. 2015)........................ 15

*In re Williams Secs. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009)............... passim

*MCC Management of Naples, Inc. v. International Bancshares Corporation*,

    2010 WL 3522375, *2 (W.D. Okla. Sept. 8, 2010) ................................................... 12

*Miser v. Freight Logistics, Inc.*, 2024 WL 2260803, *5 (D. Kan. May 17, 2024) ........................ 7

*Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1204 (10th Cir. 2000) ........................... 5, 8

*Nero v. Am. Family Mut. Ins. Co.*, 2013 WL 4323262, at *2-3

    (D. Colo. Sept. 23, 2013) ...................................................................................... 15

*Oklahoma v. Tyson Foods, Inc.*, 258 F.R.D. 472, 484 (N.D. Okla. 2009) ..................................... 3

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 166 (3d Cir. 2012) ................ 15

*Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360, 1458

    (D. Kan. 1987) ...................................................................................................... 11

*Redbird Bus. Grp., LLC v. Harrison*, 2024 WL 1313470, at *2

    (E.D. Okla. Mar. 27, 2024) .............................................................................. 8, 14

*State of Oklahoma v. Tyson Foods, Inc., et al.*, No. 09-05134 (10th Cir. 2010) ........................... 2

*State of Oklahoma v. Tyson Foods, Inc., et al.*, No. 4:05-cv-00329-GKF-SH

    (N.D. Okla. June 13, 2005) ....................................................................................... 2

*Tilton v. Capital Cities/ABC, Inc.,* 115 F.3d 1471, 1478-79 (10th Cir. 1997) ...................... 12, 15

*U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1246 (10th Cir. 1988) ................... 6, 9, 13

*Unishippers Global Logistics, LLC v. DHL Exp. (USA), Inc.*, 2011 WL 6754050, at *6

    (D. Utah Dec. 22, 2011) ......................................................................................... 10

*Ware v. Mercy Health*, 2024 WL 2806959, at *1 (W.D. Okla. May 31, 2024) ........................... 15

**Statutes**

28 U.S.C. § 0.114(a)(3) (May 1, 1997) ......................................................................... 7

28 U.S.C. § 1821 ................................................................................... 16, 17, 18

28 U.S.C. § 1920 ................................................................................................ passim

28 U.S.C. § 1923 ........................................................................................................ 16

**Other Authorities**

2010 Per Diem Rates for Tulsa County, Oklahoma, PerDiem101

   (last accessed January 12, 2026) ....................................................................... 18

FY 2025 per diem rates for Oklahoma, U.S. General Services Administration

   (last accessed Jan. 12, 2026) ............................................................................. 19

General Rules for Trial of Cases Before Judge Gregory K. Frizzell

   (Updated September 16, 2024) ............................................................................ 15

Guidelines for Taxation of Costs, United States District Court Northern District of Oklahoma

   (Apr. 14, 2021) ............................................................................................. passim

IRS Issues 2010 Mileage Rates, J. Accountancy (Dec. 3, 2009) ................................ 17

**Rules**

Federal Rule of Civil Procedure 54(d) ............................................................... 1, 4, 19

Local Rule LCvR54 ............................................................................................. 1, 19

Pursuant to Local Rule LCvR54, Federal Rule of Civil Procedure 54(d), and 28 U.S.C. § 1920, the State of Oklahoma ("the State") submits this memorandum in support of its Bill of Costs. The State respectfully requests that the Court tax allowable costs in the amount of $304,405.66. In accordance with LCvR54, the State submits a Bill of Costs (Form AO-133) as Exhibit 1, and affidavits of counsel as Exhibits 2 and 3. A summary of the total costs is included as Exhibit 2. Finally, summaries with true and correct copies of the invoices for the State's costs are included as Exhibits 4 (Fees of the Court); 5 (Fees for Service of Summons and Subpoena); 6 (Deposition Transcripts); 7 (Trial and Hearing Transcripts); 8 (Copying Fees); 9 (E-Discovery Costs); and 10 (Witness Fees).

## I.    BACKGROUND

The State filed its original Complaint on June 13, 2005. *See* Doc. No. 2. Soon thereafter, on August 19, 2005, the State filed its First Amended Complaint asserting ten claims, including for: (1) cost recovery under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA); (2) natural resource damages under CERCLA; (3) a Solid Waste Disposal Act (SWDA) citizen suit; (4) state law nuisance (including nuisance *per se)*; (5) federal common law nuisance; (6) state law trespass; (7) violation of 27A Okla. Stat. § 2-6-105 and 2 Okla. Stat. § 2-18.1; (8) violation of 2 Okla. Stat. § 10-9.7 and Oklahoma Administrative Code (OAC) § 35:17-5-5; (9) violation of OAC § 35:17-3-14; and (10) unjust enrichment, restitution, and disgorgement, against fourteen poultry integrator defendants, including Tyson Foods, Inc., Tyson Poultry, Inc., Tyson Chicken, Inc., Cobb-Vantress, Inc., Aviagen, Inc., Cal-Maine Foods, Inc., Cal-Maine Farms, Inc., Cargill, Inc., Cargill Turkey Production, LLC, George's Inc., George's

2

Farms, Inc., Peterson Farms, Inc., Simmons Foods, Inc., and Willow Brook Foods, Inc.[1]  Doc. No. 18 at 1, 19-35.

