**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

**STATE OF OKLAHOMA,** *et al.*

                        **Plaintiffs,**

**vs.**                                     **Case No.  05-CV-0329-GKF-SH**

**TYSON FOODS, INC.,** *et al.*

                        **Defendants.**

## THE STATE, CARGILL, TYSON, AND PETERSON'S JOINT SUPPLEMENTAL BRIEF SUPPORTING ENTRY OF THE CONSENT JUDGMENT

## **TABLE OF CONTENTS**

**Page**

I.    The consent judgments are fair, adequate, reasonable, and in the public interest. ........................1

II.    The Court should modify the judgment under Rule 60(b)(5). ........................................................3

    A.    Changed circumstances have made it inequitable to enforce the judgment prospectively. ..............................................................................................................3

    B.    Alternatively, Oklahoma has released or discharged the defendants. ...............................4

    C.    *Bancorp* does not preclude Rule 60(b)(5) relief. ...................................................................4

CONCLUSION ........................................................................................................................................5

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Bethany Med. Ctr. v. Harder,*
   693 F. Supp. 968 (D. Kan. 1988) .................................................................................2

*Colorado v. City & Cnty. of Denver,*
   2010 WL 4318835 (D. Colo. Oct. 22, 2010) .............................................................1

*In re Fultz,*
   232 B.R. 709 (N.D. Ill. 1999) ......................................................................................4

*Jackson v. Los Lunas Cmty. Program,*
   880 F.3d 1176 (10th Cir. 2018) ..............................................................................3, 4

*United States v. Kerr-McGee Corp.,*
   2008 WL 863975 (D. Colo. Mar. 26, 2008) ...............................................................1

*Morava v. Cent. Oklahoma Med. Grp., Inc.,*
   26 P.3d 779 (Okla. App. 2001) ....................................................................................3

*In re Renfrow,*
   2022 WL 17668704 (N.D. Okla. Dec. 14, 2022) ........................................................5

*Rufo v. Inmates of Suffolk Cnty. Jail,*
   502 U.S. 367 (1992) ......................................................................................................3

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,*
   513 U.S. 18 (1994) .....................................................................................................4, 5

*United States v. Doe Run Res. Corp.,*
   2017 WL 4270526 (N.D. Okla. Sept. 26, 2017) .........................................................1

**Statutes, Rules & Regulations**

28 U.S.C. § 2106 .............................................................................................................4, 5

Fed. R. Civ. P. 60(b) .....................................................................................................3, 4, 5

**Other Authorities**

WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2857 (3d ed. 2025) ...................3

I.      **The consent judgments are fair, adequate, reasonable, and in the public interest.**

Consent Judgments must be "fair, reasonable, and equitable," and consistent with "law [and] public policy." *Colorado v. City & Cnty. of Denver*, 2010 WL 4318835, at *4 (D. Colo. Oct. 22, 2010). The Settling Defendants' Consent Judgments meet this standard with room to spare.

The Consent Judgments are procedurally and substantively fair because they were "negotiated at arm[']s length," *United States v. Doe Run Res. Corp.*, 2017 WL 4270526, at *5 (N.D. Okla. Sept. 26, 2017), and balance the need for "finality and certainty," George's Tr. 38:15, against the needs of "the watershed," and "political reality," *id.* at 12:14–15, 48:18; *see also id.* at 18:13–14 (Drummond: "[T]he best interest of Oklahoma" was "the primary driver of this consent judgment.").

The Consent Judgments are also reasonable, equitable, and consistent with law and public policy because they "(1) [are] technically adequate to accomplish the goal of cleaning the environment, (2) []sufficiently compensate the public for the costs of remedial measures, and (3) []reflect[] the relative strength or weakness of the government's case against the environmental offender," *United States v. Kerr-McGee Corp.*, 2008 WL 863975, at *5 (D. Colo. Mar. 26, 2008).

