**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STATE OF OKLAHOMA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-329-GKF-SH |
| | ) | |
| TYSON FOODS, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**JOINT MOTION OF PLAINTIFFS AND ALL DEFENDANTS TO VACATE THE JUDGMENT UNDER RULE 60(b) AND REQUEST FOR EXPEDITED CONSIDERATION**

**TABLE OF CONTENTS**


Table of authorities ........ ii

Introduction ........ 1

Background ........ 3

A. Oklahoma and the poultry companies spend years negotiating a settlement ........ 3

B. In early 2026, Oklahoma settles with some (but not all) of the companies ........ 4

C. The Court denies the settling parties' motions to vacate ........ 4

D. Oklahoma reaches a settlement with the remaining companies ........ 5

E. The Tenth Circuit stays the judgment and remands with instructions to consider a renewed Rule 60(b) motion in light of the changed circumstances ........ 8

Legal standard ........ 9

Argument ........ 9

I. The judgment should be vacated under Rule 60(b)(5)'s "satisfied, released, or discharged" prong. ........ 9

A. The judgment has been satisfied, released, or discharged. ........ 9

B. The Court's previous rationale for deeming the "release" prong inapplicable doesn't preclude vacatur now. ........ 10

II. The judgment should be vacated under Rule 60(b)(5)'s "no longer equitable" prong. ........ 13

A. Changed circumstances warrant relief. ........ 13

B. *Bancorp* poses no barrier to relief ........ 13

C. Rule 60(b)(5)'s "no longer equitable" prong doesn't require the parties to show that the judgment has been satisfied. ........ 17

III. Rule 60(b)(6) independently warrants vacating the judgment. ........ 19

A. Exceptional circumstances warrant relief. ........ 19

B. The Court's previous rationale for denying Rule 60(b)(6) relief doesn't preclude vacatur now. ........ 21

IV. The motion should be decided on an expedited basis. ........ 23

Conclusion ........ 21

Certificate of service

Addendum: Settlement

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Fed. Bureau of Prisons*,
552 U.S. 214 (2008) .......... 12

*Anhui Powerguard Tech.Co. v. DRE Health Corp.*,
95 F.4th 1146 (8th Cir. 2024) .......... 11

*Banik v. Ybarra*,
805 F. App'x 266 (5th Cir. 2020) .......... 12

*Banik v. Tamez*,
2019 WL 13251102 (S.D. Tex. 2019) .......... 12

*Bay State Dredging & Contracting Co. v. Porter*,
153 F.2d 827 (1st Cir. 1946) .......... 12

*Camreta v. Greene*,
563 U.S. 692 (2011) .......... 21

*City of Tulsa v. Tyson Foods, Inc.*,
258 F. Supp. 2d 1263 (N.D. Okla. 2003) .......... 2, 21

*Franklin v. Margay Oil Co.*,
153 P.2d 486 (Okla. 1944) .......... 11

*Hartford Cas. Ins. v. Crum & Forster Specialty Ins.*,
828 F.3d 1331 (11th Cir. 2016) .......... 15, 19, 20

*Horne v. Flores*,
557 U.S. 433 (2009) .......... 13, 18, 19

*Jackson v. Los Lunas Cmty. Program*,
880 F.3d 1176 (10th Cir. 2018) .......... 9, 15

*Johnson v. Spencer*,
950 F.3d 680 (10th Cir. 2020) .......... 19

*Major League Baseball Props. Inc. v. Pac.Trading Cards*,
150 F.3d 149 (2d Cir. 1998) .......... 19, 20

*Novell, Inc. v. Network Trade Ctr., Inc.*,
187 F.R.D. 657 (D. Utah 1999) .......... 13

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
2026 WL 2454184 (6th Cir. Aug. 21, 2026) ........ 23

*Perrin v. United States*,
444 U.S. 37 (1979) ........ 11

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ........ 16

*Pierce v. Cook & Co.*,
518 F.2d 720 (10th Cir. 1975) ........ 9

*In re Renfrow*,
2022 WL 17668704 (N.D. Okla. Dec. 14, 2022) ........ 14, 19, 22

*Reily v. Lamar*,
6 U.S. (2 Cranch) 344 (1805) ........ 16

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992) ........ 14

*Russello v. United States*,
464 U.S. 16 (1983) ........ 12

*Russman v. Bd. of Educ.*,
260 F.3d 114 (2d Cir. 2001) ........ 21

*Sinclair Oil Corp. v. Scherer*,
7 F.3d 191 (10th Cir. 1993) ........ 10

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994) ........ 2, 16, 17, 21, 22

*United Nat'l Ins. v. Airosol Co.*,
2001 WL 34664157 (D. Kan. Feb. 21, 2001) ........ 13, 14

*United States v. Jaramillo*,
1998 WL 536387 (10th Cir. 1998) ........ 14

*United States v. North Carolina*,
180 F.3d 574 (4th Cir. 1999) ........ 20

*Valero Terrestrial Corp. v. Paige*,
211 F.3d 112 (4th Cir. 2000) ........ 17

*WG Sec. Prods., Inc. v. Tyco Int'l Ltd.*,
2011 WL 13262004 (C.D. Cal. Mar. 14, 2011) ........ 9

**Statute and Rules**

28 U.S.C. § 1657 .......... 24

Fed. R. Civ. P. 1 .......... 9

Fed. R. Civ. P. 24(a) .......... 12

Fed. R. App. P. 28.1(e)(2) .......... 4

Fed. R. Civ. P. 60(b)(5) .......... 1, 4, 13, 16

Fed. R. Civ. P. 60(b)(6) .......... 4

Fed. R. Civ. P. 62.1(a)(2) .......... 5

Fed. R. Civ. P. 62.1(a)(3) .......... 4

**Other Authorities**

Emma Murphy, *Officials Decry Judge's Ruling Against Poultry Companies in Oklahoma and Arkansas*, Oklahoma Voice (Dec. 22, 2025) .......... 3

*Statement: OKFB disappointed by court's findings in decades-long poultry lawsuit*, Okla. Farm Bureau (Dec. 23, 2025) .......... 3

12 Moore's Fed. Practice — Civil § 60.45 .......... 9

Black's Law Dictionary (3d ed. 1933) .......... 11

Black's Law Dictionary (12th ed. 2024) .......... 11

C. Dickens, *Bleak House*, *in* 1 *Works of Charles Dickens* (1891) .......... 2

## INTRODUCTION

After two decades of hard-fought litigation, including two trials, multiple evidentiary hearings, multiple mediations, and a final judgment followed by seven notices of appeal, a flurry of post-judgment motions, and five more notices of appeal, everyone has had enough. So with help from the Tenth Circuit mediator's office, the Oklahoma plaintiffs and the defendant poultry companies have reached a global settlement that covers every party in this case—including the companies that didn't previously settle—and provides for dismissal with prejudice of related third-party claims. In light of that resolution, the Tenth Circuit has stayed the judgment and remanded, permitting the parties to seek vacatur "based on new circumstances that [this Court] has never considered—a settlement agreement entered into by all parties." Order, *State of Oklahoma ex rel. Drummond v. Cal-Maine Foods, Inc.*, No. 26-5000 (10th Cir. Aug. 17, 2026), Dkt. 64 at 7 (Remand Order). The Court should grant the motion, vacate the judgment, and allow the parties' settlement to end this case once and for all.