Over the past twenty years, the case was heavily litigated on both sides.  *See State of Oklahoma v. Tyson Foods, Inc., et al.*, No. 4:05-cv-00329-GKF-SH (N.D. Okla. June 13, 2005) (amassing 3,192 docket entries).   Resolution of the case involved partial summary judgment motions on both sides,[2] two appeals to the Tenth Circuit,[3] motions by third parties to intervene,[4] and more than 40 motion hearings.[5]  Not including the supplemental two-month discovery period in late 2024, discovery in this case lasted roughly three years and was punctuated by dozens of hard-fought motions to compel or quash.  *See, e.g.*, Doc. Nos. 894-99; Doc. Nos. 1683, 1687, 2640.  The State produced more than 330,680 pages of electronic documents.  *See* Exs. 8 & 9.  Both parties proposed, and moved to exclude, countless retained and non-retained experts, who opined on issues ranging from the geology and topography of the IRW, to the chemical compositions of poultry waste, to the fate and transport of phosphorus within the IRW, to the effects of poultry waste on the waters of the IRW, to common and proper agricultural practices, and fact witnesses, who testified on issues ranging from the observable condition of the waters of the IRW, to

---

[1] The First Amended Complaint contained all the claims in the State's original Complaint, but added the claim under the Solid Waste Disposal Act.

[2] *See, e.g.*, Doc. Nos. 1876, 2031, 2033, 2050, 2055, 2057, 2062,

[3] *See Attorney General for Oklahoma, et al. v. Tyson Foods, Inc., et al.,* No. 08-05154 (10th Cir. 2009), filed Oct. 21, 2008; *State of Oklahoma v. Tyson Foods, Inc., et al.*, No. 09-05134 (10th Cir. 2010), filed Sept. 18, 2009.

[4] *See, e.g.*, Doc. Nos. 499, 2564.

[5] *See, e.g.,* Dkt Nos. 237, 608, 795, 884, 1002, 1055,

Defendants' poultry waste disposal practices, to Defendants' poultry production practices. *See,
e.g.*, Doc. Nos. 2056, 2068, 3066, 3068-70.

More than 200 transcripts were generated, more than 180 individuals were deposed,[6] and
the ultimate disposition of the case necessitated a 52-day trial over the course of five months and
a two-week evidentiary hearing. *See* Doc. Nos. 2649-887; Doc. Nos. 3114-45. The legal issues
were complicated, the facts were highly technical, and the complexity of this case, underscored by
the length of discovery and the length of trial, necessarily heightened the State's taxable costs.

Between September 2009 and February 2010, the Court tried the State's claims of: (1) a
violation of RCRA, 42 U.S.C. § 6972; (2) state law public nuisance and state law nuisance per se;
(3) federal common law nuisance; (4) state law trespass; and (5) violations of 27A Okla. Stat. § 2-
6-105 and 2 Okla. Stat. § 2-18.1, *see* Doc. No. 2979 ("2023 FOF/COL") at 4, against the remaining
eleven poultry integrator defendants.[7] The 2009-2010 trial alone created a transcript of 11,889

---

[6] All depositions taken in this case were videotaped in case of their required use at trial. For
example, Brian Haggard and Kerry Kinyon testified by deposition because they were unexpectedly
unavailable at trial. *See also* Daily Trial Transcript ("Daily Trans.") at 2685:3-23 (requesting at
trial to use Ronald Mullikin's deposition).

[7] The State dismissed without prejudice Defendant Aviagen, Inc., from the case in September 2005.
*See* Doc. No. 47. In May 2009, without admitting liability, Defendant Willow Brook Farm entered
a settlement agreement with the State thereby resolving the State's claims against it. *See* Doc. No.
2038 (Willow Brook Consent Decree). In September 2009, at the State's request, the Court
dismissed with prejudice Defendant Cal-Maine Farms, Inc., under Federal Rule of Civil Procedure
41(a)(2). *See* Doc. No. 2616. The Court dismissed the State's CERCLA claims, the State's claim
for unjust enrichment, and the State's claims for damages under state nuisance and trespass
common law and the federal nuisance common law, finding that those claims could not be resolved
without prejudicing the interests of the sovereign Cherokee Nation. *See Oklahoma v. Tyson Foods,
Inc.*, 258 F.R.D. 472, 484 (N.D. Okla. 2009).

The remaining poultry integrator defendants are: Tyson Foods, Inc.; Tyson Poultry, Inc.; Tyson
Chicken, Inc.; Cobb-Vantress, Inc.; Cal-Maine Foods, Inc.; Cargill, Inc.; Cargill Turkey
Production, LLC; George's, Inc.; George's Farms, Inc.; Peterson Farms, Inc.; and Simmons Foods,
Inc. *See* 2023 FOF/COL at 1.

pages and 8,392 pages of admitted exhibits. *Id.* at 5. In January 2023, the Court issued Findings of Fact and Conclusions of Law finding in favor of the State and against Defendants on the State's claims of statutory public nuisance, federal common law nuisance, trespass, for violation of 27A Okla. Stat. § 2-6-105, and for violation of 2 Okla. Stat. § 2-18.1. *Id.* at 213.