Start with cleanup and compensation. Taken together, the settlements guarantee more than $25 million in immediate funding, which will enable the State to "purchase easements and begin . . . remediation." George's Tr. 8:8–9; *see* Dkt. 3268-1 ¶ 4; Dkt. 3269-1 ¶ 4; Dkt. 3279-1 ¶ 4. All three decrees also restrict poultry-litter application within the Oklahoma and Arkansas portions of the IRW. *E.g.*, Dkt. 3268-1 ¶ 6; *see* George's Tr. 10:9–10 (Drummond: "[I]f we stop putting phosphorus on that land, mother nature will help us remediate it."). And the decrees likewise provide for defendant-funded compliance monitoring. The State will ask the Court to appoint a special master to monitor the defendants' compliance, *e.g.*, Dkt. 3268-1 ¶ 8, and the defendants will then pay a combined $1.325 million to fund the master's work. Dkt. 3268-1 ¶ 12; Dkt. 3269-1 ¶ 12; Dkt. 3279-1 ¶ 12. While the consent judgments terminate sooner than the Court's judgment, Oklahoma has the opportunity to utilize the

Monetary Relief Funds to implement remedial measures, such as conservation easements, lasting thirty years or more. *See* Dkt. 3268-1 ¶ 4; Dkt. 3269-1 ¶ 4; Dkt. 3279-1 ¶ 4.

These terms account for the defendants' different positions as well. Peterson has long since gone out of business, has had no impact on the IRW since doing so, and will have no impact going forward. Cargill notes that: (i) its impact on the IRW was comparatively modest with merely 22 instances of Soil Test Phosphorus (STP) greater than 65 lbs./acre on fields owned by growers contracting with Cargill (only 6 of which returned results greater than 400 lbs./acre), (Dkt. 3192, Para. 5(l)(iii)), and (ii) Cargill has now entirely departed the IRW with no plans to return, (Dkt. 3164-6; Dkt. 3269 Ex. 1 at 5 n.1). Tyson, for its part, remains operating in the IRW. Accordingly, the Consent Judgments are not only reasonable but squarely in Oklahoma's public interest.

Likewise, the Consent Judgments reflect the relative merits and weaknesses of the State's case and contemplate a "trade between immediacy and finality and resolution." George's Tr. 9:8–9. Should the appeals proceed, Oklahoma will have to defend the judgment against serious challenges that could prolong this litigation—risking reversal, voluntary dismissal, and loss of any remedy. *See id.* at 48:19–22 (Drummond: "[W]hen my tenure is up and if I'm not governor, then you can anticipate this case is dismissed. And there is no remedy, no remedy to the State of Oklahoma."). By contrast, the consent judgments would ensure that remediation begins without delay and provide immediate relief to families whose "livelihoods are in jeopardy." *Id.* at 38:17–18.

Provisions related to attorneys' fees, third-party releases, and setoff do not change the reasonableness of the Consent Judgments. The provision of attorneys' fees is reasonable, as the State has promised that "no more than 50 percent" of the Monetary Relief Fund will go towards attorneys' fees. George's Tr. 7:10–18; *cf. Bethany Med. Ctr. v. Harder*, 693 F. Supp. 968, 981 (D. Kan. 1988). The third-party releases are likewise reasonable and in the public interest, as they support Oklahoma's poultry industry and provide regulatory clarity and finality to growers who (i) would be touched by the special

2

master's monitoring obligations under the Court's ordered injunctive relief; and (ii) have worried, for decades, about the impact of this litigation. *See* George's Tr. 17–19. These growers' obligation to comply with applicable litter regulations remains unchanged. *Id.* And on pro-rata liability, the Consent Judgments simply commit to reducing damages against other defendants who may be jointly and severally liable with the Settling Defendants, consistent with Oklahoma law. *See Morava v. Cent. Oklahoma Med. Grp., Inc.*, 26 P.3d 779, 781 (Okla. App. 2001).