The most straightforward way to resolve the case is to hold that the judgment has been "satisfied, released, or discharged" under Federal Rule of Civil Procedure 60(b)(5). The Oklahoma plaintiffs have released the defendant companies from all liabilities and obligations under the December 2025 judgment. That release took effect immediately upon execution, and unlike the releases in the previously submitted consent judgments, it covers all parties and is not contingent on court approval. For their part, the companies have also satisfied or discharged their civil-penalty obligations—another change from the consent judgments—through escrowed payments in the same amount (and earmarked for the same fund) required by the December 2025 judgment. In short, the parties took this Court's prior Rule 60(b) ruling to heart and tailored their settlement to address the Court's concerns.

Vacatur is also warranted because "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The parties' settlement fundamentally changes the risks and benefits of continued enforcement. Keeping the judgment in place would force Oklahoma and the companies

to continue litigating—and require the Tenth Circuit to adjudicate—a host of complex issues that the parties have now resolved through settlement. The result would be years of additional proceedings, not to mention the potential for remand, retrial, and still more appeals, all at great cost to Oklahoma and the companies. By contrast, vacatur would provide certainty and finality for the parties and non-parties alike, and it would also clear the way for roughly $42 million in immediately available funds the State may use for environmental remediation. The Supreme Court's decision in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), which the Tenth Circuit quoted in its remand order, doesn't preclude relief, and the Court may vacate under Rule 60(b)(5)'s "no longer equitable" prong whether or not the judgment has been satisfied.

Finally, Rule 60(b)(6)'s catchall provision independently warrants relief. Courts regularly grant Rule 60(b)(6) relief in light of settlement, and all the relevant factors favor vacatur here. To begin, vacatur would be efficient—saving the parties millions in legal fees and sparing the Tenth Circuit from slogging through up to 800 pages of merits briefing. Still more, both sides seek relief, not just the party challenging the judgment on appeal. The Tenth Circuit also encouraged the settlement, and the parties' resolution came about through the circuit's own mediation program. And both sides would suffer harm if the judgment is not vacated and they are forced to continue litigating, as the Tenth Circuit evidently recognized when it stayed the judgment and remanded. Finally, future courts and litigants could still cite this Court's prior orders, much like the Court itself relied on the *City of Tulsa* opinion in this very case. Here again, *Bancorp* poses no obstacle to vacatur, and the settlement addresses the administrability concerns that previously weighed against Rule 60(b)(6) relief.

After twenty-one years, 3,340 docket entries, and too many motions and orders to count, it's time for this case to end. Rather than forcing both sides to resume the fight and "dra[g] its weary length" before the Tenth Circuit, C. Dickens, *Bleak House*, *in* 1 *Works of Charles Dickens* 5 (1891), this Court should grant relief from the judgment and let the parties implement the settlement.

## BACKGROUND

### A. Oklahoma and the poultry companies spend years negotiating a settlement.

This case began in 2005, when Oklahoma sued a group of poultry companies for allegedly polluting the Illinois River Watershed. Dkt. 2979 at 1–2. The case went to trial in 2009. In January 2023, the Court held the poultry companies liable, concluded that injunctive relief was appropriate, and directed the parties to "attempt to reach an agreement with regard to remedies." *Id.* at 1, 213.

The parties spent most of 2023 trying to settle. By March, they had "met on at least two occasions" for "good faith discussions." Dkt. 2996 at 5:2–6. In June, the parties reported they "continue[d] to engage in negotiations" and had "agreed to mediation" with retired Tenth Circuit Chief Judge Deanell Reece Tacha. Dkt. 2997 at 1. In September, they "engaged in *ex parte* mediation sessions" with Judge Tacha. Dkt. 3008 at 1. And in October, Judge Tacha led another "all-day in-person mediation session." Dkt. 3009 at 1. Despite their best efforts, the parties were unable to reach an agreement, and Judge Tacha deemed the mediation "concluded." Dkt. 3008 at 1.

Negotiations continued over the next two years. After motion practice and an evidentiary hearing in 2024, the Court ordered the parties to submit proposed final judgments. Dkt. 3162 at 2. The parties resumed settlement negotiations once that briefing concluded—including an in-person meeting in September 2025 and numerous written exchanges and calls over the following months. And "rigorous discussions" were still ongoing in late 2025. Dkt. 3287 at 28:17–22.

After the Court issued its December 2025 judgment, the parties faced mounting pressure to settle. The Governor criticized the outcome. *See* Emma Murphy, *Officials Decry Judge's Ruling Against Poultry Companies in Oklahoma and Arkansas*, Oklahoma Voice (Dec. 22, 2025), bit.ly/Stitt_Statement. Agricultural organizations worried about excessive governmental oversight. *See Statement: OKFB disappointed by court's findings in decades-long poultry lawsuit*, Okla. Farm Bureau (Dec. 23, 2025), bit.ly/OKFB_Statement. Local farmers and small businesses voiced concerns. *E.g.*, Dkt. 3204-2 at

5; Dkt. 3204-5 at 7. And both sides appealed—raising complex questions of state and federal law that guaranteed the parties would incur millions in legal fees. Indeed, the current briefing order envisions up to 10 party briefs and a total of 176,640 words (not counting the half-dozen anticipated *amicus* briefs)—more than 3.5 times the length of a standard appeal and cross-appeal. *Compare* Order, *Cal-Maine*, No. 26-5000 (June 18, 2026), Dkt. 54, *with* Fed. R. App. P. 28.1(e)(2).

**B. In early 2026, Oklahoma settles with some (but not all) of the companies.**

These realities led Oklahoma and most of the companies (George's, Tyson, Cargill, and Peterson) to agree on consent judgments in early 2026. (Oklahoma and the two remaining companies—Cal-Maine and Simmons—did not settle at that time.) Because the consent judgments could not take effect while the December 2025 judgment remained in place, they were expressly "conditioned" on the Court approving them and vacating the judgment. *E.g.*, Dkt. 3268-1 at 14.

The settling parties jointly asked the Court for an indicative ruling that it would vacate the December 2025 judgment under Rule 60(b) and enter the consent judgments. *See* Fed. R. Civ. P. 62.1(a)(3) (authorizing indicative ruling while appeal is pending). Relevant here, the motions raised three grounds for Rule 60(b) relief. First, the consent judgments "release[d]" the settling companies from their liabilities and obligations under the December 2025 judgment, warranting vacatur under Rule 60(b)(5). Dkt. 3292 at 4. Second, it was "no longer equitable" to enforce the judgment, Fed. R. Civ. P. 60(b)(5), when doing so would perpetuate litigation that both sides wanted to resolve. Dkt. 3292 at 4. And finally, exceptional circumstances warranted relief, *see* Fed. R. Civ. P. 60(b)(6), considering the "culmination of two decades of contested, complex, and highly technical litigation" in an agreement that reflected the will of "a prevailing sovereign State." Dkt. 3273 at 13.