Following an unsuccessful mediation regarding remedies, Doc. Nos. 3008 & 3009, and Defendants' unsuccessful motions to dismiss the State's claims as constitutionally and prudentially moot, Doc. Nos. 3010 & 3023, the Court ordered an evidentiary hearing to "make additional findings and conclusions as to the specific terms of the injunctive relief and the act or acts to be restrained or required." Doc. No. 3023. After the two-week hearing, the Court found that the State had satisfied its burden to show that conditions in the Illinois River Watershed had not materially changed following the 2010 trial, and the Court affirmed its prior findings for the State on all claims. Doc. No. 3161. On December 19, 2025, this Court entered its Final Judgment. Doc. No. 3192. The Court granted an extension of 28 days for the State to file its bill of costs. Doc. No. 3196.

## II.    LEGAL STANDARD

Rule 54(d)(1) recognizes that costs "should generally 'be allowed to the prevailing party.'"[8] *In re Williams Secs. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (quoting Fed. R. Civ. P. 54(d)(1)); *Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456, 458-59 (10th Cir. 1995) ("[I]t is well established that Rule 54 creates a presumption that the district court will award costs to the prevailing party."). "To deny a prevailing party its costs is in the nature of a severe penalty, such that there must be some apparent reason to penalize the prevailing

---

[8] The State is the prevailing party. *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) ("[T]he litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)(1).").

party if costs are to be denied." *Debord v. Mercy Health Sys. of Kan., Inc.,* 737 F.3d 642, 659 (10th Cir. 2013); *see Cantrell*, 69 F.3d at 459 (should the district court "exercise its discretion" to deny costs, it must find a "valid reason" for doing so). While the prevailing party bears the burden to establish that its costs are taxable under 28 U.S.C. § 1920, costs are routinely awarded so long as the prevailing party makes this showing in line with the governing rules. *See In re Williams Sec. Litig.,* 558 F.3d at 1148 ("Once a prevailing party establishes its right to recover allowable costs, however, the burden shifts to the 'non-prevailing party to overcome' the presumption that these costs will be taxed.") (citation omitted).

28 U.S.C. § 1920 delineates costs recoverable by a prevailing party: (1) fees of the clerk and marshal; (2) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. This Court has established further Guidelines for Taxation of Costs that elaborate on the statutory itemizations in 28 U.S.C. § 1920. *See* Guidelines for Taxation of Costs, United States District Court Northern District of Oklahoma (Apr. 14, 2021) ("N.D. Okla. Guidelines").[9]

Courts "measure whether an incurred cost was reasonably necessary under § 1920 'in light of the facts known to the parties at the time the expenses were incurred.'" *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1204 (10th Cir. 2000) (quoting *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998)). "Whether materials are necessarily obtained for use

---

[9] Available at https://oknd.uscourts.gov/guidelines-taxation-costs.

in the case is a question of fact to be determined by the district court[,]" and courts do not "attempt to employ the benefit of hindsight in determining whether an otherwise taxable item was necessarily obtained for use in the case." *Callicrate*, 139 F.3d at 1340.

Consideration of "the number of defendants, the high amount of the damages sought, the br[eadth of the] allegations asserted, the complexity of the claims at issue, and [the] aggressive course of discovery . . . go directly towards the reasonable necessity" of taxable costs. *In re Williams*, 558 F.3d at 1150 (finding that taxable costs were "driven upward by the cold, hard facts of th[e] case," as "the stakes were indisputably high and 'it was incumbent on [prevailing party] to fully prepare their case on the merits'"). While "actual use" of the materials "readily demonstrates necessity," *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1246 (10th Cir. 1988), a court can still "find necessity and award recovery of costs" of materials that were "'offered into evidence,' were 'not frivolous,' and were 'within the bounds of vigorous advocacy[.]'" *In re Williams,* 558 F.3d at 1148.

## III.    COSTS

As described below, the State requests $304,405.66 for costs associated with: (1) fees of the clerk; (2) fees for service of summons and subpoena; (3) fees for printed or electronically recorded transcripts necessarily obtained for use in this case, including deposition transcripts, hearing transcripts, and trial transcripts; (4) fees for witnesses; and (5) fees for exemplification and costs of making copies of materials where the copies were necessarily obtained for use in this case, including E-Discovery costs for Bates stamping and tiffing electronic documents.

### A.    Fees of the clerk and marshal

28 U.S.C. § 1920(1) allows the prevailing party to recover fees of the clerk and marshal. "The language 'fees of the clerk' include filing fees . . . and 'fees of the . . . marshal' encompass

the costs for service of process." *Miser v. Freight Logistics, Inc.*, 2024 WL 2260803, *5 (D. Kan. May 17, 2024) (internal citations omitted). The Court's Guidelines clarify that service fees must be "reasonable," and allow for recovery of "[f]ees for trial subpoenas and deposition subpoenas" where "the witness was called to testify or the transcript of the deposition was necessarily obtained for use in the case." N.D. Okla. Guidelines § VI.B. The State requests that $3,441.78 be taxed pursuant to § 1920(1).