## II.    The Court should modify the judgment under Rule 60(b)(5).

Rule 60(b)(5) authorizes courts to modify or vacate a judgment when "applying it prospectively is no longer equitable," or when "the judgment has been . . . released or discharged." *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1192 (10th Cir. 2018) (citation modified). The Court's "discretion ordinarily should incline toward granting relief, especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue." WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2857 (3d ed. 2025) (citations omitted).

### A.    Changed circumstances have made it inequitable to enforce the judgment prospectively.

Rule 60(b)(5) authorizes relief where "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). When "the movant contends that changed circumstances have rendered further enforcement of the consent decree no longer equitable," the inquiry shifts and the Court considers whether the parties have shown: "(a) that a significant change in factual circumstances . . . warrants revision of the decree, and (b) that the requested modification is suitably tailored to the changed circumstance." *Jackson*, 880 F.3d at 1201 (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–84 (1992)). "[T]he public interest and principles of federalism require a federal court to defer to state or local government officials" when it comes to assessing proposed modifications. *Id.* at 1194.

Three changed circumstances warrant relief here. *First*, the parties have reached a settlement that advances the public interest by offering "finality, certainty, and immediacy." George's Tr. 37:4–5. *Second*, the dueling appeals reflect a changed circumstance that threatens the judgment and all but guarantees protracted litigation. And *third*, the Consent Judgments' expanded substantive provisions provide the State with relief unavailable under the judgment. For example, while the judgment bars poultry-waste application "on land having an STP of 120 lbs./acre or greater in the IRW," Dkt. 3192 at 20–21, the consent judgments prohibit Cargill, Tyson, and Peterson from applying any of the exported litter onto lands within either the IRW or any Oklahoma Nutrient Sensitive Watershed. *See, e.g.*, Dkt. 3268-1 at 6.

### B.      Alternatively, Oklahoma has released or discharged the defendants.

Rule 60(b)(5) also authorizes relief where "the judgment has been satisfied, released, or discharged." The disjunctive *or* means that relief may be warranted when a judgment creditor has "released" or "discharged" the judgment debtor—whether or not the judgment has been "satisfied." *See In re Fultz*, 232 B.R. 709, 723 n.3 (N.D. Ill. 1999) (distinguishing release from satisfaction). Here, the parties have negotiated a settlement that "release[s]" or "discharge[s]" Cargill, Tyson, and Peterson from the judgments, independently warranting relief under Rule 60(b)(5).

### C.      *Bancorp* does not preclude Rule 60(b)(5) relief.

The Supreme Court's decision in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), poses no barrier to relief. The question in *Bancorp* was whether 28 U.S.C. § 2106 authorizes "appellate courts" to "vacate civil judgments of subordinate courts" when a settlement has "mooted the case." *Id.* at 19–20. The Court held that § 2106 requires more. To show that vacatur is "just under the circumstances," § 2106, a litigant must "demonstrate . . . equitable entitlement" to that remedy, *Bancorp*, 513 U.S. at 26. The petitioner in *Bancorp* failed to do so. Citing "the principle that a suitor's conduct" may

"disentitle him to . . . relief," the Court noted that the petitioner had "voluntarily forfeited" further appellate review in the settlement—"surrender[ing]" any claim for vacatur. *Id.* at 25.

As this Court has recognized, "*Bancorp* doesn't preclude" the relief requested here. George's Tr. 26:6–7. After all: *Bancorp* turned on § 2106, which governs "determination[s]" by "the Supreme Court or any other court of appellate jurisdiction," *Bancorp*, 513 U.S. at 21, whereas this case involves Rule 60(b), which governs when a district court "may relieve a party . . . from a final judgment." Fed. R. Civ. P. 60(b). *Bancorp* acknowledged that district courts may consider Rule 60(b) motions "even in the absence of" the "extraordinary circumstances" needed for vacatur under § 2106. 513 U.S. at 29.

*Bancorp*'s discussion of precedent also carries less force in this context. *Bancorp* was concerned with judicial precedents being treated as "the property of private litigants" rather than as decisions "valuable to the legal community as a whole." 513 U.S. at 26–27. That concern is not implicated here because the parties' request "comes at the district court level, not after the rendering of a precedential opinion by the court of appeals." *In re Renfrow*, 2022 WL 17668704, at *5 (N.D. Okla. Dec. 14, 2022). The judgment that would be superseded is this Court's own—and this Court is best positioned to assess whether modification serves the public interest it has spent years protecting.