**C. The Court denies the settling parties' motions to vacate.**

The Court denied the Rule 60(b) motions. Dkt. 3300; *see* Fed. R. Civ. P. 62.1(a)(2). The Court first deemed the "release" prong of Rule 60(b)(5) "inapplicable" because the releases set forth in the

settlements were "each 'conditioned upon the approval of the Consent Judgment by the Court.'" Dkt. 3300 at 9. Because the State had "only contingently released the Judgment," it had not "released or discharged the defendants from their obligations under the Judgment as required by the Rule." *Id.*

The Court also denied relief under Rule 60(b)(5)'s "no longer equitable" prong. In the Court's view, *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership* foreclosed the parties' showing that settlement was a significant change in circumstances. Dkt. 3300 at 10, 14–15. The Court also deemed vacatur improper when the December 2025 judgment's objectives had not yet been "achieved." *Id.* at 11. And it rejected the settling parties' showing that applying the judgment prospectively would be inequitable, given the differences between the December 2025 judgment and the consent judgments. *Id.* at 12–13. For example, whereas the judgment imposed $420,000 in civil penalties, payable to the Oklahoma Department of Environmental Quality Revolving Fund, the companies would "pay no penalties" under the consent judgments. *Id.* at 13.

The Court also denied relief under Rule 60(b)(6). Relying again on *Bancorp*, the Court concluded that the settlement didn't warrant relief because the parties had "'roll[ed] the dice' and now s[ought] to erase the result of that gamble." *Id.* at 17 (quoting 513 U.S. at 27–28). The Court added that aspects of the consent judgments "weigh[ed] against" relief—particularly the "unworkab[ility]" of a settlement that did not include defendants "Cal-Maine and Simmons." *Id.* at 18–19.

**D. Oklahoma reaches a settlement with the remaining companies.**

With help from the circuit mediator, the parties again returned to the bargaining table and negotiated a new agreement covering *all* defendant companies. This time, the parties took a different approach: instead of entering consent judgments that required court approval and continuing jurisdiction, the parties signed a private settlement contract. *See* Addendum. The settlement is not conditioned on court approval, and it refers any disputes to binding arbitration, not an Article III court. Add. 21–22. Relevant here, it also imposes substantial funding, remediation, and auditing obligations,

in exchange for which Oklahoma has "release[d]" the companies "within the meaning of Federal Rule of Civil Procedure 60(b)." *Id.* at 14.

***Funding.*** The companies agreed to provide two sources of funding. First, they agreed to pay a combined $41,671,000 into an "Environmental Relief Fund"—a 38.9% increase over the "Monetary Relief Fund" payments in the consent judgments. *Compare id.* at 3, with Dkt. 3300 at 6 n.2. The payment is due within thirty days of the lawsuit's termination. Add. 3. The State will control the fund, which may be used for "furthering, in accordance with Oklahoma law, environmental stewardship of Oklahoma's scenic waterways" through the Oklahoma Conservation Commission. Add. 3. Second, the companies have already paid $420,000 into an escrowed "Penalty Fund" earmarked for the Oklahoma Department of Environmental Quality Revolving Fund. *Id.* at 5–6. The parties agreed these latter payments would "'satisf[y]' and 'discharg[e]' the penalties imposed upon Defendants under the December 19, 2025 Judgment within the meaning of" Rule 60(b). *Id.* at 5.

***Remediation.*** The companies agreed to extensive measures to protect the environment. Unlike the consent judgments, the settlement requires the funding of "construction of riparian buffer strips" in the watershed. *Id.* at 4. It also progressively restricts poultry-litter use on sensitive farmland. Specifically, the settlement limits the amount of litter, generated from poultry houses owned or operated by a defendant or by a farmer under contract with a defendant, that may be applied in the watershed. *Id.* at 6–10. And the limits will grow more stringent over time. *Id.* at 7. (The Cargill defendants and Peterson no longer operate in the watershed, but these obligations would apply equally to them in the unlikely event they return.) Finally, the companies also agreed to safeguard "Oklahoma Nutrient Sensitive Watersheds" (marked in red below) from litter exported under the settlement:




*Id.* at 35. These environmental protections extend well beyond the judgment's geographical bounds.

***Auditing.*** The parties further agreed to engage Dr. Scott Stoodley, former Director of Water Quality for the Oklahoma Conservation Commission, to audit the companies' compliance. *Id.* at 10. Over and above their Environmental Relief Fund and Penalty Fund commitments, the companies have already paid a combined $1,900,000 into an escrowed "Auditor Fund"—a 43% increase over the special-master funding obligations in the consent judgments. *Compare id.* at 11, *with* Dkt. 3300 at 18. Companies active in the watershed must submit baseline reports to the auditor, as well as annual compliance certifications, and cooperate with information requests and onsite inspections. Companies who violate their obligations must pay penalties into the Auditor Fund. Add. 11–14.

***Releases.*** The parties also agreed to a series of releases. The state officials "fully, finally, and forever release[d], relinquish[ed], and discharge[d]" the companies from all "liabilities and obligations" under "the December 19, 2025 Judgment." *Id.* at 17–18. Both sides agreed to "release" the farmers with whom the companies had contracted from any liability relating to the litigation. *Id.* at 20. The companies promised not to use the settlement as a "basis for any decision not to renew or extend

contracts" with the released farmers. *Id.* And the companies agreed to dismiss with prejudice their pending third-party claims, including claims against two Oklahoma cities. *Id.* at 20.

### E. The Tenth Circuit stays the judgment and remands with instructions to consider a renewed Rule 60(b) motion in light of the changed circumstances.

After settling, the parties jointly sought a stay and vacatur from the Tenth Circuit. The stay motion explained that the judgment should be stayed "because the parties agree that [it] should be set aside and superseded." *Cal-Maine Foods*, No. 26-5000 (July 15, 2026), Dkt. 61 at 4 (citation modified). As to likelihood of success, the parties contended vacatur is likely because "Oklahoma has issued a release relieving defendants of all liabilities and obligations" under the judgment. *Id.* (citation modified). As to irreparable harm, the parties showed that denying relief would subject both sides to the "irreparable costs and burdens" of "protracted litigation." *Id.* at 5. As to the opposing party's harms, the parties explained "there would be no harm" from a stay both sides sought. *Id.* at 6. And as to the public interest, the parties cited the Attorney General's determination that staying and vacating the judgment "would affirmatively promote the public interest." *Id.* at 6.

The Tenth Circuit "stay[ed] the judgment pending further order of the court." Remand Order at 8. While the court had previously denied a motion to stay the judgment that Oklahoma had opposed, *Cal-Maine Foods*, No. 26-5000 (Mar. 24, 2026), Dkt. 38, it granted a stay after the parties settled. In doing so, it acted consistently with the parties' showing that they are likely to succeed on the merits—*i.e.*, that "the December 19, 2025 judgment will not govern the parties' conduct." Stay Mot. at 5.