First, the State requests $250.00 for the filing fee attendant to the Complaint. *See* Doc. No. 9; Ex. 3.

Second, the State requests $68.67 for the service of 8 summons. *See* Ex. 3. First, the State paid $103.00 to serve summonses on 12 defendants.[10] *See* Doc. Nos. 19-31; Ex. 3. This cost was necessarily incurred in compliance with Federal Rule of Civil Procedure 4. The State served the summonses through certified mail. *See* Ex. 3. Accordingly, $68.67 was a reasonable amount to serve summonses on the 8 Defendants in this case through certified mail.

Third, the State requests $3,123.11 for the service of several sampling subpoenas and 29 deposition subpoenas. *See* Exs. 3; 4. At the time of service, the U.S. Marshals Rate was $45.00 per person per hour for each item served. 28 U.S.C. § 0.114(a)(3) (May 1, 1997). These subpoenas were necessary to ensure that sampling could occur and that individuals appeared at their depositions or to testify at trial. All subpoenaed witnesses were in fact either called to testify, *see* Ex. 6, or their depositions were otherwise necessary to the litigation of the case, *see infra* § B.3. *See* N.D. Okla. Guidelines § VI.B. The costs of service were reasonable because, as is shown in the accompanying invoices, the State paid a reasonable amount per subpoena served, in addition

---

[10] The State has removed from its request the costs associated with the summons served on the George's defendants, Cal-Maine Farms, Inc., and Willowbrook Farms.

to minimal "travel costs" and "other out-of-pocket expenses." *See* Ex. 5; 28 U.S.C. § 0.114(a)(3) (permitting U.S. Marshals Service to collect travel costs and out-of-pocket expenses).

### B.    Fees for transcripts

28 U.S.C. § 1920(2) allows the prevailing party to recover fees "for printed or electronically recorded transcripts necessarily obtained for use in the case." A transcript is "necessarily obtained" when it is "reasonably necessary to the litigation of the case." *Mitchell*, 218 F.3d at 1204. "Reasonably necessary 'does not mean that the transcript must have been indispensable to the litigation to satisfy this test; it simply must have been necessary to counsel's effective performance or the court's handling of the case.'" *Redbird Bus. Grp., LLC v. Harrison*, 2024 WL 1313470, at *2 (E.D. Okla. Mar. 27, 2024) (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1078-79 (D. Kan. 2005)). Ultimately, "the standard is one of reasonableness." *In re Williams*, 558 F.3d at 1148. "If 'materials or services are reasonably necessary for use in the case,' even if they are ultimately not used to dispose of the matter, the district court 'can find necessity and award the recovery of costs.'" *Id.* at 1148 (quoting *Callicrate*, 139 F.3d at 1339). Here, the State requests that the Court tax $198,282.58 in transcript costs, including $5,762.16 in hearing transcripts, $37,295.85 in daily trial transcripts, and $155,224.57 in deposition transcripts. *See* Exs. 6; 7.

### 1.    Fees for transcripts of hearings

Given the complexity and length of this case, several dozen discovery and motions hearings were held in this matter. The State requests that the Court tax $5,762.16 for the hearing transcripts that were necessarily obtained for use in the case. *See* Ex. 7. Specifically, the State requests

$5,762.16 associated with those 17 hearings that the State later cited or relied upon in briefing.[11] *See* N.D. Okla. Guidelines § VI.C.1 (transcripts are "necessarily obtained . . . if the need arose for purpose of preparation or response to certain motions"); *U.S. Indus.,* 854 F.2d at 1246 ("actual use" of the materials "readily demonstrates necessity,"); *see also* Ex. 7 (collecting and explaining where hearing transcripts were cited and why they were necessary).

### 2.    Fees for trial transcripts

The State requests that the Court tax $37,295.85 in trial transcripts necessarily obtained for use in the case. The 2009-2010 trial created 101 transcript volumes. *See* Ex. 7. Those transcripts were reasonably necessary to the litigation of the case because they played a crucial role in the State's post-trial briefing, which was started during the course of the trial itself. Without those volumes, the State could not have as clearly carried its burden of proof in its Proposed Findings of Fact. *See* Doc. Nos. 2873 & 2890. Further, these transcripts were extensively relied upon by the Court in its 2023 FOF/COL. *See generally* 2023 FOF/COL.

While the Court's Guidelines posit that next-day trial transcripts costs are not typically recoverable, the State respectfully believes that the next-day trial transcripts were "necessary to the litigation" of this case for at least three reasons.[12] First, courts in this Circuit have found next-day trial transcripts reasonably necessary and "ha[ve] approved cost recovery for expedited transcripts" where a case is "'sufficiently lengthy, complex, and contentious[.]'" *Burton*, 395 F. Supp. 2d at 1079; *Ellis v. Sheriff*, 2024 WL 866352, *10 (N.D. Okla. Feb. 29, 2024) (daily trial

---

[11] The State is not seeking to recoup fees for all of the hearing transcripts generated in this litigation.