Nor do *Bancorp*'s statements about "roll[ing] the dice" foreclose relief. 513 U.S. at 28. After the Supreme Court clarified that the "mere fact" of settlement does not warrant vacatur under § 2106, it disposed of the petitioner's "policy justification" that settlement yields "economies for the federal courts." 513 U.S. at 25–27, 29. While "the availability of vacatur may facilitate" mid-appeal settlements, it could also "*deter* settlement" if the prospect of appellate vacatur led parties to "roll the dice rather than settle" below. *Id.* at 27–28. Finding policy arguments on both sides, the Court deemed it "quite impossible to assess the effect of [its] holding, either way, upon the frequency or systemic value of settlement." *Id.* at 28. The Court did *not* raise that prospect as grounds for refusing vacatur.

**<u>CONCLUSION</u>**

5

The Court should issue an indicative ruling and grant the motion if the Tenth Circuit remands.

Respectfully Submitted,

s/ John H. Tucker
John H. Tucker (OBA 9110)
Colin Hampton Tucker (OBA 16325)
Theresa Noble Hill (OBA 19119)
RHODES HIERONYMUS JONES TUCKER
  & GABLE PLLC
Two W. 2ⁿᵈ Street, Suite 1000
P.O. BOX 21100
TULSA, OK 74121-1100
Phone: (918) 582-1173
Jtuckercourts@rhodesokla.com
chtucker@rhodesokla.com
thill@rhodesokla.com

Aaron D. Van Oort (admitted *pro hac vice*)
Christopher H. Dolan (admitted *pro hac vice*)
Jeffrey P. Justman (admitted *pro hac vice*)
Amy Waite (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Well Fargo Center
90 South 7ᵗʰ Street
Minneapolis, MN 55402
Phone: (612) 766-7000
aaron.vanoort.jones@faegredrinker.com
chris.dolan@faegredrinker.com
jeff.justman@faegredrinker.com
amy.waite@faegredrinker.com

Jacob D. Bylund (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33ʳᵈ Floor
Des Moines, IA 50309
Phone: (515) 248-9000
jacob.bylund@faegredrinker.com
*Attorneys for Cargill Incorporated and Cargill Turkey Production, LLC*

6

A. Scott McDaniel, OBA #16460
McDaniel Acord, PLLC
9343 East 95th Court
Tulsa, OK 74133
(918) 382-9200
*smcdaniel@ok-counsel.com*
*Attorney for Peterson Farms, Inc.*

Mark D. Hopson
Frank R. Volpe
Gordon D. Todd
Peter A. Bruland
Cody M. Akins
Sidley Austin LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (facsimile)
mhopson@sidley.com
fvolpe@sidley.com
gtodd@sidley.com
pbruland@sidley.com
cakins@sidley.com

John M. Tanski
Tyson Foods, Inc.
2200 W. Don Tyson Pkwy.
Springdale, AR 72762
(479) 290-1953
john.tanski@tyson.com
*Attorneys for Tyson Foods, Inc., Tyson Poultry, Inc., Tyson Chicken, Inc., Cobb-Vantress, Inc., and Peterson Farms, Inc.*

GENTNER DRUMMOND, OBA #16645
*Attorney General*
AMIE ELY, OBA #35840
*First Assistant Attorney General*
GARRY M. GASKINS, II, OBA #20212
*Solicitor General*
JENNIFER L. LEWIS, OBA #32819
*Deputy Attorney General*
OFFICE OF ATTORNEY GENERAL STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Jennifer.Lewis@oag.ok.gov

7

Case 4:05-cv-00329-GKF-SH    Document 3292 Filed in USDC ND/OK on 03/04/26    Page 11 of 11

*Attorneys for the State of Oklahoma*

8