The Tenth Circuit also "direct[ed] a limited remand to permit the district court to consider the parties' request for relief from the judgment in light of the changed circumstances." Remand Order at 7. In doing so, the circuit highlighted that the motion was "based on new circumstances that the district court has never considered—a settlement agreement entered into by all parties." *Id.* It also made clear that *Bancorp* authorized a remand so this Court could consider a renewed Rule 60(b)

motion. *Id.* While the Tenth Circuit declined to grant vacatur "in the first instance," it did so "without prejudice to the parties' [moving for vacatur] again should the course of events warrant." *Id.* at 7–8.

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) allows "relief from a judgment" on six enumerated grounds. Relevant here, Rule 60(b)(5) permits vacatur when a judgment "has been satisfied, released, or discharged" or when applying the judgment "prospectively is no longer equitable." In turn, Rule 60(b)(6) permits vacatur for "any other reason that justifies relief." While relief from judgment is an "extraordinary remedy," *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018), Rule 60(b) "should be liberally construed when substantial justice will thus be served," *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975). It must also be "employed by the court … to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

## ARGUMENT

### I. The judgment should be vacated under Rule 60(b)(5)'s "satisfied, released, or discharged" prong.

#### A. The judgment has been satisfied, released, or discharged.

Rule 60(b)(5) permits relief from a judgment that has been "satisfied, released, or discharged." Evaluating a motion under this provision "is a fairly straightforward proposition." 12 Moore's Fed. Practice — Civil § 60.45. The rule doesn't invite courts to scrutinize the parties' settlement. Instead, "[i]n most instances, the only question is whether the judgment from which relief is sought has, indeed, been" satisfied, released, or discharged. *Id.*; *WG Sec. Prods., Inc. v. Tyco Int'l Ltd.*, 2011 WL 13262004 (C.D. Cal. Mar. 14, 2011) (a court "need only find that the judgment has been" satisfied, released, or discharged). Here, Rule 60(b)(5) applies because Oklahoma has released all aspects of the judgment, and the companies have independently satisfied or discharged their civil-penalty obligations.

Oklahoma has "release[d]" the judgment within the meaning of Rule 60(b)(5). The settlement states that the Oklahoma plaintiffs—the "*Releasing* Parties"—have agreed to "fully, finally, and forever

*release*" the defendant companies—the "*Released* Parties"—from "all liabilities and obligations … under the provisions of the December 19, 2025 Judgment." Add. 36–37 (emphases added). It was "the intention of the parties that this release shall qualify as a 'release' within the meaning of Federal Rule of Civil Procedure 60(b)." *Id.* at 14 (citation modified).

The companies have also "satisfied" or "discharged" their civil-penalty obligations. The judgment required all companies (save Peterson) to pay a combined $420,000 in penalties into the Oklahoma Department of Environmental Quality Revolving Fund. Judgment at 30–31 (Dkt. 3192). Under the settlement, those companies agreed to immediately pay $420,000 into a "Penalty Fund" destined for the Department of Environmental Quality Revolving Fund. The settlement recites "the intention of the [p]arties" that these payments "shall qualify as having 'satisfied' and 'discharged' the penalties" set forth in the judgment "within the meaning of Federal Rule of Civil Procedure 60(b)." Add. 5.

**B. The Court's previous rationale for deeming the "release" prong inapplicable doesn't preclude vacatur now.**

Noting that the consent judgments were "conditioned upon [judicial] approval," the Court previously deemed Rule 60(b)(5)'s "release" prong "inapplicable" because Oklahoma had "only contingently released" the settling companies. Dkt. 3300 at 9. That analysis doesn't bar relief here because (1) the new settlement released the companies immediately upon execution, with no need for court approval, and (2) contractual contingencies don't foreclose Rule 60(b)(5) relief in all events.

**1.** Oklahoma released the companies, and that release doesn't require court approval. Unlike a consent judgment, which must be "entered as a judgment of the court," *Sinclair Oil Corp. v. Scherer*, 7 F.3d 191, 193 (10th Cir. 1993), a private settlement can be entered and executed immediately. That's what happened here. With the circuit mediator's help, the parties agreed on terms, and Oklahoma signed a release that took immediate effect—so the problem this Court previously identified in denying Rule 60(b)(5) relief is gone and doesn't bar vacatur.

To be sure, the parties have agreed that the settlement "shall not be enforceable" if no court vacates the judgment by January 10, 2027. Add. 17. But that's a condition subsequent, not a condition precedent—and the distinction makes a difference. The releases in the consent judgments were subject to a condition precedent (court approval) that had to occur "before [any rights could] vest." *Franklin v. Margay Oil Co.*, 153 P.2d 486, 499 (Okla. 1944). That condition never occurred, and so the releases never took effect—hence the finding that Oklahoma "*ha[d] not* released or discharged the defendants from their obligations under the Judgment." Dkt. 3300 at 9. Here, by contrast, the release in the settlement took effect on July 10, 2026, and it remains in effect today. Although the prospect of a condition subsequent (failure to achieve vacatur within six months) "lays [the release] open to" unenforceability, that condition would operate on a right "already created." *Franklin*, 153 P.2d at 499. The enforceability provision doesn't make the parties' release any less operative.

**2.** Regardless, text, context, and precedent all confirm that Rule 60(b)(5) applies to conditional releases of all types.

***Text.*** Rule 60(b)(5) permits vacatur when a judgment has been "released." Because the rule doesn't define "release," that word is "interpreted as taking [its] ordinary, contemporary, common meaning" at the time of its adoption. *Perrin v. United States*, 444 U.S. 37, 42 (1979). In 1946 (as today), to "release" meant to "[l]iberat[e], discharg[e], or se[t] free from restraint" or to "relinquis[h], conce[de], or giv[e] up … a right, claim, or privilege." *Release*, Black's Law Dictionary (3d ed. 1933). Conditional releases fit comfortably within that definition. *See Release*, Black's Law Dictionary (12th ed. 2024) ("conditional release" is a form of "release").

It's commonplace to use the term "release" when describing an agreement that comes with strings attached. Take the Eighth Circuit's decision in *Anhui Powerguard Technology Co. v. DRE Health Corp.*, 95 F.4th 1146 (8th Cir. 2024). The parties there "created a conditional release" that would take effect only if the defendant made certain payments. *Id.* at 1151. While the defendant allegedly failed

to pay—and so the condition never occurred—the court still called the provision a "release." *Id.* And courts have long spoken that way. In fact, the same year that Rule 60(b)(5) was adopted, the First Circuit used the term "release" to describe an agreement releasing claims contingent upon payment. *See Bay State Dredging & Contracting Co. v. Porter*, 153 F.2d 827, 831 (1st Cir. 1946). In ordinary English (and legal usage), a "conditional release" is a "release" in the same way that a "blue fish" is a "fish."