[12] The State only requests costs for the daily transcripts, and has removed from its requested amount incurred charges for Realtime services and an additional copy. *See* Ex. 7 (attached invoices).

transcripts were taxable as "necessarily obtained, as judged at the time of transcription");

*AgJunction, LLC v. Agrian, Inc.*, 2016 WL 3031088, at *4 (D. Kan. May 27, 2016) (awarding next

day hearing transcripts because of "the complex nature of th[e] case" and reasonably necessary

need to review "the substance of the testimony"); *Unishippers Global Logistics, LLC v. DHL Exp.*

*(USA), Inc.*, 2011 WL 6754050, at *6 (D. Utah Dec. 22, 2011) (finding daily trial transcript

reasonably necessary to the case "[i]n light of the contentious nature of this litigation, the amount

of money at stake, [and] the number of witnesses and exhibits involved"). The 2009-2010 trial

lasted 52 days and dealt with nine distinct legal claims and liability theories. Each evidentiary

offering, from expert testimony to documentary evidence, was extensively litigated and turned on

niche issues of law. *See generally* Daily Trans. At the time the expenses were incurred, the daily

transcripts were reasonably necessary for use in the continuing litigation. Second, that the daily

transcripts were reasonably necessary is underscored by both parties' references to the transcript

throughout the trial. *See, e.g.*, Daily Trans. 8802:13-23 (defense counsel quotes yesterday's trial

transcript); Daily Trans. 3520:14-3521:5 (plaintiff counsel quotes an earlier trial transcript); Doc.

2656 (Objecting to References Made in Opening Statements using transcript). Third, and most

crucially, the State's Proposed Findings of Fact and Conclusions of Law were due for filing before

the final transcripts were filed. *See* Doc. Nos. 2873 (filed February 5, 2010) & 2890 (filed March

1, 2010). The fact that *during* the 2009-2010 trial the State was *also* diligently working on its

Proposed Findings of Fact underscores that near-contemporaneous access to the trial transcripts

was imperative. Were the State unable to promptly access the trial transcripts, the State could not

have as robustly completed its Proposed Findings of Facts in time for filing, as the State relied

extensively on the transcripts to prove that the State had carried its burden. The daily transcripts

were invaluable to the State's success in this litigation and were plainly not ordered solely for

11

convenience.  *See Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 663 F. Supp. 1360, 1458 (D. Kan. 1987) (daily trial transcript was "clearly necessary for proper preparation and effective presentation of the case" because it "assisted [the court] and assisted the parties," and collecting cases).

For nearly identical reasons, the December 2024 evidentiary hearing daily transcripts were reasonably necessary to the litigation.  *See* Ex. 7.  These transcripts were necessary to post-hearing briefing, including the State's proposed findings of fact briefing.  *See generally* Doc. 3146.  The Court, too, relied on these transcripts in determining whether the State had satisfied its evidentiary burden in the Court's subsequent June 2025 Order.  *See* Doc. No. 3161.  The State respectfully requests that the Court tax the next-day hearing transcripts as the State relied upon them to ensure that it carried its evidentiary burden.[13]

### 3.    Fees for depositions

In this Circuit, "[t]he costs of taking and transcribing depositions reasonably necessary for litigation are generally awarded to the prevailing party under 28 U.S.C. § 1920."  *Callicrate*, 139 F.3d at 1339; *see* N.D. Okla. Guidelines § VI.C.2 ("Costs of depositions are allowed if necessarily obtained for use in the case.").  "Although depositions taken merely for discovery are not taxable as costs, a deposition is not obtained unnecessarily even if not strictly essential to the court's resolution of the case where the deposition is offered into evidence, is not frivolous, and is within the bounds of vigorous advocacy."  *Id.* at 1339-40 (relying on *Furr v. AT&T Techs., Inc.,* 824 F.2d 1537, 1550 (10th Cir. 1987)).[14]  Further, it is well established where both videotapes and transcripts

---

[13] Like the daily trial transcripts, the State only requests costs for the daily transcripts, and has removed from its requested amount incurred charges for Realtime services and an additional copy. *See* Ex. 7 (invoices).

[14] *Green Const. Co. v. Kansas Pwr. & Light Co.*, 153 F.R.D. 670, 679 (D. Kan. 1994) ("While the expenses of witnesses who are parties to the litigation normally are not taxable, the expenses of a

were "necessarily obtained," that the costs related to obtaining both may be taxed as costs. *Tilton v. Capital Cities/ABC, Inc.,* 115 F.3d 1471, 1478-79 (10th Cir. 1997); *see MCC Management of Naples, Inc. v. International Bancshares Corporation*, 2010 WL 3522375, *2 (W.D. Okla. Sept. 8, 2010) (where "it appears that it was unknown at the time of the depositions whether the deponents would be available for trial[,]" expenses for video depositions of several witnesses "were necessarily obtained" and allowable); *Callicrate*, 139 F.3d at 1340 ("[C]aution and proper advocacy may make it incumbent on counsel to prepare for all contingencies which may arise during the course of litigation which include the possibility of trial."); *In re Williams*, 558 F.3d at 1149 ("[A]ny 'rule that permits costs only for depositions received in evidence . . . is narrower than Section 1920.'" (citation omitted)).