***Context.*** Had the Advisory Committee wanted to restrict Rule 60(b)(5) relief to *unconditional* releases, it "easily could have written" such a rule. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008). Rule 24(a), which was already on the books when Rule 60(b)(5) was adopted, proves the point. That provision allows intervention when Congress has granted an "unconditional right" to intervene. Fed. R. Civ. P. 24(a). The Committee could have used similar language in Rule 60(b)(5), permitting relief from judgment based on an "unconditional release." Yet it declined to do so—presumably on purpose. *See Russello v. United States*, 464 U.S. 16, 23 (1983).

***Precedent.*** Precedent from other circuits points to the same outcome. For example, the Fifth Circuit has suggested that conditional releases *can* warrant relief under Rule 60(b)(5). In *Banik v. Tamez*, the parties "agreed on key terms and entered an agreement in principle" while their case was pending on appeal. 2019 WL 13251102, at *2 (S.D. Tex. 2019). They then jointly sought relief under Rule 60(b)(5), representing that the judgment had been "released." *Id.* at *2. The district court denied the motion, noting the parties had not "file[d] proof of the settlement" or "provide[d] the Court with … a basis on which to determine" whether Rule 60(b)(5) was satisfied. *Id.* at *2 n.15, *3. If Rule 60(b)(5) requires movants to establish that a release is unconditional, the Fifth Circuit could have affirmed on that basis alone. Instead, the court vacated in relevant part, explaining that "[t]he 'release' language in Rule 60(b)(5) seem[ed] to support" the parties' request. *Banik v. Ybarra*, 805 F. App'x 266, 269 (5th Cir. 2020). The Fifth Circuit thus remanded for the district court to "consider vacating" the

judgment, *id.*—without a word about scrutinizing the "agreement in principle" to determine whether its release was conditional or unconditional.

## II. The judgment should also be vacated under Rule 60(b)(5)'s "no longer equitable" prong.

Rule 60(b)(5) also permits courts to grant relief from a judgment whose prospective application is "no longer equitable." That provision was written for cases like this. After the Court denied Rule 60(b) relief, the prospect of a hard-fought appeal brought everyone back to the table, including the companies that hadn't previously settled. The parties then negotiated a global settlement that fundamentally alters this case—and solves the "unworkab[ility]" problem the Court previously identified. Dkt. 3300 at 18. In light of those "new circumstances [the Court] … never considered," Remand Order at 7, enforcing the judgment—and thus perpetuating litigation—would needlessly waste party and judicial resources, burden nonparties, and postpone environmental remediation. These considerations independently warrant Rule 60(b)(5) relief. *Bancorp* doesn't suggest otherwise, nor do the parties need to show that their settlement mirrors the judgment's requirements.

### A. Changed circumstances warrant vacatur.

Courts may vacate a judgment when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Relief is warranted under this provision when (1) a "significant change … in factual conditions" (2) "renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citation omitted). Both criteria are satisfied here.

#### 1. The parties' global settlement fundamentally changes the risks and benefits of continued enforcement.

"[C]hanges in the nature of the underlying problem" can "warrant reexamination of the original judgment." *Id.* at 448. Courts in this circuit have recognized that changed circumstances stemming from a post-judgment settlement can satisfy that standard. Take *United National Insurance, Inc. v. Airosol Co.*, 2001 WL 34664157 (D. Kan. Feb. 21, 2001). The parties there settled while the case was

on appeal and jointly moved the district court to vacate the judgment under Rule 60(b)(5). *Id.* at *1. The court issued an indicative ruling stating that it would vacate the judgment if the Tenth Circuit remanded. *Id.* at *2. *Novell, Inc. v. Network Trade Ctr., Inc.*, 187 F.R.D. 657 (D. Utah 1999), is much the same. The court there entertained a joint Rule 60(b)(5) motion after the parties settled mid-appeal and indicated it would grant the motion. *See id.* at 659–62.

Here, circumstances have changed significantly since the Court entered its judgment. Matters first began to shift when the parties filed notices of appeal—launching a new, complex, and expensive phase of litigation. That phase also brought risk: each side faced the possibility that favorable rulings could be reversed and the case remanded for further proceedings or even a new trial. This looming expense and uncertainty led most of the parties to settle. Then, after the Court denied Rule 60(b) relief, Oklahoma negotiated a global settlement that included the remaining companies who hadn't previously entered consent judgments. That resolution, which addressed a principal concern this Court previously raised, fundamentally changed the Rule 60(b)(5) calculus by increasing the risks of continued enforcement and reducing its benefits. The Tenth Circuit evidently recognized that these "changed circumstances" could warrant vacatur when it remanded for this Court to "consider the parties' request for relief from judgment." Remand Order at 7; *cf. United States v. Jaramillo*, 1998 WL 536387, at *2 (10th Cir. 1998) ("[W]e do not remand in futility.").

**2. In light of those changes, continuing to enforce the judgment would no longer be equitable.**

The new balance of risks and benefits makes continued enforcement "detrimental to the public interest." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992). Start with the burdens of further litigation. "This litigation has dragged on" and "promises to drag on further if vacatur is denied." *In re Renfrow*, 2022 WL 17668704, at *11 (N.D. Okla. Dec. 14, 2022). And that, in turn, means risk and expense. Then there are costs to the judicial system. As the Eleventh Circuit has explained, "the public interest is … served by settlements when previously committed judicial

resources are made available to deal with other matters, advancing the efficiency of the federal courts." *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1337 (11th Cir. 2016). With the judgment in place, the Tenth Circuit will face months if not years of further litigation.

Now consider the impact on nonparties. Under the judgment, farmers face uncertainty about their obligations, along with questions about whether the companies will remain in the watershed. Vacating the judgment would respond to these concerns and provide greater certainty. Under the parties' negotiated resolution, farmers have a clear understanding of litter-removal commitments, *see* Add. 6–9, and benefit from a robust release, *see id.* at 20. They also benefit from the companies' agreement "not to use th[e] Settlement as the reason or basis for any decision not to renew or extend contracts" with them—security the judgment doesn't provide. *Id.*

And then there are the environmental considerations. Further litigation means a risk that the judgment will be reversed, leaving no basis for any environmental remediation. By contrast, the settlement offers $41,671,000 in up-front funding. Add. 3. Moreover, given the geographic limits of this case, the judgment does not protect the environment beyond the Illinois River Watershed. But the settlement prohibits application of litter exported from the watershed to soils located within *any* of the State's nutrient-sensitive watersheds. Add. 7–8.

All of that boils down to this. Continuing to enforce the judgment would (1) drain party and judicial resources by perpetuating litigation, (2) saddle nonparties with uncertainty and risk, and (3) offer limited immediate funding for environmental protection. By contrast, vacatur would end this case, save resources, and provide clarity to nonparties—all while still serving the State's environmental goals. After "consult[ing] with numerous stakeholders and consider[ing] the public interest," including "litigation risk" and the needs of "families, businesses that support family farms, cattlemen, and farming communities," the Attorney General determined vacatur would "best serv[e]" Oklahoma. Add. 3. *Cf. Jackson*, 880 F.3d at 1194 (courts "must bear in mind that the public interest and principles of

federalism require a federal court to defer to state … government officials."); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148–49 (8th Cir. 1999) ("[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." (citation omitted)).