The State requests the Court tax $155,224.47 in deposition costs for 98 of the 178 depositions taken in this matter. *See* Ex. 6.

### a.    Depositions of witnesses who testified live at trial

This Court's Guidelines expressly state that "[a] deposition of a witness who testifies at trial will be allowed." N.D. Okla. Guidelines § VI.C.2. Here, 48 deponents testified at trial. *See* Ex. 6. The State requests the Court tax these depositions and their associated videography costs.[15] Both the State and Defendants videotaped all depositions in this case because the parties did not know whether witnesses would ultimately be available at trial. Indeed, the fact that the videography costs of these witnesses were necessary at the time they were incurred is underscored

---

director or officer of a corporate party who is not personally involved in the litigation may be taxable if he is testifying on behalf of the corporation he represents, and that corporation is a party to the lawsuit." (and collecting cases)).

[15] The State has removed from its request the fees attendant to taking depositions- e.g., the videographer's appearance fee, the "picture in picture" fee, etc.

by the fact that several video depositions were played precisely because of unforeseen witness illness or other unavailability.  For example, the depositions of Brian Haggard and Kerry Kinyon were both unexpectedly played at trial due to witness unavailability.

Accordingly, the State requests $103,292.23 for those deponents who testified at trial.  *See* Ex. 6.

### b.    Video depositions played at trial

This Court's Guidelines further provide that "[c]osts of video depositions and a transcript are recoverable if used during trial."  N.D. Okla. Guidelines § VI.C.2.  The State played 12 depositions at trial.  *See* Ex. 6.  Accordingly, the State requests $14,904.09 for the costs of the videography and one transcript of these video depositions.[16]  *See id.*

### c.    Other taxable depositions

Aside from the depositions discussed above, the State requests $37,028.15 for 43 of the remaining depositions.  *See* Ex. 6.  These depositions were either: (1) actually relied upon by the State in briefing, or (2) designated by the State for use at trial.  *See id.* (explaining the use of each taxable deposition); *Allison v. Bank One–Denver*, 289 F.3d 1223, 1249 (10th Cir. 2002) (recognizing that as long as the expense "appeared to be reasonably necessary at the time it was" incurred, "the taxing of such costs should be approved"); *U.S. Indus.*, 854 F.2d at 1246 ("actual use" of the materials "readily demonstrates necessity").  The State requests that the Court tax the videography costs of those depositions that it designated for trial because they were not obtained for mere discovery or counsel's convenience; at the time they were taken, the State reasonably expected that they could be used or played at trial.

---

[16] Like the depositions of deponents who testified at trial, the State has removed any deposition surcharges, appearance fees, etc.  *See* Ex. 6 (invoices).

## C.    Fees for exemplification and copies

"[T]he burden of justifying copying costs is not 'a high one.'"  *In re Williams*, 558 F.3d at 1149 (citing *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1259 (10th Cir.1998)).   "A prevailing party need not 'justify each copy' it makes."  *Id.*   "All a prevailing party must do to recoup copy costs is to demonstrate to the district court that, under the particular circumstances, the copies were 'reasonably necessary for use in the case.'"  *Id.*  Copies that fall outside of being "reasonably necessary to the litigation of the case" are those that are made "'solely for discovery'" or "merely 'added to the convenience of counsel.'"  *Redbird*, 2024 WL 1313470 at *2.

### 1.    Paper copies

The State incurred at least $30,849.93 in costs making paper copies necessary for use in the case.  This Court's Guidelines advise that "[c]opies of papers necessarily obtained in the case are those papers which help bring about the disposition of the case . . . [including] those papers related to the actual trial . . . [like] trial notebooks, trial exhibits, motions in limine and jury instructions."  N.D. Okla. Guidelines § VI.E.

Therefore, the State requests $23,834.23 incurred in making copies of such papers in connection with the 2009-2010 trial, and $7,015.70 incurred in making copies of such papers in connection with the December 2024 evidentiary hearing.  *See* Ex. 8.  The State made five copies of trial exhibit notebooks, including for its own counsel's use at trial, for the witness stand, for opposing counsel, for the Court, and for the Court's law clerk pursuant to the Court's courtroom rules. *See* General Rules for Trial of Cases Before Judge Gregory K. Frizzell (Updated September

16, 2024) at §6(a)[17] (requiring counsel to "prepare separate exhibit notebooks for: (1) the witness stand; (2) opposing counsel; (3) the Court; and (4) the Court's law clerk").