**B. *Bancorp* poses no barrier to relief.**

The Tenth Circuit's remand order confirms this Court may vacate the judgment consistent with *Bancorp*. Quoting *Bancorp* itself, the Tenth Circuit invited the Court to "consider the parties' request for relief from the judgment in light of the changed circumstances" "pursuant to Federal Rule of Civil Procedure 60(b)." Remand Order at 7 (quoting 513 U.S. at 29). If *Bancorp* precluded relief, the Tenth Circuit's remand order would make no sense. That the Court remanded at all suggests that the parties have raised compelling grounds for vacatur and that *Bancorp* does not preclude relief.

That stands to reason. *Bancorp* did not apply Rule 60(b) or address when "applying [a final judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Instead, *Bancorp* concerned whether appellate courts may vacate lower-court judgments based on the "mere fact" that a settlement has "mooted the case." 513 U.S. at 20, 29. The petitioner there lost on appeal and sought Supreme Court review. *Id.* at 20. After the Court granted certiorari, the parties "stipulated to … reorganization," which mooted the case. *Id.* The petitioner then asked the Court to vacate the appellate court's judgment—a request the respondent "opposed." *Id.*

The Court rejected the petitioner's unilateral efforts to vacate. The statute in *Bancorp*, 28 U.S.C. § 2106, applies to "courts of appellate jurisdiction" and authorizes vacatur when it is "just under the circumstances." This requires the movant to "demonstrate … equitable entitlement" to vacatur. *Bancorp*, 513 U.S. at 26. But the *Bancorp* petitioner "voluntarily forfeited [its] legal remedy"—further appellate review—and "thereby surrender[ed]" its claim to equitable relief. *Id.* at 25; *cf. Rieley v. Lamar*, 6 U.S. (2 Cranch) 344, 352 (1805) ("If a man has a defense at law and waives it, he shall not avail himself

of it in equity."). Put another way, because the petitioner had "voluntarily abandoned review," it had "disentitl[ed]" itself to relief under the "equitable tradition of vacatur." *Bancorp*, 513 U.S. at 25, 28.

This case is miles from *Bancorp*. The Court's holding there turned on a different legal rule, with different language, a different backstory, and different demands. *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 117 (4th Cir. 2000). In fact, *Bancorp* itself recognized that Rule 60(b) permits relief "even in the absence of" the circumstances needed under § 2106. 513 U.S. at 29. Unlike *Bancorp,* no party "oppose[s]" relief from judgment here. *Id.* at 20. And the parties aren't relying on the mere existence of a settlement (without more) or claimed mootness by settlement. Instead, the changed circumstances here encompass the new burdens that the parties and the federal courts face from the impending appeals, along with the new benefits that vacatur would offer courts, nonparties, and the environment. Finally, the Court's "primary basis for … denying vacatur" in *Bancorp* simply doesn't apply here. *Id.* at 28. Far from "abandon[ing] review," the parties have preserved their appellate rights while simultaneously seeking Rule 60(b) relief (which would obviate the need for an appeal).

### C. Rule 60(b)(5)'s "no longer equitable" prong doesn't require the parties to show that the judgment has been satisfied.

**1.** When the parties negotiated their settlement, they took to heart this Court's concerns with the consent judgments. For example, the settlement requires all companies (except Peterson) to pay $420,000 in penalties that will be deposited into the Oklahoma Department of Environmental Quality Revolving Fund—the same obligation imposed by the judgment (but missing from the consent judgments). *Compare* Add. 5, *with* Judgment at 22–23, *and* Dkt. 3300 at 13. The parties' settlement likewise provides nearly 40% more in immediate funding than the consent judgments, *compare* Add. 3, *with* Dkt. 3300 at 12–13, and 43% more to fund monitoring, *compare* Add. 11, *with* Dkt. 3300 at 18. It also requires the funding and construction of riparian buffer strips—a remedy envisioned under the December 2025 judgment but not the consent judgments. *Compare* Add. 4–5, *with* Judgment at 9. And by capping the volume of defendant-associated poultry litter that can be applied within the watershed,

*see* Add. 9, the settlement addresses the Court's concern that "the amount of poultry waste applied" in the watershed could "increase" under the consent judgments, Dkt. 3300 at 13.

**2.** We recognize that differences remain between the judgment and the settlement. But the Supreme Court has held that parties may obtain relief under Rule 60(b)(5)'s "no longer equitable" prong whether or not they have satisfied each and every aspect of the judgment they seek to vacate.

To be sure, showing that a judgment's requirements have been achieved is one way to show that continued enforcement is "no longer equitable." *Horne* makes that clear. The judgment there required the petitioners to comply with the Equal Educational Opportunities Act. *See* 557 U.S. at 452. The petitioners later sought relief under Rule 60(b)(5), arguing that continued enforcement was "no longer equitable" because they were "now fulfilling [their] statutory obligation." *Id.* at 439. "[A] critical question" in *Horne* was thus "whether the objective of the [district court's order]—*i.e.*, satisfaction of the [statute]—ha[d] been achieved." *Id.* at 450. If so (the Court reasoned), "continued enforcement of the order [would be] not only unnecessary, but improper." *Id.*

But that's not the only way to meet the standard. In fact, *Horne* rejected a reading that effectively made the "no longer equitable" prong "an inquiry into whether the original order had been satisfied." *Id.* at 454. As the Court explained, a party "may obtain relief if prospective enforcement of [an] order 'is no longer equitable'"—even if they "have not 'satisfied' the original order." *Id.* Showing that a judgment has been "satisfied" and showing that its continued enforcement is "no longer equitable" are "independently sufficient" grounds for relief, *id.*, and requiring a party to show satisfaction under the "no longer equitable" prong would render that provision superfluous.

The takeaway is this. Satisfying all the requirements of a judgment is sufficient—but *not* necessary—for relief under Rule 60(b)(5)'s "no longer equitable" prong. So even if the parties' settlement differs from the judgment, or will not address all the judgment's requirements, the parties still "may

obtain relief if prospective enforcement of [the judgment] is no longer equitable." *Horne*, 557 U.S. at 454. For all the reasons above, it is not.

**III. Rule 60(b)(6) independently warrants vacating the judgment.**

Vacatur is also warranted under Rule 60(b)(6). This catchall provision acts as a "grand reservoir of equitable power to do justice" when "exceptional circumstances" require relief. *Johnson v. Spencer*, 950 F.3d 680, 700–01 (10th Cir. 2020) (citations omitted). Here, "new circumstances that [this Court] has never considered—a settlement agreement entered into by all parties," Remand Order at 7—satisfy that standard and warrant relief.