## 2. Electronic copies

While the Tenth Circuit has not explicitly "addressed whether such electronic data copying and management costs are recoverable under § 1920(4)," federal district courts in this circuit have recognized that the 2008 amendment to § 1920(4) – which changed the language from "[f]ees for copies of papers" to "[f]ees for . . . the costs of making copies of any materials where the copies are necessarily obtained for use in the case" – "clearly opens the door to digital technologies." *Ware v. Mercy Health*, 2024 WL 2806959, at *1 (W.D. Okla. May 31, 2024); *AgJunction LLC*, 2016 WL 3031088, at *7-11 (finding that "digital imaging [to satisfy discovery request] was [] necessarily obtained for use in the case"); *Nero v. Am. Family Mut. Ins. Co.*, 2013 WL 5323262, at *2-3 (D. Colo. Sept. 23, 2013) (awarding "the amount spent on loading data into an electronic database and converting files to TIFF or PDF formats"). These courts have premised their holdings on "predict[ing] that the Tenth Circuit, if presented with this issue, would agree" with the many circuits[18] that have held that copies necessarily made for electronic discovery are within the meaning of § 1920(4). *Ware,* 2024 WL 2806959, at *1.

Notably, the Tenth Circuit has held that awarding electronic data copying costs is well within the discretion of the district court. *See Tilton,* 115 F.3d at 1476 (finding that the district

---

[17] Available at https://www.oknd.uscourts.gov/sites/default/files/Judge-Frizzell-General-Trial-Rules.pdf.

[18] *See, e.g., CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328-32 (Fed. Cir. 2013); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 166 (3d Cir. 2012); *Country Vitner of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 261 (4th Cir. 2013); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 927-28 (9th Cir. 2015); *Colosi v. Jones Lang LaSalle Ams., Inc.*, 781 F.3d 293, 297 (6th Cir. 2015).

court did not abuse its discretion in awarding costs for imaging documents stored on an internal data management server).

Over the lifespan of this case, the State has incurred $58,167.37 in making TIFF format, bates-stamped copies of documents in order to produce them to Defendants in discovery. *See* Ex. 9. Bates stamping and TIFFing were necessary in this case in order to account for and track the more than 330,680 pages of documents the State produced to Defendants during discovery, as well as the hundreds of thousands of trial exhibit pages. *See AgJunction LLC*, 2016 WL 3031088, at *9-10 (allowing costs for electronic copying costs including "the collection, evaluation, processing, and production of ESI"). Without having made these electronic copies, it would have been nearly impossible to produce ESI to Defendants, to track the pages produced, or to ensure that the correct pages were used in the State's trial notebooks. Accordingly, these electronic copies were necessary to the litigation under 28 U.S.C. § 1920(4).

### D. Docket Fees

28 U.S.C. § 1920(5) permits the Court to tax docket fees in line with 28 U.S.C. § 1923. Section 1923(a) allows federal district courts to tax "$20 on trial or final hearing" in civil cases. Accordingly, the State requests the Court tax $20 under 28 U.S.C. § 1923.

### E. Witness fees

28 U.S.C. § 1920(3) allows the Court to tax disbursements for witnesses. 28 U.S.C. § 1821 permits the prevailing party to recover costs attributable to witness attendance, witness travel, and witness subsistence. 28 U.S.C. § 1821(b)-(d). Under the statute and this Court's Guidelines, "[n]o distinction is made between a fact witness and an expert witness" for recovery of witness fees. Accordingly, the State requests $13,644.11 in taxable witness fees. *See* Ex. 10.

### 1.    Witness attendance

28 U.S.C. § 1821, and this Court's Guidelines, allow $40.00 in witness attendance fees "for each day that it is necessary for the witness to attend trial[.]"  N.D. Okla Guidelines, § VI.D.1; 28 U.S.C. § 1821(b).  The State statutorily paid only one witness to testify at the December 2024 hearing.  *See* Ex. 10.  Accordingly, the State requests $40.00 in witness attendance fees be taxed for that witness' travel.  *See id.* (requesting $40.00 per witness per day of testimony).

### 2.    Expenses of Travel

28 U.S.C. § 1821(c)(1) provides reimbursement "for the actual expenses of [witness] travel" considering "the means of transportation reasonably utilized and the distance necessarily traveled" on the "shortest practical route", provided that if witness travels by "common carrier" it does so "at the most economical rate reasonably available."  *See also* N.D. Okla. Guidelines (same).  Section 1821(c)(3) also allows recovery for "taxicab fares between places of lodging and carrier terminals, and parking fees[.]"  The State requests $9,837.03 in taxable travel fees.

Here, at least 11 of the State's witnesses traveled to testify at the 2009-10 trial.  *See* Ex. 10. 3 of these witnesses traveled by car, and the State reimbursed them at (or below) the then IRS mileage rate.  *See* IRS Issues 2010 Mileage Rates, J. Accountancy (Dec. 3, 2009) (2009 rate was 55 cents per mile, 2010 rate was 50 cents per mile);[19] *see* Ex. 10.

Seven of the State's witnesses traveled by plane.  *See id.*  All of these witnesses flew at the "most economical rate" – i.e., none flew first class.  *See id.* (attached invoices). It was reasonable

---

[19] Available at https://www.journalofaccountancy.com/news/2009/dec/20092388/.

that these witnesses flew by common carrier, because they lived out of state and significantly far from Tulsa.[20]

Additionally, while all of the State's witnesses traveled to testify at the December 2024 hearing, the State only reimbursed one. *See* Ex. 10. The State reimbursed the ODAFF representative, Lynette Jordan, for her mileage in traveling from Oklahoma City to Tulsa. *See* 28 U.S.C. § 1821(b). Ms. Jordan's mileage was calculated based on the then Administrator of General Services' mileage allowance. *See id.* at § 1821(c)(2); Ex. 10 (attaching invoices).