**A. Exceptional circumstances warrant relief.**

**1.** Rule 60(b)(6) allows federal courts to relieve a party from a judgment "for any other reason that justifies relief." To determine whether Rule 60(b)(6) warrants relief in light of a settlement, courts consider an array of factors. *E.g.*, *Renfrow*, 2022 WL 17668704, at *5 & n.17 (collecting cases). These include (1) "the interests of party and judicial efficiency," (2) "whether both parties—rather than just the loser in the underlying matter—desire vacatur," (3) whether settlement resulted from "a court's … dispute resolution program," (4) "the harm to the movants were vacatur not granted," and (5) "the precedential value of the opinion" at issue. *Id.* "Not all factors" apply in every case, *id.*, and their "precise application … var[ies] case by case," *Hartford*, 828 F.3d at 1336.

Courts routinely hold that the benefits of settlement—and the risks and burdens of perpetuating litigation—justify Rule 60(b)(6) relief. *Hartford* is a good example. The Eleventh Circuit there reversed the denial of a joint Rule 60(b)(6) motion and vacated a series of district-court orders. 828 F.3d at 1337. In its view, vacatur was appropriate because (1) the court had "referred th[e] dispute to mediation" and (2) "both parties to the settlement desire[d] vacatur because settlement would otherwise be impossible." *Id.* at 1336. The Second Circuit reached a similar conclusion in *Major League Baseball Properties, Inc. v. Pacific Trading Cards*, 150 F.3d 149, 152 (2d Cir. 1998). The parties there

"needed a vacatur" to end the dispute on a "satisfactory" basis, and "the victor in the district court wanted a settlement as much as … the loser did." *Id.* Finding "these facts met the 'exceptional circumstances' test," the Second Circuit vacated the challenged district-court decision. *Id.* at 152–53.

**2.** The circumstances here are even more compelling than those that warranted relief in *Hartford* and *Major League*. After decades of litigation—including two trials, multiple evidentiary hearings, extensive motion practice, multiple rounds of appeals, and years of negotiations—all parties, with the help of the circuit mediator, have finally reached a satisfactory, global resolution that would end their dispute. On those facts, all the relevant equitable considerations support Rule 60(b)(6) relief.

Start with efficiency. The parties returned to the table because they wanted to end this dispute and avoid the burden, risks, and cost of an appeal. Vacatur achieves that goal, saving both sides millions of dollars in fees and expenses. The alternative is continued litigation no one wants—least of all the Tenth Circuit, which allowed this Court to address vacatur based on "changed circumstances" in the "first instance"—"without prejudice to the parties [moving for vacatur] again should the course of events warrant." Remand Order at 7. Absent vacatur, the Tenth Circuit will have to slog through ten party briefs totaling more than 176,000 words—longer than Homer's *Odyssey*—along with half a dozen anticipated *amicus* briefs. *See Cal-Maine*, No. 26-5000, Dkt. 54. No wonder "settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).

Other factors point the same way. Both "the victor in the district court" and the parties challenging the judgment seek 60(b) relief. *Major League*, 150 F.3d at 152. Court-sponsored mediation "[p]rompted" the settlement. *Hartford*, 828 F.3d at 1336; *see, e.g.*, *Cal-Maine*, No. 26-5000, Dkt. 28 (mediation); *id.* Dkt. 59 (extension to permit mediation). And denying vacatur would harm both sides by forcing them back into risky, expensive, protracted, and unwanted litigation, while also frustrating Oklahoma's efforts to effectuate a resolution that "best serves the public interest." Add. 3.

Considerations of precedential value don't alter that conclusion. While judicial precedents are "valuable to the legal community," *Bancorp*, 513 U.S. at 26, district-court decisions are "not binding in either a different judicial district, the same judicial district, or even upon the same judge in a different case," *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted). So "the loss of the persuasive authority of the district court's judgment is of less compelling concern." *Russman v. Bd. of Educ.*, 260 F.3d 114, 121 n.2 (2d Cir. 2001). And here, any loss would be further mitigated because the parties seek only to vacate the *remedy* ordered in the judgment. As the Court's own findings and conclusions prove, vacating the judgment won't stop anyone from citing the Court's decisions in future litigation. *See, e.g.*, Dkt. 2979 at 182 (citing *City of Tulsa v. Tyson Foods, Inc.*, 258 F. Supp. 2d 1263 (N.D. Okla. 2003), *vacated in connection with settlement*).

**B. The Court's previous rationale for denying Rule 60(b)(6) relief doesn't preclude vacatur now.**

The Court previously denied Rule 60(b)(6) relief in light of "concerns expressed by … *Bancorp*" and certain differences between the December 2025 judgment and the consent judgments. Dkt. 3300 at 15, 18–19. Those considerations don't foreclose vacatur now.

**1.** Here again, the Tenth Circuit's remand order suggests that *Bancorp* poses no barrier to relief. Quoting *Bancorp* itself, the circuit remanded with instructions to "consider the parties' request for relief from the judgment." Remand Order at 7. In doing so, the court was doubtless aware of the "policy considerations" *Bancorp* discusses, 513 U.S. at 29, along with the signals its order might send to "other litigants." Dkt. 3300 at 17. That the circuit nonetheless remanded confirms that those considerations do not preclude relief from the judgment.

That makes sense: Justice Scalia's opinion for the Court in *Bancorp* doesn't invite courts to weigh policy considerations at all. After the Supreme Court made clear that the "mere fact" of settlement does not warrant appellate vacatur under § 2106, it quickly disposed of the petitioner's "policy justification[s]." 513 U.S. at 25–27, 29. One of these was that settlement can result in "economies

for the federal courts." *Id.* at 27. The Court acknowledged that "the availability of vacatur may facilitate settlement" after an appeal has been filed. *Id.* at 27–28. But it could also "*deter* settlement" if the prospect of § 2106 vacatur led parties to "roll the dice rather than settle in the district court." *Id.* at 28. Finding policy arguments on both sides, the Court deemed it "quite impossible to assess the effect of [its] holding, either way, upon the frequency or systemic value of settlement." *Id.* In other words, the Court's discussion of dice-rolling and similar considerations led the Court to *disclaim* reliance on policy arguments. *Id.* *Bancorp* did not raise the prospect of dice-rolling as grounds to reject vacatur, nor did it tell lower courts to speculate about the message that vacatur might send other litigants. So far as *Bancorp* is concerned, such considerations are no reason to deny relief.

In all events, dice-rolling concerns are misplaced here. Far from "gambl[ing]" on the judgment and then seeking to "erase the result" through vacatur, Dkt. 3300 at 17, the parties have been "at the table virtually on a monthly basis" since January 2023. Dkt. 3287 at 49:9. Resolving a case this complex takes time, and Rule 60(b)(6) doesn't require the parties to short-circuit that process and settle "*without regard to outcome*." Dkt. 3300 at 17. Still more, some parties (Peterson and the Cargill defendants) had left the watershed before the Court entered judgment—so far from a gamble, their efforts to settle were consistent with prior business decisions. Nor is it surprising that the judgment and subsequent appeals catalyzed the settlement here. Neither party got everything it wanted from the judgment, and thus both sides were spurred first to appeal and then to negotiate a satisfactory resolution. Parties settle after judgment all the time, *see, e.g.*, *Renfrow*, 2022 WL 17668704, at *6 n.17 (collecting cases)—and the Tenth Circuit created a mediation program to encourage that very result.