### 3.    Subsistence fees

28 U.S.C. § 1821(d) allows the Court to tax witness subsistence "when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." The subsistence allowance available to a witness in this Court is "calculated annually by the Administrator for General Services of the federal government." N.D. Okla. Guidelines § VI.D.2; 28 U.S.C. § 1821(d)(2). The State requests $3,767.08 in taxable witness subsistence.

At the 2009-10 trial, the United States GSA lodging per diem rate for Oklahoma was $81.00 per night, and the meals and incidentals per diem rate was $61.00. *See* 2010 Per Diem Rates for Tulsa County, Oklahoma, PerDiem101 (last accessed January 12, 2026).[21] Accordingly, the State requests the Court tax no more than $142.00 per night that a witness stayed. Several of the State's witnesses, notably experts Dr. Dennis Cooke, Dr. Roger Olsen, Dr. Eugene Welch, and Todd King,

---

[20] Dr. Dennis Cooke traveled from Ohio, Dr. Bernard Engel traveled from Indianapolis, Dr. Roger Olsen traveled from Denver, Dr. Jan Stevenson traveled from Detroit, Dr. Robert Taylor traveled from Atlanta, Dr. Christopher Teaf traveled from Gainesville, Dr. Eugene Welch traveled from Chicago, Dr. Scott Wells traveled from Portland, and Todd King traveled from Michigan.

[21] Available at https://www.perdiem101.com/conus/2010/tulsa-oklahoma.

stayed in Tulsa for the trial in advance of their testimony for preparation.  Recognizing that witness subsistence must be "reasonable," the State only requests that the Court tax subsistence for the day prior to each witness's testimony and the day (or days) that they testified.  *See* Ex. 10 (applying reduction).

In the 2009-2010 trial, nine of the State's witnesses stayed overnight in this case because their residence was out of state.[22]  *See* Ex. 10.  Accordingly, the State requests that the Court tax $3,281.20 in witness subsistence fees from that trial.

At the time of the December 2024 hearing, the United States GSA lodging per diem for Oklahoma was $116.00 per night, and the meals and incidental expenses per diem was $80.00.  *See* FY 2025 per diem rates for Oklahoma, U.S. General Services Administration (last accessed Jan. 12, 2026).[23]  One of the State's witnesses traveled too far to return home overnight between their testimony.  *See* Ex. 10.  The State only requests the Court tax subsistence for the day of each witnesses' testimony.

## IV.     CONCLUSION

For the reasons set forth above, the State respectfully requests that the Court tax $304,405.66 in costs under 28 U.S.C. § 1920, LCvR54, and Fed. R. Civ. P. 54(d).

---

[22] As stated above, Dennis Cooke traveled from Ohio, Bernard Engel traveled from Indianapolis, Roger Olsen traveled from Denver, Jan Stevenson traveled from Detroit, Robert Taylor traveled from Atlanta, Christopher Teaf traveled from Gainesville, Eugene Welch traveled from Chicago, Scott Wells traveled from Portland, and Todd King traveled from Michigan.  These witnesses necessitated overnight stays because their residences were too far to ensure a timely arrival for their testimony.

[23]     Available     at     https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-results?action=perdiems_report&fiscal_year=2025&state=OK&city=&zip=.

DATED: Tulsa, Oklahoma, January 30, 2026.

s/ Garry M. Gaskins, II

GENTNER DRUMMOND, OBA #16645
  *Attorney General*
GARRY M. GASKINS, II, OBA #20212
  *Solicitor General*
JENNIFER L. LEWIS, OBA #32819
  *Deputy Attorney General*

OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:   (405) 521-3921
Garry.Gaskins@oag.ok.gov
Jennifer.Lewis@oag.ok.gov

M. David Riggs, OBA #7582
Kristopher E. Koepsel, OBA #19147
Riggs, Abney, Neal, Turpen, Orbison & Lewis
502 West 6th Street
Tulsa, OK 74119
(918) 587-3161

Robert A. Nance, OBA #6581
W.A. Drew Edmondson, OBA #2628
Riggs, Abney, Neal, Turpen, Orbison & Lewis
Oklahoma City, OK 73103
(405) 843-9909

Louis W. Bullock, OBA #1305
Bullock Law Firm PLLC
110 W. 7th Street
Tulsa, OK 74119
(918) 584-2001

Frederick C. Baker, admitted *pro hac vice*
Cynthia Solomon, admitted *pro hac vice*
Kristin Hermiz, admitted *pro hac vice*
Madeline Becker, admitted *pro hac vice*
Motley Rice, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9186

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of January, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants with entries of appearance filed of record.

 s/ <i>Garry M. Gaskins, II</i>
_____

GARRY M. GASKINS, II
<i>Solicitor General</i>