**2.** In addition to the changes noted above (at 14–16), the settlement also resolves many of the administrability problems that previously "weigh[ed] against" Rule 60(b)(6) relief. Dkt. 3300 at 18. When the Court denied vacatur, it deemed the "proposed structure" of the consent judgments "unworkable" because it didn't include "Cal-Maine and Simmons." *Id.* That meant "dueling

judgments" and patchwork enforcement. *Id.* At the same time, the Court noted that the consent judgments left the special master with "insufficient funds" to carry out its "duty to remediate" or its duties as "contemplated by th[e] agreements." *Id.* There were also "insufficient details … as to any remediation or conservation projects to be overseen by the Attorney General." *Id.* The Court likewise voiced concern that the nonparty releases "exceed[ed] the scope of this litigation" and the Court's "jurisdiction." *Id.* at 19. And it pressed the parties on how the Court would "determine the pro rata share of 'liability'" under the consent judgments. Dkt. 3287 at 23:2–12.

The settlement addresses those concerns. Because Cal-Maine and Simmons have now joined the settlement, vacatur would not leave a two-track enforcement system. And because the settlement involves an auditor with a more circumscribed role than the special master envisioned in the judgment and the consent judgments, there's no concern over any mismatch between funding and duties. As for remediation details, the parties have agreed that the Environmental Relief Fund will be overseen by the Oklahoma Conservation Commission to "furthe[r], in accordance with Oklahoma law, environmental stewardship of Oklahoma's scenic waterways." Add. 3. And because the parties have opted for a private settlement, enforced by binding arbitration rather than ongoing jurisdiction, there is no longer any concern about releases that exceed the bounds of the case or this Court's authority. Finally, there's no need to determine pro rata liability when the settlement covers all the companies.

## IV. The motion should be decided on an expedited basis.

Writing separately in a case that has "trudged on for 18 years," Judge Thapar recently reminded "[c]ourts and parties alike" that "they have a joint obligation 'to secure the just, speedy, and inexpensive determination' of every case." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2026 WL 2454184, at *22, *25 (6th Cir. Aug. 21, 2026) (Thapar, J., concurring) (quoting Fed. R. Civ. P. 1). When "litigation lingers," he cautioned, "it hurts the parties, the court system, and the American people." *Id.* at *27. "Eighteen years is far too long." *Id.*

This litigation is now 21 years old, and both sides are eager for their settlement and releases to end it. Because the Tenth Circuit is awaiting the result of this motion, and because the escrowed funds will revert and the settlement will become unenforceable if the judgment is not vacated by January 10, 2027, *see* Add. 17, we respectfully request expedited consideration. If the motion is granted, we will promptly dismiss our appeals. If the motion is denied, we will promptly seek further relief before the Tenth Circuit, which invited a renewed motion to vacate, "should the course of events warrant." Remand Order at 7. Either way, there is "good cause" to expedite. 28 U.S.C. § 1657.

## CONCLUSION

The Court should expedite consideration of this motion and vacate the judgment.

September 22, 2026

Respectfully submitted,

*/s/ Garry M. Gaskins, II*
Gentner Drummond, OBA #16645
*Attorney General*
Amie Ely, OBA #35840
*First Assistant Attorney General*
Garry M. Gaskins, II, OBA #20212
*Solicitor General*
Jennifer L. Lewis, OBA #32819
*Deputy Attorney General*
Office of Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

M. David Riggs, OBA #7583
Kristopher Koepsel, OBA #19147
Riggs, Abney, Neal, Turpen, Orbison & Lewis
502 West 6th Street
Tulsa, OK 74119
(918) 587-3161

Louis W. Bullock, OBA #1305
Bullock Law Firm PLLC
110 W. 7th Street
Tulsa, OK 74119
(918) 584-2001

Frederick C. Baker, admitted *pro hac vice*
Cynthia Solomon, admitted *pro hac vice*
Kristin Hermiz, admitted *pro hac vice*
Madeline Becker, admitted *pro hac vice*
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9186

*Counsel for Plaintiffs*

*/s/ Gordon D. Todd*
Mark D. Hopson
Frank R. Volpe
Gordon D. Todd
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8000
gtodd@sidley.com

John M. Tanski
TYSON FOODS, INC.
2200 W. Don Tyson Pkwy.
Springdale, AR 72762
(479) 290-1953
john.tanski@tyson.com

*Counsel for Tyson Foods, Inc.; Tyson Poultry, Inc.; Tyson Chicken, Inc.; and Cobb-Vantress, Inc.*

*/s/ A. Scott McDaniel*
A. Scott McDaniel
McDaniel Acord, PLLC
9343 East 95th Court
Tulsa, OK 74133
(918) 382-9200
smcdaniel@ok-counsel.com

*Counsel for Tyson Foods, Inc.; Tyson Poultry, Inc.; Tyson Chicken, Inc.; Cobb-Vantress, Inc.; and Peterson Farms, Inc.*

*/s/ Christopher M. Scaperlanda*
Christopher M. Scaperlanda
Justin T. Hiersche
McAfee & Taft P.C.
211 N. Robinson Ave.
Oklahoma City, OK 73102
(405) 552-2356
Christopher.scaperlanda@mcafeetaft.com

*Counsel for Cal-Maine Foods*

*/s/ Perry L. Glantz*
Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410
perry.glantz@stinson.com

*Counsel for George's, Inc. and George's Farms, Inc.*

*/s/ Vicki Bronson*
John R. Elrod
Vicki Bronson
Spencer Fane, P.C.
4375 N. Vantage Drive
Suite 405
Fayetteville, AR 72703
(479) 582-5711
jelrod@spencerfane.com
vbronson@spencerfane.com
Amy M. Stipe
Gerard M. D'Emilio
GableGotwals
BOK Park Plaza
499 West Sheridan Avenue
Suite 2200
Oklahoma City, OK 73102
(405) 235-5500

*Counsel for Simmons Foods, Inc.*

*/s/ John H. Tucker*
John H. Tucker
Colin H. Tucker
Rhodes Hieronymus Jones Tucker & Gable
Two W. 2nd Street
Suite 1000
P.O. Box 21100
Tulsa, OK 74121-1100
(918) 582-1173
jtucker@rhodesokla.com
chtucker@rhodesokla.com

Aaron D. Van Oort
Christopher H. Dolan
Jeffrey P. Justman
Teresa G. Akkara
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
(612) 766-7000
aaron.vanoort@faegredrinker.com
chris.dolan@faegredrinker.com
jeff.justman@faegredrinker.com
teresa.akkara@faegredrinker.com

*Counsel for Cargill, Inc. and Cargill Turkey Production, LLC*

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2026, I caused this document to be filed with the Clerk of Court through CM/ECF, which will serve copies on all registered counsel.

/s/ *Gordon D. Todd*
Gordon D. Todd